**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
RIAD KUCHER, on behalf of himself and all other            :
similarly-situated employees,                               :
                                                            :
                              Plaintiff,                    :
                                                            :   Civil Case No.
                v.                                          :
                                                            :
DOMINO'S PIZZA, INC., DOMINO'S PIZZA,                      :   **COLLECTIVE AND CLASS**
LLC, DOMINO'S PIZZA FRANCHISING, LLC,                     :   **ACTION COMPLAINT**
COOKSTON ENTERPRISES, INC., MUMBUH                         :
STYLE PIZZA, INC., HAT TRICK PIZZA, INC.,                  :
SESTWON PIZZA, LLC, 117 MINEOLA AVE.,                      :   **Jury Trial Demanded**
LLC, 1872A BELLMORE AVE., LLC, 1017                        :
JERICHO TPKE LLC, 3489 RIVERHEAD PIZZA,                    :
LLC, 3469 MASTIC PIZZA, LLC, 3683                          :
WASHINGTON HEIGHTS PIZZA, LLC, 3456                        :
HAMILTON HEIGHTS PIZZA, LLC, 3342 NEW                      :
WINDSOR PIZZA, LLC, 3361 MONROE PIZZA,                     :
LLC, 3352 MOUNT KISCO PIZZA, LLC, 3441                     :
OSSINING PIZZA, LLC, 3488 CORTLAND                         :
MANOR PIZZA, LLC, 3616 WEST VILLAGE                        :
PIZZA, LLC, 3694 LOWER EAST SIDE PIZZA,                    :
LLC, 3551 YONKERS PIZZA, LLC, TEAM                         :
STAMFORD, LLC, TEAM EAST HARTFORD,                         :
LLC, ROLLING IN THE DOUGH, LLC,                            :
CUSTOMERS FIRST OF CONNECTICUT, LLC,                       :
AAR, LLC, MIRC, LLC, AMS PIZZA, LLC,                       :
LUCKY 13, INC., AC PIZZA, INC., DOE                        :
CORPORATIONS 1 – 50, and ROBERT                           :
COOKSTON, in his individual and professional               :
capacities,                                                :
                                                            :
                              Defendants.                   :
-------------------------------------------------------------- X

        Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

        1.      Defendant Domino's Pizza, Inc. ("Domino's"), an American fast food delivery

institution, spends millions of advertising dollars each year touting its incredibly discounted

pizza deals.  However, these deep discounts come at a steep price for its workers.  Indeed, in just

the last few years, Domino's franchisees have been required to pay nearly $3,000,000 following numerous probes by the New York State Attorney General's Office ("NYS AG's Office") and multiple federal class action lawsuits, all involving allegations of unlawful pay practices and mistreatment of employees.

2.      But, apparently, nothing has changed.  Plaintiff Riad Kucher, who worked at five different Domino's locations from approximately November 2014 through January 2016, is only one of the many employees who continue to suffer from Defendants' systemic wage violations. Mr. Kucher – similar to hundreds of other Domino's employees – was forced to work more than 20 hours per week off-the-clock, was not paid overtime compensation for his hours in excess of 40 per week, had volumes of additional wages withheld, and was ultimately fired for the stated reason that he was complaining about wages being withheld.

3.      This has happened time and time again, and the time has come for it to stop. Domino's cannot continue to hide behind its franchise model – which allows it to reap massive revenues totaling almost $2,000,000,000 per year  – and disclaim any responsibility for the conduct of its franchisees, even while it is well aware that it flouts the law and mistreats its employees.

4.      In 2014, following an investigation, the NYS AG's Office announced that 23 Domino's restaurants in eight counties owned by six different franchisees were required to pay $450,000 in restitution for labor violations, including nonpayment of wages.  Attorney General Eric Scheinderman publicly stated:

> **"The violations in these cases demonstrate a statewide pattern
> of Domino's franchisees flouting the law and illegally chiseling**

**at the pay of minimum-wage workers, who struggle to survive as it is."**[1]

5.      Then, only one year later, it happened again.  In 2015, the NYS AG's Office announced yet another settlement with Domino's franchisees – this time for $970,000 – based on Domino's "Violating Workers' Basic Rights in Stores Statewide."  This settlement involved four Domino's franchisees, which together owned 29 stores, as well as one former franchisee that owned six stores, covering 13 counties in New York.  The Domino's franchisees affirmatively "admitted to a number of labor violations, including minimum wage, overtime or other basic labor law protections."[2]

6.      On the heels of these apparent systemic institutional problems, Mr. Schneiderman "called on the Domino's Pizza Corporation and Chief Executive Officer Patrick Doyle to exercise increased oversight of Domino's franchisees' pay practices."  Mr. Schneiderman continued:

> **"In the past two years, the owners of over fifty New York Domino's franchise locations have admitted to violations of some of the most basic labor law protections – an appalling record of ongoing disregard for workers' rights.  Franchisors like Domino's need to step up to the plate and fix this problem. Franchisors routinely visit franchise stores to monitor operations – down to the number of pepperonis on each pizza – to protect their brand, and yet they turn a blind eye to illegal working conditions. My message for Domino's CEO Patrick Doyle is this: To protect the Domino's brand, protect the basic rights of the people who wear the Domino's uniform, who make and deliver your pizzas."**

That statement was issued by the NYS AG's Office on April 14, 2015.

---

[1]      Information available at:  http://www.ag.ny.gov/press-release/ag-schneiderman-announces-labor-settlements-23-dominos-restaurants-eight-new-york.

[2]      Information available at:  http://www.ag.ny.gov/press-release/ag-schneiderman-announces-settlements-five-domino%E2%80%99s-pizza-franchisees-violating.

7.     And that's just the start.  On top of all of that, in 2013, Defendant Robert Cookston – one of the largest Domino's franchisees in New York, and part of the previous investigations – was the subject of a probe by the NYS AG's Office involving claims of unlawful retaliation against employees who complained about wage violations.  In that dispute, it appears that numerous employees had complained to the Domino's franchisee of being paid below minimum wage and were terminated as a result.[3]

8.     Pursuant to an agreement with the NYS AG's Office, Mr. Cookston was required to reinstate the employment of 25 former employees.  Mr. Schneiderman stated:

> **"New York's labor laws exist to ensure the protection and fair treatment of employees in the workplace. My office will take swift action where there is any indication that an employer may have retaliated against workers for complaining about illegal labor conditions."**

9.     In addition to the three NYS AG Office investigations since 2013, Domino's restaurants owned and operated by Mr. Cookston have been named as defendants in at least three separate federal class actions alleging that they failed to pay their delivery drivers as required by law.  See Alim et al v. Cookston et al., No. 10-cv-00870 (MRK) (D. Conn. filed June 4, 2010) (class action settled on confidential terms); Carderras v. 3441 Ossining Pizza, LLC, No. 15-cv-04633 (NSR) (LMS) (S.D.N.Y. filed June 15, 2015) (alleging an array of unlawful wage-and-hour practices); Munoz et al v. Sestwon Pizza LLC et al., No. 15-cv-06833 (JFB) (AKT) (E.D.N.Y. filed December 1, 2015) (litigation still pending).

10.    At this point, it should be clear that Domino's is well aware of the pervasive problems at its franchisee locations.  In fact, this is not the not the first time the Domino's

---

[3]     Information available at:  http://www.ag.ny.gov/press-release/ag-schneiderman-secures-agreement-requiring-reinstatement-dominos-workers and http://www.ag.ny.gov/pdfs/AOD_December_12_2013.pdf.

corporate parent/franchisor has been named as a defendant-employer based on unlawful wage and hour practices taking place at a franchisee in New York.  In Cano v. DPNY, Inc., et al., 10-cv-7100 (ALC) (JCF) (S.D.N.Y), yet another class action involving unlawful wage practices at Domino's locations in New York (though not involving Mr. Cookston's entities), the plaintiffs successfully brought claims against the Domino's corporate franchisor, and action was settled for a reported $1,300,000 and Domino's – not only the franchisees – participated in the resolution.

11.     This pattern and cycle of unlawful conduct simply must come to an end.  Clearly, the monetary payments Domino's and its franchisees have paid to date – whether through settlements with the NYS AG's Office or resolutions of private civil actions – have not provided a sufficient deterrent to prevent continued wage violations.  The time has come for Domino's – on a corporate level – to take full ownership and responsibility for the repetitive and blatant unlawful conduct of its franchisees.  Domino's should not be permitted to turn a blind-eye to the unlawful conduct committed by its franchisees, and allow complaints of unlawful conduct to fall on deaf ears.

## JURISDICTION AND VENUE

12.     Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Labor Standards Act ("FLSA").  Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiff's related claims under the New York Labor Law ("NYLL").

13.     Pursuant to 28 U.S.C. § 1391(a), venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district.

14.     Plaintiff's claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of himself and all other similarly-situated persons who were employed by Defendants during the full statute of limitations period (the "FLSA Collective Period").  Plaintiff and all such other similarly-situated persons are jointly referred to herein as the "FLSA Collective."

15.     Plaintiff's claims under the NYLL are brought as a class action pursuant to Federal Rule of Civil Procedure Rule ("FRCP") 23 on behalf of himself and all other similarly-situated persons who were employed by Defendants in New York during the full statute of limitations period (the "NYLL Class Period").  Plaintiff and all other such similarly-situated persons are jointly referred to herein as the "NYLL Class."

16.     Pursuant to NYLL § 215(2)(b), contemporaneously with the commencement of this action, Plaintiff will serve a copy of this Complaint upon the Office of the Attorney General, providing notice of the claims set forth in this action.

## PARTIES

17.     Plaintiff Riad Kucher is a resident of New York State, and was employed by Defendant Robert Cookston as an Assistant Store Manager ("ASM") and Customer Service Representative ("CSR") from in or around November 2014 through January 2016, at Domino's restaurants owned and operated by Mr. Cookston, located at 170 West 23rd Street, New York, New York, 132 Tuckahoe Road, Yonkers, New York, 1017 Jericho Turnpike, New Hyde Park, New York, 117 Mineola Avenue, Roslyn Heights, New York, and 205 Allen Street, New York, New York.  At all relevant times, Mr. Kucher was an "employee" within the meaning of all applicable statutes.  A Consent to Participate as a Plaintiff in this action executed by Mr. Kucher will be filed with the Court.

**Domino's and Franchisor Defendants**

18.     Defendant Domino's Pizza, Inc. is a Delaware corporation with its headquarters and corporate offices at 30 Frank Lloyd Wright Drive, Ann Arbor, Michigan 48105.  At all relevant times herein, Domino's met the definition of an "employer" of Plaintiff and the proposed collective and class (as defined below) under all applicable statutes, including the FLSA and NYLL.

19.     Defendant Domino's Pizza, LLC, is a Michigan foreign limited liability company licensed to do business in New York State.  At all relevant times herein, Domino's (as used herein, "Domino's" or the "Franchisor Defendants" shall refer to Domino's Pizza, Inc., Domino's Pizza, LLC and Domino's Pizza Franchising, LLC) met the definition of an "employer" of Plaintiff and the proposed collective and class (as defined below) under all applicable statutes, including the FLSA and NYLL.

20.     Defendant Domino's Pizza Franchising, LLC, is a Michigan foreign limited liability company licensed to do business in New York State.  At all relevant times herein, Domino's met the definition of an "employer" of Plaintiff and the proposed class (as defined below) under all applicable statutes, including the FLSA and NYLL.

**The Cookston Defendants**

21.     Cookston Enterprises, Inc., is a New York domestic corporation, located at 170 West 23rd Street, New York, New York 10011, owned and operated by Mr. Cookston.

22.     Mumbuh Style Pizza, Inc., is a New York domestic corporation, located at 943 1st Avenue, New York, New York 10022, owned and operated by Mr. Cookston.

23.     Hat Trick Pizza, Inc., is a New York domestic corporation, located at 227 West 40th Street, New York, New York 10018, owned and operated by Mr. Cookston.

24.     Sestwon Pizza, LLC, is a New York domestic limited liability company, located at 935 Front Street, Uniondale, New York 11553, owned and operated by Mr. Cookston.

25.     117 Mineola Ave., LLC, is a New York domestic limited liability company, located at 117 Mineola Avenue, Roslyn Heights, New York 11577, owned and operated by Mr. Cookston.

26.     1872A Bellmore Ave., LLC, is a New York domestic limited liability company, located at 1872-A Bellmore Avenue, Bellmore, New York 11710, owned and operated by Mr. Cookston.

27.     1017 Jericho Tpke LLC, is a New York domestic limited liability company, located at 1017 Jericho Turnpike, New Hyde Park, New York 11040, owned and operated by Mr. Cookston.

28.     3489 Riverhead Pizza, LLC, is a New York domestic limited liability company, located at 158 Old Country Road, Riverhead, New York 11901, owned and operated by Mr. Cookston.

29.     3469 Mastic Pizza, LLC, is a New York domestic limited liability company, located at 1265 Montauk Highway, Mastic, New York 11950, owned and operated by Mr. Cookston.

30.     3683 Washington Heights Pizza, LLC, is a New York domestic limited liability company, located at 736 West 181st Street, New York, New York 10033, owned and operated by Mr. Cookston.

31.     3456 Hamilton Heights Pizza, LLC, is a New York domestic limited liability company, located at 3624 Broadway, New York, New York 10031, owned and operated by Mr. Cookston.

32.    3342 New Windsor Pizza, LLC, is a New York domestic limited liability company, located at 420 Windsor Highway, New Windsor, New York 12553, owned and operated by Mr. Cookston.

33.    3361 Monroe Pizza, LLC, is a New York domestic limited liability company, located at 711 NY-17M, Monroe, New York 10950 owned and operated by Mr. Cookston.

34.    3352 Mount Kisco Pizza, LLC, is a New York domestic limited liability company, located at 130 North Bedford Road, Mt. Kisco, New York 10549, owned and operated by Mr. Cookston.

35.    3441 Ossining Pizza, LLC, is a New York domestic limited liability company, located at 189 South Highland Ave, Ossining, New York 10562, owned and operated by Mr. Cookston.

36.    3488 Cortland Manor Pizza, LLC, is a New York domestic limited liability company, located at 2050 East Main Street, Cortland Manor, New York 10567, owned and operated by Mr. Cookston.

37.    3616 West Village Pizza, LLC, is a New York domestic limited liability company, located at 16 West 8th Street, New York, New York 10011, owned and operated by Mr. Cookston.

38.    3694 Lower East Side Pizza, LLC, is a New York domestic limited liability company, located at 205 Allen Street, New York, New York 10002, owned and operated by Mr. Cookston.

39.    3551 Yonkers Pizza, LLC, is a New York domestic limited liability company, located at 132 Tuckahoe Road, Yonkers, New York 10710, owned and operated by Mr. Cookston.

40.     Team Stamford, LLC, is a Connecticut domestic limited liability company, located at 116 West Broad Street, Stamford, Connecticut 06902, owned and operated by Mr. Cookston.

41.     Team East Hartford, LLC, is a Connecticut domestic limited liability company, located at 775 Silver Lane, East Hartford, Connecticut 06118 owned and operated by Mr. Cookston.

42.     Rolling in the Dough, LLC, is a Connecticut domestic limited liability company, located at 100 Prospect Street, S410, Stamford, Connecticut 06902, owned and operated by Mr. Cookston.

43.     Customers First of Connecticut, LLC, is a Connecticut domestic limited liability company, located at 142 Post Road, Cos Cob, Connecticut 06870, owned and operated by Mr. Cookston.

44.     AAR, LLC, is a Connecticut domestic limited liability company, with its business address at 75 Sterling Drive, Bellevue, Idaho 83313 owned and operated by Mr. Cookston.

45.     MIRC, LLC, is a Connecticut domestic limited liability company, located at 641 Main Street, Meriden, Connecticut 06450 owned and operated by Mr. Cookston.

46.     AMS Pizza, LLC, is a Connecticut domestic limited liability company, with its business address at 83 Wall Street, Norwalk, Connecticut 06850, owned and operated by Mr. Cookston.

47.     Lucky 13, Inc., is a Connecticut domestic limited liability company, located at 301 Main Avenue, Norwalk, Connecticut 06851 owned and operated by Mr. Cookston.

48.     AC Pizza, Inc., is a Connecticut domestic limited liability company, located at 946 Hope Street, Stamford, Connecticut 06907, owned and operated by Mr. Cookston.

49.     Doe Corporations 1 – 50 are other Domino's entities owned and/or operated by Mr. Cookston which cannot currently be identified by name.

50.     Defendant Robert L. Cookston is the franchisee, owner and operator of the foregoing Domino's store locations (collectively, the "Cookston Defendants," together with Domino's and Mr. Cookston, "Defendants").  Upon information and belief, Mr. Cookston is a resident of the state of Connecticut.

51.     Mr. Cookston and the Cookston Defendants were and/or remain an "employer" of Plaintiff, the FLSA Collective and the NYLL Class at all relevant times and under all relevant statutes.

## FACTUAL ALLEGATIONS

### Domino's and the Cookston Defendants Are Joint Employers

52.     Plaintiff, on behalf of himself and the FLSA Collective, realleges and incorporates by reference all preceding paragraphs of the "Preliminary Statement" as if they were set forth again herein.

53.     Plaintiff and the members of the FLSA Collective and NYLL Class are ASMs and CSRs who worked[4] in Domino's stores owned and/or operated by Mr. Cookston and the Cookston Defendants.  ASMs and CSRs performed substantially the same tasks and earned substantially similar wages.

54.     Plaintiff and the members of the FLSA Collective and NYLL Class were responsible for, among other tasks, answering telephones, taking orders from customers, making

---

[4]     For ease, this Complaint is written in the past tense, but Plaintiff alleges that all allegations of unlawful wage-and-hour violations continue through the present.

pizzas, stocking, managing inventory, handling cash, and cleaning and/or maintaining the restaurant.

55.     Plaintiff and the members of the FLSA Collective and NYLL Class were given two weeks of training by Defendants before beginning their jobs.  Upon information and belief, this training provided to the FLSA Collective and NYLL Class was performed pursuant to Domino's policies and practices.

56.     Upon information and belief, at all relevant times, Defendants told Plaintiff and the members of the FLSA Collective and NYLL Class that they would be paid at or around the applicable minimum hourly rate or slightly higher.  Mr. Kucher, for instance, was paid at an hourly rate of between $8 and $10 per hour during the course of his employment.

57.     Upon information and belief, Domino's controlled the work performed by Plaintiff and the members of the FLSA Collective and NYLL Class by, *inter alia*, performing routine inspections of its franchise locations (including the Cookston Defendants), setting policies and procedures that must be followed by franchisees and their employees, controlling advertising, and regulating employee behavior, such as by dictating employee uniforms.

58.     Upon information and belief, Domino's exerts control and influence over its franchisees (including the Cookston Defendants), by identifying and selling store locations to franchisees, assisting in the franchise purchase process by providing financing to prospective franchisees, and handling new store location and existing store renovation construction projects.

59.     Furthermore, upon information and belief, Domino's creates, designs, builds and updates all training and development programs for its franchisees (including the Cookston Defendants).

60.     Similarly, upon information and belief, Domino's employs an operational support team that instructs franchisees such as the Cookston Defendants on how to run their stores, and provides instruction regarding food preparation, and the creation and implementation of bookkeeping, accounting, inventory and general operating procedures.

61.     Upon information and belief, Domino's also controls the inventory supply chain and menu for its franchisees' stores, and regulates the way food is handled, prepared, served and delivered.

62.     In fact, Domino's typically requires prospective franchisees to manage a Domino's location for at least one year prior to entering into the franchise agreement, because "[t]his enables [Domino's] to observe the operational and financial performance of a potential franchisee prior to entering into a long-term contract."[5]

63.     Domino's also "generally restrict[s] the ability of domestic franchisees to be involved in other businesses, which focuses [] franchisees' attention on operating their stores," and tells its shareholders that: "We maintain a productive relationship with our independent franchise owners through regional franchise teams, distributing materials that help franchise stores comply with our standards and using franchise advisory groups that facilitate communications between us and our franchisees."  Id.  In other words, Domino's communicates to its shareholders that it very closely monitors and controls the operations of its franchisees.

64.     Domino's also acknowledges that it is "subject to the Fair Labor Standards Act and various other federal and state laws governing … minimum wage requirements, overtime and other working conditions …" and that "[a] significant number of our and our franchisees' food service personnel are paid at rates related to the applicable minimum wage, and past

---

[5]     Citing the Domino's Annual Report, available at:  http://phx.corporate-ir.net/phoenix.zhtml?c=135383&p=irol-reportsannual.

increases in the minimum wage have increased labor costs, as would future increases."  Id. Therefore, Domino's is fully aware that it must adhere to federal and state labor laws, and regards wages paid to employees of franchisees as part of its "labor costs."

65.     Upon information and belief, Domino's requires its franchisees to establish and retain bookkeeping records, including sales and inventory information, as well as payroll records and paystubs.

66.     Furthermore, Domino's has implemented a uniform proprietary point-of-sale system, called "PULSE," in no less than 99% of its franchised locations.  Id.  Upon information and belief, this system is integrated with franchisees' payroll, inventory and operational systems, and allows Domino's administrators access to this information either automatically or upon request.

67.     Pursuant to the Franchisor Defendants' policies, the Cookston Defendants utilize the PULSE system, which tracks employee work hours, wages and other payroll information, as well as sales and inventory information.

68.     Upon information and belief, Domino's has the right to access all computer data maintained by its franchisees, including bookkeeping records, payroll records, and paystubs.

69.     Upon information and belief, Domino's also requires franchisees to send profit-and-loss statements at the end of each fiscal year, which include operating and labor costs.

70.     Upon information and belief, Domino's has the right to audit the sales reports, financial records and computer data of its franchisees.

71.     Based on the foregoing, Domino's knew or should have known about the Cookston Defendants' unlawful wage practices alleged herein, given that Domino's maintains a high level of control and oversight of these franchise locations and had access to, *inter alia*, bookkeeping, payroll and timekeeping records, and had the ability to audit these records.

72.     Upon information and belief, Domino's has the power to curtail the Cookston Defendants' unlawful policies, patterns and/or practices, but has refrained from doing so in order to continue to reap the profits from the franchise relationship.

73.     For instance, Domino's has the power to terminate franchise agreements based on "failure to adhere to specified Company policies and standards."  Id.  Upon information and belief, those specified policies and standards include failure to operate the store in full compliance with applicable wage-and-hour laws, or to engage in conduct that adversely affects the Domino's brand and goodwill of Domino's trademarks.  Therefore, Domino's is ultimately able to control how its franchises operate, and could have terminated the Cookston Defendants' franchise agreements due to their systematic failure to obey federal and state labor laws.

74.     Plaintiff and the members of the FLSA Collective and NYLL Class performed work that is integral to Domino's' business, and Domino's could not exist as a business without their work.

75.     Domino's has been on actual and/or constructive notice of the unlawful conduct of the Cookston Defendants, and has failed to take appropriate remedial action to remedy the violations.  In failing to do so, Domino's has acquiesced to, and become complicit in, the unlawful acts of the Cookston Defendants.

76.     Based in part on the allegations set forth above, among others, The Honorable James C. Francis permitted the plaintiffs in Cano v. DPNY, Inc., 287 F.R.D. 251 (S.D.N.Y.

2012), to proceed in a wage-and-hour action against the Franchisor Defendants as joint employers, rejecting Domino's' argument that claims against it as the franchisor would be futile.

**Minimum Wage, Overtime and Off-Clock Violations**

77.     Defendants maintain a "clock-in" system, in which Plaintiff and members of the FLSA Collective and NYLL Class enter their name, Domino's identification number and password into a computer system in order to track their hours worked.

78.     However, while Plaintiff and the members of the FLSA Collective and NYLL Class would "clock-out" at the end of third scheduled shifts, Defendants forced them to continue working for hours thereafter.

79.     Plaintiff and the members of the FLSA Collective and NYLL Class's off-the-clock work consisted of, *inter alia*, cleaning, maintaining and closing the store (when the shift was a night shift) after their shifts had ended.

80.     This practice of pre-maturely clocking-out has resulted in substantial uncompensated, off-the-clock work performed by Plaintiff and members of the FLSA Collective and NYLL Class, in violation of NYLL § 191.

81.     For instance, Plaintiff was regularly scheduled to work approximately 40 to 45 hours per week, usually in eight to nine hour shifts, six days per week.  However, with all the off-the-clock work, he actually worked well in excess of his scheduled hours, and usually in the range of 65 hours per week.   This took place every week Plaintiff worked for Defendants.

82.     Plaintiff's time spent off-the-clock cleaning, maintaining and closing the store constituted time controlled by Defendants and was for the benefit of Defendants' business.

83.     Plaintiff's experiences were not unique to one Domino's location, but a common and consistent experience at all Domino's locations in which he worked.

84.     Defendants were aware and/or should have been aware that Plaintiff was working off-the-clock and was not getting paid for his time.

85.     Plaintiff observed that these same unlawful practices perpetrated against him were perpetrated against all other employees who worked in an ASM and CSR capacity at all the locations in which he worked.

86.     This uncompensated, off-the-clock work has also resulted in Plaintiff and the members of the FLSA Collective and NYLL Class not being paid the minimum wage for all hours worked for Defendants, in violation of the minimum wage provisions of the FLSA, 29 U.S.C. §§ 201, *et seq.* and the NYLL, §§ 650, *et seq.*

87.     This uncompensated, off-the-clock work has also resulted in Plaintiff and the members of the FLSA Collective and NYLL Class not receiving compensation at one and one half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the overtime provisions of the FLSA and NYLL.

88.     At all relevant times, Defendants knew that nonpayment of off-the-clock straight time and overtime wages would economically injure Plaintiff, the FLSA Collective, and the NYLL Class and violated federal and state laws.

89.     Plaintiff's experiences and Defendants' failure to pay Plaintiff for off-the-clock work is common to all members of the FLSA Collective and the NYLL Class.

**Unlawful Withholding of Gratuities**

90.     At Defendants' pizza restaurants, Defendants maintain a tip jar next to each cash register.  Customers are invited and encouraged to leave cash gratuities in these jars. Furthermore, customers who pay by credit card are permitted to leave gratuities on their credit card receipts.

91.     For the gratuities left by customers who pick up their orders at a store location (as opposed to delivery orders) Defendants led or knowingly allowed their customers to believe that the cash and credit card gratuities would be paid to the ASMs and CSRs.

92.     However, Defendants did not pay these gratuities to the ASMs or CSRs, and instead unlawfully retained the gratuities.

93.     Throughout the relevant time period, Defendants had knowledge of NYLL § 196-d and the legal requirement that employees are entitled to gratuities/tips.

94.     Nevertheless, Defendants withheld the entire amount of gratuities collected from customers from Plaintiff and the NYLL Class.

**"Spread of Hours" Violations**

95.     Defendants also failed to pay Plaintiff and the members of the NYLL Class their proper "spread of hours" pay as required under the NYLL.

96.     Specifically, Defendants are required to pay Plaintiff and the members of the NYLL Class an extra hour of wages at the minimum wage if an employee's shift or shifts span more than 10 hours in a single day.

97.     However, because Defendants forced Plaintiff and members of the NYLL Class to work off-the-clock, Plaintiff's and the NYLL Class's timesheets and paystubs did not reflect that they in fact worked at or more than ten hours that day.

98.     Accordingly, Plaintiff and the members of the NYLL Class were not paid "spread of hours" pay for those days, and as such, Defendants have violated the NYLL.

**Wage Statement Violations**

99.     Defendants failed to provide Plaintiff and the members of the NYLL Class accurate wage statements as required under the NYLL.

100.    Specifically, Defendants were required to provide wage statements to Plaintiff and the members of the NYLL Class containing, *inter alia*, the number of hours worked, including overtime hours worked if applicable.

101.    However, Defendants failed to provide wage statements that accurately depicted the number of hours worked by Plaintiff and the members of the NYLL Class.

102.    Defendants failed to provide accurate wage statements because off-the-clock work and withheld gratuities were not reflected on the wage statements to Plaintiff and the NYLL Class.

**Uniform Purchase Violations**

103.    Defendants also required Plaintiff and members of the NYLL Class to wear uniforms, which consisted of a Domino's shirt, hat, belt, pants and jacket, labeled with the Domino's brand, while they worked.

104.    All or some of the articles of clothing for the uniforms had to be purchased by Plaintiff and the NYLL Class members themselves.

105.    For instance, throughout his employment with Defendants, Plaintiff purchased multiple shirts and hats from Defendants as part of his required uniform.  Furthermore, Plaintiff purchased multiple belts and pants to complete his required uniform.

106.    The clothes were of a particular style determined by Defendants, including labels with the Domino's brand, which could not be worn as part of the NYLL Class members' ordinary wardrobe.

107.    The clothing Plaintiff and the NYLL Class members were and are required to wear while working constituted a uniform within the meaning of the NYLL.

108.    Defendants have not reimbursed Plaintiff and the NYLL Class members for the cost of purchasing the uniforms.

**Retaliation Against Plaintiff Kucher**

109.    On or around the week of December 21, 2015, Mr. Kucher failed to receive his weekly paycheck from Defendants.

110.    Shortly thereafter, Mr. Kucher complained to his manager, Mohammed Mohosin, that he did not receive his check and asked that it be provided.

111.    Mr. Mohosin assured Mr. Kucher that he would receive his check shortly.

112.    However, Mr. Kucher did not receive that check, or his check the following week.

113.    As such, Mr. Kucher complained again to Mr. Mohosin, who again assured him that both checks would be forthcoming.

114.    This cycle proceeded to go back-and-forth for approximately five weeks, including a weekend of extreme blizzard conditions during which Mr. Kucher still reported to work.

115.    Mr. Kucher continued to complain to Mr. Mohosin that he was not receiving his paychecks and was not being compensated for his work.

116.    On or around the last week of January 2016, Mr. Kucher complained again to Mr. Mohosin.  This time, however, Mr. Mohosin told Mr. Kucher directly: "Because you complain too much, you're fired."  Mr. Kucher was then removed from the work schedule at Domino's.

117.    Mr. Kucher then called the Area Manager (known only as "Lou"), and asked him to investigate.  Although Lou told Mr. Kucher that he would look into the situation, Mr. Kucher never heard back from him after that.

118.    In short, Mr. Kucher was terminated in blatant retaliation for his complaints about Defendants' unlawful wage practices.

## FLSA COLLECTIVE ACTION ALLEGATIONS

119.    Plaintiff brings his FLSA claims as a collective action pursuant to the FLSA on behalf of himself and on behalf of all other similarly-situated persons that fall within in the following definition:

> All individuals who were employed by Defendants at one of the Cookston Defendants' locations as ASMs and CSRs during the FLSA Collective Period.

120.    At all relevant times, Plaintiff and the members of the FLSA Collective were similarly-situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, plans and practices, and were subject to Defendants' unlawful wage practices.

121.    During the FLSA Collective Period, Defendants were fully aware of the duties performed by Plaintiff and the FLSA Collective, and that those duties were not exempt from the overtime provisions of the FLSA.

122.    As a result of Defendants' conduct as alleged herein, Defendants violated 29 U.S.C. § 206 by not paying Plaintiff and the FLSA Collective the prevailing minimum wage for all hours worked, and 29 U.S.C. § 207 by not paying the appropriate overtime wages for all hours worked over 40 in a workweek.

123.    Defendants' violations of the FLSA were willful, repeated, knowing, intentional and without a good faith basis, and significantly damaged Plaintiff and the FLSA Collective.

124.    As a result of Defendants' conduct, Defendants are liable to Plaintiff and the FLSA Collective for the full amount of their unpaid minimum wage, overtime wages owed, plus an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

125.    While the exact number of the FLSA Collective is unknown to Plaintiff at the present time, upon information and belief, there are at least 100 other similarly-situated persons to Plaintiff that constitute the FLSA Collective.

## RULE 23 CLASS ACTION ALLEGATIONS

126.    Plaintiff brings his NYLL claims as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and on behalf of all other similarly-situated persons who fall within the following definition:

> All individuals who were employed by Defendants at one of the Cookston Defendants' locations as ASMs and CSRs during the NYLL Class Period.

127.    The basic job duties of the NYLL Class were the same as or substantially similar to those of Plaintiff, and the NYLL Class were paid in the same manner and under the same common policies, plans and practices as Plaintiff.

128.    The NYLL Class, like Plaintiff, have been subject to the same unlawful policies, plans and practices of Defendants, including failing to pay minimum wage for all hours worked, or proper overtime wages for all hours worked over 40 hours each workweek, failing to make payments for all hours worked, failing to make timely wage payments, failing to make timely wage payments after separation, making unlawful deductions from wages, making unlawful

deductions from gratuities, failing to make spread of hours payments, failing to provide accurate wage statements, and maintaining unlawful uniform requirements.

129.    During the NYLL Class Period, Defendants were fully aware of the duties performed by Plaintiff and the NYLL Class, and that those duties were not exempt from the minimum wage, overtime requirements and other applicable provisions of the NYLL and/or its regulations.

130.    As a result of Defendants' conduct as alleged herein, Defendants violated the NYLL and/or its regulations.  Defendants' violations of the NYLL and/or its regulations were willful, repeated, knowing, intentional and without a good faith basis, and significantly damaged Plaintiff and the NYLL Class.

131.    As a result of Defendants' conduct, Defendants are liable to Plaintiff and the NYLL Class for the full amount of their unpaid minimum wages and unpaid overtime wages, the straight wages owed, the tips or gratuities retained by Defendants, the "spread of hours" pay owed, the statutory damages owed, and the costs of purchasing uniforms, plus an additional amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiff and the NYLL Class.

132.    Certification of the NYLL Class's claims as a class action is the most efficient and economical means of resolving the questions of law and fact common to Plaintiff's claims and the claims of the NYLL Class.

133.    Plaintiff has standing to seek such relief because of the adverse effect that Defendants' unlawful compensation policies and practices have had on them individually and on members of the NYLL Class.

134.    Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

135.    Certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the NYLL Class and Defendants.

136.    Plaintiff's claims raise questions of law and fact common to the NYLL Class. Among these questions are:

      a.      Whether Defendants employed Plaintiff and the NYLL Class members within the meaning of the NYLL;

      b.      Whether Defendants failed to pay Plaintiffs and the NYLL Class minimum wage and premium overtime compensation for all hours worked in excess of 40 hours per workweek during the NYLL Class Period;

      c.      Whether Defendants knew or should have known that Plaintiff and the NYLL Class were engaged in off-the-clock work for which they were not compensated;

      d.      Whether Defendants made unlawful deductions from the wages of Plaintiff and the NYLL Class, including unlawful deductions from gratuities;

      e.      Whether Defendants failed to timely pay Plaintiff and the NYLL Class;

      f.      Whether Defendants failed to pay Plaintiff and the NYLL Class "spread of hours" wages;

      g.      Whether Defendants provided Plaintiff and the NYLL Class with accurate wage statements;

      h.      Whether Defendants required Plaintiff and the NYLL Class to purchase and uniforms without reimbursing them for the costs; and

      i.      Whether Defendants' violations of the NYLL and/or its regulations were willful.

137.    These common questions of law and fact arise from the same course of events, and each class member will make similar legal and factual arguments to prove liability.

138.    Plaintiff is a member of the NYLL Class that he seeks to represent. Plaintiff's claims are typical of the claims of the NYLL Class. The relief Plaintiff seeks for the unlawful policies and practices complained of herein is also typical of the relief which is sought on behalf of the NYLL Class.

139.    Plaintiff's interests are co-extensive with those of the NYLL Class that he seeks to represent in this case. Plaintiff is willing and able to represent the NYLL Class fairly and to vigorously pursue their similar individual claims in this action.

140.    Plaintiff has retained counsel who are qualified and experienced in labor and employment class action litigation, and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

141.    The combined interests, experience and resources of Plaintiff and his counsel to litigate the individual and NYLL Class claims at issue in this case satisfy the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4).

142.    Defendants have acted or refused to act on grounds generally applicable to the NYLL Class, making final injunctive and declaratory relief appropriate with respect to the NYLL Class as a whole.

143.    The common issues of fact and law affecting Plaintiff's claims and those of the NYLL Class members, including the common issues identified above, predominate over any issues affecting only individual claims.

144.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and the claims of the NYLL Class.  There will be no difficulty in the management of this action as a class action.

145.    The cost of proving Defendants' violations of the NYLL and the supporting regulations makes it impracticable for Plaintiff and the NYLL Class to pursue their claims individually.

146.    Maintenance of a class action promotes judicial economy by consolidating a large class of plaintiffs litigating identical claims.

147.    The claims of the NYLL Class interrelate such that the interests of the members will be fairly and adequately protected in their absence.

148.    Additionally, the questions of law and fact common to the NYLL Class arise from the same course of events and each class member makes similar legal and factual arguments to prove the Defendants' liability.

149.    The NYLL Class is so numerous that joinder of all members is impracticable. While the exact number of the NYLL Class is unknown to Plaintiff at the present time, upon information and belief, there are at least one 100 similarly-situated persons who were/are employed by Defendants as ASMs and CSRs during the NYLL Class Period.

**FIRST CAUSE OF ACTION**
**(Failure to Pay Minimum Wage in Violation of 29 U.S.C. § 206)**
*On Behalf of Plaintiff and the FLSA Collective*

150.    Plaintiff, on behalf of himself and the FLSA Collective, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein

151.    The FLSA requires covered employers, such as Defendants, to pay all non-exempt employees the prevailing minimum wage for all hours worked.

152.    During the FLSA Collective Period, Defendants did not pay Plaintiff and the FLSA Collective the prevailing minimum wage for all hours worked for Defendants, including but not limited to all of their off-the-clock hours worked.

153.    As a result of Defendants' failure to pay Plaintiff and the FLSA Collective the prevailing minimum wage for all hours worked, Defendants violated the FLSA.

154.    The foregoing conduct of Defendants constitutes willful violations of the FLSA.

155.    Defendants' violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid minimum wages, an additional equal amount in liquidated damages, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
**(Failure to Pay Overtime in Violation of 29 U.S.C. § 207)**
***On Behalf of Plaintiff and the FLSA Collective***

156.    Plaintiff, on behalf of himself and the FLSA Collective, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

157.    Throughout the FLSA Collective Period, Plaintiff and the other members of the FLSA Collective regularly worked and continue to work in excess of 40 hours per workweek.

158.    At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiff and the FLSA Collective at one and one half times their hourly wage for all work in excess of 40 hours per workweek.

159.    At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the FLSA Collective at the required overtime rate, one and one half times their hourly wage for all hours worked in excess of 40 hours per workweek.

160.     Due to Defendants' FLSA violations, Plaintiff and the members of the FLSA Collective are entitled to recover from Defendants damages in the amount of their respective unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and interest.

### THIRD CAUSE OF ACTION
**(Failure to Pay Minimum Wage in Violation of NYLL §§ 650 *et seq.*)**
***On Behalf of Plaintiff and the NYLL Class***

161.     Plaintiff, on behalf of himself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

162.     The NYLL requires covered employers, such as Defendants, to pay all non-exempt employees the prevailing minimum wage for all hours worked.  Plaintiff and the NYLL Class were not exempt from the requirement that Defendants pay them the prevailing minimum wage under the NYLL.

163.     During the NYLL Class Period, Defendants did not pay Plaintiff and the NYLL Class the prevailing minimum wage for all hours worked for Defendants.

164.     As a result of Defendants' failure to pay Plaintiff and the NYLL Class the prevailing minimum wage for all hours, Defendants violated the NYLL.

165.     The foregoing conduct of Defendants constitutes willful violations of the NYLL.

166.     Defendants' violations of the NYLL have significantly damaged Plaintiff and the NYLL Class and entitle them to recover the total amount of their unpaid minimum wage, an additional amount in liquidated damages, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
**(Failure to Pay Overtime in Violation of NYLL §§ 650 *et seq*.)**
*On Behalf of Plaintiff and the NYLL Class*

167.    Plaintiff, on behalf of himself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

168.    Throughout the NYLL Period, Plaintiff and the other members of the NYLL Class regularly worked and continue to work in excess of 40 hours per workweek.

169.    At all relevant times, Defendants operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiff and the NYLL Class at one and one half times their hourly wage for all work in excess of 40 hours per workweek.

170.    At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the NYLL Class at the required overtime rate, one and one half times their hourly wage for all hours worked in excess of 40 hours per workweek.

171.    Due to Defendants' NYLL violations, Plaintiff and the members of the NYLL Class are entitled to recover from Defendants damages in the amount of their respective unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and interest.

## FIFTH CAUSE OF ACTION
**(Failure to Make Wage Payments in Violation of NYLL § 191)**
*On Behalf of Plaintiff and the NYLL Class*

172.    Plaintiff, on behalf of himself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

173.    Defendants failed to provide Plaintiff and the members of the NYLL Class wages earned in accordance with the agreed upon terms of their employment by simply failing to pay Plaintiff and the members of the NYLL Class all of the wages they are owed.

174.    Defendants did not have a good faith basis to believe that their failure to pay the minimum wage was in compliance with the law.

175.    As a result of Defendants' willful and unlawful conduct, Plaintiff and the members of the NYLL Class are entitled to an award of damages in an amount to be determined at trial, plus liquidated damages, prejudgment interest and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### (Failure to Make Timely Wage Payments in Violation of NYLL § 191)
### *On Behalf of Plaintiff and the NYLL Class*

176.    Plaintiff, on behalf of himself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

177.    Defendants failed to pay all wages to Plaintiff and the members of the NYLL Class not less frequently than semi-monthly and on regular pay days designated in advance by the employer.

178.    Defendants did not have a good faith basis to believe that their failure to pay the Plaintiff and members of the NYLL Class was in compliance with the law.

179.    As a result of Defendants' willful and unlawful conduct, Plaintiff and the members of the NYLL Class are entitled to an award of damages in an amount to be determined at trial, plus liquidated damages, prejudgment interest and reasonable attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
### (Failure to Make Payments Following Separation in Violation of NYLL § 191)
### *On Behalf of Plaintiff and the NYLL Class*

180.    Plaintiff, on behalf of himself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

181.    Defendants failed to pay Plaintiff and the members of the NYLL Class whose employment was separated the remaining wages that they were owed on or before the regular pay day for the pay period during which the separation occurred.

182.    Defendants did not have a good faith basis to believe that their failure to pay the minimum wage was in compliance with the law.

183.    As a result of Defendants' willful and unlawful conduct, Plaintiff and the members of the NYLL Class are entitled to an award of damages in an amount to be determined at trial, plus liquidated damages, prejudgment interest and reasonable attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**(Unlawful Deductions in Violation of NYLL § 193)**
***On Behalf of Plaintiff and the NYLL Class***

184.    Plaintiff, on behalf of himself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

185.    The NYLL prohibits covered employers, such as Defendants, from making deductions from the wages of any employee.

186.    Defendants made unlawful deductions and withholdings from the wages of Plaintiff and the members of the NYLL Class when Defendants failed to pay them the wages they were owed.

187.    Defendants did not have a good faith basis to believe that their failure to pay the minimum wage was in compliance with the law.

188.    As a result of Defendants' willful and unlawful conduct, Plaintiff and the members of the NYLL Class are entitled to an award of damages in an amount to be determined at trial, plus liquidated damages, prejudgment interest and reasonable attorneys' fees and costs.

## NINTH CAUSE OF ACTION
### (Unlawful Deductions from Gratuities in Violation of NYLL § 196-d)
*On Behalf of Plaintiff and the NYLL Class*

189.    Plaintiff, on behalf of himself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

190.    NYLL § 196-d bars an employer from retaining "any part of a gratuity [.]"

191.    Defendants unlawfully demanded and retained gratuities from Plaintiff and the NYLL Class, in violation of the NYLL.

192.    Due to Defendants' NYLL violations, Plaintiff and the NYLL Class members are entitled to recover from Defendants the amount of retained gratuities, liquidated damages, attorneys' fees and costs, and interest.

## TENTH CAUSE OF ACTION
### (Failure to Provide Accurate Wage Statements in Violation of NYLL § 195(3) and 12 N.Y.C.R.R. § 141-2.2)
*On Behalf of Plaintiff and the NYLL Class*

193.    Plaintiff, on behalf of himself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

194.    Defendants have willfully failed to supply Plaintiff and the NYLL Class with accurate statements of wages as required by NYLL § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

195.     Through their knowing or intentional failure to provide Plaintiff and NYLL Class members with the accurate wage statements required by the NYLL, Defendants have willfully violated the NYLL.

196.     Due to Defendants' NYLL violations, Plaintiff and NYLL Class members are entitled to statutory penalties of $100 for each workweek that Defendants failed to provide them with accurate wage statements, or a total of $2,500.00, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

### ELEVENTH CAUSE OF ACTION
**(Failure to Make Spread of Hours Payments in Violation of 12 N.Y.C.R.R. § 142-2.4)**
*On Behalf of Plaintiff and the NYLL Class*

197.     Plaintiff, on behalf of himself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

198.     Plaintiff and members of the NYLL Class regularly worked more than ten hours in a workday.

199.     Defendants failed to compensate Plaintiff and members of the NYLL Class one hour's pay at the basic New York minimum hourly wage rate, as required by New York law.

200.     Due to Defendants' NYLL violations, Plaintiff and the NYLL Class members are entitled to recover from Defendants the "spread of hours" pay, liquidated damages, as well as attorneys' fees, costs, and interest.

### TWELFTH CAUSE OF ACTION
**(Unlawful Uniform Requirement in Violation of Wage Order 146-1.8)**
*On Behalf of Plaintiff and the NYLL Class*

201.     Plaintiff, on behalf of himself and the NYLL Class, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

202.    Defendants required Plaintiff and the NYLL Class members to purchase their uniforms at their own expense in violation of the NYLL, including, but not limited to, New York State Hospitality Industry Wage Order 146-1.8.

203.    Defendants' failure to reimburse Plaintiff and the NYLL Class for the costs of purchasing, cleaning and maintaining the uniforms was willful.

204.    Due to Defendants' NYLL violations, Plaintiff and the NYLL Class are entitled to recover from Defendants the cost of uniform purchase, together with the required uniform maintenance reimbursement, liquidated damages, as well as attorneys' fees, costs, and interest.

**THIRTEENTH CAUSE OF ACTION**
**(Retaliation in Violation of the FLSA, 29 U.S.C. § 215)**
***On Behalf of Plaintiff Kucher***

205.    Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

206.    Defendants retaliated against Plaintiff in violation of the FLSA by terminating his employment because of Plaintiff's complaints regarding, *inter alia*, Defendants' unlawful employment practices under the FLSA.

207.    As a direct and proximate result of the unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered and continues to suffer monetary and/or other economic harm for which he is entitled to an award of monetary damages and other relief.

208.    As a direct and proximate result of the unlawful discriminatory conduct in violation of the FLSA, Plaintiff has suffered emotional distress for which he is entitled to an award of monetary damages and other relief.

209.    The foregoing conduct of Defendants constitutes willful violations of the FLSA for which Plaintiff is entitled to an award of punitive and/or liquidated damages.

## FOURTEENTH CLAIM FOR RELIEF
### (Retaliation in Violation of NYLL § 215)
#### *On Behalf of Plaintiff Kucher*

210.    Plaintiff hereby realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

211.    Defendants retaliated against Plaintiff in violation of the NYLL by terminating his employment because of Plaintiff's complaints regarding, *inter alia*, Defendants' unlawful employment practices under the NYLL.

212.    As a direct and proximate result of the unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered and continues to suffer monetary and/or other economic harm for which he is entitled to an award of monetary damages and other relief.

213.    As a direct and proximate result of the unlawful discriminatory conduct in violation of the NYLL, Plaintiff has suffered and continues to suffer emotional distress for which he is entitled to an award of monetary damages and other relief.

214.    The foregoing conduct of Defendants constitutes willful violations of the NYLL for which Plaintiff is entitled to an award of punitive and/or liquidated damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, the FLSA Collective and the NYLL Class, respectfully request that this Court:

A.    Declare that Domino's and the Cookston Defendants are joint employers of Plaintiff, the FLSA Collective and the NYLL Class, and that the practices complained of herein are unlawful under applicable federal and state law;

B.    Declare this action maintainable as a collective action pursuant to 29 U.S.C. § 216;

C.      Designate Plaintiff as representative of his class, and his counsel of record as class counsel;

D.      Award Plaintiff and the FLSA Collective damages against Defendants and in favor of Plaintiff and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

E.      Award Plaintiff and the FLSA Collective an additional equal amount as liquidated damages;

F.      Declare this action maintainable as a class action pursuant to Fed. R. Civ. P. 23;

G.      Award damages against Defendants and in favor of the Plaintiff and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.      Award Plaintiff and the NYLL Class an additional amount as liquidated damages;

I.      Award Plaintiff, the FLSA Collective and the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action including, but not limited to, any accountants' or experts' fees;

J.      Award Plaintiff damages in the maximum amount permitted by law on account of the unlawful retaliation he was subjected to by Defendants; and

K.      Grant Plaintiff, the FLSA Collective and the NYLL Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and on behalf of all other similarly-situated persons, hereby

demands a trial by jury on all issues of fact and damages.

Dated: April 4, 2016
       New York, New York                    Respectfully submitted,

                                              **WIGDOR LLP**

                                    By: _____
                                              David E. Gottlieb
                                              Tanvir H. Rahman
                                              Rita M. Lenane (*admission pending*)

                                              85 Fifth Avenue
                                              New York, NY 10003
                                              Telephone:  (212) 257-6800
                                              Facsimile:  (212) 257-6845
                                              dgottlieb@wigdorlaw.com
                                              trahman@wigdorlaw.com
                                              rlenane@wigdorlaw.com

                                              *Attorneys for Plaintiff, the Proposed FLSA*
                                              *Collective and NYLL Class*

37