**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
                 :

RIAD KUCHER and HAROON MOJUMDER, on :  Civil Case No. 16-cv-02492(AJN)
behalf of themselves and all other similarly-situated :
employees,               :
                 :
        Plaintiffs,   :
                 :
      v.         :
                 :
DOMINO'S PIZZA, INC., et al,      :
                 :
        Defendants.  :
                 :
-------------------------------------------------------------- X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR (1) CONDITIONAL CERTIFICATION PURSUANT TO THE FAIR LABOR**
**STANDARDS ACT, (2) COURT-FACILITATED NOTICE TO SIMILARLY-SITUATED**
**PERSONS AND (3) DISCLOSURE OF CONTACT INFORMATION**

Submitted by:

**WIGDOR LLP**

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND .............................................................................................................. 2

ARGUMENT .................................................................................................................... 6

I.      CONDITIONAL CERTIFICATION IS APPROPRIATE ...................................... 6

        A.     The FLSA's Opt-in Requirement and the Need for Expedited Notice ................... 6

        B.     The Two Phase Certification Process for FLSA Collective Actions ...................... 8

        C.     Plaintiffs Have Made the Requited Showing That They Are
Similarly-Situated to the Members of the FLSA Collective ................................. 11

        D.     Conditional Certification Is Routinely Granted Across Multiple Locations ......... 15

        E.     Expedited Notice and Disclosure of Contact Information Is Necessary ............... 18

        F.     Plaintiffs' Proposed Notice Is Appropriate in All Respects ................................. 20

II.     THE COURT IS PERMITTED TO RULE ON THIS MOTION BEFORE
RESOLUTION OF ANY ANTICIPATED MOTION TO DISMISS ............................. 21

        A.     Conditional Certification Can Be Granted as to All of Mr. Cookston's
Employees Regardless of Whether Certain Corporate Entities Remain ............... 21

        B.     Granting Conditional Certification Motions Filed Pre-Answer or
Pre-Motion to Dismiss Is Permissible and Routine ............................................. 24

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

Amador v. Morgan Stanley & Co. LLC,
    No. 11 Civ. 4326 (RJS), 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) ..................................... 23

Amendola v. Bristol-Myers Squibb Co.,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008) ................................................................................. 11

Aros v. United Rentals, Inc.,
    269 F.R.D. 176 (D. Conn. 2010) ......................................................................................... 23

Bhumithanarn v. 22 Noodle Mkt. Corp.,
    No. 14 Civ. 2625 (RJS), 2015 WL 4240985 (S.D.N.Y. July 13, 2015) ................................ 12

Bowens v. Atlantic Maint. Corp.,
    546 F. Supp. 2d 55 (E.D.N.Y. 2008) ................................................................................... 12

Cano v. DPNY, Inc.,
    287 F.R.D. 251 (S.D.N.Y. 2012) ......................................................................................... 12

Cano v. Four M Food Corp.,
    No. 08 Civ. 3005 (JFB)(AKT), 2009 WL 571043 (E.D.N.Y. Feb. 3, 2009) ......................... 16

Capsolas v. Pasta Res., Inc.,
    No. 10 Civ. 5595 (RJH), 2011 WL 1770827 (S.D.N.Y. May 9, 2011) ................................. 16

Carter v. Dutchess Cmty. Coll.,
    735 F.2d 8 (2d Cir. 1984) ..................................................................................................... 22

Chowdhury v. Duane Reade, Inc.,
    No. 06 Civ. 2295 (GEL), 2007 WL 2873929 (S.D.N.Y. 2007) ............................................ 12

Cunningham v. Elec. Data Systems Corp.,
    No. 06 Civ. 3530 (RJH), 2010 WL 5076703 (S.D.N.Y. 2010) .................................... 8, 9, 10

Damassia v. Duane Reade, Inc.,
    No. 04 Civ. 8819 (GEL), 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ................................. 11

Davis v. Abercrombie & Fitch Co.,
    No. 08 Civ. 1859 (PKC), 2008 WL 4702840 (S.D.N.Y. Oct. 23, 2008) ............................... 21

Falk v. Brennan,
   414 U.S. 190 (1973)...................................................................................... 22

Fasanelli v. Heartland Brewery, Inc.,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007)....................................................... 16

Fermin v. Las Delicias Peruanas Rest., Inc.,
   93 F. Supp. 3d 19 (E.D.N.Y. 2015) ........................................................... 23

Fonseca v. Dircksen & Talleyrand Inc.,
   No. 13 Civ 5124 (AT), 2014 WL 1487279 (S.D.N.Y. Apr. 11, 2014)...................... 7, 8, 9, 10

Foster v. Food Emporium,
   No. 99 Civ. 3860 (CM), 2000 WL 1737858 (S.D.N.Y. 2000) ............................................. 7, 18

Garcia v. JonJon Deli Grocery Corp.,
   No. 13 Civ. 8835 (AT), 2015 WL 4940107 (S.D.N.Y. Aug. 11, 2015) ................................ 22

Garcia v. Pancho Villa's of Huntington Vill., Inc.,
   678 F. Supp. 2d 89 (E.D.N.Y. 2010) ........................................................... 16

Gaspar v. Personal Touch Moving, Inc.,
   No. 13 Civ.  8187 (AJN), 2014 WL 4593944 (S.D.N.Y. Sept. 15, 2014) ............................. 21

Gortat v. Capala Bros., Inc.,
   No. 07 Civ. 3629 (ILG) (SMG), 2010 WL 1879922 (E.D.N.Y. May 10, 2010).................. 7, 8

Guy v. Casal Inst. of Nevada, LLC,
   No. 2:13-CV-02263-APG, 2014 WL 1899006 (D. Nev. May 12, 2014) ................................ 24

Guzelgurgenli v. Prime Time Specials Inc.,
   883 F. Supp. 2d 340 (E.D.N.Y. 2012) ........................................................... 16, 23

Hallissey v. Am. Online, Inc.,
   No. 99 Civ. 3785 (KTD), 2008 WL 465112 (S.D.N.Y. 2008) ............................................... 11

Herman v. RSR Sec. Servs. Ltd.,
   172 F.3d 132 (2d Cir. 1999)......................................................................... 22

Hoffmann v. Sbarro, Inc.,
   982 F. Supp. 249 (S.D.N.Y. 1997).......................................................... 7, 8, 9, 11

Hoffmann-LaRoche, Inc. v. Sperling,
   493 U.S. 165 (1989)............................................................................. 8, 11, 20

Irizarry v. Catsimatidis,
    722 F.3d 99 (2d Cir. 2013)...................................................................... 22

Jackson v. New York Tel. Co.,
    163 F.R.D. 429 (S.D.N.Y. 1995) ......................................................... 9, 10

Jeong Woo Kim v. 511 E. 5th St., LLC,
    No. 12 Civ. 8096 (FM), 2013 WL 6283587 (S.D.N.Y. Dec. 3, 2013) ...................................... 7

Ji Li v. Ichiro Rest. Inc.,
    No. 14 Civ. 10242 (AJN) (JCF), 2015 WL 6828056 (S.D.N.Y. Nov. 5, 2015) ...................... 24

Juarez v. 449 Rest., Inc.,
    29 F. Supp. 3d 363 (S.D.N.Y. 2014)........................................................ 16

Karic v. Major Auto. Companies, Inc.,
    799 F. Supp. 2d 219 (E.D.N.Y. 2011) ................................................... 15

Khalil v. Original Homestead Rest., Inc.,
    No. 07 Civ. 695 (RJH), 2007 WL 7142139 (S.D.N.Y. Aug. 9, 2007) .................................. 20

Khamsiri v. George & Grank's Japanese Rest. Inc.,
    No. 12 Civ. 265 (PAE), 2012 WL 1981507 (S.D.N.Y. June 1, 2012).................................. 12

Lamb v. Singh Hospitality Grp., Inc.,
    No. 11 Civ. 6060 (MKB), 2013 WL 5502844 (E.D.N.Y. Sept. 30, 2013) ........................... 16

Lee v. ABC Carpet & Home,
    236 F.R.D. 193 (S.D.N.Y. 2006) ........................................................... 10

Lynch v. United Services Auto. Ass'n,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007)........................................................ passim

Mendoza v. Ashiya Sushi 5, Inc.,
    No. Civ. 8629 (KPF), 2013 WL 5211839 (S.D.N.Y. Sept. 16, 2013) ......................... 7, 9, 16

Mentor v. Imperial Parking Systems, Inc.,
    246 F.R.D. 178 (S.D.N.Y. 2007) .............................................................. 9

Morales v. Plantworks, Inc.,
    No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. 2006)................................. 9, 10

Myers v. Hertz Corp.,
　　624 F.3d 537 (2d Cir. 2010)..................................................................... 8, 9, 10, 11

Nahar v. Dozen Bagels Co. Inc.,
　　No. 15 Civ. 1613 (ALC) (FM), 2015 WL 6207076 (S.D.N.Y. Oct. 20, 2015) ...................... 20

Qing Tian Zhuo v. Jia Xing 39th Inc.,
　　No. 14 Civ. 2848 (SHS), 2015 WL 1514950 (S.D.N.Y. Apr. 1, 2015)...................... 11, 12, 16

Ramos v. PJJK Rest. Corp.,
　　No. 15 Civ. 5672 (PKC), 2016 WL 1106373 (S.D.N.Y. Mar. 10, 2016) ............................... 18

Rosario v. Valentine Avenue Discount Store, Co., Inc.,
　　828 F. Supp. 2d 508 (E.D.N.Y. 2011) ............................................................ 4, 17

Sanchez v. Gansevoort Mgmt. Grp., Inc.,
　　No. 12 Civ. 75 (KBF), 2013 WL 208909 (S.D.N.Y. Jan. 10, 2013) ..................................... 12

Schear v. Food Scope Am., Inc.,
　　297 F.R.D. 114 (S.D.N.Y. 2014) ...................................................................... 8, 9, 10

Shajan v. Barolo, Ltd.,
　　No. 10 Civ. 1385 (CM), 2010 WL 2218095 (S.D.N.Y. June 2, 2010) ............................ 10, 11

Spicer v. Pier Sixty LLC,
　　269 F.R.D. 321 (S.D.N.Y. 2010) ...................................................................... 9, 10

Winfield v. Citibank, N.A.,
　　843 F. Supp. 2d 397 (S.D.N.Y. 2012)...................................................................... 23

Yahraes v. Rest. Associates Events Corp.,
　　No. 10 Civ. 935 (SLT), 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011) ..................................... 24

Yap v. Mooncake Foods, Inc.,
　　No. 13 Civ. 6534 (ER), 2015 WL 7308660 (S.D.N.Y. Nov. 18, 2015) ................................. 15

Zaldivar v. JMJ Caterers, Inc.,
　　No. 14 Civ. 924 (SJF), 2016 WL 792404 (E.D.N.Y. Feb. 26, 2016) ..................................... 12

Zheng v. Liberty Apparel Co.,
　　355 F.3d 61 (2d Cir. 2003)...................................................................................... 22

## Other Authorities

Fed. R. Civ. P. 23 ...................................................................................................... 6, 9

29 U.S.C § 203(d) ...................................................................................................... 22

29 U.S.C. § 216(b) ...................................................................................................... 6

29 U.S.C. § 255(a) ...................................................................................................... 21

29 U.S.C. § 626(b) ...................................................................................................... 8

Plaintiffs Riad Kucher and Haroon Mojumder respectfully submit this memorandum of law in support of their motion for conditional certification of their Fair Labor Standards Act ("FLSA") claims and court-facilitated notice of this action in English, Spanish and Bengali to all putative members of the FLSA Collective (defined below).

## PRELIMINARY STATEMENT

Plaintiffs Riad Kucher and Haroon Mojumder have alleged identical wage violations perpetrated against a period of many years at numerous Domino's[1] franchise locations owned by Defendant Robert Cookston and jointly operated between him and the Domino's Franchisor.  Not only do the two Plaintiffs' allegations corroborate each other's claims, but their allegations have been further corroborated by the allegations of an opt-in plaintiff, Amanul Boby, and a non-party former employee, Miron Kivria.  Not only are the unlawful wage practices at Mr. Cookston's franchise locations corroborated by Plaintiffs, an opt-in plaintiff, and a non-party affiant, but they are also confirmed by two recent investigations into Mr. Cookston's practices by the New York State Attorney General's Office ("NYS AG's Office"), which led to Mr. Cookston paying $675,000 due to unlawful wage violations.  The confirmatory evidence continues further.  In addition, Mr. Cookston and his franchise locations have been sued at least three other times based on other employees alleging wage violations nearly identical to the claims asserted here.  Moreover, the NYS AG's Office recently filed an action against Domino's, alleging a systemic problem with its proprietary point-of-sale and time-tracking program (which all franchisees, including Mr. Cookston, are required to use) that leads to wage violations for all franchisees using the program, and which Domino's has failed to remedy despite its actual knowledge of the problem.  In short, respectfully, to say Plaintiffs can meet the "modest factual

---

[1]     Defendants Domino's Pizza, Inc. and Domino's Franchising, LLC are referred to collectively as "Domino's" or the "Domino's Franchisor."

showing" necessary to send a notice to the putative FLSA Collective, to effectuate the broad

remedial measures of the law, would be a dramatic understatement.

## BACKGROUND

Defendants own and operate dozens of Domino's franchise locations in New York and

Connecticut.  ¶¶ 19-47; 49-86. [2]  The "Cookston Defendants" are Robert Cookston and the

Domino's franchises he owns and operates, whereas the "Domino's Franchisor" is the Domino's

corporate entity that jointly with Mr. Cookston controlled the operations at Mr. Cookston's

franchise locations (collectively, "Defendants").  ¶¶ 19-47, 49-86.  As we understand, Mr.

Cookston operates additional franchise locations beyond those named in this action, but Mr.

Cookston's counsel has refused to identify these entities. ¶ 46.

As alleged in the Second Amended Complaint, Mr. Kucher worked at approximately five

different locations owned by Mr. Cookston between November 2014 and January 2016.  ¶ 17.

Mr. Kucher worked for Defendants first as a Customer Service Representative ("CSR") and later

as an Assistant Store Manager ("ASM").  Id.  Mr. Kucher performed substantially the same job

duties in both roles, including answering telephones, taking orders from customers, making

pizzas, stocking, managing inventory, handling cash, and cleaning and/or maintaining the

restaurant.  ¶ 51.  Mr. Mojumder worked as a Delivery Driver and effectively as a CSR as well

when he was not delivering pizzas.  ¶¶ 18, 51.[3]

---

[2]  All references to the Declaration of the David E. Gottlieb ("Gottlieb Decl.") are cited simply as "Ex. __," and all references to the Second Amended Complaint (attached to the Gottlieb Decl. as Ex. A) are cited as "¶__."

[3]  The proposition that Delivery Drivers perform substantial in-store, non-tipped work is also corroborated by the recent action filed by the NYS AG's Office against Domino's and other New York franchises. See Ex. B at ¶¶ 77-84 (describing labor law violations in two Domino's franchises where delivery drivers performed "far too much" non-tipped work – i.e., non-delivery work – for the employer to use the "tip credit").

Regardless of their job titles or the restaurants in which they worked, Mr. Kucher and Mr. Mojumder were required to work off-the-clock for approximately 20 hours per week. ¶¶ 87-91. This off-the-clock work was completely uncompensated, resulting in Mr. Kucher and Mr. Mojumder not being paid the minimum wage as required by the FLSA and the New York Labor Law ("NYLL"). ¶¶ 87-91. These uncompensated off-the-clock hours were in addition to Mr. Kucher's and Mr. Mojumder's on-the-clock hours, which already numbered approximately 40 to 45 hours per week. ¶ 91. Therefore, the additional uncompensated hours also resulted in Plaintiffs being denied premium overtime compensation. ¶ 97.

In addition, Mr. Kucher and Mr. Mojumder allege that they were denied cash or credit card gratuities left by customers, despite the fact that they were intended for them and others in their position (for in-store employees, this was in the form of a tip jar, and for Delivery Drivers, this was in the form of more traditional tips). ¶¶ 100-102. They further allege that Defendants failed to make "spread of hours" payments for all days in which they worked more than 10 hours and that they required to purchase Domino's shirts and hats, as well as pants, belt and a jacket, to serve as their uniform, all in violation of the NYLL. ¶¶ 104, 112-116. As Mr. Kucher and Mr. Mojumder were not being compensated for numerous off-the-clock hours, Defendants also failed to provide them with accurate wage statements. ¶¶ 108-111.

These allegations are already corroborated by two additional former employees, one of whom has joined this action as an Opt-in Plaintiff. Gottlieb Decl. at ¶ 20. Opt-in Plaintiff Amanul Boby worked for Defendants as an ASM from November 2014 through January 2016, and while he primarily worked at one location, he occasionally was asked to perform work for other locations as well. Ex. C at ¶¶ 3, 7. Non-party Miron Kivria – Mr. Kucher's brother – also worked for Defendants as a CSR from approximately 2001 through 2004 and then again for

approximately one month in 2015.  Ex. D at ¶ 2.  Messrs. Boby and Kivria corroborate all of Mr. Kucher's and Mr. Mojumder's allegations, as they too were subjected to the same unlawful wage-and-hour violations as both Mr. Kucher and Mr. Mojumder.[4]  Ex. C at ¶¶ 4-17; Ex. D at ¶¶ 3-15.  Based on these allegations and the allegations in the Second Amended Complaint, Plaintiffs seek to represent all ASMs, CSRs and Delivery Drivers who were employed by Defendants at one of the Cookston Defendants' locations during the relevant statutory period (the "FLSA Collective").  ¶ 133.

In or around the week of December 21, 2015, Mr. Kucher complained to Defendants that he was not being paid properly.  ¶¶ 109-110; Ex. E at ¶ 22.  In particular, in the previous few weeks, Mr. Kucher had not been paid any wages at all.  Id. at ¶ 22.  However, these complaints went nowhere, Mr. Kucher was never paid his wages, and no remedial action was ever taken.  ¶¶ 111-114; Ex. E at ¶ 22.  As such, Mr. Kucher continued to complain.   ¶¶ 115-116; Ex. E at ¶ 22.  In or around the last week of January 2016, Defendants terminated Mr. Kucher for the stated reason that he was continually complaining about his wages.  ¶¶ 116-118; Ex. E at ¶ 22.  It was not until weeks after Mr. Kucher commenced this action, on May 5, 2016, that Mr. Kucher was finally provided checks for these workweeks.  Ex. F.

On April 4, 2016, Mr. Kucher filed the original Complaint, asserting causes of action for wage violations and unlawful retaliation under the FLSA and NYLL.  See Dkt. No. 1 (Ex. G).  Then, within days of commencement, Mr. Boby opted-in to this action.  See Dkt. No. 71 (Ex. H);

---

[4]      Although the earlier period of Mr. Kivria's employment is not actionable as it falls outside the applicable statutory limitation periods, it still serves to substantiate the existence of a common unlawful policy.  See Rosario v. Valentine Avenue Discount Store, Co., Inc., 828 F. Supp. 2d 508 (E.D.N.Y. 2011) ("Affidavits of workers whose employment falls outside the statutory period are probative of employer's wage and hour practices and they may corroborate the claims of more recent violations.") (citation omitted).  In any event, the latter period of Mr. Kivria's employment is certainly actionable.

Ex. C at ¶ 2.  Three days later, on April 7, 2016, two managers – Ismail Hussain and Mohammed

Mohsain – showed up at Mr. Kucher's and Mr. Kivria's apartment uninvited.  ¶ 131.  They

"threatened to kill [Mr. Kivria] and his brother" for being involved in this action.[5]  Id.

Accordingly, on April 13, 2016, Plaintiffs filed an Amended Complaint, including additional

allegations of retaliation based on this conduct.  See Dkt. No. 77 (Ex. I).  Plaintiffs filed a

Second Amended Complaint in this action on May 16, 2016.  See Dkt. No. 114 (Ex. A).

Importantly, this action does not stand on its own.  Mr. Cookston, and his franchise

locations, has been the focus of two separate investigations by the NYS AG's Office over the last

three years for wage violations and retaliation against employees.  As a result of these

investigations, Mr. Cookston agreed to pay at least $675,000 for the alleged unlawful wage

violations, and rehire 25 employees who complained that they were fired for engaging in

protected activity.  See Ex. J; Ex. K; Ex. L.  Moreover, Domino's restaurants owned and

operated by Mr. Cookston have been named as defendants in at least three wage-and-hour class

and collective actions in federal court alleging similar wage violations to those asserted here.

See Alim et al. v. Cookston et al., No. 10 Civ. 00870 (MRK) (D. Conn. filed June 4, 2010) (class

action settled on confidential terms); Carderras v. 3441 Ossining Pizza, LLC, No. 15 Civ. 04633

(NSR) (LMS) (S.D.N.Y. filed June 15, 2015) (alleging an array of unlawful wage-and-hour

practices); Munoz et al v. Sestwon Pizza LLC et al., No. 15 Civ. 06833 (JFB) (AKT) (E.D.N.Y.

filed December 1, 2015) (litigation still pending); ¶ 9.

On top of that, Domino's – the franchisor – has been the subject of wage actions as well.

Domino's will likely argue at summary judgment that it cannot be liable as an employer (an

---

[5]      Mr. Kucher and Mr. Kivria are brothers who share the same residence.  Presumably, Mr.
Hussain surmised that Mr. Kivria was aware of and supported his brother's protected activity of
being involved in this action.  Gottlieb Decl. at ¶ 21.

argument that would not be appropriate at the conditional certification stage), but Domino's will likely disregard that it was successfully included as a joint-employer defendant in a previous wage action in New York.  See Cano v. DPNY, Inc., 287 F.R.D. 251 (S.D.N.Y. 2012) (granting leave to amend the complaint to include Domino's over Domino's argument that their inclusion in the action would be futile).  Furthermore, the NYS AG's Office – after having investigated approximately 45% percent of Domino's franchisees in New York for wage-and-hour violations over the last four years – publically decried that Domino's, the franchisor, "need[s] to step up to the plate and fix this problem."  Ex. L.  Apparently even the urging of the state's highest law enforcement agency did not help.  Earlier this week, on May 23, 2016, the NYS AG's Office filed an action against Domino's alleging that the franchisor is complicit with its franchisees and has been and continues to be well aware of wage violations taking place in all its New York locations.  See generally Ex. B.  According to the filing, Domino's' own proprietary point-of-sale and time-tracking software – which all franchisees are required to use – is largely responsible for employees not being properly paid.  See Ex. B at ¶¶ 49-106.

## ARGUMENT

## I.   CONDITIONAL CERTIFICATION IS APPROPRIATE

### A.   The FLSA's Opt-In Requirement and the Need for Expedited Notice

The FLSA states in relevant part that:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  ***No employee shall be a party Plaintiffs to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought***.

29 U.S.C. § 216(b) ("Section 216(b)") (emphasis added).  That is, in a collective action under

Section 216(b), unlike in a class action under Federal Rules of Civil Procedure 23 ("Rule 23"),

an employee is not a member of the collective until the employee affirmatively opts-in to the

collective action.  Id.; Fonseca v. Dircksen & Talleyrand Inc., No. 13 Civ. 5124  (AT), 2014 WL

1487279 at *1 (S.D.N.Y. Apr. 11, 2014) ("Thus, putative class members must 'opt-in' to

participate in an FLSA collective action."); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260

(S.D.N.Y. 1997) ("Thus, under the FLSA, potential plaintiffs must 'opt in' to a collective action

to be bound by the judgment (and to benefit from it)."); Mendoza v. Ashiya Sushi 5, Inc., No.

Civ. 8629 (KPF), 2013 WL 5211839 at *2 (S.D.N.Y. Sept. 16, 2013) (stating same).  Thus, until

employees are given notice and are permitted to file consent forms to opt-in, the statute of

limitations continues to run against them on a daily basis.  Hoffmann, 982 F. Supp. at 260 ("only

by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled"); Mendoza,

2013 WL 5211839 at *2 (same).

  Therefore, it is critical that similarly-situated employees be afforded notice as soon as

possible and be provided with the opportunity to opt-in, as their claims may be reduced or

extinguished daily.  Foster v. Food Emporium, No. 99 Civ. 3860 (CM), 2000 WL 1737858 at *3

n.1 (S.D.N.Y. 2000) ("because of the statute of limitations, potential plaintiffs may be eliminated

as each day goes by.  For this reason, it is advisable that notice be given as soon as practicable.");

Hoffmann, 982 F. Supp. at 262 ("courts have endorsed the sending of notice early in the

proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting

efficient case management."); Jeong Woo Kim v. 511 E. 5th St., LLC, No. 12 Civ. 8096 (FM),

2013 WL 6283587 at *9 (S.D.N.Y. Dec. 3, 2013) ("Here, court-facilitated notice is appropriate

'to prevent erosion of claims due to the running statute of limitations, as well as to promote

judicial economy.'"); Gortat v. Capala Bros., Inc., No. 07 Civ. 3629 (ILG) (SMG), 2010 WL

1879922, at *9 (E.D.N.Y. May 10, 2010) ("Because the statute of limitations for FLSA claims

continues to run for each individual Plaintiffs until he or she opts in [], early certification and

notice are favored in order to protect plaintiffs' rights.").

    The Supreme Court has affirmed the importance of potential opt-in plaintiffs receiving

timely notice of their potential claims. See Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165,

170 (1989). This seminal case sets forth the requirements for bringing a collective action.[6] The

Court observed that a collective action authorized by Section 216(b) "allows . . . plaintiffs the

advantage of lower individual costs to vindicate their rights by the pooling of resources."

Hoffmann-LaRoche, 493 U.S. at 170. The Court went on to point out that, "[t]hese benefits,

however, depend on employees receiving accurate and timely notice concerning the pendency of

the collective action, so that they can make informed decisions about whether to participate."

### B.    The Two Phase Certification Process for FLSA Collective Actions

    The Second Circuit has approved a two-step process for district courts to utilize in

determining whether litigants should be permitted to proceed collectively under Section 216(b).

See e.g. Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (describing the two-step process

in detail); Fonseca, 2014 WL 1487279 at *1-2 (same); Schear v. Food Scope Am., Inc., 297

F.R.D. 114, 121 (S.D.N.Y. 2014) (same).

    *First*, at an early stage in litigation, the court must make an initial determination limited

strictly to whether the named plaintiffs are "similarly-situated" to the potential members of the

FLSA collective. Myers, 624 F.3d at 554; see also Cunningham v. Elec. Data Systems Corp.,

---

[6]    While the Supreme Court's decision in Hoffmann-La Roche involved a collective action under the Age Discrimination in Employment Act ("ADEA"), the analysis applies to FLSA collective actions with equal force because the ADEA adopted the collective action enforcement provisions of the FLSA. See 29 U.S.C. § 626(b); Hoffmann, 982 F. Supp. at 261, n.15.

No. 06 Civ. 3530 (RJH), 2010 WL 5076703 at *4 (S.D.N.Y. 2010) (citing Lynch v. United Services Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).  To do so, the named plaintiffs need only make a very "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  Myers, 624 F.3d at 555; Fonseca, 2014 WL 1487279 at *1 ("At the first stage, plaintiffs must make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."); Schear, 297 F.R.D. at 121 (same).  Then, the court should facilitate notice of the action to the potential members of the collective.  For this reason, the initial phase is called the "notice stage."[7]  Myers, 624 F.3d at 555 (citing Hoffmann, 982 F. Supp. at 261); see also Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 336 (S.D.N.Y. 2010).

"The burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the notice stage."  Lynch, 491 F. Supp. 2d at 368; see also Morales v. Plantworks, Inc., No. 05 Civ. 2349 (DC), 2006 WL 278154 at *2 (S.D.N.Y. 2006) ("The first stage, conditional certification, requires only a 'modest factual showing' based on the 'pleadings and affidavits' that the putative class members were 'victims of a common policy or plan that violated the law.'"); Cunningham, 2010 WL 5076703 at *5 (citing Mentor v. Imperial Parking Systems, Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007)) (at this first step, the court uses a "relatively lenient evidentiary standard to determine whether a collective action is appropriate.").  Plaintiffs merely need to provide "***some factual basis*** from which the court can determine if similarly situated

---

[7]     The "notice stage" is often referred to as "conditional certification," borrowing the term from Rule 23.  This term is somewhat of a misnomer in FLSA actions as, unlike Rule 23, Section 216(b) does not have any "certification" provision, and FLSA plaintiffs are not required to establish any of the Rule 23 categories to proceed collectively.  Mendoza, 2013 WL 5211839 at *2 ("FLSA collective actions, unlike class actions brought under Rule 23, need not satisfy the standards of numerosity, typicality, commonality, or representativeness.").  That said, Plaintiffs here can easily meet even the most stringent standards for certification under 216(b) or Rule 23.

9

potential plaintiffs exist." Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)

(emphasis added). "The leniency of this requirement is consistent with the broad remedial

purpose of the FLSA." Spicer, 269 F.R.D. at 336 (citing Morales, 2006 WL 278154 at *2).

If Plaintiffs satisfy their burden of showing that "similarly-situated" employees exist, the

court should conditionally certify the collective and order that appropriate notice be given to the

members of the FLSA Collective to afford them the opportunity to opt-in to the action.

Cunningham, 2010 WL 5076703 at *5; see also Lynch, 491 F. Supp. 2d at 368 (citing Lee v.

ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)) ("Once notice is accomplished, the

action proceeds as a collective action throughout the discovery process.").

*Second*, typically after a substantial period of discovery has been completed, the

defendants may move for "decertification," where the district court will be asked to conduct a

somewhat more stringent analysis of whether the plaintiffs who have opted-in are in fact

"similarly-situated" to the named plaintiffs. Myers, 624 F.3d at 555; Fonseca, 2014 WL

1487279 at *2 ("At the second stage, the district court will, on a fuller record, determine whether

a so-called 'collective action' may go forward by determining whether the plaintiffs who have

opted in are in fact 'similarly situated' to the named plaintiffs."); Schear, 297 F.R.D. at 121

(same). The action may be "decertified" if the record reveals that they are not similarly-situated,

and the opt-ins' claims may be dismissed without prejudice. Id. This second step "utilizes a

more stringent factual determination because the court is able to examine whether the actual

plaintiffs brought into the case are similarly situated." Cunningham, 2010 WL 5076703 at *5.

Importantly, it is indisputable that the underlying merits of Plaintiffs' claims should not

be litigated at this stage, but at summary judgment and/or at trial. See e.g. Fonseca, 2014 WL

1487279, at *3 (defendants' declarations going to "merits based arguments are premature on a

motion for conditional certification and must wait for summary judgment and/or trial"); Shajan v. Barolo, Ltd., No. 10 Civ. 1385 (CM), 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) ("Weighing of the merits [when deciding conditional certification] is absolutely inappropriate."); Lynch, 491 F.Supp.2d at 368-69 (S.D.N.Y., 2007) ("[a]t this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations"); Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *1 (S.D.N.Y. Oct. 5, 2006), at *6 ("attacks on plaintiffs' affidavits and other evidence" premature at notice stage); cf. Hoffmann-La Roche Inc., 493 U.S. at 174, 110 ("trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.").

C.     **Plaintiffs Have Made the Required Showing That They Are Similarly-Situated to the Members of the FLSA Collective**

As stated above, to meet the minimal burden required for conditional certification, Plaintiffs must make a "modest factual showing" that they and opt-in and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." See Myers, 624 F.3d at 555 (citing Hoffmann, 982 F. Supp. at 261). This burden may be "satisfied with 'substantial allegations' of a factual nexus between named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008); see also Hallissey v. Am. Online, Inc., No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."); Qing Tian Zhuo v. Jia Xing 39th Inc., No. 14 Civ. 2848 (SHS), 2015 WL 1514950, at *3 (S.D.N.Y. Apr. 1, 2015) (finding single plaintiff affidavit sufficient to conditionally certify a collective of four restaurants). Thus, the proper

inquiry is whether Plaintiffs, Opt-in Plaintiff Boby, and potential opt-in plaintiffs are similarly-situated with respect to the allegations that the law has been violated, and not whether their job responsibilities are identical or whether they worked at the same location.  See Chowdhury v. Duane Reade, Inc., No. 06 Civ. 2295 (GEL), 2007 WL 2873929 at *5 (S.D.N.Y. 2007); Qing Tian Zhuo, 2015 WL 1514950, at *3.

Issuance of notice is frequently based largely on employee declarations, and very often when there is only a single declaration.  See e.g. Zaldivar v. JMJ Caterers, Inc., No. 14 Civ. 924 (SJF), 2016 WL 792404, at *4 (E.D.N.Y. Feb. 26, 2016) ("courts have routinely found that the allegations in the pleadings and the 'personal observations of one plaintiff's affidavit' are 'sufficient to make the modest factual showing necessary to conditionally certify [a] class'"); Bhumithanarn v. 22 Noodle Mkt. Corp., No. 14 Civ. 2625 (RJS), 2015 WL 4240985 (S.D.N.Y. July 13, 2015) (conditional certification based on one plaintiff's affidavit); Sanchez v. Gansevoort Mgmt. Grp., Inc., No. 12 Civ. 75 (KBF), 2013 WL 208909 (S.D.N.Y. Jan. 10, 2013) (single affidavit); Khamsiri v. George & Grank's Japanese Rest. Inc., No. 12 Civ. 265 (PAE), 2012 WL 1981507 (S.D.N.Y. June 1, 2012) (single affidavit); Bowens v. Atlantic Maint. Corp., 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008) (no corroborating evidence besides plaintiff's affidavit).

Here, Plaintiffs can make a substantial showing that they and all similarly-situated ASMs, CSRs and Delivery Drivers employed by the Cookston Defendants were subject to a common policy or plan that violated the FLSA:

- Mr. Kucher and Mr. Mojumder were both employed by Defendants during the applicable FLSA statutory period and were subjected to policies and practices that violated the FLSA. Ex. E at ¶¶ 2-21; Ex. M at ¶¶ 2-13.

- Mr. Kucher and Mr. Mojumder were both required to work substantial off-the-clock hours for which they were not paid any minimum hourly wage, throughout the duration of their employment.  Ex. E at ¶¶ 7-11; Ex. M at ¶¶ 7-9.  This off-the-clock work also resulted in Mr.

Kucher and Mr. Mojumder being denied minimum and premium overtime payments.  Ex. E at ¶¶ 11-12; Ex. M at ¶ at 8.

- Mr. Kucher worked at five different restaurants owned and operated by Defendants, and alleges the same wage-and-hour violations at each location.  Mr. Mojumder worked at one of those locations as well, and alleges the same.  ¶¶ 2, 17, 18, 95; Ex. E at ¶¶ 6, 13; Ex. M at ¶ 2.

- Opt-in Plaintiff Amanul Boby, who was employed by Defendants at the 205 Allen Street location during the applicable FLSA period, was subject to identical unlawful conduct.  Mr. Boby did not receive a minimum hourly wage for the hours he worked off-the-clock, and was also denied premium overtime payments for those hours.  Ex. C at ¶¶ 3, 7-11.

- Miron Kivria worked for Defendants both inside and outside the statutory period.  Ex. D at  ¶ 2.  Nevertheless, at all times he was subjected to identical policies and practices as Messrs. Kucher, Mojumder and Boby, including working substantial hours off-the-clock during which he was neither paid minimum wage nor paid a premium wage for overtime hours.  Id. at ¶¶ 5-10.

- Mr. Kucher, Mr. Mojumder, Mr. Boby and Mr. Kivria allege that they have actual knowledge that all ASMs, CSRs and Delivery Drivers who work for Defendants at the Cookston Defendants' locations are subjected to the same wage and hour violations set forth in the Complaint and in their declarations.  Ex. E at ¶¶ 13-15; Ex. M at ¶ 9; Ex. C at ¶¶ 12-13; Ex. D at ¶¶ 10-11.  They all state as the basis for this allegation their personal observations and conversations with other ASMs, CSRs and Delivery Drivers.  Ex. E at ¶¶ 13-15; Ex. M at ¶ 9; Ex. C at ¶¶ 12-13; Ex. D at ¶¶ 10-11.

The experiences of Messrs. Kucher, Mojumder, Boby and Kivria were not unique; rather, the manner in which they were compensated was and remains standard operating procedure with regard to ASMs, CSRs and Delivery Drivers, across the Cookston Defendants' locations.  Ex. C at ¶¶ 4, 12-13; Ex. D at ¶¶ 4, 10-11; Ex. E at ¶¶ 3, 13-15; Ex. M at ¶ 9.

In addition to the FLSA minimum wage and overtime violations set forth above, Plaintiffs can provide further additional evidence – separate and apart from their FLSA claims – establishing a common nexus between themselves and the putative FLSA Collective:

- Mr. Kucher, Mr. Mojumder and Mr. Boby allege that they and all other ASMs, CSRs, and Delivery Drivers were never provided proper wage statements as required by the NYLL.  ¶¶ 108-111; Ex. E at ¶¶ 19-20; Ex. M at ¶ 11; Ex. C at ¶ 16.

- Mr. Kucher, Mr. Mojumder and Mr. Boby allege that they and all other ASMs, CSRs, and Delivery Drivers were required to purchase their own uniforms without reimbursement, in violate of the NYLL.  ¶¶ 112-116; Ex. E at ¶ 21; Ex. M at ¶ 12; Ex. C at ¶ 17.

- Mr. Kucher, Mr. Mojumder and Mr. Boby allege that they and all other ASMs, CSRs, and Delivery Drivers were not paid tips that were owed to them.  ¶¶ 100-103; Ex. E at ¶¶ 16-17; Ex. M at ¶ 10; Ex. C at ¶ 14.

- Mr. Kucher, Mr. Mojumder and Mr. Boby allege that they and all other ASMs, CSRs, and Delivery Drivers worked in excess of ten hours per day, yet they were not paid the requisite "spread-of-hours" compensation required by the NYLL.  ¶¶ 104-107; Ex. E at ¶ 18; Ex. M at ¶ 11; Ex. C at ¶ 15.

- Mr. Kucher, Mr. Mojumder and Mr. Boby allege that they and all other ASMs, CSRs, and Delivery Drivers had similar job titles and all had the same job duties and responsibilities.  ¶¶ 17, 18, 51; Ex. E at ¶¶ 3-4; Ex. M at ¶¶ 3, 6; Ex. C at ¶¶ 3-5.

- Mr. Kucher, Mr. Mojumder and Mr. Boby allege that they were all purportedly paid at the same or similar hourly rate.  ¶ 56; Ex. E at ¶ 5; Ex. M at ¶¶ 8-9; Ex. C at ¶ 7.

Although these violations are separate and apart from Defendants' FLSA violations, the common treatment further demonstrates that Plaintiffs, and the potential opt-in plaintiffs, were subjected to a common unlawful practice that shares a factual nexus.

Furthermore, any doubt as to whether Mr. Kucher, Mr. Mojumder, Mr. Boby, and the putative FLSA Collective are similarly-situated should be dispelled by the NYS AG's Office's most recent investigation into the Cookston Defendants.  There, the NYS AG's Office found numerous wage-and-hour violations similar to the ones alleged here, including failure to pay minimum wage and overtime.  ¶¶ 5-6.  These violations were not limited to one store, but were found from restaurant-to-restaurant.  ¶ 5 ("This settlement involved four Domino's franchisees, which together owned 29 stores, as well as one former franchisee that owned six stores, covering 13 counties in New York.").  Not only that, but Mr. Cookston was ordered, as part of the settlement agreement, to employ an independent labor monitor *at every Domino's restaurant he owns and operates* – a remedy apparently not required of any of the four other franchisees

14

involved.  Ex. L ("In today's agreement, in addition to paying restitution to [] workers, Mr.

Cookston agreed to pay for independent monitoring of all of his stores for three years.").[8]

What is more, Mr. Kucher alleged that he was fired for the stated reason that he

complained that he was not being paid properly.  ¶¶ 2, 118-127.  This comes on the heels of the

NYS AG's Office requiring the Cookston Defendants to reinstate 25 employees who were

terminated following their complaints of unlawful wage violations.  ¶¶ 7- 8; Ex. K.  This only

provides further evidence that the Cookston Defendants all operate under a common policy and

plan.  In short, it is clear – far beyond the "modest factual showing" necessary – that Plaintiffs

can easily provide a sufficient factual and evidentiary predicate that the Cookston Defendants

have subjected all ASMs, CSRs and Delivery Drivers to the same unlawful policies.

### D.        Conditional Certification Is Routinely Granted Across Multiple Locations

Defendants may argue that conditional certification is inappropriate as to specific

franchise locations where Plaintiffs did not work, such as the franchises located in Connecticut.

However, courts in the Second Circuit commonly grant conditional certification where, as here, a

plaintiff alleges a common policy or plan across multiple locations, including locations where the

plaintiff did not work.  See e.g. Yap v. Mooncake Foods, Inc., No. 13 Civ. 6534 (ER), 2015 WL

7308660, at *5 (S.D.N.Y. Nov. 18, 2015) (granting conditional certification where plaintiffs

worked at two of four restaurant locations); Karic v. Major Auto. Companies, Inc., 799 F. Supp.

2d 219, 227 (E.D.N.Y. 2011) (granting conditional certification for nine car dealerships,

including locations where no plaintiff worked).

---

[8]        Moreover, the even more recent action filed by the NYS AG's Office earlier this week,
against the Domino's franchisor, alleges a common policy across all Domino's franchise
locations impacting *all hourly employees at all locations*.  See generally Ex. B.  The action
alleges that Domino's requires its franchisees to use a point-of-sale and time-tracking system
called PULSE, that underreports hours and fails to account for wages owed to employees.  Id.

Your Honor has recognized,

> [c]ourts often authorize notice to employees of restaurant locations
> where the named Plaintiffs did not work at all, as long as there is
> sufficient evidence that those employees were subject to the same
> allegedly unlawful policies.

Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363, 370 (S.D.N.Y. 2014) (Nathan, J.) (citing Mendoza, 2013 WL 5211839, at *5); Guzelgurgenli v. Prime Time Specials Inc., 883 F. Supp. 2d 340, 350 (E.D.N.Y. 2012) (granting conditional certification for six Domino's locations based on, *inter alia*, common ownership and control and plaintiffs' firsthand evidence of a common policy and practice of denying overtime at three stores); Lamb v. Singh Hospitality Grp., Inc., No. 11 Civ. 6060 (MKB), 2013 WL 5502844, at *3-5 (E.D.N.Y. Sept. 30, 2013); Cano v. Four M Food Corp., No. 08 Civ. 3005 (JFB)(AKT), 2009 WL 571043, at *7 (E.D.N.Y. Feb. 3, 2009).

Courts often focus on shared ownership and control over various locations as a factor that weighs heavily in favor of finding that notice is appropriate.  See e.g. Capsolas v. Pasta Res., Inc., No. 10 Civ. 5595 (RJH), 2011 WL 1770827, at *3 (S.D.N.Y. May 9, 2011) (granting conditional certification for eight locations, including three where no plaintiffs had worked, where plaintiffs alleged common ownership and a common tip retention policy); Garcia v. Pancho Villa's of Huntington Vill., Inc., 678 F. Supp. 2d 89, 93 (E.D.N.Y. 2010) (granting conditional certification for three restaurants, including the single location where plaintiffs had worked, based on, *inter alia*, shared ownership and employees between the three locations); Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321-322 (S.D.N.Y. 2007) (granting conditional certification for a restaurant chain where "all putative class members are employees of the same restaurant enterprise" and plaintiffs alleged an unlawful "time shaving" policy); Qing Tian Zhuo, 2015 WL 1514950, at *3 (collecting cases and granting conditional certification where plaintiff worked at one of four locations and alleged common ownership).

16

The decision in <u>Rosario</u>, 828 F. Supp., is particularly instructive here.  Defendants in that action were 27 independently incorporated discount stores, all owned and operated by the same individual.  <u>Id.</u> at 511.  Although the plaintiff had only worked at two locations, he sought conditional certification across all 27 stores based on his allegations and the allegations of an opt-in plaintiff (who had worked at six stores), that defendants failed to pay minimum wage or proper overtime wages.  <u>Id.</u>  The plaintiff and the opt-in plaintiff alleged a "time-shaving" policy similar to the one alleged in the instant matter, where employees were forced to clock out before they actually stopped working, or were instructed not to clock in at all on certain days.  <u>Id.</u> at 512-513.  The Court found that the plaintiff met the "modest factual showing" required at this stage by alleging that all stores were owned and operated by the same individual, who also allegedly played an active role in personnel decisions such as hiring and firing.  <u>Id.</u> at 517.  The Court also found persuasive that the plaintiff and opt-in plaintiff alleged that they were subjected to the same unlawful wage policies at each location.  <u>Id.</u>  As such, the Court granted plaintiff's motion and ordered a notice of pendency to be sent to employees at each of the 27 locations.  <u>Id.</u> at 522.

As detailed above, Messrs. Kucher and Mojumder, together with Messers. Boby and Kivria, have alleged a common policy based on their firsthand experience in five Cookston locations – namely, that employees are required to continue working off-the-clock after their shifts have ended and they have clocked out.  <u>See</u> Ex. E at ¶¶ 6, 13; Ex. M at ¶ 2; Ex. C at ¶ 3; Ex. D at ¶ 5-10.  Plaintiffs also allege that Mr. Cookston owns and operates all of the Cookston Defendants' locations, setting the restaurants' policies and implementing them in each store.  ¶¶ 22-47, 74-85.  Indeed, as in <u>Rosario</u>, Mr. Cookston has admitted the he owns the stores named in the Second Amended Complaint.  <u>See</u> Dkt. No. 105 at Ex. C (Ex. N); <u>see also</u> Dkt. No. 100 at

Ex. C (Ex. O).  In addition, virtually every store owned by Mr. Cookston has previously been

sued, investigated by the NYS AG's Office, or both, for wage-and-hour violations like the ones

alleged here – further demonstrating that employees of all Cookston locations are subject to a

common policy. Gottlieb Decl. at ¶ 22.  With these allegations, Plaintiffs have satisfied their

"minimal burden" at this stage.

### E.     Expedited Notice and Disclosure of Contact Information Is Necessary

Plaintiffs respectfully request expedited disclosure of contact information to send notice

of this action to all potential opt-in plaintiffs as expeditiously as possible.  As previously noted,

until the absent members of the FLSA Collective opt-in to this action, the statute of limitations is

running against them on a daily basis.  Accordingly, the timing of the notice is of great

significance.  See Foster, 2000 WL 1737858 at *3 n.1 ("because of the statute of limitations,

potential plaintiffs may be eliminated as each day goes by.  For this reason, it is advisable that

notice be given as soon as practicable."); Ramos v. PJJK Rest. Corp., No. 15 Civ. 5672 (PKC),

2016 WL 1106373, at *2 (S.D.N.Y. Mar. 10, 2016) ("Courts need not wait for defendants to

begin or complete discovery before approving a conditional collective action; rather *courts have

endorsed the sending of notice early in the proceeding*, as a means of facilitating the FLSA's

broad remedial purpose and promoting efficient case management").

Here, the need for expedited notice is even more compelling given that the Cookston

Defendants have already engaged in retaliatory conduct, to put it lightly.  Put more bluntly, the

Cookston Defendants and/or their agents have engaged in criminal conduct by threatening to kill

Mr. Kucher and Mr. Kivria in retaliation for being involved in this action.  ¶¶ 131-132.

Furthermore, on the very day Plaintiffs requested a temporary restraining order to prevent further

retaliation, one of the managers who had previously threatened Mr. Kucher and Mr. Kivria

showed up uninvited at Mr. Boby's residence, spoke to Mr. Boby's mother with whom he lives (as he is 18 years old and still in high school), telling her to pressure Mr. Boby into withdrawing from the case.  See Dkt. No. 79.  It is possible – if not likely – that Defendants have already threatened, intimidated or otherwise deterred other potential opt-in plaintiffs from joining this action.  Gottlieb Decl. at ¶ 23.  And, each day that passes going forward constitutes a new 24-hour period in which Defendants and/or their agents may attempt to threaten, intimidate or otherwise deter others.  Id.

To the extent Defendants claim that this is hyperbole, we respectfully remind the Court that the Cookston Defendants have been accused of engaging in retaliatory conduct time-and-time again.  In December 2013, dozens of employees of the Cookston Defendants alleged that they were fired because they complained about wage violations.  Following an investigation by the NYS AG's Office, Mr. Cookston agreed to reinstate 25 employees who alleged unlawful retaliation.  ¶¶ 7- 8; Ex. J; Ex. K.  In addition, Mr. Kucher alleged in the Amended Complaint that the Cookston Defendants fired him for the express stated reason that he kept complaining about unlawful wage practices.  ¶¶ 2, 118-127.  Accordingly, the threat to kill Mr. Kucher and Mr. Kivria, and the threat to Mr. Boby, is part of an ongoing pattern of retaliatory conduct perpetrated against employees of the Cookston Defendants who attempt to enforce the law.

Defendants may also argue that any threat of retaliatory conduct has been cured and addressed by the so-ordered stipulation resulting from Plaintiffs' previous request for injunctive relief.  This naïve argument – if advanced by Defendants – suffers from the infirm premise that individuals always follow the strictures of the law and/or court orders.  Of course, if that were the case, we would not be here in the first place, and there would also be little-to-no need for

lawyers, courts, judges or law enforcement agencies. And, the Cookston Defendants have already shown a propensity to engage in retaliatory self-help.

The case law fully supports Plaintiffs' request for notice where there is a real and demonstrable threat of retaliation. See e.g. Khalil v. Original Homestead Rest., Inc., No. 07 Civ. 695 (RJH), 2007 WL 7142139, at *1 (S.D.N.Y. Aug. 9, 2007) (granting conditional certification and noting that in light of defendants' retaliation against plaintiffs, "other employees might be understandably reluctant to express their desire to participate in the action, *at least until they receive the proposed notice*…") (emphasis added); Nahar v. Dozen Bagels Co. Inc., No. 15 Civ. 1613 (ALC) (FM), 2015 WL 6207076, at *5 (S.D.N.Y. Oct. 20, 2015) (granting conditional certification, noting retaliation alone can explain reduced participation in a collective action).

**F.      Plaintiffs' Proposed Notice Is Appropriate in All Respects**

Plaintiffs propose a Notice of Pendency and Consent Form in English, Spanish and Bengali (the predominant languages of the FLSA Collective, see Gottlieb Decl. at ¶ 25) advising all potential opt-in plaintiffs of their right to join this collective action that is consistent with prior notices routinely approved in courts within the Second Circuit. Plaintiffs also request that the Notice of Pendency and Consent Form be published to the FLSA Collective via mail, email, text message and workplace posting. Ex. P (Proposed Notice of Pendency and Consent Form for regular mail and email); Ex. Q (Proposed Notice of Pendency for text message); Ex. R (Proposed Workplace Notice). This is simply to ensure and provide the greatest likelihood that the FLSA Collective receives this notice as intended.

To provide the members of the putative FLSA Collective with notice of this action, Plaintiffs require the names and contact information for those individuals. See Hoffmann-LaRoche, 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and

addresses of the discharged employees."); Lynch, 491 F. Supp. 2d at 371 (explaining that

"identification [of similarly-situated employees] is necessary so that [plaintiff] can provide them

with notice of this action").  Thus, Plaintiffs respectfully request that Defendants be ordered to

provide the names, last known addresses, telephone numbers (home and mobile), e-mail

addresses and dates of employment of all ASMs, CSRs and Delivery Drivers employed by the

Cookston Defendants from a period of three years prior to the filing of the Complaint, in a

computer-readable list.

A three- year time frame is appropriate given that the FLSA expressly permits a three-

year statute of limitations to remedy willful violations of the Act.  See 29 U.S.C. § 255(a); see

also e.g. Gaspar v. Personal Touch Moving, Inc., No. 13 Civ.  8187 (AJN), 2014 WL 4593944,

at *7 (S.D.N.Y. Sept. 15, 2014) (Nathan, J.) (finding a three-year notice period appropriate);

Davis v. Abercrombie & Fitch Co., No. 08 Civ. 1859 (PKC), 2008 WL 4702840, at *12

(S.D.N.Y. Oct. 23, 2008) ("Courts that have faced this issue routinely approve a three-year

notice period.").

## II.  THE COURT IS PERMITTED TO RULE ON THIS MOTION BEFORE RESOLUTION OF ANY ANTICIPATED MOTION TO DISMISS

### A.  Conditional Certification Can Be Granted as to All of Mr. Cookston's Employees Regardless of Whether Certain Corporate Entities Remain

The Court ordered Plaintiffs to address whether the Court has the power to decide a

motion for conditional certification before resolving Defendants' motion to dismiss.  Dkt. No.

109.[9]  We believe this question is easily and indisputably answered in the affirmative.   Plaintiffs

seek conditional certification as to all similarly-situated employees of the Cookston Defendants,

---

[9]     Although the Cookston Defendants have not yet indicated whether – in light of the
revised allegations – they will move to dismiss the Second Amended Complaint as to the
Connecticut entities, we assume for purposes of this section that they will do so.  Gottlieb Decl.
at ¶ 24.

and even if certain Connecticut enterprises are no longer named Defendants, that does not change the fact that Mr. Cookston is a Defendant and he is alleged to be the common employer of all members of the putative FLSA Collective including those in Connecticut.

The FLSA simply defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee...."  29 U.S.C. § 203(d).   In accordance with the FLSA's remedial purpose, courts have broadly interpreted the statute's definition of the term.  See e.g. Falk v. Brennan, 414 U.S. 190, 195 (1973) (noting "expansiveness" of the FLSA's definition of "employer"); Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139-140 (2d Cir. 1999) (using four-factor test from Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)); see also Zheng v. Liberty Apparel Co., 355 F.3d 61 (2d Cir. 2003).

There is no shortage of opinions within the Second Circuit stating that individuals may be held liable as "employer" so long as the "economic reality" is that the individual has the power to control the workers at issue.  See e.g. Herman, 172 F.3d at 140-142 (finding individual liable under FLSA where he had the authority to hire employees and controlled the company financially); Irizarry v. Catsimatidis, 722 F.3d 99, 111-117 (2d Cir. 2013) (finding individual chief executive officer of supermarket chain with over 30 store locations and 1,700 employees, an employer where, *inter alia*, he made decisions on how the company was run, had the power to hire and fire employees, and had "functional control over the enterprise as a whole"); Garcia v. JonJon Deli Grocery Corp., No. 13 Civ. 8835 (AT), 2015 WL 4940107, at *3 (S.D.N.Y. Aug. 11, 2015) (denying summary judgment where general manager had substantial control over purchasing, set work schedules, and had the authority to hire, fire, and pay employees). "Whether an individual is considered an employer for the purposes of FLSA liability 'does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort

of absolute control of one's employees.'" <u>Fermin v. Las Delicias Peruanas Rest.</u>, Inc., 93 F.

Supp. 3d 19, 35 (E.D.N.Y. 2015) (citation omitted).

Here, Plaintiffs have alleged that Mr. Cookston himself is an "employer" under the

FLSA, because he owns and operates each named franchise.  ¶¶ 48, 22-46.  Plaintiffs further

allege that Mr. Cookston exerts financial control over the franchises, has the ability to hire and

fire employees at all levels of each franchise, and controls all aspects of operational policy. ¶¶

74-83.  While there may be factual disputes as to certain of these allegations, this is not the stage

in which factual disputes are resolved.   Instead, conditional certification is appropriate as to all

ASMs, CSRs and Delivery Drivers employed by Mr. Cookston as an employer in his own right

under the FLSA, based solely on the level of operational control he exerts over his franchises.

<u>See</u> <u>e.g.</u> <u>Guzelgurgenli</u>, 883 F. Supp. (finding notice appropriate as to six commonly owned and

operated Domino's locations, even though those locations were not specifically identified or

named in the complaint).  As such, as Plaintiffs have met their modest factual showing that all of

Mr. Cookston's employees have been the victims of a common unlawful policy, all such

employees are entitled to opt-in notice.

There is absolutely no rule that opt-in notice can only be sent to in-state employees.  To

be sure, it is not uncommon for conditional certification to be granted to a ***nationwide*** class of

employees, so long as all the employees have a common employer – like they all do here in Mr.

Cookston – and have made a showing of a common policy impacting the collective.  <u>See</u> <u>e.g.</u>

<u>Amador v. Morgan Stanley & Co. LLC</u>, No. 11 Civ. 4326 (RJS), 2013 WL 494020, at *2

(S.D.N.Y. Feb. 7, 2013) (finding notice appropriate for nationwide class of employees); <u>Lynch</u>,

491 F. Supp. (same); <u>Winfield v. Citibank, N.A.</u>, 843 F. Supp. 2d 397, 408 (S.D.N.Y. 2012)

(same); <u>Aros v. United Rentals, Inc.</u>, 269 F.R.D. 176, 186 (D. Conn. 2010) (same).

Mr. Cookston has implemented a common policy across each of his Domino's restaurants, and the violations of the FLSA complained of by Plaintiffs stem not from each individual corporate entity, but from Mr. Cookston's control over the operations of the franchises.  As such, notice is appropriate as to all ASMs, CSRs and Delivery Drivers employed by Mr. Cookston at any one of Mr. Cookston's locations, regardless of whether the corporate entity remains a named Defendant in this action.

**B.      Granting Conditional Certification Motions Filed Pre-Answer or Pre-Motion to Dismiss Is Permissible and Routine**

Furthermore, there is plenty of support for the proposition that motions for conditional certification can be decided while a motion to dismiss is pending.  See e.g. Ji Li v. Ichiro Rest. Inc., No. 14 Civ. 10242 (AJN) (JCF), 2015 WL 6828056 (S.D.N.Y. Nov. 5, 2015) (granting motion for conditional certification while motion to dismiss was still pending); Yahraes v. Rest. Associates Events Corp., No. 10 Civ. 935 (SLT), 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (discussing procedural history wherein motion for conditional certification was filed, fully briefed, and decided before the anticipated motion to dismiss).

Although out-of-Circuit, the court in Guy v. Casal Inst. of Nevada, LLC, No. 2:13-CV-02263-APG, 2014 WL 1899006, at *6 (D. Nev. May 12, 2014) explained its rationale for authorizing notice before deciding a pending motion to dismiss as follows:

> The Court [] finds no basis to defer authorizing the sending of notice until the Court rules on Defendants' pending motion to dismiss. . . . [] if the Court deferred the sending of notice, the statute of limitations would continue to run and the claims of some potential opt-in plaintiffs would likely become time barred, in whole or in part, before they had the opportunity to opt-in. Finally, the primary burden and expense of sending notice falls on the named Plaintiff and her counsel. The relatively minor burden and inconvenience that Defendant will avoid if this action is later dismissed, does not outweigh the interest in moving this action forward.

In short, the Court has the power to grant conditional certification even where it *could* be mooted as to certain defendants.  There is no serious downside to providing notice to employees – the crux of conditional certification – but there is serious prejudice to delay.  And again, here, even if claims against certain entities are mooted, it will not change the fact that all employees of those entities are still employed by another Defendant – Mr. Cookston – and therefore would still be properly entitled to notice as members of the putative FLSA Collective.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request an order granting Plaintiffs' requested relief in its entirety, and for such other and further relief deemed just and proper.

Dated: May 26, 2016
        New York, New York                      Respectfully submitted,

                                                **WIGDOR LLP**

                                                By:

                                                    David E. Gottlieb
                                                    Tanvir H. Rahman
                                                    Rita M. Lenane (*admission pending*)

                                                85 Fifth Avenue
                                                New York, NY 10003
                                                Telephone:  (212) 257-6800
                                                Facsimile:  (212) 257-6845
                                                dgottlieb@wigdorlaw.com
                                                trahman@wigdorlaw.com
                                                rlenane@wigdorlaw.com

                                                *Counsel for Plaintiffs, the Proposed FLSA*
                                                *Collective and NYLL Class*