UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Riad Kucher and Haroon Mojumder, on behalf of themselves and all other similarly-situated employees, | Civil Case No. 16-cv-02492 (AJN) |
| Plaintiffs, | May 31, 2016 |
| -against- | |
| Domino's Pizza, Inc., et al., | |
| Defendant. | |

**TEAM STAMFORD, LLC; AAR, LLC; LUCKY 13, INC.; AND A.C. PIZZA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**

Robin B. Kallor, Esq.
Cindy M. Cieslak, Esq.
FordHarrison, LLP
750 Main Street, Suite 606
Hartford, CT 06103
(860) 748-4660

Eric Su, Esq.
Alyssa Smilowitz, Esq.
FordHarrison, LLP
100 Park Avenue, Suite 2500
New York, New York 10017
(212) 453-5935

*Attorneys for Defendants Team Stamford, LLC,*
*AAR, LLC, Lucky 13, Inc. and AC Pizza, Inc.*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES…………………………………………………………………ii

PRELIMINARY STATEMENT…………………………………………………………1

ALLEGATIONS IN THE AMENDED COMPLAINT…….…......................................1

    A. The Parties………………………………………………………………………1

    B. Plaintiffs' Claims………………………………………………………………...2

FACTS RELATING TO PERSONAL JURISDICTION...........................................3

LEGAL ANALYSIS…………………………………………………………………...5

    A. Legal Standard For Personal Jurisdiction.......................................................5

    B. The Court is Without Personal Jurisdiction over the
       Foreign Defendants ……………………………………………………………7

       1. New York's Long Arm Statute……………………………………….………8

           i. General jurisdiction pursuant to Section 301…………………………………9

           ii. Specific Jurisdiction pursuant to Section 302………………………………...11

       2. Due Process Considerations……………………………………………………15

    C. A Single Integrated Enterprise Theory is Not Sufficient to Satisfy
       Personal Jurisdiction……………………………………………………………19

    D. Alternatively, the Connecticut Cookston Defendants are Not Part of A
       Single Integrated Enterprise……………………………………………………...22

CONCLUSION ……………………………………………………………………24

CERTIFICATION.............................................................................................26

## TABLE OF AUTHORITIES

CASES

*Bailey v. Dyncorp Int'l FZ-LLC*,
    2012 WL 112867 (D. Or. Jan. 11, 2012)........................................................................20

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
    902 F.2d 194 (2d Cir. 1990)............................................................................................ 8

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999)............................................................................................ 6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002).......................................................................................... 16

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)..................................................................................... 12, 16

*Brodie v. New York City Transit Auth.*,
    1998 WL 599710 (S.D.N.Y. Sept. 10, 1998)................................................................20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)................................................................................................. 5, 15

*Caronia v. American Reliable Ins. Co.*,
    999 F. Supp. 299 (E.D.N.Y. 1998).................................................................................. 8

*Chirag v. Mt Marida Marguerite Schiffahrts*,
    933 F. Supp. 2d 349 (D. Conn. 2013) ........................................................................... 17

*Clinton's Ditch Cooperative Co. v. NLRB*,
    778 F. 2d 132 (2d Cir. 1985)......................................................................................... 23

*Cordova v. SCCF, Inc.*,
    2014 WL 3512838 (S.D.N.Y. July 16, 2014) ................................................................ 21

*DiStefano v. Carozzi North Am., Inc.*,
    286 F.3d 81 (2d Cir. 2001)............................................................................................. 5

*EEOC v. Bass Pro Outdoor World, LLC*,
    884 F. Supp. 2d 499 (S.D. Tex. 2012) ..........................................................................19

*Enter. Rent-A-Car Wage & Hour Empl. Practices Litig. v. Enter. Rent-A-Car Co.*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010) ..........................................................................20

*Galerie Gmurzynska v. Hutton*,
    257 F. Supp. 2d 621 (S.D.N.Y. 2003)............................................................................ 7

*Hajela v. ING Groep*,
    582 F. Supp. 2d 227 (D. Conn. 2008) ...........................................................................20

*Hanson v. Denkla*,
    357 U.S. 235, 78 S. Ct. 1228 (1998) .............................................................................. 6

*Heidbrink v. ThinkDirect Mktg. Grp., Inc.*,
   2014 WL 3585698 (M.D. Fla. July 21, 2014) ........................................................19

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
   466 U.S. 408, 104 S. Ct. 1868 (1984) ................................................................... 6

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
   763 F.2d 55 (2d Cir. 1985) .................................................................................. 10

*Int'l Shoe v. Washington*,
   326 U.S. 310, 66 S.Ct. 154 (1945) ............................................................... passim

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
   131 F. Supp. 2d 544 (S.D.N.Y. 2001) ............................................ 11, 13, 15, 17, 22

*Japan Press Serv., Inc. v. Japan Press Serv., Inc.*,
   No. 11 CV 5875 SJF ETB, 2013 WL 80181 (E.D.N.Y. Jan. 2, 2013) ........................ 13, 15, 17

*Jazini v. Nissan Motor Co., Ltd.*,
   148 F.3d 181 (2d Cir. 1998) ............................................................................. 6, 21

*Johnson v. Ward*,
   4 N.Y.3d 516, 797 N.Y.S.2d 33, 829 N.E.2d 1201 (N.Y. 2005) ............................ 12

*Kim v. Dial Serv. Int'l, Inc.*,
   1997 WL 5902 (S.D.N.Y. Jan. 8, 1997) ............................................................. 23

*Lancaster v. Colonial Motor Freight Line, Inc.*,
   177 A.D.2d 152 (N.Y. App. Div. 1st Dep't 1992) ................................................ 9

*Kim v. Dial Serv. Int'l, Inc.*,
   1997 WL 5902 (S.D.N.Y. Jan. 8, 1997) ............................................................. 23

*Leber v. Berkley Vacation Resorts, Inc.*,
   2009 WL 2252517 (D. Nev. July 27, 2009) ....................................................... 23

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) ............................................................... 6, 16, 17, 18

*Mendez v. Pure Foods Mgmt. Grp., Inc.*,
   2016 WL 183473, (D. Conn. Jan. 14, 2016) .....................................................19, 21

*Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*,
   No. 10-CV-1777 (ADS)(AKT), 2011 WL 381612 (E.D.N.Y. Feb. 2, 2011) ............ 5, 6, 10, 12

*NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.*,
   No. 14CV3945, 2014 WL 2619588 (S.D.N.Y. June 11, 2014) ...................... 11, 13, 15, 17, 22

*Penguin Grp. (USA), Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010) ............................................................................. 6, 7

*Porina v. Marward Shipping Co., Ltd.*,
   521 F.3d 122 (2d Cir. 2008) .............................................................................. 7

*Price v. Waste Mgmt.*,
   2014 WL 1764722 (D. Md. Apr. 30, 2014) ........................................................19

*Rhulen Agency, Inc. v. Alabama Ins. Guaranty Asso.*,
　715 F. Supp. 94 (S.D.N.Y. 1989) ................................................................................ 11

*Robinson v. Overseas Military Sales Corp.*,
　21 F.3d 502 (2d Cir. 1994) ........................................................................................... 6

*Savage v. Scripto-Tokai Corp.*,
　147 F. Supp. 2d 86 (D. Conn. 2001) ........................................................................... 21

*Savin v. Ranier*,
　898 F.2d 304 (2d Cir. 1990) ....................................................................................... 16

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC*,
　450 F.3d 100 (2d Cir. 2006) ....................................................................................... 12

*Tamam v. Fransabank Sal*,
　677 F. Supp. 2d 720 (S.D.N.Y. 2010) .......................................................................... 7

*Tese-Milner v. De Beers Centenary A.G.*,
　613 F. Supp. 2d 404 (S.D.N.Y. 2009) ......................................................................... 20

*Thorsen v. Sons of Norway*,
　996 F. Supp. 2d 143 ................................................................................................... 16

*USHA Holdings, LLC v. Franchise India Holdings, Ltd.*,
　11 F. Supp. 3d 244 (E.D.N.Y. 2014) .......................................................................... 16

*Walden v. Lorcom Techs., Inc.*,
　No. 05-CV-3600 (KAM)(RER), 2009 WL 799955 (E.D.N.Y. Mar. 24, 2009) ...................... 11

*Whitaker v. Am. Telecasting, Inc.*,
　261 F.3d 196 (2d Cir. 2001) ........................................................................................ 6

*White v. Pac. Media Group, Inc.*,
　322 F. Supp. 2d 1101 (D. Haw. 2004) ........................................................................ 20

*Worldwide Volkswagen v. Woodson*,
　444 U.S. 286, 100 S. Ct. 559 (1980) ........................................................................ 5, 16

STATUTES

219 U.S.C. § 216 (b) ....................................................................................................... 3

29 U.S.C. § 215 ............................................................................................................... 2

New York Labor Law § 195(3) ........................................................................................ 2

New York Labor Law § 191 ............................................................................................. 2

New York Labor Law § 193 ............................................................................................. 2

New York Labor Law § 196-d .......................................................................................... 2

New York Labor Law § 215 ............................................................................................. 2

RULES

C.P.L.R. § 301................................................................................................................... 8, 9

Fed. R. Civ. P. 12(b)(2)................................................................................................... 5, 6, 7

Fed. R. Civ. P. 23................................................................................................................... 3

N.Y.C.P.L.R. § 302................................................................................... 11, 12, 13, 14, 15

REGULATIONS

12 NYCRR, § 141-2.2 ........................................................................................................ 2

12 NYCRR, § 142-2.4 ........................................................................................................ 2

## I.     PRELIMINARY STATEMENT

The Second Amended Complaint, (Doc. 114, Exhibit B) is brought against one individual, Robert Cookston, twenty-four (24) limited liability companies or corporations that allegedly operate as Domino's franchise restaurants ("Cookston Defendants"), "Doe Corporations 1-50," which "are other Domino's entities owned and/or operated by Mr. Cookston that cannot currently be identified by name," and three "Domino's and Franchisor Defendants," including, Domino's Pizza, Inc.; Domino's Pizza, LLC; and Domino's Pizza Franchising, LLC. (Exh. B, ¶¶ 19-46).  Plaintiffs make a number of allegations of violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") on behalf of themselves and all other similarly-situated employees.

Pursuant to Fed. R. Civ. P. 12(b)(2), the Defendants, Team Stamford, LLC; AAR, LLC; Lucky 13, Inc. and A.C. Pizza, Inc. (collectively "Connecticut Cookston Defendants"), hereby respectfully move to dismiss the Second Amended Complaint dated May 16, 2016 (Doc. 114, Exh. B) as it is pled against them in its entirety because this Court lacks personal jurisdiction over them.

For the reasons that follow, the Connecticut Cookston Defendants do not transact business within New York, and are otherwise not subject to this Court's jurisdiction.  Therefore, this Court should dismiss these foreign Connecticut Cookston Defendants from this action.

## II.     ALLEGATIONS IN THE AMENDED COMPLAINT

### A.  The Parties

Plaintiff Kucher alleges that he worked as an Assistant Store Manager ("ASM") and Customer Services Representative ("CSR") from approximately November 2014 through January 2016, at various Cookston Defendant companies located within New York that operate

as Domino's restaurants.  (Exh. B, ¶ 17).  Plaintiff Mojumder alleges that he worked as a

Delivery Driver, which is "effectively . . . a CSR as well," from approximately July 2014

through January 2016 in one of the Defendants located within New York.  (Id., ¶ 18).

The Plaintiffs, however, do not allege any employment of any plaintiff by a Connecticut

Cookston Defendant. (*See generally* Exh. B). Indeed, there are no specific allegations with

respect to any alleged violation of the FLSA by any Connecticut Cookston Defendant.  The

instant Motion attacks only the claims brought against the Connecticut Cookston Defendants on

the grounds that it this Court does not have personal jurisdiction to proceed against them.

### B.  Plaintiffs' Claims

Plaintiffs' Second Amended Complaint, Exhibit B, contains 14 causes of action, which

can be summarized as follows:  (1) minimum wage and overtime violations pursuant to the

FLSA (First and Second Causes of Action); (2) minimum wage and overtime violations pursuant

to the NYLL (Third and Fourth Causes of Action); (3) failure to pay wages, and with required

frequency in violation of NYLL, § 191 (Fifth and Sixth Causes of Action); (4) failure to pay

wages upon termination of employment (Seventh Cause of Action); (5) unlawful deductions in

violation of NYLL, § 193 stemming from the alleged failure to pay the minimum wage (Eighth

Cause of Action); (6) unlawful deductions from gratuities in violation of NYLL, § 196-d (Ninth

Cause of Action); (7) Failure to provide accurate wage statements in violation of NYLL § 195(3)

and 12 NYCRR, §141-2.2 (Tenth Cause of Action); (8) Failure to make spread of hours

payments in violation of 12 N.Y.C.R.R., § 142-2.4 (Eleventh Cause of Action); (12) unlawful

uniform requirements in violation of Wage Order 146-1.8 (Twelfth Cause of Action); (13)

retaliation against Mr. Kucher in violation of the FLSA, 29 U.S.C. § 215 and NYLL, § 215

(Thirteenth and Fourteenth Causes of Action).  Plaintiffs bring their FLSA claims pled in the first

and second claims for relief as an "'opt-in' collective action on behalf of similarly persons pursuant to 219 U.S.C. 216 (b). (Exh. B, Am. Compl, ¶ 13). The NYLL claims in the third through twelfth claims for relief are brought as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiffs and all other similarly-situated persons. (Id., ¶14). The thirteenth and fourteenth claims for retaliation are pled only on behalf of Plaintiff Kucher. Out of the fourteen causes of action, it appears that the First, Second and Thirteenth are pled against the Connecticut Cookston Defendants. (*See generally* Exh. B).

Plaintiff Riad Kucher alleges that he worked as a CSR and then an assistant manager from November 2014 to January 2016 at five different Cookston New York Defendant locations: (1) 170 West 23rd Street, New York, New York; (2) 132 Tuckahoe Road, Yonkers, New York; (3) 1017 Jericho Turnpike, New Hyde Park, New York; (4) 117 Mineola Avenue, Roslyn Heights, New York; and (5) 205 Allen Street, New York, New York. (Exh. B, Am. Compl., ¶ 16). Haroon Mojumder alleges that he was employed at the 205 Allen Street, New York, New York location from about July 2014 through January 2016 as a delivery driver. (Id., ¶ 17). He never worked at any other location. Despite the 228 paragraph Second Amended Complaint, there are no allegations specific to any employment of any plaintiff by a Connecticut Cookston Defendant. (*See generally* Exh. B).

III. **FACTS RELATING TO PERSONAL JURISDICTION**

The Connecticut Cookston Defendants consist of the following:

1. Team Stamford, LLC is a Connecticut limited liability company with its principle place of business in Stamford, Connecticut. (Exh. B, ¶ 41; Exh. C, Cookston Verification, ¶ 3).

2. AAR, LLC is a Connecticut limited liability company with its principle place of business in New Britain, Connecticut. (Exh. B, ¶ 43; Exh. C, Cookston Verification, ¶ 4).

3. Lucky 13, Inc. is a Connecticut corporation with its principle place of business in Norwalk, Connecticut. (Exh. B, ¶ 44; Exh. C, Cookston Verification, ¶ 5).

4. AC Pizza, Inc. is a Connecticut corporation with its principle place of business in Stamford, Connecticut. (Exh. B, ¶ 45; Exh. C, Cookston Verification, ¶ 6).

The Connecticut Cookston Defendants have their principal places of business outside of New York. The Connecticut Cookston Defendants are not authorized to conduct business in New York, they do not conduct business in New York, and they do not have an address or office in New York. (Exh. C, Cookston Verification, ¶¶ 3-6). The Connecticut Cookston Defendants do not pay taxes in New York. (Id.). Moreover, they do not have bank accounts in New York, nor do they own, use or possess real property in New York. (Id.). The Connecticut Cookston Defendants do not operate stores in New York, do not employ employees in New York, nor do they advertise in New York. (Id.; O'Niell Verification, Exh. D, ¶ 5).

Other than the conclusory allegations in which Plaintiffs lump together the actions of the New York stores with the Connecticut Cookston Defendants, there are no specific allegations sufficient to support personal jurisdiction over each and every Connecticut Cookston Defendant. In sum, the Amended Complaint is silent as to any allegations regarding this Court's personal jurisdiction over each of the Connecticut Cookston Defendants individually, and so, the Amended Complaint should be dismissed in its entirety as to them.

## IV. LEGAL ANALYSIS

### A.    <u>Legal Standard For Personal Jurisdiction</u>

Pursuant to Fed. R. Civ. P. 12(b)(2), this Court must dismiss any claim where the Court lacks personal jurisdiction.  "Fed R. Civ. P. 12(b)(2) . . . permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery.  In diversity cases, 'personal jurisdiction is determined by the law of the state in which the district court sits, which in this case is New York.'" *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-CV-1777 (ADS)(AKT), 2011 WL 381612, *2 (E.D.N.Y. Feb. 2, 2011) (quoting *DiStefano v. Carozzi North Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).  Therefore, the New York long arm statute is initially applied to the instant motion.  However, this does not end the inquiry.  Even if the elements of the New York long arm statute is satisfied, the Plaintiffs would also have to demonstrate that the Connecticut Cookston Defendants have sufficient minimum contacts with New York so as to satisfy due process requirements.  *Id.*

Pursuant to the Fourteenth Amendment, the Due Process Clause, a non-resident defendant is amenable to suit in a particular forum when it has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945).  The nature of the contacts with the forum must be such as to provide the defendant with "fair warning that it could be haled into court in the forum state."  *Worldwide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559 (1980).

There are two forms of personal jurisdiction, general and specific.  If the plaintiffs' cause of action relates directly to the defendants' contacts with the forum state, the court may exercise specific jurisdiction over the defendants.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472

(1985).  To establish general jurisdiction, the plaintiff must demonstrate that the defendants'

activities in New York were "continuous and systematic." *Helicopteros Nacionales de*

*Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 416, 104 S. Ct. 1868 (1984).  The defendants'

contacts with the forum state must be more than random, serendipitous or attenuated.  *See id.*  It

is essential that there be "some act by which the defendant purposely avails itself of the privilege

of conducting activities within the forum state, thus invoking the benefit of the protection of the

laws."  *Hanson v. Denkla*, 357 U.S. 235, 253, 78 S. Ct. 1228 (1998).

   In the event it is established that the defendants have the minimum contacts necessary to

gain personal jurisdiction over them, the court must then ask whether maintenance of the suit

offends traditional notions of fair play and substantial justice.  *Int'l Shoe, supra.*  In completing

this analysis, the Court must consider the burdens on the defendants of defending the suit as well

as the forum state's interest in adjudicating the case.  *Metro. Life Ins. Co. v. Robertson-Ceco*

*Corp.*, 84 F.3d 560, 568 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006.

   "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears

the burden of showing that the court has jurisdiction over the defendant."  *Metro. Life Ins. Co.*,

84 F.3d at 568 (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.

1994)); *accord Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d

Cir. 1999); *Nationwide Mut. Ins. Co.*, 2011 WL 381612, *3 (citing *Penguin Grp. (USA), Inc. v.*

*Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196,

208 (2d Cir. 2001)).  "The Second Circuit has held that a plaintiff cannot meet the burden of

showing a *prima facie* case of jurisdiction where the complaint asserts only 'conclusory non-

fact-specific jurisdictional allegations' and a court is 'not bound to accept as true a legal

conclusion couched as a factual allegation.'"  *Nationwide Mut. Ins. Co.*, 2011 WL 381612, *3

(quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (internal quotations omitted)); *accord Galerie Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 625 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004) ("However, conclusory allegations are not enough to establish personal jurisdiction."). "In deciding a motion to dismiss for lack of personal jurisdiction, the Court may rely upon materials that are outside the pleadings, including any affidavits submitted by the parties." *Nationwide Mut. Ins. Co.*, 2011 WL 381612, *3 (internal citations omitted). "However, where, as here, the Court 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a *prima facie* showing of personal jurisdiction over the defendant.'" *Id.* (quoting *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 126 (2d Cir. 2008); *Penguin*, 609 F.3d at 34-35.). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Id.* (citing *Penguin*, 609 F.3d at 35; *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) ("A *prima facie* showing of jurisdiction does not mean that plaintiff must show only some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.")).

Applying these standards, this Court lacks personal jurisdiction over the Connecticut Cookston Defendants.

### B.    The Court is Without Personal Jurisdiction over the Connecticut Cookston Defendants.

As set forth below, the Court is without jurisdiction over the Connecticut Cookston Defendants because Plaintiffs have not sufficiently pled allegations to support a *prima facie* showing of personal jurisdiction over them.  Initially, the Connecticut Cookston Defendants cannot be reached by the applicable New York long arm statute.  Moreover, due process

considerations demand dismissal because there are insufficient minimum contacts and jurisdiction in this venue is unreasonable given the allegations. *See Int'l Shoe Co.*, 326 U.S. at 316. Indeed, it is unclear as to whether Plaintiffs are alleging specific or general personal jurisdiction, and furthermore, Plaintiffs' allegations are lacking any semblance of specificity as to jurisdiction over the Connecticut Cookston Defendants. Therefore, Plaintiffs' allegations are insufficient to satisfy their burden of showing that the Court has personal jurisdiction over the Connecticut Cookston Defendants.

### 1. New York's Long Arm Statute

New York has two statutes that set forth when a court in New York may assert jurisdiction over individual person. First, C.P.L.R. § 301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." C.P.L.R. § 301 confers general jurisdiction "over a nondomiciliary defendant 'on causes of action wholly unrelated to acts done in New York, . . . when the defendant is engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in the jurisdiction.'" *Caronia v. American Reliable Ins. Co.*, 999 F. Supp. 299, 302 (E.D.N.Y. 1998) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990) (quotations omitted), *cert. denied*, 498 U.S. 854, 111 S. Ct. 150 (1990)).

Second, N.Y.C.P.L.R. § 302 (a), provides for personal jurisdiction over non-domiciliaries as follows:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

   (i)  regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

   (ii)  expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

*See also Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 155-56 (N.Y. App. Div. 1st Dep't 1992) (explaining difference between § 301 and § 302 jurisdiction).

The Plaintiffs are not clear as to which statute they rely upon to assert jurisdiction. Therefore, each will be addressed in turn. The Plaintiffs cannot establish personal jurisdiction over the Connecticut Cookston Defendants under either statute, and in accordance with due process under the requirements of *Int'l Shoe Co.*, 326 U.S. 310 and its progeny.

*i. General jurisdiction pursuant to Section 301.*

The allegations in the complaint do not allege a cause of action "wholly unrelated to acts done in New York," therefore, despite Plaintiffs conclusory allegation to the contrary (Exh. B, ¶13), personal jurisdiction does not attach under § 301.  Furthermore, Plaintiffs have not satisfied the additional elements of personal jurisdiction pursuant to § 301.

In determining whether a defendant is subject to general jurisdiction, New York courts look to a number of factors including: (1) "the existence of an office in New York"; (2) "the solicitation of business in the state"; (3) "the presence of bank accounts and other property in the state"; and (4) "the presence of employees of the foreign defendant in the state."

9

*Nationwide Mut. Ins. Co.*, 2011 WL 381612, \*4 (quoting *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985)).

Where, as here, the complaint "fails to include any detail that may suggest that the . . . business transactions are substantial enough to constitute 'doing business' in New York," jurisdiction does not attach.  *Id.* at \*5.  In this case, there are no allegations that suggest the Connecticut Cookston Defendants have any, let alone "substantial," business transaction in New York.  Indeed, none of the Connecticut Cookston Defendants have an office in New York, solicit business in New York, have bank accounts or other property in New York or have employees working in New York.  (Exh. C, Cookston Verification, ¶¶ 3-6).  Plaintiffs allege, in conclusory fashion, that "[u]pon information and belief, employees working at a New York Franchise Defendant location could be instructed to work at a Connecticut Franchise Defendant location," (Exh. B., ¶ 79) (emphasis added).  However, the allegation falls far short of establishing personal jurisdiction over the Connecticut Defendants.  At the outset, Defendants note that even if it were true that employees in New York locations were instructed to work in Connecticut locations, the Connecticut Cookston Defendants still would not be transacting business in New York.  Rather, if true, business would be transacted in Connecticut. Moreover, the allegation is vague, and while Plaintiffs allege the possibility of New York employees working in Connecticut, they have not alleged any facts, which if believed as true, would support a belief that this did in fact occur.  Rather, they say it could happen, not that it ever did.  In fact, as demonstrated by the supporting affidavits, New York ASMs, CSRs and delivery drivers do not also work in the Connecticut stores, nor do Connecticut ASMs, CSRs and delivery drivers work in the New York stores.  (O'Neill Verification, Exh. D, ¶ 5).

10

Plaintiffs' theory appears to be premised primarily upon common ownership of the Connecticut Cookston Defendants by Defendant Cookston.[1]  (Exh. B, ¶¶ 13, 80-83).  However, the fact that Plaintiffs allege that Defendant Cookston owns all of the Cookston Defendants is insufficient to establish personal jurisdiction over the Connecticut Cookston Defendants.  *See NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.*, No. 14CV3945, 2014 WL 2619588, at *4 (S.D.N.Y. June 11, 2014) ("[C]ommon ownership . . . alone is not enough to establish jurisdiction."); *see also J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 549-53 (S.D.N.Y. 2001) ("[O]ther than common ownership, the remaining factors strongly counsel against the exercise of personal jurisdiction . . . .").  Absent individual contact with the State on the part of each Connecticut Cookston Defendant, personal jurisdiction cannot attach under § 301.  *See Walden v. Lorcom Techs., Inc.*, No. 05-CV-3600 (KAM)(RER), 2009 WL 799955, *3-5 (E.D.N.Y. Mar. 24, 2009); *see also infra* Part IV.C.

### *ii.  Specific Jurisdiction pursuant to Section 302.*

Section 302 applies when an individual "purposely availed themselves of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws."  *Rhulen Agency, Inc. v. Alabama Ins. Guaranty Asso.*, 715 F. Supp. 94, 97 (S.D.N.Y. 1989), *aff'd*, 896 F.2d 674 (2d Cir. 1990). Respectfully, as explained below, these factors have not been met, and the Court is without personal jurisdiction over the Connecticut Cookston Defendants.

### *a.  Section 302(a)(1)*

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted

---

[1] Plaintiffs further allege that Mr. Cookston is a resident of the State of Connecticut.  However, this is patently false; Mr. Cookston is a resident of Idaho.  (Exh. C, Cookston Verification, ¶ 2).

must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC*, 450 F.3d 100, 103 (2d Cir. 2006). "[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks and citation omitted). A connection that is "merely coincidental" is insufficient to support jurisdiction. *Johnson v. Ward*, 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 35, 829 N.E.2d 1201, 1203 (N.Y. 2005); *Nationwide Mut. Ins. Co.*, 2011 WL 381612, *7.

The Amended Complaint is devoid of any allegations as to how the Connecticut Cookston Defendants are subject to this Court's jurisdiction or any allegations as to the conduct committed specifically by them (as opposed to the Cookston Defendants located within New York). There simply are no allegations to demonstrate that the Connecticut Cookston Defendants "transacted business within the state, nor are there allegations demonstrating "an articulable nexus, or a substantial relationship" between the wage and hour claims asserted against the Connecticut Cookston Defendants and any alleged action occurring in New York. Indeed, evidence submitted herewith inconclusively demonstrates that the Connecticut Cookston Defendants have their principal places of business outside of New York. The Connecticut Cookston Defendants are not authorized to conduct business in New York, they do not conduct business in New York, and they do not have an address or office in New York. (Exh. C, Cookston Verification, ¶¶ 3-6). The Connecticut Cookston Defendants do not pay taxes in New York. (Id.). Moreover, they do not have bank accounts in New York, nor do they own, use or possess real property in New York. (Id.). The Connecticut Cookston Defendants do not operate stores in New York, do not employ employees in New York, nor do they advertise in New York.

12

(Id.; O'Neill Verification, Exh. D, ¶ 5). Although it is not accurate that "employees working at a New York Franchise Defendant location could be instructed to work at a Connecticut Franchise Defendant location," (Exh. B, ¶ 79; *see also* O'Neill Verification, Exh. D, ¶ 5), even if it were true, that would not be sufficient to establish that there was business transacted by the Connecticut Cookston Defendants *in* New York.

Like Section 301, common ownership is also insufficient to establish personal jurisdiction over the Connecticut Cookston Defendants pursuant to Section 302(a)(1). *See Japan Press Serv., Inc. v. Japan Press Serv., Inc.*, No. 11 CV 5875 SJF ETB, 2013 WL 80181, at *9 (E.D.N.Y. Jan. 2, 2013) ("Even assuming, arguendo, that defendant's common ownership with the New York joint venture is sufficient to establish that defendant transacted business in New York for purposes of New York's long-arm statute, there is no articulable nexus between the New York joint venture's activities in New York and plaintiff's Lanham Act claims."); *see also NewLead Holdings Ltd.*, 2014 WL 2619588, at *4 ("[C]ommon ownership . . . alone is not enough to establish jurisdiction."); *J.L.B. Equities, Inc.*, 131 F. Supp. 2d at 549-53 ("[O]other than common ownership, the remaining factors strongly counsel against the exercise of personal jurisdiction . . . ."). As such, the Court should not assert personal jurisdiction over the Connecticut Cookston Defendants.

### b. Section 302(a)(2)

Here, there are no allegations that claim that the Connecticut Cookston Defendants (as opposed to the Cookston Defendants within New York) actually committed a tortious act within New York. Therefore, there is no basis for personal jurisdiction in Section 302(a)(2).

### c. Section 302(a)(3)

13

Section 302(a)(3) provides for personal jurisdiction when a defendant "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state[;] or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

Here, there are simply no allegations that any of the Connecticut Cookston Defendants specifically caused injury to a person within New York.  Plaintiffs do not allege that they worked in Connecticut.  Moreover, there are no allegations within the complaint that the Connecticut Cookston Defendants "regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in the state" or "expect[] or should reasonably expect [their actions] to have consequences in [New York] and derive substantial revenue from interstate or international commerce."  Indeed, the Connecticut Cookston Defendants have their principal places of business outside of New York.  The Connecticut Cookston Defendants are not authorized to conduct business in New York, they do not conduct business in New York, and they do not have an address or office in New York.  (Exh. C, Cookston Verification ¶¶ 3-6).  The Connecticut Cookston Defendants do not pay taxes in New York.  (Id.).  Moreover, they do not have bank accounts in New York, nor do they own, use or possess real property in New York.  (Id.).  The Connecticut Cookston Defendants do not operate stores in New York, do not employ employees in New York, nor do they advertise in New York.  (Id.; O'Neill Verification, Exh. D, ¶ 5).  As the Connecticut Cookston Defendants have emphasized throughout this brief, common ownership between the various New York and Connecticut entities is simply not enough for this

14

Court to confer personal jurisdiction over the Connecticut Cookston Defendants.  *See NewLead Holdings Ltd.*, 2014 WL 2619588, at *4; *Japan Press Serv., Inc.*, 2013 WL 80181, at *9; *J.L.B. Equities, Inc.*, 131 F. Supp. 2d at 549-53.  Therefore, there is no basis for personal jurisdiction in Section 302(a)(3).

*d. Section 302(a)(4)*

Here, there are no allegations that the Connecticut Cookston Defendants own, use or possess real property within the State.  Each of the Connecticut Cookston Defendants are located within Connecticut, and they do not own, use or possess real property in New York.  (Exh. C, Cookston Verification, ¶¶ 3-6). Therefore, there is no basis for personal jurisdiction in Section 302(a)(4).

**2.   Due Process Considerations**

Even assuming, *arguendo*, that the Plaintiffs can demonstrate that New York's long arm statute applies to the Connecticut Cookston Defendants, due process considerations deprive this Court of personal jurisdiction.  "[I]n order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offer traditional notions of fair play and substantial injustice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations . . . .  By requiring that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign . . . the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit . . . .

*Burger King Corp.*, 471 U.S. at 471-72 (internal citations and quotation marks omitted).  Under *Int'l Shoe*, whether due process is satisfied is itself a two part inquiry:  (1) whether there are

15

minimum contacts; and (2) whether exercise of jurisdiction is "reasonable" under the facts of the case.  *See Int'l Shoe*, 326 U.S. at 316; *see also Rudzewicz*, 471 U.S. at 471-78; *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002); *Metro. Life Insur. Co.*, 84 F.3d at 567.

Plaintiffs have not sufficiently alleged the requisite minimum contacts for personal jurisdiction, because the minimum contacts required by due process are substantially similar to the threshold set by the New York's long-arm statute.  Indeed, if Plaintiffs cannot satisfy § 302(a)(1), they are unlikely going to be able to satisfy the due process considerations.

> "[T]he minimum contacts inquiry overlaps significantly with the 'transaction of business' inquiry under CPLR Section 302 (a)(1)." *Thorsen v. Sons of Norway*, [] 996 F. Supp. 2d 143 [](E.D.N.Y. Feb. 6, 2014); *see also Best Van Lines*, 490 F.3d at 247 ("It may be that the meaning of 'transact[ing] business' for the purposes of section 302(a)(1) overlaps significantly with the constitutional 'minimum contacts' doctrine.") (citing New York cases). "However, because New York's long-arm statute encompasses a wider range of activity than the minimum-contacts doctrine, the Court must undertake an additional analysis under the due process clause." *Thorsen*, 996 F. Supp. 2d 143,[]; *see also Best Van Lines*, 490 F.3d at 248 ("Some distance remains between the jurisdiction permitted by the Due Process Clause and that granted by New York's long-arm statute.").
>
> "To establish the minimum contacts necessary to comport with the due process clause, the Court must determine that the defendant 'purposefully avail[ed]' himself of the privilege of doing business in New York such that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* at *27 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490, (1980)) . . . .

*USHA Holdings, LLC v. Franchise India Holdings, Ltd.*, 11 F. Supp. 3d 244, 272 (E.D.N.Y. 2014).  Tenuous contacts of a defendant with New York are insufficient to demonstrate that it "purposefully availed" itself of the benefits and privileges of the State to satisfy due process.  *See Savin v. Ranier*, 898 F.2d 304, 306-07 (2d Cir. 1990).

Here, the Connecticut Cookston Defendants have their principal places of business outside of New York.  The Connecticut Cookston Defendants are not authorized to conduct

16

business in New York, they do not conduct business in New York, and they do not have an address or office in New York.  (Exh. C, Cookston Verification, ¶¶ 3-6).  The Connecticut Cookston Defendants do not pay taxes in New York.  (Id.).  Moreover, they do not have bank accounts in New York, nor do they own, use or possess real property in New York.  (Id.).  The Connecticut Cookston Defendants do not operate stores in New York, do not employ employees in New York, nor do they advertise in New York.  (Id.; O'Neill Verification, Exh. D, ¶ 5).

Moreover, "it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action ***unconnected with the activities there***."  *Int'l Shoe*, 326 U.S. at 317 (emphasis added).  Thus, it is simply not enough to overcome this motion to dismiss that the Plaintiffs allege in general and conclusory fashion that the owner of the Connecticut Cookston Defendants, Defendant Robert Cookston, operates his franchises in both New York and Connecticut. *See NewLead Holdings Ltd.*, 2014 WL 2619588, at *4; *Japan Press Serv., Inc.*, 2013 WL 80181, at *9; *J.L.B. Equities, Inc.*, 131 F. Supp. 2d 544, 549-53.  As in this case against the Connecticut Cookston Defendants, because "all of the claims arise out of [allegations of] omissions or [tortious] conduct that occurred somewhere else," there is no minimum contacts sufficient for personal jurisdiction. *Chirag v. Mt Marida Marguerite Schiffahrts*, 933 F. Supp. 2d 349, 354 (D. Conn. 2013), *aff'd*, 604 Fed. Appx. 16 (2d Cir. 2015).

Furthermore, even if the Plaintiffs can establish minimum contacts, they cannot satisfy the second state of the inquiry—"whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice – that is, whether it is reasonable under the circumstances of the particular case." *Metro. Life Insur. Co.*, 84 F.3d at 568.  This reasonableness analysis considers the following factors:

> 1) the burden that the exercise of jurisdiction will impose on the defendant; 2) the
> interests of the forum state in adjudicating the case; 3) the plaintiff's interest in
> obtaining convenient and effective relief; 4) the interstate judicial system's interest in
> obtaining the most efficient resolution of the controversy; and 5) the shared interest of
> the states in furthering substantive social policies.

*Id.*

Given the fact that the Connecticut Cookston Defendants have no minimum contacts with New York, it is no doubt unreasonable for this Court to confer jurisdiction over them, especially in light of the fact that there is no notice in the complaint as to the specific conduct of which they each are being accused. "To require the corporation in such circumstances to defend the suit away from its home or other jurisdiction where it carries on more substantial activities has been thought to lay too great and unreasonable a burden on the corporation to comport with due process." *Int'l Shoe*, 326 U.S. at 317. Moreover, New York does not have an interest in adjudicating this matter against the Connecticut Cookston Defendants because any claim against the Connecticut Cookston Defendants involves no citizen or right of a citizen of this State. The subject matter of the Plaintiffs' allegations against the Connecticut Cookston Defendants are related to the Connecticut Cookston Defendants' employment of individuals in Connecticut because the Connecticut Cookston Defendants do not employ individuals in New York. (*See* Cookston Verification, Exh. C., ¶¶ 3-6; O'Neill Verification, Exh. D, ¶ 5). The Plaintiffs do not allege that they were personally employed by the Connecticut Cookston Defendants. Because the allegations of FLSA violations against the Connecticut Cookston Defendants would have occurred within Connecticut; the notions of fair play and justice would find it unreasonable to litigate this suit in New York, as it is pled against the Connecticut Cookston Defendants. Finally, Plaintiffs have failed to demonstrate why they would be harmed by litigating this case against the Connecticut Cookston Defendants elsewhere.

**C.**     **A Single-Integrated Enterprise Theory is Not Sufficient to Satisfy Personal Jurisdiction**.

Plaintiffs allege that the Connecticut Cookston Defendants "operate as a department in Mr. Cookston's integrated enterprise." (Exh. B, ¶ 13). However, these allegations are insufficient to establish personal jurisdiction. The "single integrated enterprise" or "joint employer" theories are used to establish liability, not personal jurisdiction. *See Mendez v. Pure Foods Mgmt. Grp., Inc.*, No. 3:14-cv-1515 (SRU), 2016 WL 183473, *6 (D. Conn. Jan. 14, 2016) ("The standard for treating multiple defendants together as employers for purposes of liability under specific statutes is perhaps not dissimilar to a jurisdictional standard, but it is distinct, and is likely looser."); *Heidbrink v. ThinkDirect Mktg. Grp., Inc.*, No. 8:14-CV-1232-T-30AEP, 2014 WL 3585698, *4 (M.D. Fla. July 21, 2014) ("A joint employer theory is relevant to establish liability against a defendant under the FLSA; it is not relevant to establish specific jurisdiction under [] [a] long-arm statute."); *Price v. Waste Mgmt.*, No. ELH-13-02535, 2014 WL 1764722, *10 (D. Md. Apr. 30, 2014) ("[J]urisdiction and liability are . . . separate inquiries…. [T]hat a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised. If a defendant does not have sufficient minimum contacts with the forum, the personal jurisdiction analysis ends "without examining the plaintiff's causes of action. The laws on which the suit is based are irrelevant to the jurisdictional inquiry because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making these contacts elements of a cause of action. That would violate due process." (internal citations and quotations marks omitted)); *EEOC v. Bass Pro Outdoor World, LLC*, 884 F. Supp. 2d 499, 525 (S.D. Tex. 2012) ("The integrated enterprise theory described by the EEOC is a liability standard, however,

not a jurisdictional standard."); *Bailey v. Dyncorp Int'l FZ-LLC*, No. 3:11-CV-00714-KI, 2012

WL 112867, *5 (D. Or. Jan. 11, 2012) ("If related companies are separate and distinct corporate

entities, the presence of one in a forum state cannot be attributed to the other."); *Enter. Rent-A-*

*Car Wage & Hour Empl. Practices Litig. v. Enter. Rent-A-Car Co.*, 735 F. Supp. 2d 277, 319,

326-28 (W.D. Pa. 2010) (differentiating between tests to establish personal jurisdiction and to

establish liability by piercing the corporate veil, collecting cases, and concluding that "the joint

employer theory and similar concepts are relevant for determining liability, but are not for

determining whether a court may exercise personal jurisdictional over a party"); *Tese-Milner v.*

*De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 414 (S.D.N.Y. 2009) ("[T]he Court has not

encountered, and Plaintiff does not offer, any legal support for the contention that "integrated

enterprise" has any legal meaning for the purposes of the relevant personal jurisdiction law.");

*Hajela v. ING Groep*, 582 F. Supp. 2d 227, 236 (D. Conn. 2008) ("The joint employer ***theory of***

***liability*** consists of a four factor test 'to determine whether two or more employers can be treated

as one ***for the purposes of assigning liability***.'" (internal citations omitted) (emphasis added));

*see also White v. Pac. Media Group, Inc.*, 322 F. Supp. 2d 1101, 1115 (D. Haw. 2004)

(concluding that "[t]he court need not reach a discussion premised on the alter ego doctrine"

because plaintiff did not satisfy that the court had subject matter jurisdiction because plaintiff

had not demonstrated that she exhausted her administrative remedies); *Brodie v. New York City*

*Transit Auth.*, No. 96 Civ. 6813 (LMM), 1998 WL 599710, at *5-7 (S.D.N.Y. Sept. 10, 1998)

(holding that despite plaintiff's assertions that the defendants constituted a single integrated

enterprise, the plaintiff did not satisfy the exhaustion requirement or meet the identity of interests

exception).

Plaintiff also alleges that "Mr. Cookston and all the franchise locations he owns operate in a parent-subsidiary relationship."  (Exh. B, ¶ 13). However, "[i]t is fundamental that 'mere ownership by a parent corporation of a subsidiary corporation present in the forum state generally will not subject the parent to personal jurisdiction in that forum.'" *Mendez*, 2016 WL 183473, at *6 (quoting *Savage v. Scripto-Tokai Corp.*, 147 F. Supp. 2d 86, 93 (D. Conn. 2001)); *accord Cordova v. SCCF, Inc.*, No. 13CIV5665-LTS-HP, 2014 WL 3512838, at *3 (S.D.N.Y. July 16, 2014) ("The mere fact that each [c]orporate [d]efendant is owned in whole or major part by the same persons simply does not permit [the] [c]ourt to disregard their distinct legal statuses." (internal citations omitted)); *Jazini*, 148 F.3d at 184 ("[T]he presence of the subsidiary alone does not establish the parent's presence in the state.");Wright & Miller, Federal Practice & Procedure, § 1069, p. 256 ("[I]f the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary").

Here, Plaintiffs simply allege a single integrated enterprise in conclusory fashion without alleging specific facts to support the same.

> Under the FLSA, companies that are part of an "integrated enterprise" or "engaged in a joint venture" may nevertheless employ separate people and, absent control, are not liable for the separate employees of joint ventures. Although they allege an "integrated enterprise," Plaintiffs cannot escape their obligation under the FLSA to allege a relationship of control between the Corporate Moving Defendants and themselves. Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees.

*Lopez v. Acme Am. Envtl. Co.*, No. 12 Civ. 511 (WHP), 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012) (internal citations omitted).  Plaintiffs do not specifically allege how each of the Connecticut Cookston Defendants acts with the other Defendants to constitute a single integrated

21

enterprise or a parent-subsidiary relationship.  Plaintiffs' theory appears to be premised primarily upon common ownership of the Connecticut Cookston Defendants by Defendant Cookston. (Exh. B, ¶¶ 13, 80-83).  However, the fact that Plaintiffs allege that Defendant Cookston owns all of the Cookston Defendants is insufficient to establish personal jurisdiction over the Connecticut Cookston Defendants.  *See NewLead Holdings Ltd. v. Ironridge Glob. IV Ltd.*, No. 14CV3945, 2014 WL 2619588, at *4 (S.D.N.Y. June 11, 2014) ("[C]ommon ownership . . . alone is not enough to establish jurisdiction."); *see also J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 549-53 (S.D.N.Y. 2001) ("[O]ther than common ownership, the remaining factors strongly counsel against the exercise of personal jurisdiction . . . .").  Rather, personal jurisdiction and the single integrated enterprise theory is a ***distinct*** inquiry; i.e. even if Plaintiffs' allegations satisfy a single integrated enterprise theory, they do not allege sufficient minimum contacts to surpass the challenge to personal jurisdiction.

Additionally, given the declarations supplied in support of the Connecticut Cookston Defendants' position, notwithstanding Plaintiffs' conclusory assertions, there is no indication that the Connecticut Cookston Defendants are employing New York employees or have anything whatsoever to do with New York employees. All of the named and opt-in Plaintiffs unquestionably worked only for some of the New York Defendants.  (Exh. B, ¶¶ 17-18).

    **D.**    <u>**Alternatively, the Connecticut Cookston Defendants are Not Part of A Single Integrated Enterprise.**</u>

Should the Court disagree and determine that a single integrated enterprise theory could satisfy personal jurisdiction, the claims still fail because that theory has not been sufficiently alleged.

> A "single employer" situation exists "where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." The single employer standard is relevant when "separate

corporations are not what they appear to be, that in truth they are but divisions or departments of a 'single enterprise.'"

*Clinton's Ditch Cooperative Co. v. NLRB*, 778 F.2d 132, 137 (2d Cir. 1985), *cert. denied*, 479

U.S. 814 (internal citations omitted).  An analysis under the single integrated enterprise theory

requires the consideration of four factors: "(1) interrelation of operations, (2) centralized control

of labor relations, (3) common management, and (4) common ownership or financial control."

(1) interrelation of operations, (2) centralized control of labor relations, (3) common

management, and (4) common ownership or financial control.  *Kim v. Dial Serv. Int'l, Inc.*, No.

96 CIV. 3327 (DLC), 1997 WL 5902, at *6 (S.D.N.Y. Jan. 8, 1997)

Plaintiffs' allegations that the Connecticut Cookston Defendants form a single integrated

enterprise are nothing but conclusory.  *See Leber v. Berkley Vacation Resorts, Inc.*, No. 2:08-

CV-01752-PMP-PAL, 2009 WL 2252517, at *4 (D. Nev. July 27, 2009) ("Plaintiffs' Complaint

makes no factual allegations to support either theory.  Rather, Plaintiffs make the conclusory

allegation that Defendants are engaged in a joint enterprise or partnership.  Plaintiffs also present

no admissible evidence to meet their burden of establishing any of these Defendants have

contacts with Nevada, either directly or through a partner or agent. The Court therefore will grant

Defendants' motions to dismiss for lack of personal jurisdiction.").  Here, Plaintiffs allege

common ownership by Mr. Cookston (Exh. B, ¶¶ 13, 80-83), and they also allege in conclusory

fashion common management and common supervision. (Id., ¶¶ 77-83, 128-130).  However, the

allegations are insufficient.  In fact, the declarations submitted in connection with this motion

negates any conclusory allegations that the Defendants constitute a single integrated enterprise,

and they show that there is no interrelation of operations, centralized control of labor relations, or

common management.  Rather, each individual store has a general manager that has discretion in

operating each of the stores and managing their stores, including the hiring and firing of

employees and the supervision and control over employee work schedules. (Exh. C, Cookston Verification, ¶ 7; Exh. D, O'Neill Verification, ¶ 4). These general managers report to a supervisor. (Id.) This supervisor only oversees the Connecticut stores, and has no involvement with the New York stores. (Exh. C, Cookston Verification, ¶ 7; Exh. D, O'Neill Verification, ¶ 3). The supervisor reports to Mr. O'Neill. (Exh. D, O'Neill Verification, ¶ 3). Indeed, neither Defendant Cookston nor Mr. O'Neill are involved in the day to day operations of the Cookston Defendants. (Exh. C, Cookston Verification, ¶ 7; Exh. D, O'Neill Verification, ¶ 4). Rather, each of the Connecticut Cookston Defendants have general managers for day to day operations and management of ASMs, CSRs and delivery drivers, including hiring and firing, work schedules, and monitoring staff. (Id.).

Simply put, the fact that there is common ownership or common oversight is simply not enough to confer personal jurisdiction over the Connecticut Cookston Defendants. As such, Plaintiff have not established personal jurisdiction by alleging a single integrated enterprise theory.

## V.    **CONCLUSION**

The Court is without jurisdiction as to Team Stamford, LLC; AAR, LLC; Lucky 13, Inc. and A.C. Pizza, Inc. because the complaint is completely devoid of any allegations that could reasonably justify a finding of contacts sufficient under the either long arm statute or in accordance with due process requirements set forth in *Int'l Shoe* and its progeny. Accordingly, this Court should dismiss the Amended Complaint in its entirety against them and award any further and other relief as this Court deems proper.

Respectfully submitted,
FORDHARRISON, LLP
Attorneys for Defendants
Team Stamford, LLC; AAR, LLC; Lucky 13, Inc.;
A.C. Pizza, Inc.,

By:_____/s/ Cindy M. Cieslak_____
        Robin B. Kallor, Esq. (Rk-6719)
        Cindy M. Cieslak (Cc-0234)
        FordHarrison, LLP
        750 Main Street, Suite 606
        Hartford, CT 06103
        (860)748-4660

        Eric Su, Esq. (Es-0626)
        Alyssa Smilowitz, Esq. (As-0822)
        FordHarrison, LLP
        100 Park Avenue, Suite 2500
        New York, New York 10017
        (212) 453-5935

## <u>CERTIFICATION OF SERVICE</u>

This is to certify that on this 31st day of May, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

David Gottlieb, Esq.
Rita Lenane, Esq.
Tanvir Rahman, Esq.
Wigdor, LLC
85 Fifth Avenue
New York, New York 10003

Andrew W. Goldwater, Esq.
Friedman, Kaplan, Seiler & Adelman, LLP
7 Times Square
New York, New York 10036

Eric J. Wallach, Esq.
Garrett David Kennedy, Esq.
Joseph A. Piesco, Esq.
Norman M. Leon. Esq.
Lauren Frances Gizzi, Esq.
DLP Piper, LLP
1251 Avenue of the Americas
27th Floor
New York, New York 10020

        /s/ Cindy M. Cieslak
        Cindy M. Cieslak

WSACTIVELLP:8445307.1

26