**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RIAD KUCHER and HAROON MOJUMDER, on
behalf of themselves and all other similarly-situated
employees,

        Plaintiffs,

  v.

DOMINO'S PIZZA, INC., DOMINO'S PIZZA LLC,
DOMINO'S PIZZA FRANCHISING LLC,
COOKSTON ENTERPRISES, INC. *et al.*,

        Defendants.

Case No. 16-cv-02492 (AJN)

---

**DOMINO'S' MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION
TO BIFURCATE PROCEEDINGS WITH RESPECT TO PLAINTIFFS' "JOINT
EMPLOYER" CLAIM, AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR
<u>CONDITIONAL CERTIFICATION</u>**

**DLA PIPER LLP (US)**

Eric J. Wallach
Joseph A. Piesco
Garrett D. Kennedy
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
E-mail: eric.wallach@dlapiper.com

*Attorneys for Defendants Domino's
Pizza, Inc., Domino's Pizza LLC and
Domino's Pizza Franchising LLC*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

    I.    The Cookston Defendants Are Each
          Independently Operated and Managed ................................................. 4

    II.   Plaintiffs Did Not Work for Domino's .................................................. 6

    III.  Domino's Is a Franchisor with No Control
           Over Franchisees' Employment Practices ............................................ 7

ARGUMENT ...................................................................................................... 8

    I.    Domino's' Cross-Motion Should Be Granted ....................................... 8

         A.  Courts Have Broad Discretion to Manage
             Cases and Regulate Discovery ................................................... 8

         B.  Discovery Should Be Bifurcated ............................................... 9

    II.   Conditional Certification Should Not Be Granted ............................... 14

         A.  Applicable Standard ................................................................ 14

         B.  Conditional Certification of the FLSA Collective
             Should Not Be Granted as to the Franchisor Defendants ............ 15

    III.  Plaintiffs' Proposed Notice to the Collective Is Prejudicial ................. 22

    IV.  Plaintiffs' Motion Should Not Be Decided
            Prior to Ruling on the Pending Motion to Dismiss ............................. 22

CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

CASES                                                                            PAGE(S)

*Amendola v. Bristol-Myers Squibb Co.*,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008)...................................................................23

*Cano v. DPNY, Inc.*,
    287 F.R.D. 251 (S.D.N.Y. 2012) ....................................................................17

*Castro v. Spice Place, Inc.*,
    2009 WL 229952 (S.D.N.Y. Jan. 30, 2009) ..........................................14, 15, 18

*Chen v. Domino's Pizza, Inc.*,
    2009 WL 3379946 (D.N.J. Oct. 16, 2009)...................................................17

*Dias v. Cmty. Action Project, Inc.*,
    2009 WL 595601 (E.D.N.Y. Mar. 6, 2009)...................................................11

*Guaman v. 5 M Corp.*,
    2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013) ..............................................20, 21

*Guy v. Casal Inst. of Nev., LLC*,
    2014 WL 1899006 (D. Nev. May 12, 2014)...................................................25

*Hatcher v. Augustus*,
    956 F.Supp. 387 (E.D.N.Y. 1997) ....................................................................12

*Hoffmann-LaRoche, Inc. v. Sperling*,
    493 U.S. 165 (1989)..........................................................................................9

*In re Starbucks Emp. Gratuity Litig.*,
    264 F.R.D. 67 (S.D.N.Y. 2009), *aff'd*, 549 F. App'x 1 (2d Cir. 2013) ...................23

*In re: Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010)............................................................12

*In re: Jimmy John's Overtime Litig.*,
    No. 14-cv-5509, ECF Nos. 260-61 (E.D. Ill. Mar. 3, 2016)...................................12

*In re: McDonald's USA, LLC*,
    364 N.L.R.B. No. 14, 2016 WL 3035121 (N.L.R.B. May 26, 2016) ......................19

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*,
    838 F. Supp. 2d 111 (S.D.N.Y. 2011)..........................................................10

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*,
    2010 WL 1778794 (S.D.N.Y. Apr. 29, 2010).......................................................11

*Ji Li v. Ichiro Rest. Inc.*,
  2015 WL 6828056 (S.D.N.Y. Nov. 5, 2015) ...........................................................24

*Ji v. Jling Inc.*,
  2016 WL 2939154 (E.D.N.Y. May 19, 2016) ..........................................................14

*Jin Yun Zheng Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*,
  2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013) ...............................................19, 20

*Khan v. Airport Mgmt. Servs., LLC*,
  2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ..........................................................21

*Levinson v. Primedia Inc.*,
  2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ..........................................................15

*Mata v. Foodbridge LLC*,
  2015 WL 3457293 (S.D.N.Y. June 1, 2015) ............................................................14

*Mendoza v. Casa de Cambio Delgado, Inc.*,
  2008 WL 938584 (S.D.N.Y. Apr. 7, 2008)...............................................................14

*Morales v. Plantworks, Inc.*,
  2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) ........................................................14, 17

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)......................................................................................14

*Orozco v. Plackis*,
  757 F.3d 445 (5th Cir. 2014) ....................................................................................17

*Orozco v. Plackis*,
  2012 WL 2577522 (W.D. Tex. July 3, 2012) ...........................................................17

*Patterson v. Domino's Pizza, LLC*,
  60 Cal. 4th 474 (Cal. 2014)............................................................... *passim*

*Peng Bai v. Fu Xing Zhuo*,
  2014 WL 2645119 (E.D.N.Y. June 13, 2014) ..........................................................23

*People of State of N.Y. v. Holiday Inns, Inc.*,
  1992 WL 532169 (W.D.N.Y. Aug. 28, 1992) ..........................................................12

*Reese v. Coastal Restoration and Cleaning Srvs., Inc.*,
  2010 WL 5184841 (S.D. Miss. Dec. 15, 2010) ........................................................12

*Romero v. H.B. Auto. Grp.*,
  2012 WL 1514810 (S.D.N.Y. May 1, 2012) ............................................................14

*Rosario v. Valentine Ave. Disc. Store, Co.*,
 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011) ...................................................................20

*Salazar v. McDonald's Corp.*,
 2016 WL 736213 (N.D. Cal. Feb. 25, 2016) .................................................................12

*Sanchez v. JMP Ventures, LLC*,
 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ..................................................................20

*She Jian Guo v. Tommy's Sushi Inc.*,
 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) ...............................................................20

*Singh v. 7-Eleven Inc.*,
 2007 WL 715488 (N.D. Cal. Mar. 8, 2007)...................................................................12

*Tate v. Levy Rest. Holdings, LLC*,
 2015 WL 9076230 (E.D.N.Y. Dec. 16, 2015) ...............................................................11

*Thornton v. Charter Communs.*,
 2013 U.S. Dist. LEXIS 25878 (E.D. Mo. Feb. 26, 2013).............................................12

*Transunion Corp. v. PepsiCo, Inc.*,
 811 F.2d 127 (2d Cir. 1987)...........................................................................................23

*Trinidad v. Pret A Manger (USA) Ltd.*,
 962 F. Supp. 2d 545 (S.D.N.Y. 2013)............................................................................21

*Vondriska v. Paychex Bus. Sols., Inc.*,
 2009 WL 632889 (M.D. Fla. Mar. 11, 2009), *vacated* 368 F. App'x 7 (11th Cir. 2010)........12

*Wright v. Mt. View Lawn Care, LLC*,
 2016 WL 1072506 (W.D. Va. Mar. 11, 2016)................................................................11

*Yahraes v. Rest. Assocs. Events Corp.*,
 2011 WL 844963 (E.D.N.Y. Mar. 8, 2011)....................................................................24

**STATUTES, REGULATIONS AND OTHER AUTHORITIES**

29 U.S.C. § 203(d) ..................................................................................................................9

29 U.S.C. § 216(b) ............................................................................................................1, 14

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ...................................................... *passim*

Fed. R. Civ. P. 16....................................................................................................... *passim*

N.Y. Gen. Bus., Law Art. 33 §680, *et seq.* ............................................................................3

Title VII of the Civil Rights Act, 42 U.S.C. 2000e, *et seq.* ...............................................9, 12

Defendants Domino's Pizza, Inc., Domino's Pizza LLC and Domino's Pizza Franchising LLC (collectively, "Domino's" or the "Franchisor Defendants") respectfully submit this Memorandum of Law in opposition to the motion for conditional certification of plaintiffs Riad Kucher and Haroon Mojumder ("Plaintiffs"), dated May 26, 2016 (the "Motion"), and in support of Domino's cross-motion, pursuant to Fed. R. Civ. P. 16, to bifurcate these proceedings in order to resolve Plaintiffs' "joint employer" claims prior to any class and collective discovery (the "Cross-Motion").

## PRELIMINARY STATEMENT

Plaintiffs, former employees of franchises purchased from Domino's and owned and operated by the Cookston Defendants,[1] move pursuant to 29 U.S.C. § 216(b) to conditionally certify a collective action under the Fair Labor Standards Act ("FLSA") of purportedly similarly situated employees of the Cookston Defendants (the "FLSA Collective"). Domino's opposes this Motion and cross-moves for bifurcation in order to first resolve the question of whether any of the Franchisor Defendants can be held liable as a "joint employer" prior to any class and collective discovery and motion practice.[2]

Domino's is not now, nor has it ever been, Plaintiffs' employer or that of any member of the proposed FLSA Collective. To be clear, Domino's had no role with respect to setting the terms and conditions of Plaintiffs' employment: it did not hire or fire them, it did not supervise their work, and it was not responsible for making wage payments to them. In short, Domino's never had, and does not now have, any involvement whatsoever with respect to the Cookston Defendants' payroll policies, practices or processes (nor did it have any right to be involved in

---

[1] As used here, the term "Cookston Defendants" shall refer to, collectively, defendant Robert Cookston and each of the Domino's franchises he operates that is named as a defendant in the present action.

[2] In their Motion, Plaintiffs make no effort whatsoever to distinguish between the Franchisor Defendants, or to identify any specific action taken by any Franchisor Defendant, merely lumping them together as "Domino's."

those matters).  It is therefore not surprising that, beyond effusive conclusory allegations of

brand-related "control" (which is addressed more fully below), there is not a single allegation, let

alone affirmative evidence submitted by Plaintiffs with their Motion, that Domino's now has (or

ever had) any such involvement.  The one allegation Plaintiffs do make relating to payroll

practices – that the Cookston Defendants utilize Domino's PULSE (point-of-sale) system for

payroll – is demonstrably wrong, a fact attested to by Mr. Cookston himself.[3]

      Simply put, Domino's Pizza Franchising LLC is a franchisor.  Through written franchise

agreements, it offers entities like the Cookston Defendants the opportunity to acquire a Domino's

Pizza® franchise and to use Domino's Pizza® trademarks and service marks in connection with

the operation of that franchise.  All decisions regarding employment matters at those franchises –

including hiring, firing, pay, and discipline – are up to the franchisees, not Domino's.

      Ignoring these basic facts, Plaintiffs seek to hold Domino's liable for the Cookston

Defendants' alleged FLSA violations solely on the purported basis that Domino's "jointly

employed" Plaintiffs with the Cookston Defendants.  Plaintiffs' "joint employer" claim involves

a discrete analysis of one issue – whether Domino's exercised sufficient levels, indeed any level,

of control over Plaintiffs' employment – which can be readily adjudicated without ruling on the

underlying merits of Plaintiffs' substantive FLSA or other claims.  As such, the issue is ripe for

preliminary resolution through expedited discovery and dispositive motion practice, and the

Franchisor Defendants submit the future proceedings should be bifurcated in order to resolve this

claim prior to any class and collective discovery.

      As set forth herein, bifurcation of discrete claims with a significant impact on a litigation,

especially in a complex action such as this, has been recognized as appropriate by courts in this

---

[3] A true and correct copy of the Declaration of Robert Cookston is attached as Exhibit A ("Ex. A") to the
Declaration of Joseph A. Piesco, dated June 16, 2016 ("Piesco Decl.").

Circuit:  bifurcation streamlines the proceedings, limits the issues and parties before the Court, and may circumscribe otherwise potentially broad and expensive discovery.  The United States Supreme Court has made clear that federal District Courts have the authority to manage their cases in a sensible and cost-effective manner, and bifurcation here accomplishes these goals with no conceivable prejudice to Plaintiffs.  Conversely, absent the requested relief, the prejudice to Domino's is readily apparent, as it would be forced to needlessly engage in extensive and costly class-wide discovery.  Indeed, the California Supreme Court recently *affirmed on summary judgment a ruling that Domino's was not a "joint employer" with a franchisee*, *see Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 498 (2014).  While not binding here, this persuasive authority supports early resolution of the joint employer claim in this case.

As to Plaintiffs' Motion, it is premature given the Cookston Defendants' motion to dismiss.  But even if it were not, it should be denied as to the Franchisor Defendants.  *First*, even though Plaintiffs allege Domino's was their putative "joint employer," they submit no evidence of this – in fact, they do not even bother to argue as much.  While Plaintiffs' burden on conditional certification may be "modest," it is not non-existent.  To this end, Plaintiffs must provide some evidentiary basis for the proposition that Domino's was their "joint employer."

Here, however, Plaintiffs' Motion is supported by nothing more than conclusory allegations relating to routine and well-recognized branding controls which Courts consistently hold do *not* support a "joint employer" claim.  Indeed, those sort of controls are not only required by the Lanham Act (which mandates that a trademark holder police the use of its marks), but are incorporated into the very definition of franchising.  In enacting the statute that controls the sale of franchises in this State (N.Y. Gen. Bus., Law Art. 33 §680, *et seq*.), the legislature defined a "franchise" as a contract under which a franchise was granted the right to

engage in the business of offering, selling, or distributing goods or services "under a meeting plan or system **prescribed in substantial part** by [the] franchisor."  (Emphasis added.)

**Second**, even assuming *arguendo* that Plaintiffs put forward evidence of a "joint employer" relationship – and they have not – they adduce no evidence that **Domino's** engaged in some "common unlawful policy" with respect to them.  They proffer no "policy" of Domino's whatsoever, nor do they allege, much less submit evidence of, the slightest involvement of Domino's with regard to the Cookston Defendants payroll or employment practices.  Instead, Plaintiffs rely on unproven claims and allegations contained in unrelated legal proceedings involving franchisees who are not parties in this action, the relevance of which is highly suspect.

**Third**, Plaintiffs cannot show that they were "similarly situated" to other employees because, among other things, their "evidence" consists of nothing more than conclusory declarations.  Specifically, they submit no evidence of any overarching "common policy" across the Cookston Defendants' twenty-plus stores, rendering certification inappropriate.  Further, as conditional certification is premature and improper, the Franchisor Defendants object to Plaintiffs' proposed notice and submit that no notice should issue at this time.

**Finally**, the Court's April 27, 2016 Order required Plaintiffs to submit authority holding that it may rule on conditional certification prior to resolving a pending motion to dismiss for lack of personal jurisdiction.  Plaintiffs have submitted no such authority.

Based on the foregoing, and for the reasons below, Domino's respectfully requests that the Court grant its Cross-Motion and deny the Motion with respect to the Franchisor Defendants.

## STATEMENT OF RELEVANT FACTS

### I.   The Cookston Defendants Are Each Independently Operated and Managed

Domino's Pizza Franchising, LLC ("DPF") is engaged in the business of franchising the well-known pizza delivery businesses bearing the Domino's Pizza® name.  These franchisees

are granted the right to operate Domino's franchises using Domino's' marks and operating methods.[4]  The Cookston Defendants – corporate entities owned by defendant Robert Cookston – are franchisees of DPF or one of its predecessors.  (*See* ECF No. 118-14, ¶¶ 2-4; ECF No. 118-15, ¶ 1; *see also* Plaintiffs' Second Amended Complaint ["SAC"], ECF No. 114, ¶¶ 22-46.)

According to Mr. Cookston, each of his franchises operates independently, and each store is responsible for its own "[d]ay-to-day management," which "varies depending on the particular manager, current staffing, and other needs of the store."  (*See* ECF No. 118-15, ¶ 4.)  Mr. Cookston attests that each store (not Domino's) employs managerial staff who are responsible for overseeing their respective store's "day-to-day operations," including, without limitation, "hiring, disciplinary actions, setting employee schedules, reporting payroll and clocking in and out procedures."  (*Id.*)  These managers (not Domino's) also "determine . . . the work schedules . . . including the number of employees necessary for each shift," and "monitor[]" staff in the performance and "execution of their duties."  (*Id.*)

In addition, the Cookston Defendants employ assistant managers who "assist the managers in their managerial functions," including employee oversight.  (ECF No. 118-15, ¶ 5.)  In so doing, they "handle personnel matters, including disciplinary matters, staffing functions, oversight of the store's clock in and out procedures, including ensuring tips and reimbursement and other pertinent information is recorded at the time the employee is clocked out."  (*Id.*)  They make "changes to the payroll," such as correcting employee errors, and control scheduling.  (*Id.*)

---

[4] Domino's Pizza, Inc. is the parent company, directly or indirectly, of Domino's Pizza LLC and DPF and is a public company.  (ECF No. 134.)  Domino's Pizza LLC owns and operates the corporately-owned Domino's Pizza stores and provides certain management and support services to DPF.

## II.    **Plaintiffs Did Not Work for Domino's**

The evidence submitted by Plaintiffs on this Motion demonstrates that Plaintiffs were solely employed by the Cookston Defendants.  However, what Plaintiffs ***fail to*** allege or produce evidence of in connection with their "joint employer" claims is even more telling.

Among other things, Plaintiffs, opt-in plaintiff Amanul Boby, and affiant Miron Kivria each purport to have been "employed by Robert Cookston at one [or more] of his Domino's locations."  (*See* ECF No. 118-3, ¶ 3; ECF No. 118-4, ¶ 2; ECF No. 118-5, ¶ 2; ECF No. 118-13, ¶ 2.)  Not one of them claims to have been employed by the Franchisor Defendants.  Not a single one.  (*Id.*)  Likewise, each swears he worked solely at or from the Cookston Defendants' stores, and not one alleges to have ever worked at (or even visited) a Domino's-owned store.  (*See* ECF No. 118-3, ¶ 7; ECF No. 118-4, ¶ 2; ECF No. 118-5, ¶ 6; ECF No. 118-13, ¶ 2.)

In addition, none of these affiants avers that in becoming employed by the Cookston Defendants, he was hired by Domino's (*see, generally*, ECF Nos. 118-3, 118-4, 118-5, 118-13), and Mr. Cookston's affidavit demonstrates that hiring, firing and disciplinary decisions were made exclusively by the Cookston Defendants' managers, not by Domino's (ECF No. 118-15, ¶¶ 4-6).  Likewise, Plaintiffs present no evidence that they were subject to discipline or supervised in any way by Domino's and, again, sworn testimony confirms that the Cookston Defendants' managers alone controlled the work environment.  (*Id.*)

Further, absent from Plaintiffs' proofs is any evidence (or even suggestion) that Domino's played any role in their employment with the Cookston Defendants.  For example, there is no evidence that Domino's had any role in setting the terms and conditions of their employment, their hours of work or their pay rates, or that wages were paid by Domino's (and not the Cookston Defendants).  The reason for this absence is simple:  the Cookston Defendants were solely responsible for all such matters, and Mr. Cookston attests as much.  (ECF No. 118-

15, ¶¶ 4-6.)  It is noteworthy that while Plaintiffs attempt to make claims of retaliation against Domino's, the only persons to whom they allegedly complained about employment-related matters were the Cookston Defendants (ECF No. 118-5, ¶ 22), and the Cookston Defendants affirm that they alone were responsible for handling such complaints (ECF No. 118-15, ¶¶ 4-6).

### III.     Domino's Is a Franchisor with No Control Over Franchisees' Employment Practices

As a premier and industry-leading franchisor, Domino's maintains various standards and requirements designed to protect the quality of its brand, to which all franchisees must adhere. However, franchisees are independent business owners who are ***solely*** responsible for setting their own terms and conditions of employment and complying with applicable law.[5]  Critically, Plaintiffs have offered nothing to the contrary.  (*See* Statement of Facts, §§ I, II.)

This is unsurprising given that Plaintiffs' "joint employer" allegations are comprised almost entirely of conclusory allegations, principally alleged "upon information and belief" and lacking factual particulars (*see, e.g.,* SAC, ¶ 54), or vague references to the term "Defendants," deliberately eliding over the critical distinctions between Domino's and the Cookston Defendants (*see, e.g., id.*, ¶¶ 52, 53).  Their few averments regarding alleged "control" relate to Domino's provision of product- and brand-related services to the Cookston Defendants and efforts to protect its brand, but nothing more; for instance, Plaintiffs allege that Domino's:

- "identif[ies] and sell[s] store locations to franchisees, assisting in the franchise purchase process . . . and handling new store location and existing store renovation construction projects";

- "provides [franchisees with] instruction regarding food preparation, and the creation and implementation of bookkeeping, accounting, inventory and general operating procedures";

---

[5] Indeed, with franchisees located in 50 states and Puerto Rico (and across the globe), one can only image the cost and burden to Domino's if it were required to monitor and ensure that every franchisee is in compliance with ever-changing federal, state and local laws applicable to each of its franchisees' stores.  Of course, no such obligation exists and, notwithstanding Plaintiffs' protestations, they cite no legal authority in support of any such proposition.

- "controls the inventory supply chain and menu for its franchisees' stores, and regulates the way food is handled, prepared, served and delivered";

- informs shareholders that it utilizes "regional franchise teams [for] distributing materials that help franchise stores comply with our standards and using franchise advisory groups that facilitate communications between us and our franchisees"; and

- "requires its franchisees to establish and retain bookkeeping records" and may audit their "sales reports, financial records and computer data . . . ."

(SAC, ¶¶ 55, 57, 58, 60-62, 67.)

The **only** allegation regarding Domino's' purported involvement in Plaintiffs' employment is the claim that that "Domino's has implemented a uniform proprietary point-of-sale system, called 'PULSE,'" which they contend franchisees must use for "payroll, inventory and operational systems, and [which] allows Domino's administrators access to this information . . . ." (SAC, ¶ 63.)  As attested to by Mr. Cookston, this is deliberately misleading and incorrect in two critical respects:  (i) PULSE is not a payroll system and does not allow franchisees to calculate or disburse wages owed to their employees and, in any event, franchisees are not required to use PULSE for matters unrelated to customer orders; and (ii) other than using PULSE's clock-in and clock-out features, **the Cookston Defendants have not used PULSE for any purpose even remotely related to their payroll since 2009**.  (*See* Piesco Decl., Ex. A.)

<u>**ARGUMENT**</u>

I.   <u>**Domino's' Cross-Motion Should Be Granted**</u>

A.   **Courts Have Broad Discretion to Manage Cases and Regulate Discovery**

District courts enjoy broad discretion to manage discovery and facilitate the just, speedy and inexpensive disposition on their dockets.  *See* Fed. R. Civ. P. 16 (c)(2), 16(d).[6]  Likewise,

---

[6] Fed. R. Civ. P. 16 (c)(2) provides, *inter alia*, that "the court may consider and take appropriate action on . . . (A) formulating and simplifying the issues and eliminating frivolous claims . . . (F) controlling and scheduling discovery [and] . . . (P) facilitating in other ways the just, speedy, and inexpensive disposition of the action."

"[u]nder the terms of Rule 83, courts . . . may 'regulate their practice in any manner not inconsistent with' federal or local rules" and "Rule 83 endorses measures to regulate the actions of the parties to a multiparty suit."  *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989).  As the United States Supreme Court noted in *Hoffman-LaRoche,* this authority "is well settled, as courts traditionally have exercised considerable authority 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Id.* at 172-73 (*quoting Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962))).

## B.    Discovery Should Be Bifurcated

The Franchisor Defendants cross-move for bifurcation to permit expedited discovery on and adjudication of Plaintiffs' "joint employer" claim.  This claim involves discrete discovery, as well as issues which can be readily resolved in an expedited manner, and courts have regularly bifurcated complex actions to preliminarily resolve "joint employer" claims lest the alleged "employer" be required to unnecessarily bear the burden and expense of class-wide discovery. The need for bifurcation is even more compelling here since (i) Plaintiffs submit no evidence in support of their "joint employer" claim, and (ii) extensive precedent unanimously rejects "joint employer" claims in the franchisor/franchisee context – including a recent decision by the California Supreme Court affirming that Domino's was not a "joint employer" with a franchisee. *See Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 498 (Cal. 2014).[7]

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Courts in this Circuit utilize what is commonly referred to as an "economic realities" analysis to determine employer status, analyzing whether the putative employer exerts "formal" or "functional" control over an

---

[7] Although *Patterson* involved claims under Title VII of the Civil Rights Act, 42 U.S.C. 2000e *et seq.*, the "joint employer" analysis is precisely the same.

employee.  *See Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 122 (S.D.N.Y. 2011).  "Formal control" weighs four non-dispositive factors, namely, "'whether the alleged employer (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.'"  *Id.* (citations omitted).  "Functional control" considers, *inter alia*, whether the nominal employer's "premises and equipment were used" by the plaintiffs, its "degree" of supervision over the plaintiffs, whether the plaintiffs' duties were "integral" to its business, and whether the plaintiffs worked "predominantly" for the employer.  *Id.* (*citing Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71-72 (2d Cir. 2003)).

Here, Plaintiffs submit no competent evidence to support that Domino's was their "joint employer" and, in fact, all evidence – including theirs – is to the contrary.  Specifically, there is no evidence or even specific allegation that:  (i) Domino's hired, fired, disciplined or otherwise set the terms of Plaintiffs' employment, or that of any member of the FLSA Collective (it did not); (ii) Domino's supervised Plaintiffs or any member of the FLSA Collective (it did not); (iii) Plaintiffs or the FLSA Collective directed personnel grievances to Domino's – instead, Kucher swears he brought wage and hour complaints to the Cookston Defendants; (iv) Domino's set their pay or otherwise was responsible for their compensation, or had any role with respect to tip disbursements, uniform reimbursements or any other claim at issue (it did not do so); or (v) Domino's had any involvement in any other matter relating to their employment.  To the contrary, the record makes clear that such critical "control" factors were exercised exclusively by the Cookston Defendants – not Domino's.  (*See, e.g.,* ECF No. 118-15, ¶¶ 4-7.)

The sole allegation setting forth any specifics whatsoever – their claim that Cookston franchisees use "PULSE" for payroll – is completely and demonstrably wrong.  As sworn to by

Mr. Cookston, other than using PULSE's clock-in and clock-out features, the Cookston Defendants have not used PULSE for *any purpose even remotely related to their payroll* since *2009* – well before the statutory period at issue here.  In short, Plaintiffs' "joint employer" claim is unsupported by any evidence whatsoever.

Given that Plaintiffs have not (and cannot) put forward any evidence to support their "joint employer" claims, Domino's respectfully submits that bifurcating discovery and addressing the "joint employer" claim first so as to permit early resolution of this claim is warranted, fair and just, and consistent with prior rulings in this Circuit and others.  As other courts have recognized, a "joint employer" claim is a discrete "threshold issue" that is "appropriate to resolve [ ] before proceeding with the rest of the case."  *Dias v. Cmty. Action Project, Inc.*, 2009 WL 595601, at *7 (E.D.N.Y. Mar. 6, 2009).  For this reason, courts in this Circuit routinely bifurcate proceedings to preliminarily resolve "joint employer" claims, particularly where the underlying allegations involve complex matters such as collective and class actions.  For instance, in *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 2010 WL 1778794, at *2 (S.D.N.Y. Apr. 29, 2010), a putative FLSA collective action, the court issued a scheduling order which "provided that fact discovery would initially focus on the joint-employer question and on subject-matter jurisdiction" so as to preliminarily resolve these threshold issues.  Similarly, in *Tate v. Levy Rest. Holdings, LLC*, 2015 WL 9076230 (E.D.N.Y. Dec. 16, 2015), the court ordered "expedited discovery limited to the question of whether there existed an employment relationship between" an alleged joint employer and the plaintiff.

This practical approach has been utilized in many others Circuits, including in class and collective actions and "joint employer" claims against franchisors.  *See, e.g., Wright v. Mt. View Lawn Care, LLC*, 2016 WL 1072506 (W.D. Va. Mar. 11, 2016) (court permitted limited

discovery on joint employer issue and dismissed claims on preliminary dispositive motion); *Salazar v. McDonald's Corp.*, 2016 WL 736213, at *1 (N.D. Cal. Feb. 25, 2016) (scheduling order for expedited discovery on and resolution of franchisor "joint employer" claim).[8]

Bifurcation and prompt resolution is all the more critical here because courts routinely dismiss "joint employer" claims brought against franchisors on summary judgment, just as California's highest court recently did with regard to Domino's.  *See Patterson*, 60 Cal. 4th at 498.  In light of the *Patterson* ruling, and precedent within and outside this Circuit, it would be unjust to require Domino's (or the Cookston Defendants) to proceed through extended litigation when dismissal on summary judgment is a likely result.  *See, e.g., Singh v. 7-Eleven Inc.*, 2007 WL 715488, at *3-6 (N.D. Cal. Mar. 8, 2007) (franchisor's control of store hours, uniforms, food service, deliveries and ability to terminate franchise agreements, as well as ministerial control over payroll, insufficient to survive summary judgment); *Reese v. Coastal Restoration and Cleaning Srvs., Inc.*, 2010 WL 5184841, at *3-5 (S.D. Miss. Dec. 15, 2010) (franchisor not a joint employer where it had insufficient power to fire, hire and supervise franchisee employees); *see also Hatcher v. Augustus*, 956 F.Supp. 387, 392 (E.D.N.Y. 1997) (in Title VII context, franchisor was not "joint employer" where the franchisee retained power over day-to-day operations of his store); *People of State of N.Y. v. Holiday Inns, Inc.*, 1992 WL 532169, at *2 (W.D.N.Y. Aug. 28, 1992) (in discrimination context, ability to terminate franchise relationship was insufficient to establish a "joint employer" relationship).

---

[8] *See also Thornton v. Charter Communs.*, 2013 U.S. Dist. LEXIS 25878 (E.D. Mo. Feb. 26, 2013) (in putative class and collective action, phase one discovery was limited to the joint employer issue); *In re: Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*, 735 F. Supp. 2d 277 (W.D. Pa. 2010) (phase one discovery limited to joint employer issue); *Vondriska v. Paychex Bus. Sols., Inc.*, 2009 WL 632889, at *5 (M.D. Fla. Mar. 11, 2009), *vacated sub nom. Vondriska v. Cugno*, 368 F. App'x 7 (11th Cir. 2010) (in putative FLSA collective action, matter bifurcated so as to permit early discovery with respect to joint employer issue); *see also In re: Jimmy John's Overtime Litig.*, No. 14-cv-5509, ECF Nos. 260-61 (E.D. Ill. Mar. 3, 2016) (bifurcating with respect to joint employer issue).

As the Court (and Plaintiffs' counsel) is aware, litigation through class and collective discovery, which typically will overlap with substantive discovery to a large degree, will be extremely costly and time-consuming:  it will require Domino's to, *inter alia*, pursue discovery from the more than 20 Cookston Defendants; take and/or attend dozens of depositions of the Cookston Defendants' employees and representative class and collective members, not to mention their own corporate representatives; seek discovery from Plaintiffs; oppose class and collective certification (or file a Motion for Decertification); and any other number of ancillary matters (like discovery-related disputes) that may arise.  Domino's should not be needlessly subjected to these burdens when narrowly tailored discovery can quickly and cost-effectively resolve this "joint employer" claim.  Frankly, we see no good-faith reason why Plaintiffs would want to subject Domino's, the Cookston Defendants, or themselves, for that matter, to such unnecessary costs and burdens.

Conversely, there is no prejudice to Plaintiffs in bifurcating discovery.  For its part, should the Court bifurcate discovery and hold Plaintiffs' Motion in abeyance, Domino's has agreed to toll the applicable statute of limitations for the FLSA Collective pending resolution of these claims (ECF No. 124) so there is no possible risk of waiver or any prejudice to Plaintiffs or the class(es) they seek to represent.  Moreover, Plaintiffs will not be required to engage in any additional discovery as a result of bifurcation.  If anything, resolution of the "joint employer" issue now narrow the claims in subsequent proceedings, reduce the parties adverse to Plaintiffs, and limit the parameters of discovery.  While Plaintiffs may want to move forward with class and merits discovery as expeditiously as possible, it makes little sense, economically, procedurally or otherwise, to require the parties to engage in all-out class and collective

13

discovery when resolution of the "joint employer" claim likely will eliminate Domino's from this case.

**II.**     **Conditional Certification Should Not Be Granted**

    **A.**     **Applicable Standard**

The FLSA permits employees to maintain an action "for and in behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  A court thus may permit conditional certification of an FLSA collective where a plaintiff has demonstrated that he is "similarly situated" to the other members of the proposed collective, which is shown only by the plaintiff setting forth evidence "demonstrat[ing] that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Castro v. Spice Place, Inc.*, 2009 WL 229952, at *2 (S.D.N.Y. Jan. 30, 2009) (citations and internal quotations omitted).  District courts have discretion to deny conditional certification.  *See Morales v. Plantworks, Inc.*, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006).

Courts in this Circuit require that a plaintiff make a "modest factual showing" to support certification, *Mendoza v. Casa de Cambio Delgado, Inc.*, 2008 WL 938584, at *1 (S.D.N.Y. Apr. 7, 2008), and a plaintiff's burden "cannot be satisfied simply by unsupported assertions."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *see also Romero v. H.B. Auto. Grp.*, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) (rejecting "conclusory allegations" because "[w]hile Plaintiff's burden of proof is low, it is not non-existent – certification is not automatic.").  Accordingly, a plaintiff must offer "actual evidence" and cannot rely upon "mere conclusory allegations."  *Mata v. Foodbridge LLC*, 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015) (*quoting Qing Gu v. T.C. Chikurin, Inc.*, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)).  Such evidence must establish "a factual nexus" between the plaintiff and potential opt-in plaintiffs.  *Ji v. Jling Inc.*, 2016 WL 2939154, at *3 (E.D.N.Y. May 19, 2016); *see also Mendoza*,

2008 WL 938584, at *2 (plaintiffs failed to submit evidence of factual nexus where their

"affidavits . . . appear to be boilerplate and virtually identical").

**B.      Conditional Certification of the FLSA Collective
          Should Not Be Granted as to the Franchisor Defendants**

Plaintiffs' Motion fails to provide any evidentiary basis for conditionally certifying the

FLSA Collective as to Domino's.  Specifically, Plaintiffs' Motion offers nothing to support that

Domino's had any involvement in their employment, fails to show that Domino's maintained any

"common unlawful policy" with respect to the FLSA Collective, and does not demonstrate that

Plaintiffs are "similarly situated" with the FLSA Collective.  Given this, conditional certification

as to Domino's is improper and should be denied.

### 1.   *Plaintiffs Have Failed to Present Any Evidence to Support that Domino's Was Their "Joint Employer"*

Plaintiffs' Motion seeks to conditionally certify a collective of persons purportedly

"jointly employed" by Domino's.  Plaintiffs, however, have failed to make any showing, not

even a "modest" one, that Domino's was their employer.  Accordingly, the FLSA Collective

cannot be certified as to Domino's and the Motion properly should be denied.  *See, e.g., Castro*,

2009 WL 229952, at *2 (denying conditional certification where nominal employees did not put

forward evidence of joint employer relationship); *Levinson v. Primedia Inc.*, 2003 WL

22533428, at *1 (S.D.N.Y. Nov. 6, 2003) (denying conditional certification where plaintiff failed

to produce evidence that members of the FLSA collective were employed by the defendant).

A "joint employer" relationship may exist only where "formal" or "functional" control is

exercised ***over the employee*** by the purported joint employer.  (*See* § I.B, *supra*.)  Here,

Plaintiffs' declarations, and those of Messrs. Boby and Kivria, are bereft of any such evidence,

whether with respect to payroll, hiring and firing decisions, or anything else.  To the contrary,

each of them affirms (consistent with Mr. Cookston's Affidavit) that the Cookston Defendants were their respective employers:

- Plaintiff Kucher swears, "I was employed by Robert Cookston" and "worked at five different locations owned by Mr. Cookston" (ECF No. 118-5, ¶¶ 2, 6, 13);

- Plaintiff Mojumder declares, *inter alia*, about "my experience working for Mr. Cookston . . . I was forced to clock-out and continue to work" (ECF No. 118-13, ¶ 4);

- Non-party Kivria affirms, "I was employed by Robert Cookston at one of his Domino's locations" (ECF No. 118-4, ¶¶ 2, 3); and

- Opt-in plaintiff Boby swears, "I was employed by Robert Cookston at one of his Domino's locations" (ECF No. 118-3, ¶ 3).

While the declarations allege purported wage and hour violations, ***none*** is attributed, directly or indirectly, to the Franchisor Defendants:  the affiants do not contend, for instance, that the Franchisor Defendants failed to make any wage payments, required them to work off the clock, or failed to pay them at the applicable overtime rate.  (*See generally* ECF Nos. 118-3, 118-4, 118-5, 118-13.)  In fact, the affiants do not claim that the Franchisor Defendants had any role whatsoever with respect the claims at issue here.  Suffice it to say, the evidence before the Court not only refutes the existence of a "joint employer" relationship, it confirms that the Cookston Defendants exercised complete control over the Plaintiffs and all matters concerning their employment.  (*See, e.g.,* ECF No. 118-15, ¶¶ 4-7.)

Indeed, nowhere in Plaintiffs' application is there even the hint of an argument that Domino's had any involvement in their underlying claims.  To the extent Domino's even is remotely "referenced," it is through Plaintiffs' effusive use of the term "Defendants"; yet, in each such instance, the underlying declaration refers only to the Cookston Defendants' alleged conduct.  (*Compare, e.g.,* Motion, pp. 12 ["Mr. Kucher and Mr. Mojumder were both employed by Defendants"] *with* ECF No. 118-5, ¶ 2 [Kucher affirming that he was "employed by Robert

16

Cookston" and saying nothing of the Franchisor Defendants] and ECF No. 118-13, ¶¶ 2, 4 [Mojumder declaring that he was employed at "205 Allen Street," a Cookston Defendant, and that he "work[ed] for Mr. Cookston"]).  Such unsupported allegations cannot satisfy Plaintiffs' evidentiary burden.  *See Morales*, 2006 WL 278154, at *3 (denying conditional certification when plaintiffs "offered nothing of evidentiary value").

Plaintiffs' motion makes a single fleeting reference to the purported "joint employer" relationship, contending that Domino's once "was successfully included as a joint-employer defendant in a previous wage action in New York," citing to *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 256 (S.D.N.Y. 2012).  (Motion, p.6.)  Of course, this decision has no precedential value:  in *Cano*, the plaintiffs and franchise defendants ***stipulated*** to conditional certification (unlike here) and the decision involved a motion to amend the complaint to add Domino's corporate entities after that stipulation and the Court was therefore required to assume the complaint's allegations as true.  To be sure, if the court is inclined to consider *Cano*, then it should consider the more relevant cases *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 498 (2014), in which the California Supreme Court, considering a fully developed record on summary judgment, affirmed that Domino's was not a "joint employer" with one of its franchisees; and *Chen v. Domino's Pizza, Inc.*, 2009 WL 3379946, at *4 (D.N.J. Oct. 16, 2009), where the court dismissed Domino's from the action out of hand, finding that the plaintiff had failed to plead a "joint employer" claim.[9]

---

[9] To the extent the Court is inclined to consider *Cano*, it should also consider the fact that the ***only*** case that *Cano* relied on in concluding that the plaintiffs had pled enough to survive a motion to dismiss – a decision from the Western District of Texas entitled *Orozco v. Plackis*, 2012 WL 2577522 (W.D. Tex. July 3, 2012) – was subsequently reversed by the Fifth Circuit Court of Appeals.  The appellate court concluded that the district court erred in not granted the franchisor's motion for summary judgment, as it was clear, as a matter of law, that the franchisor was not a joint employer under the FLSA.  *Orozco v. Plackis*, 757 F.3d 445 (5th Cir. 2014).

The fact of the matter is that the relationship between Domino's and the Cookston Defendants (and its other franchisees) is typical to franchisors and franchisees, pursuant to which franchisees license and use Domino's trademarks and sell Domino's-brand products, but otherwise operate as completely separate corporate entities. Plaintiffs' SAC and "evidence" offers nothing to the contrary, as even their "joint employer" allegations principally rely on irrelevant facts such as that Domino's purportedly "assist[ed] the franchise purchase process," provided instructions on "food preparation, and the creation and implementation of bookkeeping, accounting, inventory and general operating procedures," and held influence over the supply chain. (*See* SAC, ¶¶ 55, 57, 58.) These considerations have nothing to do with whether Domino's exercised "formal" or "functional" control over Plaintiffs' or the FLSA Collective's employment; rather, they reflect that the contractual relationship between Domino's and its franchisees is arm's-length and contemplates franchisees being exclusively responsible for their employment needs.

### 2. *Plaintiffs Have Not Carried Their Burden to Show They Were Subject to Any "Common Policy" by Domino's*

Plaintiffs' Motion fails as to Domino's for the additional reason that they have not made the required showing that they "were victims of a common policy or plan [perpetrated by Domino's] that violated the law." *Castro*, 2009 WL 229952, at *2 (citations and internal quotations omitted). As set forth above (*see* § II.B.1, *supra*), Plaintiffs proffer no evidence that Domino's – as opposed to the Cookston Defendants – engaged in, were complicit in, or had any involvement whatsoever with respect to any of the claims at issue here, and they certainly do not adduce evidence of a "common policy or plan" ***by Domino's*** that violated the law.

Plaintiffs appear to argue that allegations (not evidence) made by the New York Attorney General in two unrelated proceedings involving unrelated Domino's franchisees constitute

"evidence" of some "common policy" by Domino's.  (*See* Motion, pp. 5-6.)  This so-called "evidence" is completely unavailing.  *First*, these proceedings do not involve the same franchisees as in the present action.[10]  (ECF Nos. 118-10 through 118-12.)  *Second*, the "evidence" submitted concerns only allegations against franchisees – not the Franchisor Defendants.  (*Id.*)  *Third,* these are unsubstantiated *allegations* made by a third-party, not evidence – they are, at best, hearsay.  *See Jin Yun Zheng Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, 2013 WL 5132023, at *4 (E.D.N.Y. Sept. 12, 2013) (*quoting Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 353 (E.D.N.Y. 2008)) ("Plaintiffs must make a *factual* showing; 'mere allegations in the complaint are not sufficient.'") (emphasis in original). *Finally*, Plaintiffs contend that Domino's "point-of-sale" system, PULSE, referenced in an allegation by the Attorney General, reflects a "common policy" because franchisees must use it for payroll purposes.  (Motion, p. 15 n.8.)  This allegation, unsubstantiated by any fact, is both wrong and, even if true, irrelevant as Mr. Cookston has attested that the Cookston Defendants have not used the PULSE system for payroll purposes since 2009.  (Piesco Decl., Ex. A.)

### 3.  Plaintiffs Have Not Shown that a Common Policy Exists Across Each of the Cookston Defendants' Stores

Plaintiffs' Motion also fails to establish that they were subject to a "common unlawful policy" with respect to each of the Cookston Defendants.  While courts will find "named plaintiffs to be similarly situated to employees at locations where they did not work," such findings are subject to the requirement that "the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice," and the fact of mere common ownership does

---

[10] To the extent Plaintiffs rely on these proceedings to allege a "joint employer" relationship, allegations relating to franchisees that are not party to the present action are irrelevant.  *See In re: McDonald's USA, LLC*, 364 N.L.R.B. No. 14, 2016 WL 3035121 at *2 (N.L.R.B. May 26, 2016) ("any franchisee-specific joint employer evidence introduced or admitted during one 'specific franchisee' hearing stage cannot be used against the other respondents") (concurring).

not suffice to show such a "common policy." *Guaman v. 5 M Corp.*, 2013 WL 5745905, at *3 (S.D.N.Y. Oct. 23, 2013) (*citing Hamadou v. Hess Corp.,* 915 F.Supp.2d 651, 662 (S.D.N.Y. 2013)).  Indeed, courts in this Circuit demand that declarations supporting certification reflect "where or when these observations . . . occurred." *Sanchez v. JMP Ventures, LLC,* 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014); *see also She Jian Guo v. Tommy's Sushi Inc.*, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (denying conditional certification based on "unsupported assertions" regarding discussions and comparisons among coworkers).

Here, Plaintiffs adduce no evidence of a common wage and hour policy across the Cookston Defendants' various stores, let alone evidence that Domino's directed or was complicit in such policies.  Their sole submissions are declarations which put forward vague, generalized allegations that fail to identify with any specificity, *inter alia*, what stores they purport to have observed violations at, specifics as to what the purported violations were at each store, or anything else constituting a ***factual*** averment to support certification.  (*See, e.g.,* ECF No. 118-5, ¶¶ 3-5, 15 ["all of the Assistant Store Managers and CSRs" were "treated more or less identically across the board"] ; ECF No. 118-13, ¶¶ 6, 9 [same].)

Courts require far more specificity than is set forth in Plaintiffs' conclusory declarations, and routinely reject generalized assertions that a plaintiff merely "observed" unnamed employees.  *See Jin Yun Zheng*, 2013 WL 5132023, at *5 (rejecting claim that plaintiff "observed' violations but "neither identifie[d] these employees nor explain[ed] the basis for her observations").  Here, Plaintiffs' general allegations that "all" employees were "forced to work off the clock" across 24 stores is insufficient, as courts require concrete factual allegations in support of conditional certification.  (*See, e.g.,* ECF No. 118-13, ¶ 9.)  *Rosario v. Valentine Ave. Disc. Store, Co.*, upon which Plaintiffs rely heavily, is inapposite because in that case the court

permitted conditional certification when a sworn declaration was submitted detailing, *inter alia*, the names of co-workers whom the plaintiff claimed were underpaid and a work schedule at each of six stores over a 16-year period. *Rosario*, 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011). *See also Khan v. Airport Mgmt. Servs., LLC*, 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011) (motion relied on "unsupported assertions" where the plaintiff "claim[ed] to have personal knowledge that 'defendants hired at least 40 similar newsstand workers [at other locations],'" but did not "identify these 40 workers by name or specify the source for this claim.").

Contrary to Plaintiffs' generalized and conclusory assertions, Mr. Cookston's declaration is clear: each store is subject to the management and control of a store-specific manager. (*See* ECF No. 118-15, ¶¶ 4-6.) To this end, Plaintiffs submit nothing – other than generalized allegations – supporting that a "common policy" exists: they do not claim, for instance, that a single manager oversaw all the stores, that the Cookston Defendants maintained uniform policies, or anything else of the sort and, ultimately, their SAC, Motion and "evidence" attributes all purported claims to Mr. Cookston, not Domino's. (*See, e.g.,* Motion, pp.11-14.)

Likewise, Plaintiffs cannot hope for conditional certification across all of the Cookston Defendants' stores. Despite generally alleging violations at each store in their SAC, their declarations only allege personal knowledge regarding the purported "common policy" at the few stores at which they worked, ***and not each of the 20-plus franchisee defendants in this action***. Courts have refused to extend FLSA collectives to stores where, as here, the plaintiff cannot factually allege a "common policy" governing both the plaintiff's worksite and the other locations. *See Guaman*, 2013 WL 5745905, at *3 (rejecting certification as to three store locations as the plaintiff had relied on a self-serving affidavit but put forward no evidence of a common policy); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 558 (S.D.N.Y.

2013) (denying motion for conditional certification of FLSA collective "plaintiffs [did] not demonstrate[] across all locations a uniform policy of failure to pay overtime compensation.").

## III.   Plaintiffs' Proposed Notice to the Collective Is Prejudicial

For the reasons set forth above (*see* § II, *supra*), issuance of the proposed notice to the FLSA Collective (the "Notice") as to Domino's at this juncture is premature and improper.  In addition, the Franchisor Defendants object to the Notice itself as it fails to make any delineation between the Franchisor Defendants and the Cookston Defendants.  This, obviously, is prejudicial to Domino's in that it presumes a "joint employer" relationship exists, when to date Plaintiffs have put forward nothing to support this claim.  *See, e.g., Patterson*, 60 Cal. 4th at 498 (affirming that Domino's was not a "joint employer" on summary judgment).

Moreover, the Notice fails to set forth the Franchisor Defendants' primary defense to this action, namely that it never employed Plaintiffs or any member of the FLSA Collective, and that it is not a "joint employer" with the Cookston Defendants.  Instead, the Notice merely states a conclusory denial of liability by "Defendants" which, again, improperly suggests that Domino's is their employer.[11]

## IV.   Plaintiffs' Motion Should Not Be Decided
##        Prior to Ruling on the Pending Motion to Dismiss

The Court's April 27, 2016 Order provides that "if Plaintiffs believe this Court may resolve any motion for conditional certification before resolving a motion to dismiss for lack of personal jurisdiction, they are ordered to include such authority in their memorandum of law supporting their motion for conditional certification."  (ECF No. 109, p.3.)  This Order was

---

[11] Should the Court determine that issuance of the Notice is appropriate at this juncture, Domino's respectfully requests that any order to produce contact information for the members of the FLSA Collective be directed to the Cookston Defendants in so much as Domino's does not have possession, custody or control of any such information.

issued after a subset of the Cookston Defendants (the "Connecticut Franchisees") filed a motion

to dismiss for lack of jurisdiction.  (ECF No. 101.)

It is Domino's view – one supported by ample precedent – that proceeding in a deliberate

and orderly manner is appropriate, particularly where dealing with a collective action which can

be extremely broad and involve a substantial number of parties.  To this end, Domino's submits

that resolution of the motion to dismiss at a preliminary stage is appropriate as it will narrow the

issues before the Court and eliminate potentially unnecessary parties from this action, just like

preliminary resolution of the "joint employer" issue will streamline the litigation.

It is well-settled that a Court may "postpone deciding the issue" of conditional

certification "pending further discovery and motion practice."  *Amendola v. Bristol-Myers

Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) (denying motion for conditional

certification); *see also In re Starbucks Emp. Gratuity Litig.*, 264 F.R.D. 67, 75 (S.D.N.Y. 2009),

*aff'd,* 549 F. App'x 1 (2d Cir. 2013) ("A district court may reserve decision on a class

certification motion pending disposition of a motion to dismiss."); *Peng Bai v. Fu Xing Zhuo*,

2014 WL 2645119, at *1 (E.D.N.Y. June 13, 2014) (motion for conditional certification stayed

pending motion to dismiss).  A stay is all the more appropriate where the motion at issue is one

seeking to dismiss for lack of jurisdiction.  *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127,

130 (2d Cir. 1987) (staying discovery where a motion to dismiss for *forum non conveniens* was

pending).

Here, there is no legitimate basis for proceeding with conditional certification prior to

resolving the Connecticut Franchisees' motion to dismiss.  Indeed, resolving the pending motion

first will permit the action to proceed in an orderly manner by defining the scope of potential

members of the collective and the issues before the Court.  Moreover, the pending motion to

dismiss also is, in effect, a motion to dismiss claims against Domino's:  should the Connecticut Franchisees be dismissed, so too will such claims against Domino's be dismissed.

Pre-emptive certification also risks serious confusion as employees of the Connecticut Franchisees may become FLSA Collective members, only to be promptly dismissed from the action.  With this in mind, pre-emptive certification also risks prejudice to Domino's and the Cookston Defendants:  it unnecessarily duplicates proceedings, increase litigation costs and risk inflammatory notices being sent to persons who may be dismissed based on the pending motion.

Conversely, Plaintiffs' arguments in support of hearing conditional certification at this juncture are misplaced, fail to the discrete issue posed by the Court and do not offer any basis as to how an premature decision on conditional certification could be in any way beneficial. Plaintiffs argue that Mr. Cookston constitutes an employer under the FLSA and, as such, this Court has jurisdiction over all claims arising from any store he owns, no matter where located. (Motion, pp. 23-24.)  However, they cite no authority for the proposition that they can circumvent jurisdictional requirements in this manner, and they present no evidence – only allegations from the SAC – to support their position that a "common policy" exists.  (*Id.*)

Plaintiffs' also cite several cases which they claim support of their position.  However, not one actually addresses the specific question raised by the Court and each is readily distinguishable.  For instance, Plaintiffs cite *Ji Li v. Ichiro Rest. Inc.*, 2015 WL 6828056, at *1 (S.D.N.Y. Nov. 5, 2015); while conditional certification was granted pending a motion to dismiss, that motion was for improper service, which could be remedied, not for lack of personal jurisdiction, which cannot be remedied.  Similarly, in *Yahraes v. Rest. Assocs. Events Corp.*, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011), the court considered a motion to dismiss pending conditional certification.  However, that motion was for dismissal of state law claims,

and not on whether the Court could hear the FLSA claims in the first instance.  Lastly, Plaintiffs cite *Guy v. Casal Inst. of Nev., LLC*, 2014 WL 1899006, at *2 (D. Nev. May 12, 2014), where the Nevada District Court considered a motion to dismiss for failure to state a claim and declined to stay certification because it was "not convinced" it would grant the motion to dismiss.

Simply put, the cases offered by Plaintiffs are neither compelling nor precedential. Domino's, however, has cited several cases which support its position that the motion to dismiss should be decided prior to resolving the Motion.

## CONCLUSION

Based on the foregoing, the Franchisor Defendants respectfully requests that the Court grant its Cross-Motion for bifurcation, such that discovery and resolution of Plaintiffs' "joint employer" claims occur prior to class-wide discovery, deny the Motion as to the Franchisor Defendants, and issue such other and further relief as this Court deems appropriate.

Dated: New York, New York
        June 16, 2016

Respectfully submitted,

**DLA PIPER LLP (US)**

By: /s/ Eric J. Wallach
    Eric J. Wallach

Eric J. Wallach
Joseph A. Piesco
Garrett D. Kennedy
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
E-mail: eric.wallach@dlapiper.com

*Attorneys for Defendants Domino's Pizza, Inc., Domino's Pizza LLC and Domino's Pizza Franchising LLC*