UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Riad Kucher, Haroon Mojumder, and Omar Faruk, on
behalf of themselves and all other similarly-situated
employees,

Plaintiffs,

-v-

Domino's Pizza, Inc., et al.,

Defendants.

16-cv-2492 (AJN)

MEMORANDUM &
ORDER

---

ALISON J. NATHAN, District Judge:

Named Plaintiffs Riad Kucher, Haroon Mojumder, and Omar Faruk, joined by opt-in

Plaintiffs Amanul Islam Boby, Sakhayat Hossain, and Zakira Hossain Renu, bring various claims

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and New York law,

against Domino's Pizza, Inc., Domino's Pizza, LLC, and Domino's Pizza Franchising, LLC

(collectively, the "Franchisor Defendants"), against numerous Domino's pizza franchise

restaurants in New York State and Connecticut owned by Robert Cookston, and against

Cookston himself, in his individual and professional capacities (collectively, the "Cookston

Defendants"). *See generally* Third Amended Complaint (Dkt. No. 171) (hereafter, the

"Complaint"). Currently before the Court are (1) the Plaintiffs' motion for an order granting

conditional class certification, court-authorized notice, and disclosure of contact information,

pursuant to the FLSA; and (2) a motion to dismiss the Complaint as alleged against four

Connecticut restaurants for lack of personal jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(2). Dkt Nos. 116, 119. For the following reasons, the motion for conditional

1

certification is granted and the parties are ordered to meet and confer and submit a joint letter addressing the contents of court-authorized notice and disclosure of contact information, as described below. The motion to dismiss is denied without prejudice, subject to renewal after a period of jurisdictional discovery.

## I.    Background

### A. The Complaint

On August 26, 2016, the Plaintiffs filed their Third Amended Complaint in this action. That Complaint alleges the following:

The named Plaintiffs, Riad Kucher, Haroon Mojumder, and Omar Faruk, are three individuals who worked at one or more Domino's pizza restaurants owned by defendant Robert Cookston for some period of time from 2014 to 2016. *See* Complaint ¶¶ 17-19. Kucher worked as an assistant store manager and customer service representative at five such restaurants located in New York from November 2014 through January 2016, including one located at 205 Allen Street, New York, New York. *Id.* ¶ 17. Mojumder worked as a delivery driver at the 205 Allen Street location from July 2014 through January 2016. *Id.* ¶ 18. Faruk worked as a customer service representative and assistant store manager at the Allen Street restaurant from October 2014 through December 2015. *Id.* ¶ 19.[1]

The Cookston Defendants consist of a number of corporations located in New York State and Connecticut, which the Plaintiffs claim are each owned and operated by Robert Cookston, as well as Mr. Cookston himself. *See* Complaint ¶¶ 23-49. The Plaintiffs assert that both Mr.

---

[1] On August 25, 2016, after the instant motions were filed, named Plaintiffs Kucher and Mojumder, as well as opt-in Plaintiff Amanul Islam Boby, accepted offers of judgment from the Cookston Defendants. *See* Dkt. No. 172. The third named Plaintiff, Omar Faruk, opted into this suit on August 10, 2016, Dkt. No. 157, and, with leave of the Court, was added as a named Plaintiff in the Third Amended Complaint, Dkt. No. 164. In addition to Kucher, Mojumder, Boby, and Faruk, Sakhayat Hossain and Zakira Hossain Renu opted into the suit on September 22, 2016. Dkt. Nos. 176, 177.

Cookston and his various pizza restaurants were "employer[s]" of the Plaintiffs, under the FLSA. *Id.* ¶ 49; *see id.* ¶¶ 75-84 (alleging Cookston provides "all financial support" to the pizza franchises, that corporate officers and employees are shared between New York and Connecticut restaurants, that Cookston has the power to hire and fire corporate and lower-level employees, and that he controls "all aspects of operational policy" at all of his restaurants). The Plaintiffs also claim that the Franchisor Defendants are joint employers of the Plaintiffs. *Id.* ¶¶ 20-22; *see id.* ¶¶ 50-74 (alleging employees receive training performed pursuant to Domino's policies and practices, that Domino's performs routine inspections of its franchise locations, that Domino's controls policies and procedures and dictates employee behavioral rules and uniform requirements, that Domino's provides operational support to the Cookston Defendants, that Domino's implemented a "uniform proprietary point-of-sale system," known as "PULSE," in 99% of its franchise locations, and that Domino's has the power to terminate franchise agreements if franchisee's fail to abide by certain Domino's policies and standards (citing Domino's Pizza, Inc., *Annual Report* (2015), *available at* http://phx.corporate-ir.net/phoenix.zhtml?c=135383&p=irol-reportsannual)).

According to Plaintiffs, the Defendants have a policy of violating the Fair Labor Standards Act by failing to pay assistant store managers, customer service representatives, and delivery drivers the relevant minimum wage, in violation of 29 U.S.C. § 206, and failing to pay overtime compensation, in violation of 29 U.S.C. § 207. *See id.* ¶¶ 170-180. These violations purportedly stemmed from the same general set of facts: the Plaintiffs claim that all of the Defendant pizza restaurants maintained a "clock-in" system, in which employees entered their name, Domino's identification number, and password into a computer system that tracked the hours they worked. *Id.* ¶ 88. The Defendants required the Plaintiffs, as well as all other assistant

store managers, customer service representatives, and delivery drivers, to continue working after they had clocked out. *Id.* ¶ 89. As a result, although Plaintiffs regularly worked in the range of 65 hours per week, they were compensated for only 40 to 45 hours of weekly work. *Id.* ¶ 92. The Plaintiffs claim that, as to these two FLSA violations, they are similarly situated to a group of individuals consisting of "[a]ll individuals who were employed by Defendants at one of the Cookston Defendants' locations as [Assistant Store Managers], [Customer Service Representatives] and Delivery Drivers during the FLSA Collective Period." ¶ 139. They bring both of their FLSA claims on behalf of this collective. *See id.* ¶¶ 170-180.

In addition to these alleged FLSA violations, the Plaintiffs claim various violations of New York Labor Law stemming from the clock-out policy, as well as stemming from failures to pass tips on to employees, *see id.* ¶¶ 101-105, requirements that Plaintiffs pay for certain uniforms, *id.* ¶¶ 114-118, and purportedly unlawful deductions from Plaintiffs' wages, *id.* ¶¶ 119. They seek to bring the New York Labor Law claims as a class action pursuant to Federal Rule of Civil Procedure 23. *Id.* ¶ 146. The Plaintiffs also claim that two of the Defendants' managers attempted to intimidate two Plaintiffs in this action and one non-party to deter them from pursuing this suit, and that Mr. Kucher was fired when he complained about wage violations. *See id.* ¶¶ 120-138.

**B. Evidence submitted in support of the motion for conditional certification**

In support of the instant motion for conditional certification, the Plaintiffs submitted additional evidence.

First, the Plaintiffs submitted four declarations from former employees of various restaurants owned by Robert Cookston, Amanul Boby, Miron Kivria, Riad Kucher, and Haroon Mojumder. *See* Dkt. No. 118, Exs. C, D, E, M. Amanul Boby avers that he worked as an

4

assistant store manager at the 205 Allen Street location from November 2014 to January 2016. Boby Decl. ¶¶ 3, 7. Throughout his employment, he claims he was paid approximately $9-10 dollars an hour and required to clock-out prior to completing his work day, and that this policy resulted in his not being compensated for around 15 hours (out of a total of 55-60 hours) of work each week. *Id.* ¶¶ 9-11. He states that he observed assistant store managers and customer service representatives being subject to the same clock-out policy. *Id.* ¶ 12. Kivria, Kucher's brother, alleges in a declaration that he worked for an unspecified restaurant owned by Mr. Cookston from 2001 to 2004, and then again at another unspecified location for a month in 2015, and that he observed the same clock-out policy throughout his employment. Kivria Decl. at ¶¶ 2, 3, 7-10. He further claims that he observed others being subjected to the same policy. *Id.* ¶ 10. Kivria also states that two managers of restaurants owned by Mr. Cookston came to his home and threatened to kill him and Mr. Kucher as a result of their involvement in this case. *Id.* ¶ 16.

Kucher states that he worked at five different locations owned by Cookston, including the 205 Allen street location, from November 2014 to January 2016, as a customer service representative and then as an assistant store manager. Kucher Decl. ¶¶ 2, 6. He claims that he was subject to the same clock-out policy, and that all assistant store managers and customer service representatives he observed were subject to that policy. *Id.* ¶¶ 7-10, 14. Finally, Mojumder alleges that he worked at the 205 Allen Street location from July 2014 through January 2016 as a delivery driver by title, though he would perform tasks typically performed by assistant store managers and customer service representatives after clocking out. Mojumder Decl. ¶ 2-3. He corroborates the clock-out policy, *id.* ¶¶ 4-5, and indicates that all delivery drivers at the Allen Street location were subject to it, *id.* ¶ 9.[2]

---

[2] On September 22, 2016, the Plaintiffs moved for leave to file a sur-reply in order to provide additional declarations from opt-in Plaintiffs Faruk, Hossain, and Renu, all of whom opted in after the filing of the instant

In addition to declarations, the Plaintiffs provided evidence of various actions filed against Domino's franchisees, or Domino's itself, by the New York Attorney General's office, claiming violations of New York Labor Laws. *See* Dkt. No. 118, Exs. B, J, K, L. In particular, the Plaintiffs provided an "assurance of discontinuance," signed by Robert Cookston, noting that the New York Attorney General's office commenced an investigation of Domino's franchise stores owned and/or operated by Robert Cookston prior to December 2013, and that in December 2013 the office received complaints that employees at a Washington Heights location (3683 Washington Heights Pizza, LLC, a Defendant in this action), had been terminated after complaining of certain wage and hour violations. *See* Ex. K at 4. The Cookston Defendants, in turn, provided as an exhibit attached to their opposition a second assurance of discontinuance between various Cookston franchise stores and the New York Attorney General. *See* Dkt. No. 137, Ex. F. In that document, the New York Attorney General includes various "findings" of fact: in particular, that "from January 2011 through December 2013, certain delivery employees in 3683 Washington Heights Pizza, LLC performed work at the end of their shifts, but were not paid any wages for this work." *Id.* at 7. The report also refers to a 2012 U.S. Department of Labor investigation "substantiat[ing] similar allegations regarding three other Cookston New York stores, Cookston Enterprises, Inc., Mumbah Style Pizza, Inc., and Hat Trick Pizza, Inc.," all Defendants in this action. *See id.* at 7 n.2. The assurance of discontinuance also mentions certain other violations that the Attorney General found occurred at several of the Cookston restaurants in New York, and references a $675,000 settlement, for which Mr. Cookston agreed "to assume all personal and individual liability." *Id.* at 28. Cookston, as president of each of the

---

motion for conditional certification. *See* Dkt. No. 178. The Court denied this motion on October 4, 2016. Dkt. No. 180.

eleven restaurants subject to the investigation, signed the assurance of discontinuance on behalf of each store. *Id.* at 34-36.[3]

The Defendants, in opposing the instant motion for conditional certification, also attached, *inter alia*, two declarations of Robert Cookston. *See* Dkt. No. 137, Ex. C; Dkt. No. 140, Ex. A.  In the first, Cookston claims that each NY store has one general manager, that such managers do not move between locations, and that managers determine, or help to determine, work schedules at particular locations. *See* Dkt. No. 137, Ex. C ¶ 4; *see also id.* ¶ 7 (noting that "each of the NY Cookston Defendants are not even open during the same hours").  Cookston also claims that assistant store managers have duties including oversight of customer service representatives and delivery personnel and oversight of the store's clock in and clock out procedures. *Id.* ¶ 5.  He further states, *inter alia*, that, based on his "preliminary review of [his] records," Kucher was never employed as an assistant store manager at Cookston's stores. *Id.* ¶ 5. Cookston, in his second declaration, also alleges that the New York restaurants have not used Domino's PULSE system for any payroll-related purpose since sometime in 2009, though he also indicates that the restaurants have used PULSE's clock-in and clock-out features.  Dkt. No. 140, Ex. A ¶ 4.

## II.    Motion for Conditional Certification under the FLSA

---

[3] The Cookston Defendants do not argue that the Court should not or cannot consider any of the evidence the Plaintiffs produced in support of their motion.  Domino's, in contrast, argues that some of the Plaintiffs' exhibits should not be considered or should receive less evidentiary weight. *See* Dkt. No. 139 at 19.  Domino's arguments to this effect are either unconvincing or moot.  Domino's first argues that some of the exhibits contain hearsay statements and thus should not be considered. *Id.*  However, courts in this circuit regularly rely on hearsay statements in determining the propriety of sending notice in FLSA cases, and Domino's makes no argument why such reliance would be improper. *See, e.g.*, *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 449 (S.D.N.Y. 2013); *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y.2012).  Domino's next argues that many of the exhibits do not pertain to the franchisees at issue in this case, and thus are irrelevant.  Dkt. No. 139 at 19.  Because the Court, in resolving the pending motion, has relied only on exhibits that pertain to or reference the Cookston Defendants, that argument is moot.

The Court first addresses the Plaintiffs' motion for an order granting conditional certification, court-authorized notice, and discovery, pursuant to 29 U.S.C. § 216(b).  *See* Dkt. No. 117 (hereafter, "Pl. Br."); *see also* Dkt. No. 137 (hereafter "Cookston Opp."); Dkt. No. 139 (hereafter "Franchisor Opp."); Dkt. No. 145 (hereafter "Pl. Reply").  Plaintiffs seek to send notice of this action to "all [assistant store managers], [customer service represntatives] and Delivery Drivers who were employed by Defendants at one of the Cookston Defendants' locations during the relevant statutory period." Pl. Br. at 4.  The Cookston Defendants argue, in response, that the Plaintiffs have failed to present sufficient evidence to demonstrate that they are similarly situated to all assistant store managers, customer service representatives, and delivery drivers at all of Cookston's Domino's franchises.  *See* Cookston Opp. at 12-19.  The Franchisor Defendants, in turn, argue that conditional certification should not be granted as the Plaintiffs have failed to provide any evidence that Domino's is jointly liable for any violations that may have occurred at the Cookston Defendants' stores.  *See* Franchisor Opp. at 15.  Both sets of Defendants also argue that the Court should not resolve the pending motion for conditional certification until resolving the pending motion to dismiss, a position that the Plaintiffs dispute. *Contrast* Cookston Opp. at 7-10; Franchisor Opp. at 22-25; *with* Pl. Reply at 13-15.  For the following reasons, the Court grants the Plaintiffs' motion for conditional certification.  In light of this resolution, the Court will reserve decision on the parties' arguments concerning the text and dissemination of the notice until the parties have met and conferred and attempted to resolve their disagreements.

### A.  Legal Standard

The FLSA authorizes workers to sue on behalf of both themselves and "other employees similarly situated." 29 U.S.C. § 216(b).  District courts in FLSA actions have the discretion to

facilitate this collective mechanism by authorizing "'notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)); *see also id.* at 555 n.10 ("[W]hile courts speak of 'certifying' a FLSA collective action, it is important to stress that the 'certification' we refer to here is only the district court's exercise of the discretionary power . . . to facilitate the sending of notice to potential class members."). In determining whether to exercise this discretion, district courts in this Circuit use a two-step approach. *See Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 369–70 (S.D.N.Y. 2014). First, courts make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. Second, after additional plaintiffs have opted in (to the degree any do so), "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* If they are not, then the action may be "de-certified." *Id.*

Plaintiffs' motion concerns the initial determination that the Court must make, at the first step, whether to send notice to potential opt-in plaintiffs. The Court may send such notice provided that the Plaintiffs provide some indication that they are indeed "similarly situated" to other employees in the putative collective. *See id.* Such a demonstration is not an onerous one: Plaintiffs need only make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)); *see also Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-cv-5651 (AJN), 2013 WL 3466810, at *2

9

(S.D.N.Y. July 8, 2013) (observing that Plaintiffs must point to an "identifiable factual nexus which binds them and potential class members together as victims of a particular practice" (internal quotation marks omitted)). In making this modest factual showing, Plaintiffs may rely on "pleadings, affidavits, and declarations." *Juarez*, 29 F. Supp. 3d at 369. Though Plaintiffs may submit documentary evidence, courts often authorize notice based "solely on the personal observations of one plaintiff's affidavit." *Id.* (quoting *Hernandez v. Bare Burger Dio Inc.*, No. 12-cv-7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases)).

Though Plaintiffs' burden at the first step of the certification inquiry is low, it is not non-existent: Plaintiffs cannot rely upon mere "unsupported assertions." *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *but see id.* (noting that the standard of proof should "remain . . . low ... because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist"). Nevertheless, in light of the preliminary nature of the Court's review at the first step, and as district courts in this Circuit have routinely observed, in determining the propriety of notice, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007); *see also Myers*, 624 F.3d at 555 ("At the *second stage*, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are *in fact* 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not . . . ." (emphases added)); *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 321–22 (E.D.N.Y. 2016) ("[A]t the preliminary certification stage, the focus of the court's inquiry is not on the

defendants' evidence, but on whether the plaintiff[s] have made their requisite showing."
(internal quotation marks omitted)).

**B. The Plaintiffs have met their burden of demonstrating that the Court should conditionally certify the putative FLSA collective**

The Defendants make several arguments why the Court should not permit notice to go to the putative FLSA collective. First, the Cookston Defendants argue that the Plaintiffs have failed to provide sufficient evidence that they are similarly situated to employees at *all* of the Domino's franchises owned by Mr. Cookston. Cookston Opp. at 12-18. Second, they argue that clear differences among the job duties of assistant store managers, customer service representatives, and delivery drivers, as well as the way these positions are compensated, demonstrate that such employees are not similarly situated. *See* Cookston Opp. at 16-19. Finally, the Franchisor Defendants argue that the Plaintiffs have failed to present evidence that Domino's was a joint employer. Franchisor Opp. at 15-19. The Court addresses each argument in turn.

**1. The Plaintiffs have made a "modest factual showing" that a "uniform policy or practice" of requiring workers to clock-out prior to completion of their shifts exists at all of Mr. Cookston's Domino's restaurants**

First, the Defendants argue that the Plaintiffs have failed to make a modest factual showing that the FLSA violations they claim to have experienced stemmed from a policy or practice at all of Mr. Cookston's restaurants. The Court disagrees.

Courts in this Circuit frequently authorize notice to employees of restaurant locations where the named plaintiffs did not work, even in the absence of any declaration by an employee who worked at that location. *See Juarez*, 29 F. Supp. 3d at 370. Such notice is appropriate so "long as there is sufficient evidence that . . . employees [at the other locations] were subject to the same allegedly unlawful policies." *Id.*; *see also Trinidad v. Pret A Manger (USA) Ltd.*, 962

F. Supp. 2d 545, 557 (S.D.N.Y. 2013) (noting that, where declarants worked at 10 of 33 commonly owned restaurants in New York, the court would ask whether it could "extrapolate from [evidence of violations at] these stores to other . . . stores, based on whether there [were] sufficient allegations of a common policy of violating overtimes rules that extends to other stores"); *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 516–17 (E.D.N.Y. 2011) (finding that, where Plaintiffs provided some evidence of common ownership and control of all 27 of defendant's stores, as well as evidence that the same wage and hour violation had occurred consistently at eight of defendant's stores, notice was appropriate to all of the stores).

In the present case, the Plaintiffs' evidence, while hardly overwhelming, is sufficient to provide a modest factual showing that a common plan of requiring employees to clock out prior to the end of their shifts existed at all of Robert Cookston's Domino's franchises. First, the Plaintiffs provided four declarations indicating that assistant store managers, customer service representatives, and delivery drivers were required to clock out prior to completion of their job duties at at least five Domino's restaurants owned by Robert Cookston. *See* Boby Decl. ¶¶ 9-11; Kivria Decl. at ¶¶ 2, 3, 7-10; Kucher Decl. ¶¶ 2, 6, 7-10, 14; Mojumder decl. ¶¶ 2-5, 9. These declarations are certainly imperfect: the Kivria declaration fails to indicate at which stores Kivria himself worked, and of the five stores actually named, Kucher alone worked at four of them, and Mojumder, Kucher, and Boby all worked together at a single location. Nevertheless, the declarations, assuming they are accurate, *see Garcia v. Spectrum of Creations Inc.,* 102 F. Supp. 3d 541, 550 (S.D.N.Y. 2015) (noting that, at this stage, the court does not "make credibility determinations" (quoting *Lynch*, 491 F.Supp. 2d at 368)), provide material evidence of a common policy to require workers to clock-out prior to the completion of their shifts. First, they certainly provide sufficient evidence for purposes of the conditional certification stage that the

policy alleged in the Complaint occurred at the 205 Allen Street location. *See id.* at 549

(conditionally certifying a class of employees who worked at a single restaurant on the basis of

two affidavits of plaintiffs who worked at the restaurant for "substantial amounts of time"); *see*

*also id.* at 548 (noting that such evidence was sufficient in part because there were "two

employees who corroborate[d] each others' personal treatment and observations of the treatment

of other employees"). Second, Kucher's observations of wage and hour violations at additional

stores, even if not corroborated by other employees' declarations, is still meaningful evidence

that such violations were somewhat widespread in Cookston's restaurants. *See id.* at 548–49

("[C]ase law is clear that the affidavit of a single employee can be enough to meet the

evidentiary burden" at the first step of conditional certification). Finally, the declarations do not

simply indicate that wage and hour violations occurred, generally, at the five locations; instead,

each declarant points to the same common plan—that he was undercompensated by virtue of

strategic use of the clock-out system. The specificity of this plan makes it more plausible that

the employees were subject to a widespread policy, rather than isolated violations. *See Trinidad*,

962 F. Supp. 2d at 558 (noting that Plaintiffs must provide evidence of a uniform "practice" to

justify sending notice to multiple locations (internal quotation marks omitted)).

Second, the Plaintiffs have alleged that the various locations are commonly owned and

operated by Cookston and have provided modest factual support for that contention—evidence

which further suggests that they may have been subject to a uniform policy or plan. It is not

disputed that Cookston owns all of the franchise restaurants in this case. Further, in the

Complaint, the Plaintiffs allege, *inter alia*, that Cookston controls "all aspects of operational

policy" of all of his restaurants. Complaint ¶ 83. The record does include some evidence

corroborating this allegation: in the assurance of discontinuance provided by the Cookston

Defendants, Cookston is listed as the president of every restaurant investigated by the New York Attorney General, and the document notes that he personally paid the settlement for all of his franchise restaurants. *See* Dkt. No. 137, Ex. F., at 28, 34-36. Further, Kucher's declaration indicates that he worked at at least five different Cookston restaurants located in Manhattan, Yonkers, and Roslyn Heights, *see* Kucher Decl. ¶ 6, and Boby claims, in his, that, though based at the Allen Street location, he was "occasionally asked to perform work and transport materials to other locations as well," Bob Decl. ¶ 7. This evidence, collectively, suggests that the Cookston restaurants are commonly owned and share personnel, evidence other courts have found relevant to whether it is likely a wage practice at a subset of restaurants was likely to exist at others. *See Juarez* 29 F. Supp. 3d at 372; *Trinidad*, 962 F. Supp. 2d at 558; *Rosario*, 828 F. Supp. 2d at 517.

Finally, material in the assurance of discontinuance provided by the Cookston Defendants indicates that other restaurants, besides the five the declarants cite, may have undercompensated certain delivery drivers in the same manner alleged by the Plaintiffs. *See* Dkt. No. 137, Ex. F., at 7 & n.2. Even if, as the Cookston Defendants point out, the assurance of discontinuance does not go so far as to conclude that this particular violation occurred at every one of the eleven restaurants investigated by the Attorney General, *see* Cookston Opp. at 18-19, the corroborative findings in the report at least undermine the Cookston Defendants' suggestion that the Plaintiffs have identified nothing more than a policy implemented by a few "rogue managers." *Id.* at 18 (quoting *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 174 (W.D.N.Y. 2007)). So too does evidence of wage and hour violations of other kinds—both in the declarations, and in the Attorney General's report—add some credence to the Plaintiffs' allegations that the specific

practice alleged here occurred broadly at Cookston's restaurants, and was not isolated to a few stores.

The Cookston Defendants cite several cases which they claim support the conclusion that conditional certification is inappropriate here. First, they point to three cases for the proposition that the evidence in this case is overly conclusory. *See* Cookston Opp. at 13 (citing *Mata v. Foodbridge LLC*, No. 14 CIV. 8754 (ER), 2015 WL 3457293 (S.D.N.Y. June 1, 2015), *Guan Ming Lin v. Benihana Nat'L Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y. 2010), and *Sanchez v. JMP Ventures, L.L.C.*, No. 13 CIV. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014)). In *Mata*, the court denied a motion for conditional class certification because, *inter alia*, the plaintiff presented "the lone affidavit of a single employee, who performed a single job function," and because the affidavit failed to provide any "facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions." *Mata*, 2015 WL 3457293, at *3-4. Here, there are multiple declarations supplemented by additional evidence that all describe the same specific clock-out policy and aver that multiple classes of employees were subject to it. In *Guan Ming*, the court denied conditional certification as to a claim for overtime pay because the declarants did not indicate that they were "aware of other employees," besides themselves, who were similarly treated. *Guan Ming*, 755 F. Supp. 2d at 510. The court also denied conditional certification as to a tools of the trade claim (a claim that workers had been forced to pay for uniforms and delivery costs without reimbursement) because the declarations provided no specificity as to, *inter alia*, the nature of the uniforms, the costs of uniforms or vehicular upkeep, or the relationship of any of these costs to their weekly wages. *See id.* at 511-12. Because of the specific nature of a tools of the trade claim, absent this information, the court could not determine whether the declarants themselves had even alleged a

15

FLSA violation, let alone whether any other employees were similarly situated. *See id.* at 512

(noting that certain uniforms are exempt under New York law from reimbursement rules, and

that failing to reimburse employees for tools of the trade only constitutes a FLSA violation if the

failure reduces the employees' compensation below the minimum wage). In this case, each

declarant has indicated that he was personally unpaid for a sufficient number of hours per week

to reduce his wage below the minimum wage and deny him owed overtime pay, and each has

alleged a clock-out policy that, if present at all of Cookston's restaurants, would ensure

numerous similarly situated employees. Finally, in *Sanchez*, the court denied conditional

certification because the plaintiff, who had worked at two of three of defendant's restaurants for

seven months for only a fraction of the class period, submitted a single conclusory declaration

indicating that he had observed various FLSA violations at these stores. *See Sanchez*, 2014 WL

465542 at *2. This case is distinguishable.

      The Cookston Defendants also point to cases in which courts have found that plaintiffs'

averments established nothing more than that a particular manager failed to properly implement

company policy—not that a practice or policy existed across multiple locations. *See* Cookston

Opp. at 18 & n.4 (citing *Seever*, 528 F. Supp. 2d at 173, *Trinidad*, 962 F. Supp. 2d at 557). In

*Seever* and *Trinidad*, there was specific testimony in the record identifying particular managers

at stores where the plaintiffs worked, and either acknowledging that other managers at these or

other stores did not implement similar policies or suggesting that the specific manager had

misunderstood or misapplied company policy. *See Seever*, 528 F. Supp. 2d at 173; *Trinidad*, 962

F. Supp. 2d at 558. To make a similar inference in this case, merely on the basis of Robert

Cookston's declaration that every store had a different manager, would be to go beyond the role

of the court at the first step of certification. *See Myers*, 624 F.3d at 555 (requiring plaintiffs to

make only a "modest factual showing" of similarity); *Lynch*, 491 F. Supp. 2d at 368 (noting that

the court "does not resolve factual disputes" prior to determining whether notice may be sent to a

purported collective).

In short, the Plaintiffs have made a modest factual showing that the clock-out policy they

describe existed broadly at Cookston's restaurants, and that other employees working at those

restaurants were subject to it.

### 2. The Plaintiffs have made a modest factual showing that they are similarly situated to Assistant Store Managers, Customer Service Representatives, and Delivery Drivers with respect to the alleged FLSA violation

The Cookston Defendants next argue that the Plaintiffs have made an insufficient

showing that assistant store managers, customer service representatives, and delivery drivers are

similarly situated at the Defendants' restaurants. *See* Cookston Opp. at 16-19. The Cookston

Defendants do not argue that employees with distinct job functions cannot be similarly situated

to one another for purposes of a FLSA claim, and indeed, courts have repeatedly and

persuasively held that differences in job function are permissible, "provided that [the employees]

are subject to a common unlawful policy or practice"—i.e., are similarly situated with respect to

the same violation. *Zaldivar*, 166 F. Supp. 3d at 323 (quoting *Guaman v. 5 M Corp.*, No. 13–

CV–3820 (LGS), 2013 WL 5745905, at *3 (S.D.N.Y. Oct. 23, 2013)); *accord Summa v. Hofstra

Univ.*, 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010); *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595

F. Supp. 2d 200, 207 (N.D.N.Y. 2009); *cf. Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th

Cir. 1996) ("For an opt-in class to be created under section 216(b), . . . [p]laintiffs need show

only that their positions are similar, not identical, to the positions held by the putative class

members." (internal quotation marks omitted)). The Cookston Defendants argue, more

narrowly, that differences in the job responsibilities and compensation of assistant store

17

managers, customer service representations, and delivery drivers preclude notice here. *See* Cookston Opp. at 16-19.

The Court disagrees. The declarants claim that assistant store managers, customer service representatives, and delivery drivers were all treated similarly with respect to the clock-out policy. *See* Boby Decl. ¶ 12; Kivria Decl. ¶ 14; Kucher Decl. ¶ 14; Mojumder Decl. ¶ 9. They also each allege that assistant store managers and customer service representatives are largely treated equally at Defendants' stores. Boby Decl. ¶ 4; Kivria Dec. ¶ 11; Kucher Decl. ¶ 3; Mojumder Decl. ¶ 6. Evidence thus suggests that, even if there are differences across these three roles, the employees were similarly situated with respect to the particular alleged violation here. *See Zaldivar*, 166 F. Supp. 3d at 323. The Cookston Defendants respond, primarily, that assistant store managers have certain managerial responsibilities that include oversight of the store's clock in and out procedures, and thus suffer from a conflict of interest that should prevent them from being included in the collective. Cookston Opp. at 17 (citing *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1315 (M.D. Ala. 2002)); *see also White,* 204 F. Supp. 2d at 1315 ("Because the court finds that the job duties of foremen and crewmen are dissimilar, and that there is inherent conflict between the two groups, the court concludes that crewmen should be excluded from a conditionally certified class."); *but see Jones v. Cretic Energy Servs., LLC,* 149 F. Supp. 3d 761, 773 (S.D. Tex. 2015) (distinguishing *White* on the ground that, in *White*, the foremen were alleged to have "an economic incentive to under-report their operators' hours" and risked "being held personally responsible," as joint employers, "for their operators' FLSA claims," in contrast to *Jones*, where the supervisors' and operators' roles "did not vary substantially"). Whether or not such a conflict indeed exists, the Court cannot credit Cookston's

declarations over those of the Plaintiffs at this stage in the proceedings. *See Lynch*, 491 F.

Supp.2d at 368.  Thus, conditional certification is not improper on this ground.

### 3. The status of Domino's as a joint employer is not dispositive of conditional certification

Finally, the Franchisor Defendants argue that conditional certification should not be

granted because the Plaintiffs have failed to provide sufficient evidence that Domino's itself is a

joint employer or was responsible for any common plan or policy. *See* Franchisor Opp. at 15-19.

The Plaintiffs reply that such proof is not necessary to establish similarity in this case as they

have provided modest evidence, as noted above, that a common policy existed at all of Robert

Cookston's stores, and that all of the employees in the proposed collective worked for the same

employer: either Robert Cookston, alleged to be a joint employer, or all of his franchises, as an

integrated joint enterprise. *See* Pl. Reply at 11-12; *see also Irizarry v. Catsimatidis*, 722 F.3d 99,

109 (2d Cir. 2013) (noting that an owner or officer of a company may personally be liable as a

joint employer under the FLSA if certain circumstances are met); *Juarez* 29 F. Supp. 3d at 370–

71 & n.5 (assuming, for purposes of a motion for conditional certification, that "distinct entities

can be treated as a single 'employer' under the FLSA if they qualify as a 'single integrated

enterprise'").  Plaintiffs argue that whether or not Domino's is a joint employer, though relevant

to whether Domino's may be held liable for any FLSA violations alleged in this case, has no

effect on the actual make-up of the collective—which is limited to stores owned by Cookston

(and does not purport to include all Domino's franchise stores). *See* Pl. Reply at 11; *cf.* July 15,

2016 Tr. at 3 (Dkt. No. 153) (in which counsel for Domino's, in arguing for a bifurcated

discovery schedule, argued that the Plaintiffs' addition of Domino's as a defendant in addition to

the Cookston Defendants was "gratuitous[]").

The Court agrees with the Plaintiffs. Although Plaintiffs did submit some evidence that Domino's is a joint employer,[4] even if they had not, the Court would still permit Plaintiffs to send notice to the purported collective.

In short, the Plaintiffs have made a modest factual showing that they are similarly situated to the purported collective they seek to conditionally certify.

### C. The pending motion to dismiss for lack of personal jurisdiction does not affect the timing of conditional certification

The parties also dispute whether the Court may, or should, grant Plaintiffs' motion for conditional certification in total (including as to the Connecticut defendants) prior to resolving the motion by those defendants to dismiss for lack of personal jurisdiction. The Plaintiffs argue that the resolution of the motion to dismiss may be relevant to whether the Connecticut entities are proper parties, but it does not affect the scope of the purported collective. That is because the Plaintiffs, in their estimation, have made a modest factual showing that Cookston is himself a joint employer of all the members of the proposed collective. *See* Pl. Reply at 13; *Irizarry,* 722 F.3d at 109 (stating that "to be an 'employer' [under FLSA], an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment"); *id.* at 116 (noting that, "[a]lthough there [was] no evidence that [the officer of the company] was responsible for the FLSA violations—or that he ever directly managed or otherwise interacted with the plaintiffs in [the] case—[he] satisfied two of the [relevant] factors [for a finding of operational control] . . . that [the Court] emphasized . . . : the hiring of managerial employees, and overall financial control of the company"). In light of that showing, the Plaintiffs argue that they have met their burden of demonstrating that Cookston's employees

---

[4] *See* Complaint ¶¶ 60-71 (citing a 2015 Domino's Annual Report to support several of the allegations in the Complaint); Dkt. No. 140, Ex. A (in which Robert Cookston, though indicating that his stores do not use the PULSE system for payroll purposes, indicates that they do indeed use it for its clock-in and clock-out features).

are similarly situated with respect to the same FLSA violation regardless of whether the Connecticut restaurants may be attached as defendants. *See* Pl. Br. at 21-24; *see also* Dkt. No. 156, at 1-2. The Defendants provide no adequate response to this argument. The Cookston Defendants cite cases that indicate that theories of joint liability are distinct from theories of personal jurisdiction, and that the former are not necessarily coterminous with the latter. Cookston Opp. at 8 (citing *Mendez v. Pure Foods Mgmt. Grp., Inc.,* No. 3:14-CV-1515 (SRU), 2016 WL 183473, at *5 (D. Conn. Jan. 14, 2016)). But, for purposes of this motion, the Plaintiffs are not arguing that the Court can exercise personal jurisdiction over the Connecticut Defendants because Cookston is himself a joint employer; they are arguing that it makes no difference to the contours of the collective whether the Connecticut Defendants will ultimately be proper parties—as the same notice will go out to the same employees. The Cookston Defendants provide no answer to this claim. The Franchisor Defendants suggest that the Plaintiffs cite "no authority" in support of their proposition, but make no argument explaining to the Court why the Plaintiffs' theory is erroneous. *See* Franchisor Opp. at 24. In short, the Court has been presented with no reason to delay notice as to the entire proposed collective pending any ultimate resolution of the Connecticut Defendants' motion to dismiss for lack of personal jurisdiction, and declines to do so.

### D. Plaintiffs' proposed notice and discovery request

Finally, the Defendants make various objections to the Plaintiffs' proposed notice, as well as to the Plaintiffs' discovery requests. The Plaintiffs, in reply, indicate that they are "amenable to a meet-and-confer process as to" the form of the notice and how it should be published. Pl. Reply. at 15. The Plaintiffs do not otherwise respond to the Defendants' objections to their discovery demands.

Rather than address the Defendants' objections seriatim, then, the Court directs the parties to meet and confer and make a good-faith effort to agree on both the text of the proposed notice and its method of dissemination. *See Juarez*, 29 F. Supp. 3d at 372–73 (ordering a similar process). By one week from the date of this Order, the parties must jointly submit a proposed notice to the Court, as well as a joint letter addressing the jointly proposed method of dissemination of that notice, and an agreement as to relevant discovery requests.

If, after meeting and conferring, the parties should fail to reach agreement as to one or more issues, the parties are ordered to submit a letter to the Court of no more than eight pages. The letter should (1) represent that the parties have met and conferred, (2) identify the precise issue(s) on which disagreement remains, and (3) set forth each side's respective position on those issues. The parties should cite case law from courts in this Circuit that supports their arguments. After resolving any contested issues, the Court will ask the parties to resubmit a joint proposed notice that reflects such resolution.

## III.    The Connecticut Defendants' motion to dismiss for lack of personal jurisdiction

The Court next addresses the pending motion to dismiss the Complaint for lack of personal jurisdiction.

On April 26, 2016, Defendants Team Stamford, LLC, AAR, LLC, Lucky 13, Inc., and A.C. Pizza, Inc. (collectively, the "Connecticut Defendants") moved to dismiss the complaint as alleged against them for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Dkt. No. 104. In response, the Plaintiffs amended their complaint. *See* Dkt. No. 114. On May 31, 2016, the Connecticut Defendants moved to dismiss that complaint on the same ground. *See* Dkt. No. 119; *see also* Dkt. No. 120 (hereafter "Motion to Dismiss"); Dkt No.

135 (hereafter "Pl. Opp."); Dkt. No. 142 (hereafter, "Reply").[5]  The Plaintiffs argue that the

Complaint sufficiently alleges that the Connecticut restaurants are "mere department[s]" of

Robert Cookston himself, over whom New York has general jurisdiction, and thus that the

motion to dismiss should be denied. *See* Pl. Opp. at 9 (quoting *Volkswagenwerk*

*Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984) (finding that New

York state could exercise personal jurisdiction over a foreign parent of a New York company, as

the company was a "mere department" of the parent)).  In the alternative, they ask for

jurisdictional discovery. *See* Pl. Br. at 16.  For the following reasons, the Court denies the

motion to dismiss without prejudice to its renewal after a period of jurisdictional discovery.

## A. Legal Standard

On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, the

"plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re*

*Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).  "Prior to

discovery," a plaintiff may meet this burden merely by pointing to "legally sufficient allegations

of jurisdiction." *Id.; see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85–86

(2d Cir. 2013) (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.

1990)).

"A district court has 'considerable procedural leeway' when deciding a motion to dismiss

for lack of personal jurisdiction and 'may permit discovery in aid of the motion.'" *Int'l Diamond*

*Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F. Supp. 3d 494, 507 (S.D.N.Y. 2014) (quoting

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).  Though a plaintiff's

---

[5] As already noted, the Plaintiffs have since amended the Complaint for a third time. *See* Dkt. No. 171.
The amendments do not affect any of the allegations relevant to personal jurisdiction, and thus the Court references
the Third Amended Complaint in deciding the Connecticut Defendants' motion.

"conclusory non-fact-specific jurisdictional allegations" are not sufficient to justify a court in ordering jurisdictional discovery, *id.* (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)), a plaintiff need not make a prima facie showing to justify such a course, *see Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007); *but see Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009) (noting that, where no such prima facie case has been made, a district court generally has discretion to deny such discovery if it so chooses).

### B. Discussion

Whether or not sufficient to establish a prima facie case of personal jurisdiction, the Plaintiffs' allegations are sufficient to justify a period of jurisdictional discovery.

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). First, a court must determine whether personal jurisdiction would comport with the forum state's long-arm statute. *Id.* If so, the court must next determine "whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Id.* at 164; *see also id.* (noting that the latter analysis involves a "minimum contacts" inquiry and a "reasonableness" inquiry).

Under New York law, "[a] foreign entity may be deemed to be doing business in New York if . . . the foreign entity is a 'mere department' of a related entity that is present in New York." *Turbon Int'l, Inc. v. Hewlett-Packard Co.*, 769 F. Supp. 2d 259, 261 (S.D.N.Y. 2011) (citing *Jazini*, 148 F.3d at 184–85; *Beech*, 751 F.2d at 117). New York courts look to four factors in determining whether a subsidiary is a mere department of a parent for jurisdictional purposes: "first, 'common ownership'—which is 'essential'—; second, 'financial dependency of

24

the subsidiary on the parent corporation;' third, 'the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities;' and fourth, 'the degree of control over the marketing and operational policies of the subsidiary exercised by the parent.'" *Jazini*, 148 F.3d at 185 (quoting *Beech*, 751 F.2d at 120, 121, 122).

The Plaintiffs argue that allegations in the Complaint establish that New York has general jurisdiction over Robert Cookston, pursuant to N.Y. C.P.L.R. § 301, because Cookston does business in New York "on a systematic and continuous basis on his own behalf." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 400 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) (citing N.Y. C.P.L.R. § 301). They further argue that the Complaint sufficiently alleges that the Connecticut Defendants are "mere department[s]" of Mr. Cookston, such that Cookston's contacts are imputed to those restaurants for purposes of a jurisdictional analysis. *Beech*, 751 F.2d at 120. Though *Beech* and *Jazini* addressed cases where the contacts of a subsidiary were imputed to a foreign parent, the Plaintiffs also argue that the department theory works in reverse: that the contacts of a parent may be imputed to a subsidiary. *See Turbon*, 769 F. Supp. 2d at 261 (collecting cases in support of this proposition).

The Connecticut Defendants, for their part, appear to agree with much of this framework. First, they do not contest that New York may exercise general jurisdiction over Robert Cookston. *See generally* Reply. Second, they do not contest the general relevance of the mere department theory, nor could they. *See Jazini*, 148 F.3d at 184 ("As the district court indicated, the requirements the New York courts apply in determining whether they have jurisdiction over a foreign corporation on the basis of the intrastate activities of that corporation's subsidiaries are 'well established.'"). The Connecticut Defendants do state, in a heading, that "the 'department'

25

theory . . . alone cannot establish jurisdiction," but, in that same section, they cite to *Beech* and generally argue not that the department theory is insufficient to establish personal jurisdiction, but that a mere parent-subsidiary relationship is insufficient to alone establish that a subsidiary is a mere department, a proposition that is not contested by the Plaintiffs. *See* Reply at 1-2. Thus, they are not in fact contesting that personal jurisdiction may be established via the department theory, but simply arguing that the Plaintiffs have not so demonstrated here. Finally, the Connecticut Defendants do not contest the Plaintiffs' argument that the department theory may work in reverse, conferring jurisdiction over a subsidiary by virtue of jurisdiction over a parent. *See* Reply at 1-2.

The only question, then, is whether the Plaintiffs have sufficiently alleged that the Connecticut restaurants are mere departments of Mr. Cookston to justify jurisdictional discovery. They have.

As to factor one, "common ownership," the Plaintiffs allege that Cookston owns each of the Connecticut defendants. Complaint ¶ 75. Cookston does not dispute this. *See* Reply at 3-4.

As to financial dependency, the Complaint alleges that Cookston provides "all financial support to the ... Connecticut Franchise Defendants," and that "all profits and losses are ultimately attributable to him." Complaint ¶¶ 76-77. The Defendants argue that this representation "is entirely conclusory," Reply at 4, but it is not so conclusory as to preclude jurisdictional discovery. Further, the Complaint, as to this point, is less conclusory than the Defendants suggest. The Complaint incorporates a New York Attorney General press release referencing a $675,000 settlement that Robert Cookston personally paid to settle charges against him stemming from violations at various of his New York restaurants. *See* Complaint ¶ 5 & n.2 (citing Press Release: *A.G. Schneiderman Announces Settlements With Five Domino's Pizza*

*Franchisees For Violating Workers' Basic Rights In Stores Statewide*, New York State Office of the Attorney General (last visited Feb. 8, 2017), *available at https://ag.ny.gov/press-release/ag-schneiderman-announces-settlements-five-domino%e2%80%99s-pizza-franchisees-violating*). Indeed, in opposing conditional certification, the Cookston Defendants attached the assurance of discontinuance corresponding to this settlement, which indicated that Cookston had personally assumed all liability for the violations at his restaurants. Dkt. No. 137, Ex. F, at 28. The allegations are thus sufficient to suggest that Cookston's restaurants—even in Connecticut—may be financially dependent upon him.

As to the third factor, "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities," *Beech*, 751 F.2d at 121, the Complaint alleges that Cookston "has the power to hire and fire franchise employees in both the New York and Connecticut franchise locations." Complaint ¶ 82. The Defendants point to declarations they've attached disputing these contentions, but, prior to discovery, the Court cannot credit contradictory declarations by a defendant over allegations in a Complaint on a motion to dismiss. *See Dorchester Fin. Sec., Inc.*, 722 F.3d at 86.

Similarly, as to the fourth factor, the degree of operational control, the Defendants argue not simply that the Complaint is conclusory, but primarily that their declarations contradict the Plaintiffs' allegations that Cookston has operational control over his restaurants. *See* Complaint ¶¶ 83-84. This argument is premature. *See Dorchester Fin. Sec., Inc.*, 722 F.3d at 85-86.

At this procedural stage, then, the allegations in the Complaint sufficiently demonstrate that the Connecticut defendants may be mere departments of Robert Cookston such that it would be inappropriate to dismiss the Complaint without an opportunity for jurisdictional discovery.

*See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208 (holding that, where Plaintiffs alleged a subsidiary was a mere department of a parent, an inquiry turning on "a multi-factor test that is very fact-specific," the district court erred in dismissing "prior to allowing discovery on plaintiffs' insufficiently developed allegations regarding the relationship between [the parent] and its subsidiary")); *Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 417 (S.D.N.Y. 2009) (noting that jurisdictional discovery, rather than dismissal, is particularly appropriate if questions remain "regarding the relationship between a parent and its subsidiary given the fact-specific nature of the inquiry into whether a subsidiary's contacts should be imputed to the parent").

As to Due Process, the Connecticut Defendants make no compelling argument why, assuming that the Plaintiffs establish that the Connecticut restaurants are mere departments of Robert Cookston, exercising personal jurisdiction over them in New York could or would offend due process. Indeed, courts have found that, where general jurisdiction is established over a parent, it would not offend due process to exert personal jurisdiction over a subsidiary found to be a mere department—even where the foreign entity exists not in a neighboring state, but in a foreign country. *See Motown Record Co., L.P. v. iMesh.Com, Inc.*, No. 03 CIV. 7339 (PKC), 2004 WL 503720, at *4, *6 (S.D.N.Y. Mar. 12, 2004); *cf. S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) ("It is … well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process."). To the degree that the Defendants seek to make a particular argument why exerting jurisdiction over them, even if they are mere departments of Mr. Cookston, would offend the constitution, they may do so after a period of jurisdictional discovery.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' motion for conditional certification is granted, and the Connecticut Defendants' motion to dismiss the Complaint for failure to sufficiently allege personal jurisdiction is denied without prejudice.

As to conditional certification, the parties are ordered to submit their jointly proposed notice and joint letter to this Court within one week of the date of this Order, on or before February 20, 2017.

As to jurisdictional discovery, in a separate order, the Court has referred this case to a magistrate judge for general pre-trial and discovery issues. The parties are directed to work with the Magistrate to create a schedule for jurisdictional discovery, as well as a briefing schedule for the filing of any subsequent motion to dismiss.

This resolves Docket Nos. 116, 119.

Dated: February ___13___, 2017
      New York, New York

_____

ALISON J. NATHAN

United States District Judge