**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Tanvir H. Rahman**
trahman@wigdorlaw.com

September 27, 2017

**VIA ECF**

The Honorable Kevin N. Fox
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    Kucher, et al. v. Domino's Pizza, Inc., et al.; 16-cv-02492 (AJN)(KNF)

Dear Judge Fox,

We represent Plaintiffs and write in opposition to the Franchisor Defendants' ("Domino's") request for a protective order limiting the scope of discovery in connection with future depositions in this action.  See Dkt. No. 360.  To date, Plaintiff has – and going forward, will continue to – engaged in discovery limited to the issue of Domino's' liability as employer.

This Circuit's case law on joint employment is clear – the operative "economic realities" test requires consideration of "all circumstances," including evidence concerning the relationships between a putative joint employer and entities similarly-situated to a direct employer.  See Glatt v. Fox Searchlight Pictures, Inc., 293 F.R.D. 516, 526 (S.D.N.Y. 2013) *vacated and remanded on other grounds by* Glatt v. Fox Searchlight Pictures, 811 F.3d 528 (2d Cir. 2016) (in FLSA and NYLL action against a film studio and corporate entity formed to make the film *Black Swan*, finding, at summary judgment stage, evidence that studio hired production staff "***at other films with similar Production Agreements***" sufficient to demonstrate studio's power to hire and fire employees and thus relevant to studio's status as joint employer, despite lack of evidence that studio hired staff at entity which directly employed the plaintiffs) (emphasis added) (citing Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("Since economic reality is determined based upon *all* the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition.") (emphasis in original).

Further, evidence of an alleged joint employer's involvement in personnel decisions concerning employees who are not members of the putative class may also be probative to determining joint employer status.  See, e.g., Glatt, 293 F.R.D. at 526 (at summary judgment stage, "Searchlight's ability to hire managerial staff [on other films] is enough to satisfy [the power to hire and fire interns] factor."); see also Torres v. Gristedes Operating Corp., No. 04 Civ. 3316 (PAC), 2011 WL 451792, at *2 (S.D.N.Y. Sept. 23, 2011) ("There is no evidence that [Defendant] hired any class



members, but there does not have to be. It stands uncontradicted that he hired managerial employees.").

Here, the Cookston Defendants are unquestionably similarly-situated to other Domino's franchises, particularly those which were overseen by the same Domino's Franchise Area Leaders and/or Regional Franchise Manager. First, there is no dispute that all Domino's franchises are required to enter into identical, non-negotiable standard franchise agreements. Second, there is no dispute that, for approximately the last 14 years, all Domino's franchises in New York and Connecticut, including all Cookston franchises, have been overseen by the same Regional Franchise Manager (Kim Ridge), to whom various Domino's Franchise Area Leaders who deal directly with Cookston franchises, as well as other franchises, on a near-daily basis have reported. Third, numerous emails produced in discovery demonstrate that Domino's Franchise Area Leaders frequently and routinely communicate simultaneously with Mr. Cookston and with multiple, if not all, of the other franchise owners within their purview. Such communications concern various topics, ranging from the mundane (store performances) to the more probative (*i.e.*, store employee criminal background check requirements, franchisee compliance with labor laws, etc.). Fourth, there is no dispute that Domino's requires all of its franchises to abide by the same minimum operating standards (with limited exceptions), which are specified in various reference guides issued to franchises. Fifth, there is no dispute that franchise owners, including Mr. Cookston, have accompanied Domino's Franchise Area Leaders on visits to *other* franchise stores in order to learn about those stores' practices.

Accordingly, just as the Glatt court considered evidence of "Searchlight's control over the production of films other than *Black Swan*" because its "rights with respect to the films did not differ materially" (Glatt, 293 F.R.D. 516, 526 fn. 26), the Court here may also consider evidence as to Domino's' control over franchises similarly-situated to and treated in like-respects as the Cookston Defendants. For instance, evidence that a Domino's Franchise Area Leader influenced a hiring or firing decision in regards to an employee of a similarly-situated franchise would certainly bear on whether Domino's possessed "the power to hire and fire" with respect to its franchises, regardless of whether such power was ever wielded against a Cookston franchise (though there is also substantial evidence of Domino's' influence on Cookston franchise personnel matters in the record). See Glatt, 293 F.R.D. at 526 (ultimate question is whether alleged employer possessed "the power to hire and fire, not whether that power was exercised"), citing Carter v. Duchess Community College, 735 F.2d 8, 12 (2d Cir. 1984); see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003) (employment relationship can exist both where alleged employer exercises "formal control" over work conditions, and where it exercises "functional control" but does not physically control workers). Thus, while it may ultimately be Plaintiffs' burden to demonstrate the relevance, probativeness and admissibility of evidence related to other franchises, restricting Plaintiffs' ability to simply take discovery as to Domino's' relationship to other



similarly-situated franchises would not only be contrary to the law of this Court, but would substantially hamper Plaintiffs' ability to prove their claims.[1]

Likewise, there is no basis to limit Plaintiffs' discovery solely to events that transpired during the statutory limitations period.  "The statute of limitations is a defense … not a rule of evidence.  Therefore, … [it] has no bearing on the admissibility of evidence."  United States v. Ashdown, 509 F.2d 793, 798 (5th Cir.), cert. denied, 423 U.S. 829 (1975).  "The decision whether to admit evidence is based on its relevancy and probativeness pursuant to Fed. R. Evid. 401 and 403, not on whether the evidence is derived from events that occurred prior to a certain time period."  Black Law Enforcement Oficers Ass'n v. City of Akron, 824 F.2d 475, 483 (6th Cir.1987); see also Port Auth. Police Asian Jade Soc. of New York & New Jersey Inc. v. Port Auth. of New York & New Jersey, 681 F. Supp. 2d 456, 462 (S.D.N.Y. 2010) (it is "reversible error to preclude otherwise admissible evidence solely because it dated to a time when a claim would have been time-barred."); Fitzgerald v. Henderson, 251 F.3d 345, 365 (2d Cir. 2001) ("A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period").

There is already substantial evidence in the record that, in 2009 (slightly outside of the statute of limitations period on Plaintiffs' NYLL claims), Domino's heavily influenced several personnel decisions affecting employees of Cookston franchises, stemming from an incident involving an early-morning delivery of pizza to the Fox Business News television station.  These decisions included disciplinary actions which Mr. Cookston has described, in a sworn affidavit, as having "no choice" but to make because "Domino's was directing me to discipline [the employee at issue] and I suspended him for a week."  This and other similar evidence is obviously highly suggestive of Domino's' control over the Cookston Defendants, and Plaintiffs should not be precluded from being able to merely take *discovery* because such events may predate (in this case slightly) the statute of limitations period.  Thus, where, as here, there is evidence that may very well be admissible *at trial*, or at the very least could lead to other evidence that is admissible at trial, the statute of limitations certainly cannot be used to bar *discovery*.  See Duffie v. Michigan Group, Inc. – Livingston, No. 14 Civ. 14148, 2016 WL 829511, at *1 (E.D.Mich. Jan. 15, 2016) (denying motion *in limine* seeking to exclude any evidence of events beyond FLSA statute of limitations, as "[e]ven without a viable claim before October 28, 2011, plaintiff is entitled to provide evidence establishing relevant facts to this case, including her employment and how defendant violated the FLSA, which she alleges began with decisions made and communicated to her in 2008 and 2009").

Accordingly, for the foregoing reasons, any motion for a protective order should be denied.

---

[1] While Domino's' counsel makes reference to an inquiry made by Plaintiffs' counsel concerning a YouTube video posted by a North Caroline franchisee employee (Dkt. No. 360 at 2), they neglect to mention that Plaintiffs' counsel ultimately withdrew their inquiry on this subject.



Hon. Kevin N. Fox
September 27, 2017
Page 4

We thank Your Honor for the Court's attention to this matter.

Respectfully submitted,

Tanvir H. Rahman

cc:     Counsel of Record (*via* ECF)