UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re DOMINO'S PIZZA INC. | MASTER FILE: 16 Civ. 2492 (AJN) (KNF) |
| THIS DOCUMENT RELATES TO:<br><br>RIAD KUCHER, HAROON MOJUMDER and OMAR FARUK, on behalf of themselves and all other similarly-situated employees,<br><br>                    Plaintiffs,<br><br>       v.<br><br>DOMINO'S PIZZA, INC., *et al.*,<br><br>                    Defendants. | Case No. 16 Civ. 02492 (AJN) (KNF) |
| MARCELO DE LOS SANTOS, SANDRO MAYORAL-CLINICO, AARON CRUZ AGUACATITLA, and MOUNI YAMBA, individually and on behalf of others similarly situated,<br><br>                    Plaintiffs,<br><br>       v.<br><br>HAT TRICK PIZZA, INC. d/b/a/ Domino's Pizza, *et al.*<br><br>                    Defendants. | Case No. 16 Civ. 06274 (AJN) (KNF) |

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, Defendants Domino's Pizza, Inc. ("DPI"), Domino's Pizza LLC ("DPL") and Domino's Pizza Franchising LLC ("DPF", together with DPI and DPL, the "Domino's Defendants"), by and through their attorneys, DLA Piper LLP (US), respectfully submit this Statement of Undisputed Material Facts in support of their Motion for Summary

Judgment in the consolidated actions, *Kucher, et al. v. Domino's Pizza, Inc., et al.*, 16 Civ. 2492 (AJN) (KNF) ("*Kucher*"), and *De Los Santos, et al. v. Hat Trick Pizza, Inc., et al.*, 16 Civ. 6274 (AJN) (KNF) ("*De Los Santos*").

## I.     The Plaintiffs

1.     *Kucher* plaintiffs Riad Kucher, Haroon Mojumder and Omar Faruk, opt-in plaintiffs Amanual Boby and Sakhayat Hossain (the "*Kucher* Plaintiffs"), and *De Los Santos* plaintiffs Marcelo De Los Santos, Sandro Mayoral-Clinico, Aaron Cruz Aguacatitla and Mouni Yamba (the "*De Los Santos* Plaintiffs"; with the *Kucher* Plaintiffs, "Plaintiffs") are current and/or former employees of one or more of the "Cookston Defendants."[1]  (*See Kucher*, ECF No. 171, ¶¶ 17-19; *De Los Santos*, ECF No. 106, ¶¶ 7-10; Ex. 1, ¶ 6; Ex. 2, ¶ 2, 4; Ex. 3, ¶ 3.)[2]  The Plaintiffs were employed as non-managerial "Team Members" responsible for, *inter alia*, preparing and delivering pizzas.  (*See, e.g., Kucher*, ECF No. 171, ¶¶ 51-52; *De Los Santos*, ECF No. 106, ¶¶ 100, 145, 177, 201.)

2.     Aside from Kucher, who worked briefly at five (5) Domino's® stores owned and operated by the Cookston Defendants, the *Kucher* Plaintiffs all worked at the store located at 205 Allen Street in New York, which store is owned and operated by 3694 Lower East Side Pizza, LLC.  (*Kucher*, ECF No. 171, ¶¶ 17-19, 40; *see also* Ex. 4 [Kucher] at 55:19-56:3, 65:19-66:8,

---

[1]     The Cookston Defendants consist of Robert Cookston and defendants Cookston Enterprises, Inc.; Mumbuh Style, Pizza, Inc.; Hat Trick Pizza, Inc.; Sestwon, Pizza, LLC; 117 Mineola Ave., LLC; 1872 A Bellmore Ave., LLC; 1017 Jericho Tpke, LLC; 3489 Riverhead Pizza, LLC; 3469 Mastic Pizza, LLC; 3683 Washington Heights Pizza, LLC; 3456 Hamilton Heights Pizza, LLC; 3342 New Windsor Pizza, LLC; 3361 Monroe Pizza, LLC; 3352 Mt. Kisco Pizza, LLC; 3441 Ossining Pizza, LLC; 3488 Cortland Manor Pizza, LLC; 3616 West Village Pizza, LLC; 3694 Lower East Side Pizza, LLC; 3551 Yonkers Pizza, LLC; Team Stamford, LLC; Rolling in the Dough, LLC; AAR, LLC; Lucky 13, Inc.; AC Pizza, Inc.; 9535 Bridgeport Pizza, LLC; 3354 Wash Heights Two Pizza, LLC; 3684 West Side Pizza, LLC; 3603 Port Chester Pizza, LLC; Bongo, LLC; RRACLCL, LLC; 1802 Barnum Avenue Pizza, LLC; and BOJWEE, LLC.

[2]     Unless otherwise indicated, true and correct copies of all exhibits ("Ex.[]") referenced herein are annexed to the accompanying Affirmation of Norman M. Leon, dated October 31, 2017 (the "Leon Affirmation").  Citations to relevant excerpts of deposition testimony, true and correct copies of which are attached to the Leon Affirmation, are cited herein as follows: "Ex.[] [{Deponent last name}]".

73:15-17, 74:17-24, 75:21-76:3, 80:7-9, 84:11-13, 86:19-21, 88:19-22, 89:17-20, 91:10-12; Ex. 5 [Mojumder] at 45:3-13; Ex. 6 [Faruk] at 50:9-51:2, 52:2-21, 58:10-13, 69:10-16; Ex. 7 [Boby] at 8:8-20, 19:11-22; Ex. 8 [Hossain] at 29:15-21.)

3.      The *De Los Santos* Plaintiffs all worked at the Cookston Defendants' Domino's store located at 227 W. 40th Street in New York, which store is owned and operated by Hat Trick Pizza, Inc. (*De Los Santos*, ECF No. 106, ¶¶ 7-10.)

**II.      The Domino's Defendants**

4.      DPI is a publicly traded company with its principal place of business in Ann Arbor, Michigan.  (Declaration of Joseph Devereaux, dated October 31, 2017 ["Devereaux Dec."], ¶ 2.)

5.      DPF is an indirect subsidiary of DPI.  DPF grants franchises to approved entities to own and operate Domino's stores. (Devereaux Dec., ¶ 3.)  Directly and through its affiliated companies, DPF has been selling franchises in the United States for more than 50 years. (*Id.*, ¶ 5.)

6.      DPL also is an indirect subsidiary of DPI. (Devereaux Dec., ¶¶ 4.)  Until 2007, DPL was the entity that granted Domino's Pizza franchises. (*Id.*)

7.      For more than 50 years, the Domino's brand has been synonymous with the timely delivery of quality, affordable pizza. (Devereaux Dec., ¶ 5.)  There are more than 5,500 Domino's branded stores in the United States, with approximately 5,100 franchised to and owned and operated by independent business owners. (*Id.*, ¶ 13.)  The remaining stores are company-owned and operated. (*Id.*)

3

### III.   The Cookston Defendants

8.      Defendant Robert Cookston is, or has been since April 1, 2010, the managing member or controlling shareholder of 32 Domino's Pizza franchisees through 33 different corporate entities.   (Devereaux Dec., ¶ 7.)

9.      The Cookston Defendants were granted their respective franchises by DPF pursuant to written franchise agreements, referred to as Standard Franchise Agreements (the "SFA"), which govern both parties' rights and obligations.  (Devereaux Dec., ¶ 10.)

10.      Each Cookston Defendant invests its own time and money in the development and operation of its franchise(s) and bears the risks of loss and the benefits of profits derived from the operation of those businesses.  (Devereaux Dec., ¶ 12.)

11.      The Cookston Defendants maintain their own bank accounts, have separate ownership from that of the Domino's Defendants, and possess (in the case of the entities) their own business licenses.  (Devereaux Dec., ¶ 8.)

12.      None of the Cookston Defendants has any common officers, directors or employees with any of the Domino's Defendants, and none of the Domino's Defendants has any ownership interest in any of the Cookston Defendants' franchises.  (Devereaux Dec., ¶ 9.)

13.      In exchange for the rights granted by DPF, the Cookston Defendants pay a weekly advertising fee (used to promote the brand) and royalty fee.  (Devereaux Dec., ¶ 11.)  These fees are based on the gross sales of each store and are not dependent on the store's labor costs or net profits.  (*Id.*)

### IV.   The Domino's Franchise System

14.      To assist franchisees in operating their stores and to ensure consistency and uniformity throughout the franchise system, DPF has established minimum standards for the operation of all Domino's stores.  (Devereaux Dec., ¶ 15.)  These brand standards ensure that the

quality of the products sold by franchisees under the Domino's® name and marks are consistent with its brand reputation, maintain the value associated with the Domino's name, build customer trust and promote customer satisfaction. (*Id.*)

15.     These brand standards include the type of ingredients franchisees must use in food products, temperatures at which those ingredients must be maintained, methods and equipment used to prepare various food products, and store cleanliness. (Devereaux Dec., ¶ 16.)  These standards were jointly agreed to by DPF and its franchisees. (*Id.*)

16.     Through these standards, DPF seeks to ensure consistency and uniformity in the quality of the products franchisees sell, to maintain the reputation and image of Domino's Pizza stores, to maintain and enhance the value associated with the Domino's name, and to build customer trust and promote customer satisfaction. (Devereaux Dec., ¶ 17.)  Franchisees can seek a variance from any brand standard. (*Id.*, ¶ 16.)

17.     Subject to compliance with these brand standards, franchisees can operate their stores as they see fit. (Devereaux Dec., ¶ 19.)  They decide how to implement DPF's standards, choose store locations, lease premises, set prices (except for nationwide promotions), do local advertising, decide whether to charge delivery fees (and, if so, how much), and address directly customer complaints. (*Id.*)

18.     The Domino's Defendants do not supervise any of the Cookston Defendants' (or any other franchisee's) day-to-day operations. (Devereaux Dec., ¶¶ 20-21.)

## V.     <u>The Domino's Defendants Are Not the Plaintiffs' Joint Employers</u>

19.     Consistent with the SFA, franchisees such as the Cookston Defendants control all employment matters in their stores. (Devereaux Dec., ¶¶ 26.)  Each SFA executed by each Cookston Defendant in connection with the grant of its respective franchise states that each franchisee "shall be solely responsible for recruiting, hiring, training, scheduling for work,

supervising and paying the persons who work in the Store and those persons shall be your employees, and not our agents or employees." (*Id.*, ¶ 24; *see also* Ex. 9, ¶ 15.6.)  Each SFA further states that "neither [the franchisor] nor [its] affiliates have any relationship with [the franchisee's] employees and have no rights, duties, or responsibilities with regard to their employment by [the franchisee]." (Devereaux Dec., ¶ 24; *see also* Ex. 9, ¶ 22.8.)

20.     In addition, each SFA confirms that DPF and the franchisees are independent contractors.  (Devereaux Dec., ¶ 25; *see also* Ex. 9, ¶ 22.8.)   The SFA also requires that franchisees such as the Cookston Defendants take whatever steps are required to make sure that their franchised stores are operated "in full compliance with all applicable laws, ordinances and regulations." (Devereaux Dec., ¶ 25; *see also* Ex. 9, ¶ 15.2.)

### A.    *The Domino's Defendants Do Not Exercise "Formal Control"*

### i.    *Hiring & Firing Decisions*

21.     The Cookston Defendants are solely responsible for hiring employees at their franchised Domino's stores.  (*See* Ex. 9, ¶¶ 15.6; Ex. 10 [O'Neill] at 225:21-226:7; Ex. 11 [Mannaf] at 82:23-25, 98:5-12; Ex. 12 [Ridge] at 171:24-172:9.)   The Domino's Defendants have never interviewed, reviewed the credentials for hire, or hired any applicant for employment with the Cookston Defendants.  (Devereaux Dec., ¶¶ 26, 27.)

22.     All hiring decisions are made by the Cookston Defendants.  (*See* Ex. 10 [O'Neill] at 39:12-43:8; Ex. 13 [First day of deposition of Robert Cookston ("Cookston")] at 39:14-23; Ex. 14 [Second day of deposition of Robert Cookston ("Cookston II")] at 27:18-29:8.)

23.     The Domino's Defendants are not involved in the hiring process at the Cookston Defendants' stores, and have never directed the Cookston Defendants to hire (or not hire) any employee.  (*See* Ex. 10 [O'Neill] at 225:21-226:7; Ex. 14 [Cookston II] at 23:11-24:4; Ex. 12 [Ridge] at 174:19-24; *see also* Ex. 15 [229 employees of the Cookston Defendants averred they

6

never met with or spoke to anyone from the Domino's Defendants in connection with their hiring].)

24.     Consistent with this, the Cookston Defendants created and utilize their own application forms.  (*See* Ex. 10 [O'Neill] at 39:12-43:8; Ex. 12 [Ridge] at 66:5-13; Ex. 16 [Rudd] at 44:13-45:22; Ex. 13 [Cookston] at 159:12-16.)   The Cookston Defendants never provided these application and onboarding materials to, nor were they approved by, the Domino's Defendants.  (*See* Ex. 10 [O'Neill] at 120:7-18, 122:3-7; *see also* Devereaux Dec., ¶¶ 26, 27.)

25.     Applicants for employment with the Cookston Defendants apply directly to the Cookston Defendants, and not the Domino's Defendants.  (*See* Ex. 10 [O'Neill] at 39:12-14, 42:11-14; Ex. 4 [Kucher] at 55:24-56:15; Ex. 11 [Mannaf] at 98:5-12.)   Applicants request application forms from, submit their forms to, and interview with employees of the Cookston Defendants, and not the Domino's Defendants.  (*See id*; Ex. 5 [Mojumder] at 57:25-58:3.) Plaintiffs and over 200 other Cookston employees averred as much.  (*See* Ex. 7 [Boby] at 16:21-17:2; Ex. 5 [Mojumder] at 56:7-58:3, 60:5-11; Ex. 6 [Faruk] at 47:22-49:2; Ex. 8 [Hossain] at 63:5-10; Ex. 4 [Kucher] at 55:24-57:9; Ex. 11 [Mannaf] at 20:3-22:13; Ex. 15 [over 200 current and former employees of the Cookston Defendants averring that they directly applied for employment and interviewed with employees of the Cookston Defendants].)

26.     The Cookston Defendants post job advertisements without seeking approval from the Domino's Defendants.  (*See* Ex. 16 [Rudd] at 116:8-117:4.)

27.     The Domino's Defendants do not audit the hiring practices of the Cookston Defendants.  (*See* Ex. 12 [Ridge] at 68:9-15.)

28.     The Cookston Defendants also are responsible for terminating their employees. (*See* Ex. 10 [O'Neill] at 109:24-112:24, 225:21-226:7.)   The Domino's Defendants have

"nothing to do with" decisions to terminate employees of the Cookston Defendants, and have never suggested or recommended that the Cookston Defendants terminate an employee.  (*See id.*; Ex. 14 [Cookston II] at 24:6-9.)

29.     Two Plaintiffs, Kucher and Hossain, testified that they were fired by their managers, who were employees of the Cookston Defendants.  (*See* Ex. 4 [Kucher] at 89:6-16, 91:13-92:18; Ex. 8 [Hossain] at 64:2-18.)

30.     Plaintiffs Boby, Faruk and Mojumder informed their respective managers, each of whom was a Cookston Defendant employee, when he voluntarily quit his job with the Cookston Defendants.  (*See* Ex. 7 [Boby] at 41:5-15; Ex. 6 [Faruk] at 52:2-53:2, 69:17-70:9; Ex. 5 [Mojumder] at 45:3-46:4.)

31.     On a few occasions, Mr. Cookston or Mr. O'Neill has informed the Domino's Defendants of certain personnel decisions.  (*See* Ex. 14 [Cookston II] at 23:11-24:21.)   The Domino's Defendants did not request this information, and the Cookston Defendants were not required to provide it; rather, this information was voluntarily supplied to keep the Domino's Defendants abreast of happenings in the Cookston Defendants' stores.  (*See id.*; Devereaux Dec., ¶ 28.)  Further, any such communications were either after-the-fact updates, or indicating that an employment action was imminent.  (*See* Ex. 10 [O'Neill] at 225:15-19, 233:5-10.)   In each instance, the termination decision was made by the Cookston Defendants alone.  (*See e.g.,* Ex. 10 [O'Neill] at 109:24-112:24, 225:21-226:7, 233:5-10.)

32.     The Cookston Defendants also are responsible for promoting their employees; the Domino's Defendants are not involved in this process.  (*See* Ex. 7 [Boby] at 23:20-24:7; Ex. 6 [Faruk] at 66:5-67:17; Ex. 11 [Mannaf] at 22:11-23, 27:11-18; Ex. 8 [Hossain] at 74:18-77:25; Ex. 14 [Cookston II] at 24:11-21; Ex. 16 [Rudd] at 45:2-4.)

33.     The Cookston Defendants conduct criminal background checks and motor vehicle history checks on job applicants and employees, as required by the SFA.  (*See* Devereaux Dec., ¶ 34; Ex. 10 [O'Neill] at 42:22-43:8; Ex. 12 [Ridge] at 170:24-171:3.)  These background checks are conducted by the Cookston Defendants, not the Domino's Defendants.  (*See* Ex. 10 [O'Neill] at 39:12-43:8; Ex. 14 [Cookston II] at 27:18-29:8, 44:17-45:21.)  The Cookston Defendants' accountant, BMW Services, Inc., and not the Domino's Defendants, is responsible for processing these checks and determining if applicants satisfy the Cookston Defendants' hiring criteria. (Ex. 13 [Cookston] at 44:17-45:20; Ex. 14 [Cookston II] at 26:17-29:8.)

34.     Only the Cookston Defendants' personnel receive the results of these background checks, and they are responsible for making hiring decisions based on such checks.  (*See* Ex. 10 [O'Neill] at 39:12-43:8, 44:9-21; Ex. 13 [Cookston] at 43:19-45:11; Ex. 14 [Cookston II] at 27:14-28:8, 44:17-45:22.)  The Cookston Defendants may hire workers in their discretion, regardless of the results of any background check.  (*See* Ex. 12 [Ridge] at 170:4-15, 171:24-172:9.)

35.     The Domino's Defendants do not receive or review the results of criminal background or motor vehicle history checks relating to Cookston employees and job applicants, nor are such results discussed with or communicated to the Domino's Defendants.  (*See* Ex. 12 [Ridge] at 170:16-20; Ex. 14 [Cookston II] at 28:9-29:8.)

36.     No employee or representative of the Domino's Defendants has ever told the Cookston Defendants that they could not hire someone because of the results of a background check and/or motor vehicle history check.  (*See* Ex. 14 [Cookston II] at 28:13-16.)

### ii.     *No Control Over Schedules and Terms & Conditions of Employment*

37.     ***Day-to-Day Supervision.***  Each non-managerial employee of the Cookston Defendants (a "Cookston Team Member") reports to, and receives job instructions from, a store

General Manager, who in turn reports to a Cookston Supervisor (who oversees multiple stores), who in turn reports to Lou O'Neill, the Cookston Defendants' Director of Operations; each of the foregoing is an employee of the Cookston Defendants.  (*See* Ex. 7 [Boby] at 67:4-69:21; Ex. 5 [Mojumder] at 59:9-60:4; Ex. 6 [Faruk] at 10:24-11:7; Ex. 4 [Kucher] at 68:3-10, 86:4-17, 90:17-91:3; Ex. 8 [Hossain] at 73:17-21; Ex. 10 [O'Neill] at 21:5-22;  Ex. 15 [explaining that employees of Cookston Defendants report to their store managers].)  Mr. O'Neill reports directly to Mr. Cookston.  (Ex. 10 [O'Neill] at 21:5-22.)

38.    The Cookston Defendants' management team is "solely responsible for all employment matters" at their stores, and they supervise the Cookston Defendants' employees, including Plaintiffs, on a day-to-day basis.  (*See* Ex. 14 [Cookston II] at 24:4-25:2; *see also* Ex. 10 [O'Neill] at 228:24-229:9; Ex. 7 [Boby] at 67:4-69:21; Ex. 5 [Mojumder] at 59:9-60:4; Ex. 6 [Faruk] at 10:24-11:7; Ex. 4 [Kucher] at 68:3-10, 86:4-17, 90:17-91:3; Ex. 8 [Hossain] at 73:17-21; Ex. 15.)

39.    The Cookston Defendants determine what tasks their employees perform.  (*See* Ex. 13 [Cookston] at 85:18-86:17, 91:10-12.)  The Cookston Defendants, and not the Domino's Defendants, are responsible for overseeing and addressing workplace conduct and performance of Cookston employees. (*See* Ex. 14 [Cookston II] at 25:4-17; Ex. 5 [Mojumder] at 62:17-63:2; Ex. 7 [Boby] at 69:22-24; Ex. 10 [O'Neill] at 229:5-9.)

40.    Plaintiffs Mojumder and Boby each testified they never spoke to any employee of the Domino's Defendants, while Plaintiff Faruk testified he spoke to an employee of the Domino's Defendants only once during an Operations Evaluation Report ("OER") (*see* ¶¶ 66-70, *infra*), which interaction consisted entirely of Faruk saying "Welcome to Domino's."  (*See* Ex. 5 [Mojumder] at 35:5-9, 37:4-6; Ex. 7 [Boby] at 87:2-89:5; Ex. 6 [Faruk] at 24:9-18.)

41.     Plaintiff Mojumder admitted he had no idea why any of the Domino's Defendants were defendants in his lawsuit and similarly testified that no one other than his store's managers ever told him what to do.  (*See* Ex. 5 [Mojumder] at 43:3-6, 62:3-63:2.)  Plaintiff Boby testified that the only reason he thought the Domino's Defendants should be liable in this action is because the Domino's Defendants make pizzas and did not "make sure" that the Cookston Defendants were properly paying their employees.  (*See* Ex. 7 [Boby] at 87:1-89:5.)  To this end, over 200 other employees of the Cookston Defendants declared that, to their knowledge, "Domino's" has had no involvement in any aspect of their employment with the Cookston Defendants.  (Ex. 15.)

42.     ***Work Schedules.***  Work schedules for employees of the Cookston Defendants are set exclusively by the Cookston Defendants.  (*See* Ex. 14 [Cookston II] at 9:11-22; Ex. 10 [O'Neill] at 226:13-20; Ex. 11 [Mannaf] at 60:13-18.)  To this end, Plaintiffs Boby, Mojumder, Faruk, Kucher and Hossein testified that their work schedules were set by their managers, who were employees of the Cookston Defendants.  (*See* Ex. 7 [Boby] at 27:20-28:6, 38:9-24, 67:4-69:22; Ex. 5 [Mojumder] at 18:4-21, 45:3-46:4, 69:4-70:12; Ex. 6 [Faruk] at 12:22-13:23, 72:12-74:24; Ex. 4 [Kucher] at 68:17-70:16, 86:25-88:7, 95:2-9; Ex. 8 [Hossain] at 63:13-25.)

43.     None of the Domino's Defendants has ever set the schedule for any employee of the Cookston Defendants, nor are the Cookston Defendants required to use DPF's point of sales system, PULSE, to set work schedules for their employees.  (Devereaux Dec., ¶ 28; Ex. 14 [Cookston II] at 6:24-7:7, 9:11-10:1; Ex. 10 [O'Neill] at 226:13-20.)

44.     Employees of the Cookston Defendants are instructed, both verbally and on signs displayed in each Cookston store, to direct scheduling concerns to the Cookston Defendants' managerial staff, including Mr. Cookson and Mr. O'Neill.  (*See* Ex. 13 [Cookston] at 166:11-

167:6.)  Plaintiffs Boby, Mojumder and Kucher themselves raised scheduling concerns to their respective store managers.  (*See* Ex. 7 [Boby] at 65:5-24, 66:23-67:3; Ex. 5 [Mojumder] at 69:4-70:12; Ex. 4 [Kucher] at 68:17-70:16.)

45.    Although the Domino's Defendants require the Cookston Defendants to comply with minimal staffing requirements – namely, at least one in-store worker and one delivery driver when a store is open – this is for quality control and to maintain brand and operating standards.  (*See* Ex. 16 [Rudd] at 115:12-116:7.)

46.    ***Employee Complaints.***  Complaints by employees of the Cookston Defendants about workplace issues are investigated and resolved by the Cookston Defendants exclusively.  (*See* Ex. 10 [O'Neill] at 28:16-31:6; Ex. 8 [Hossain] at 47:3-21.)

47.    Each of the Cookston Defendants' franchises has signage instructing Cookston employees to direct concerns to Mr. Cookston or Mr. O'Neill.  (*See* Ex. 10 [O'Neill] at 28:16-31:6; Ex. 8 [Hossain] at 47:3-21.)  Moreover, the Cookston Defendants' employees are trained to direct any complaints to their managers (*see* Ex. 11 [Mannaf] at 68:10-71:18), and several of the Plaintiffs raised such internal complaints to their respective store managers (*see* Ex. 6 [Faruk] at 63:11-64:3; Ex. 5 [Mojumder] at 69:23-70:6; Ex. 7 [Boby] at 25:17-26:21).

48.    The Domino's Defendants never reviewed or audited the Cookston Defendants' internal complaint procedures.  (*See* Ex. 12 [Ridge] at 95:9-13.)

49.    The Domino's Defendants maintain a "Customer Care" hotline and website intended for customer concerns, but through which franchisee employees have, on occasion, called to raise complaints.  (*See* Ex. 10 [O'Neill] at 204:19-208:13; Ex. 12 [Ridge] at 95:2-20, 161:25-162:3, 165:9-23; Ex. 16 [Rudd] at 49:7-14.)  The Domino's Defendants do not control if

a Cookston employee submits a complaint through the "Customer Care" hotline or website. (*See* Ex. 10 [O'Neill] at 230:13-16.)

50.     Complaints by franchisee employees through the Customer Care hotline or website are rerouted "directly to the franchisee" for the franchisee to investigate and resolve in its discretion. (*See* Ex. 12 [Ridge] at 95:2-20, 165:9-23; Ex. 10 [O'Neill] at 204:19-208:13; Ex. 16 [Rudd] at 49:7-14; Ex. 14 [Cookston II] at 32:14-33:10.) Mr. Cookston and Cookston managerial staff investigate and address any such complaints made by the Cookston Defendants' employees. (*See* Ex. 10 [O'Neill] at 207:6-20.)

51.     The Domino's Defendants do not direct or order the Cookston Defendants to resolve employee complaints in a particular manner. (*See* Ex. 14 [Cookston II] at 32:14-33:10; Ex. 16 [Rudd] at 47:14-48:4.)

52.     Likewise, the Cookston Defendants are responsible for responding directly to customers complaints; the Domino's Defendants do not control how they respond or dictate the substance of the response, and only review if a complaint is responded to (*i.e.*, closed) within five days. (*See* Ex. 14 [Cookston II] at 32:14-33:10; Ex. 16 [Rudd] at 47:14-48:4.)

53.     ***Discipline.***   The Cookston Defendants are solely responsible for making and implementing disciplinary decisions regarding their employees, which discipline is carried out by the Cookston Defendants' store General Managers, Supervisors or Mr. O'Neill, as appropriate. (*See* Ex. 14 [Cookston II] at 25:10-17, 31:2-6.)

54.     The Domino's Defendants are not involved in disciplining employees of the Cookston Defendants. (*See* Ex. 10 [O'Neill] at 226:8-12, 167:15-16; Ex. 13 [Cookston] at 41:5-21; Ex. 16 [Rudd] at 44:22-25.)

55.     Where employee misconduct is referred to the Cookston Defendants through the Domino's "Customer Care" hotline or website, the Cookston Defendants are solely responsible for investigating such matters and implementing discipline, without direction from the Domino's Defendants.  (*See* Ex. 14 [Cookston II] at 32:14-33:10; Ex. 13 [Cookston] at 39:24-41:21.)  Any follow up with the Domino's Defendants is limited to notifying DPF if such matters have been resolved.  (*See* Ex. 14 [Cookston II] at 32:14-33:10; Ex. 13 [Cookston] at 39:24-41:21.)

56.     ***Performance Reviews.***  The Cookston Defendants' Director of Operations, Mr. O'Neill, and not any of the Domino's Defendants, occasionally conducts performance reviews for employees of the Cookston Defendants.  (*See* Ex. 10 [O'Neill] at 157:20-27, 162:7-23.)

57.     ***Training.***  The Domino's Defendants do not train franchisees' employees; to the contrary, franchisees may train their staff using any training materials they deem appropriate (if any).  (Devereaux Dec., ¶ 30.)  Accordingly, the Cookston Defendants are "solely responsible for training the[ir] employees," and the Domino's Defendants are not involved in this process.  (*See* Ex. 13 [Cookston II] at 15:22-16:2; Ex. 10 [O'Neill] at 229:10-230:4; Ex. 12 [Ridge] at 68:16-69:9, 184:19-185:7; Ex. 9, ¶ 10.2.)

58.     For instance, the *Kucher* Plaintiffs were trained by Cookston Defendants' managers and not employees of the Domino's Defendants.  (*See* Ex. 7 [Boby] at 63:22-65:4; Ex. 5 [Mojumder] at 60:5-61:5; Ex. 6 [Faruk] at 17:25-18:13, 45:9-46:13; Ex. 4 [Kucher] at 66:9-67:9, 72:8-73:5; Ex. 8 [Hossain] at 63:11-12; *see also* Ex. 11 [Mannaf] at 70:22-71:18.)

59.     The Cookston Defendants determine how to train their employees and what training materials will be used to do so, and all training procedures were implemented by Mr. Cookston.  (*See* Ex. 10 [O'Neill] at 45:16-46:8, 229:15-230:4; Ex. 13 [Cookston] at 163:9-18; Ex. 11 [Mannaf] at 65:18-67:5.)

60.     The Cookston Defendants require that all new hires receive two-hours of training from other employees of the Cookston Defendants, and have voluntarily undertaken a "cross-training" approach, whereby their employees are trained on multiple job functions.  (Ex. 14 [Cookston II] at 10:2-11:1.)

61.     The Cookston Defendants created their own materials to use to train their employees, which materials have never been reviewed or audited by the Domino's Defendants. (*See* Ex. 10 [O'Neill] at 170:11-177:23; Ex. 12 [Ridge] at 69:2-9.)

62.     ***Company Policies & Forms.***  The Cookston Defendants have created their own employment application, policies, handbook and other employment documents.  (*See* Ex. 14 [Cookston II] at 16:21-19:5;  Ex. 10 [O'Neill] at 65:24-66:5, 221:22-224:11, 230:17-231:8.) These materials are prepared, implemented, enforced and distributed by the Cookston Defendants' managerial staff, all without the approval of the Domino's Defendants.  (*Id.*; *see also* Ex. 13 [Cookston] at 159:12-23; Ex. 11 [Mannaf] at 101:5-22; Ex. 12 [Ridge] at 278:17-22; Ex. 16 [Rudd] at 266:8-267:18.)

63.     To the extent that the Cookston Defendants used the Domino's logo on any employment-related documents, they did so unilaterally and without first obtaining the approval of the Domino's Defendants, as required under the SFA.  (*See* Ex. 12 [Ridge] at 51:22-52:10, 271:23-280:21; Ex. 10 [O'Neill] at 224:5-11.)

64.     ***Uniforms.***  The SFA requires that employees of the Cookston Defendants wear a uniform that bears the Domino's® name.  (*See* Ex. 16 [Rudd] at 22:12-29:14; Ex. 10 [O'Neill] at 228:7-23.)

65.     The Cookston Defendants, and not the Domino's Defendants, purchase and supply uniforms to their employees, and determine the number of uniforms to be provided.  (*See*

Ex. 10 [O'Neill] at 46:9-19, 228:7-23; Ex. 14 [Cookston II] at 33:22-34:3.)  If an employee of the Cookston Defendants wants an extra uniform, he or she must obtain it from the Cookston Defendants directly.  (*See* Ex. 7 [Boby] at 98:24-100:2, 115:19-25; Ex. 5 [Mojumder] at 72:4-73:18; Ex. 6 [Faruk] at 79:14-80:6, 81:11-83:4; Ex. 8 [Hossain] at 73:22-74:6.)

66.    ***OERs and Store Visits***.  In order to enforce its brand standards, DPF conducts occasional site visits and OERs.  (Devereaux Dec., ¶ 18.)  OERs generally are conducted three times a year per store, and could last as little as thirty or forty minutes.  (*Id.*; Ex. 12 [Ridge] at 70:16-21; Ex. 10 [O'Neill] at 87:6-92:17, 95:20-22; Ex. 11 [Mannaf] at 33:9-35:14.)

67.    The purpose of these site visits and OERs is to build and maintain the value of the Domino's® brand by ensuring that the products and services distributed under the Domino's marks are of consistent quality and comply with brand standards.  (Devereaux Dec., ¶ 18; *see also* Ex. 12 [Ridge] at 70:16-71:18, 82:13-22; Ex. 14 [Cookston II] at 14:25-15:10; Ex. 16 [Rudd] at 55:8-15, 311:13-312:5.)

68.    OER inspectors (or "coaches") review a store's operations with the on-duty manager, but have little to no contact with non-managerial staff.  (*See* Ex. 12 [Ridge] at 90:14-20; Ex. 10 [O'Neill] at 87:6-89:2; Ex. 11 [Mannaf] at 35:19-25, 52:8-18; Ex. 7 [Boby] at 8:21-12:21; Ex. 6 [Faruk] at 23:18-24:18; Ex. 4 [Kucher] at 64:8-65:18, 67:10-68:3; Ex. 8 [Hossain] at 65:2-68:6.)

69.    The OER inspector does not supervise employees of the Cookston Defendants during OER inspections.  (*See* Ex. 11 [Mannaf] at 52:19-54:10.)  The Domino's Defendants do not train Cookston Team Members during store visits or OERs.  (*See* Ex. 16 [Rudd] at 57:11-13.)

70.    The *Kucher* Plaintiffs were each present for at most three or four total OERs during the six-year period preceding their Complaint, and had little or no interaction with the

inspector.  (*See* Ex. 7 [Boby] at 8:21-12:21; Ex. 6 [Faruk] at 23:18-24:18; Ex. 4 [Kucher] at 64:8-65:18, 67:10-68:3; Ex. 8 [Hossain] at 65:2-68:6.)

<em><strong>iii.      Payment of Wages</strong></em>

71.    None of the Domino's Defendants has ever determined or set the compensation or wage rate for any employee of any of the Cookston Defendants.  (Devereaux Dec., ¶ 29.)  The Cookston Defendants have complete discretion to set the pay rates of their employees.  (*Id.*)

72.    The Cookston Defendants pay and process their employees' paychecks, maintain Form I-9s, issue W-2s, W-4s and employee handbooks, and provide New York Wage Theft Prevention Act notices, which all identify the applicable Cookston Defendant franchise as the employer.  (*See* Ex. 14 [Cookston II] at 11:9-13; Ex. 10 [O'Neill] at 32:16-33:4, 226:21-227:3; Ex. 8 [Hossain] at 43:4-12 [noting Hossain received a Wage Theft Notice from his manager]; Ex. 5 [Mojumder] at 67:13-68:9; Exs. 17-38.)

73.    Paychecks issued to employees of the Cookston Defendants, including Plaintiffs, state that they are issued by the Cookston Defendants.  (*See* Ex. 10 [O'Neill] at 32:16-33:4; Ex. 7 [Boby] at 34:23-35:3; Exs. 39-40.)

74.    The Domino's Defendants do not provide wage statements or participate in the administration of payroll with respect to any employee of the Cookston Defendants.  (Devereaux Dec., ¶ 32; Ex. 10 [O'Neill] at 226:22-227:15.)

75.    Wage rates for employees of the Cookston Defendants, including Plaintiffs, are determined by the Cookston Defendants.  (*See* Ex. 14 [Cookston II] at 11:9-13; Ex. 10 [O'Neill] at 226:21-227:3; Ex. 15 [current and former employees averring that the Cookston Defendants set their wage rates].)  No employee or representative of the Domino's Defendants "ever told [Mr. Cookston] what to pay any of [his] employees" and "[he] and [his] supervisors and

managers have sole control over the setting of wages of [his] employees . . . ."  Ex. 14 [Cookston II] at 11:2-13]; *see also* Ex. 4 [Kucher] at 78:10-19; Ex. 10 [O'Neill] at 226:21-227:15.)

76.     The Plaintiffs and all other employees of the Cookston Defendants were informed of their wage rates by their respective store managers, not the Domino's Defendants.  (*See* Ex. 7 [Boby] at 70:19-71:5, 104:23-106:7; Ex. 5 [Mojumder] at 63:22-64:24; Ex. 4 [Kucher] at 55:24-57:9, 73:6-14, 78:10-19; Ex. 15.)

77.     Employees of the Cookston Defendants receive raises from their respective store managers, not the Domino's Defendants.  (*See* Ex. 4 [Kucher] at 80:10-81:4.)

78.     The Domino's Defendants have never been involved in any aspect of the setting wage rates of the Cookston Defendants' employees.  (*See* Ex. 10 [O'Neill] at 226:22-227:15; Ex. 14 [Cookston II] at 11:5-13.)

79.     Tips at the Cookston Defendants' franchises were controlled by the Plaintiffs' respective store managers, and not by the Domino's Defendants.  (*See* Ex. 6 [Faruk] at 64:4-5; Ex. 7 [Boby] at 112:22-113:5; Ex. 4 [Kucher] at 57:10- 58:16; Ex. 8 [Hossain] at 82:5-22.)

80.     The Cookston Defendants offered health benefits to their employees.  (*See* Ex. 13 [Cookston] at 149:16-23; Exs. 41-42.)  The Domino's Defendants have never provided insurance or other employee benefits (including without limitation health benefits) to any employee of the Cookston Defendants.  (Devereaux Dec., ¶ 32.)

81.     The Domino's Defendants did not review or approve the Cookston Defendants' employee benefits plans.  (*See* Ex. 10 [O'Neill] at 224:12-225:6; Ex. 14 [Cookston II] at 18:11-22.)

82.     Other than with respect to a single request made by one of the Cookston Defendants to an employee of the Domino's Defendants for assistance in conducting an IRS

Form I-9 audit approximately seven years ago (*see* ¶ 86, *infra*), the Domino's Defendants have never reviewed or audited the Cookston Defendants' wage, payroll, timekeeping or accounting practices.  (*See* Ex. 12 [Ridge] at 95:9-13.)

83.     DPF's point-of-sale system, known as PULSE, once had an optional payroll feature that allowed franchisees to track employee hour and estimate labor costs.  (*See* Ex. 14 [Cookston II] at 6:17-8:21, 11:18-13:11.)  The Cookston Defendants were never required to use this feature, and stopped doing so in 2009.  (*See id.* at 11:23-12:22.)

84.     The Cookston Defendants' Director of Operations, Mr. O'Neill, created a wage and hour test for the Cookston Defendants' managers to use in determining compliance with applicable laws. (*See* Exs. 10 [O'Neill] at 237:19-238:20.)

### iv.     *Maintenance of Employment Records*

85.     The Cookston Defendants create and maintain personnel records for their employees, which include job applications, tax documents, Form I9s, and payroll records.  (*See* Ex. 14 [Cookston II] at 34:4-15.)  The Domino's Defendants do not maintain personnel files or similar employment records for the Cookston Defendants' employees; rather, these files are maintained solely by franchisees such as the Cookston Defendants.  (Devereaux Dec., ¶ 33.)

86.     The Cookston Defendants' personnel records have never been provided to the Domino's Defendants, nor have they been requested.  (*See* Ex. 14 [Cookston II] at 34:4-15; Ex. 10 [O'Neill] at 119:22-120:18.)  There is no evidence that any Domino's employee has ever accessed this information.  (*See* Ex. 16 [Rudd] at 80:15-17; Ex. 11 [Mannaf] at 80:8-17.)  The sole instance of review of any personnel-related document by the Domino's Defendants arose in October 2010, when Mark Rudd, an employee of the Domino's Defendants, once was asked to assist an employee of the Cookston Defendants in conducting an IRS Form I-9 audit at a store. (*See* Ex. 16 [Rudd] at 160:9-165:5, 170:19-174:13.)

87.     Personnel files or similar employment records are not and cannot be maintained in PULSE.  (Devereaux Dec., ¶ 33.)  Further, the Cookston Defendants are not required to input any employee information, such as wage rates or titles, into PULSE.  (*See* Ex. 12 [Ridge] at 158:10-21; Ex. 14 [Cookston II] at 8:11-21, 9:8-10.)

### B.     The Domino's Defendants Do Not Exercise "Functional Control"

88.     ***Cookston Defendants' Premises.***  The Cookston Defendants either own or lease the premises on which they operate their stores.  (*See* Ex. 10 [O'Neill] at 227:16-228:6; Ex. 14 [Cookston II] at 33:17-21; Ex. 16 [Rudd] at 84:10-87:20.)  None of the Domino's Defendants is a party to the store lease of any Cookston Defendant, nor do any of them own any property that any Cookston Defendant uses to operate its store(s).  (Devereaux Dec., ¶ 22; Ex. 14 [Cookston II] at 33:20-21.)

89.     Further, the SFA does not give DPF (or the other Domino's Defendants) the right to approve leases generally, except to confirm that the lease contains particular terms necessary to protect the Domino's brand, such as ensuring that landlords permit Domino's signage to be installed and/or removed.  (Devereaux Dec., ¶ 22.)

90.     ***Cookston Defendants' Equipment.***  The Domino's Defendants do not own any of the equipment used by the Cookston Defendants.  (Devereaux Dec., ¶ 23.)  Franchisees must purchase their own equipment; although DPF promulgates a list of approved equipment vendors, franchisees can purchase equipment from any vendor so long as the equipment conforms to DPF's minimum quality standards.  (*Id.*)

91.     Only the Cookston Defendants' equipment is used to prepare and sell their products; that equipment is owned by the Cookston Defendants and not the Domino's Defendants.  (*See* Ex. 10 [O'Neill] at 227:16-228:6; Ex. 14 [Cookston II] at 33:11-16.)

92. ***Services to the Domino's Defendants.***  Franchisees' employees – including those of the Cookston Defendants – do not provide any services to the Domino's Defendants. (Devereaux Dec., ¶ 31.)   Among other things, they do not license intellectual property or purchase franchises from DPF.  (*Id.*)   Further, they do not prepare or deliver food or other products sold by stores owned by the Domino's Defendants.  (*Id*.)

93. Applicants are required to separately apply for and obtain positions at Cookston stores and stores owned by the Domino's Defendants.  (*See* Ex. 7 [Boby] at 16:21-17:21, 45:8-15.)

94. Each of Mr. Cookston's stores states conspicuously on its frontage that it is owned and operated by a Cookston Defendant.  (Ex. 14 [Cookston II] at 19:6-20.)

Dated:  New York, New York
         October 31, 2017

                                    **DLA PIPER LLP (US)**

                                    By: /s/ Norman M. Leon
                                          Norman M. Leon
                                                (norman.leon@dlapiper.com)
                                          Joseph A. Piesco, Jr.
                                                (joseph.piesco@dlapiper.com)
                                          Garrett D. Kennedy
                                                (garrett.kennedy@dlapiper.com)

                                    1251 Avenue of the Americas, 27th Floor
                                    New York, NY 10020
                                    Tel.:   (212) 335-4500
                                    Fax:    (212) 335-4501

                                    *Attorneys for Defendants Domino's Pizza, Inc.,*
                                    *Domino's Pizza LLC and Domino's Pizza*
                                    *Franchising LLC*