# Exhibit 9


06698300

Store # 3693

# DOMINO'S PIZZA FRANCHISING LLC

## STANDARD FRANCHISE AGREEMENT

# RENEWED

Hat Trick Pizza, Inc.
Franchisee     Robert L. Cookston, III
                President

8-07 SFA



PLAINTIFF'S
EXHIBIT

ALL-STATE LEGAL®

                  FranchisorDefs-00001024

## TABLE OF CONTENTS

Page

1.    INTRODUCTION ................................................................................................ 1

2.    GRANT AND TERM OF FRANCHISE.......................................................... 2

    2.1    Grant ............................................................................................... 2

    2.2    Term of Franchise ........................................................................... 2

3.    RENEWAL OF FRANCHISE............................................................................ 2

    3.1    Option to Renew .............................................................................. 2

    3.2    Manner of Renewal .......................................................................... 2

    3.3    Notification of Expiration ................................................................ 3

4.    TERRITORIAL RIGHTS AND OBLIGATIONS ........................................... 3

    4.1    Area of Primary Responsibility ....................................................... 3

    4.2    Delivery Service............................................................................... 3

    4.3    Exclusions ........................................................................................ 4

5.    OPENING ADVERTISING AND PROMOTION EXPENDITURE ............... 4

6.    ROYALTY FEE AND OTHER CHARGES..................................................... 4

    6.1    Amount and Payment........................................................................ 4

    6.2    Definition of Royalty Sales.............................................................. 5

    6.3    Interest on Late Payments................................................................ 5

    6.4    Electronic Funds Transfer................................................................ 5

    6.5    Application of Payments................................................................... 5

7.    STORE LOCATION ........................................................................................... 6

    7.1    Location and Use .............................................................................. 6

    7.2    Relocation; Damage, or Condemnation............................................ 6

    7.3    Location and Operation of Commissary. .......................................... 6

    7.4    Store Lease........................................................................................ 6

    7.5    Assumption of Lease on Termination or Expiration......................... 7

    7.6    Ownership of Store Premises............................................................ 7

8.    STORE DEVELOPMENT .................................................................................. 7

    8.1    Development and Construction.......................................................... 7

    8.2    Equipment, Fixtures, Furniture and Signs ....................................... 8

    8.3    Store Opening ................................................................................... 8

9.    STORE REFURBISHING................................................................................... 8

8-07 SFA

| | | | |
|---|---|---|---|
| 10. | | TRAINING | 9 |
| | 10.1 | Initial Training | 9 |
| | 10.2 | Training of Employees | 9 |
| | 10.3 | Additional Training | 10 |
| 11. | | OPERATING ASSISTANCE | 10 |
| | 11.1 | Advice and Guidance | 10 |
| | 11.2 | Operating Problems | 10 |
| 12. | | STORE PRODUCTS | 11 |
| | 12.1 | Store Menu | 11 |
| | 12.2 | Pizza Ingredients, Supplies and Materials | 11 |
| 13. | | ADVERTISING AND PROMOTION | 11 |
| | 13.1 | By DPF | 11 |
| | 13.2 | Local and Regional Advertising Cooperatives | 12 |
| | 13.3 | By Franchisee | 13 |
| 14. | | RECORDS AND REPORTS | 13 |
| | 14.1 | Bookkeeping and Recordkeeping | 13 |
| | 14.2 | Sales Reports and Financial Statements | 14 |
| | 14.3 | Right to Require Audit | 15 |
| 15. | | OPERATING REQUIREMENTS | 16 |
| | 15.1 | Operating Procedures | 16 |
| | 15.2 | Compliance with Laws and Other Business Practices | 17 |
| | 15.3 | Prices For Carry-Out and Delivery | 17 |
| | 15.4 | Operating Manual | 17 |
| | 15.5 | New Concepts | 18 |
| | 15.6 | Franchisee Must Directly Supervise Store | 18 |
| | 15.7 | Insurance | 18 |
| | 15.8 | Identification as Franchisee | 19 |
| | 15.9 | Computer Hardware and Software and Other Technology | 20 |
| | | 15.9.1 Computer System | 20 |
| | | 15.9.2 Aggregate Expenditures for Computer System | 21 |
| | | 15.9.3 Domino's PULSE and Other Computer and Technology Training | 21 |
| | | 15.9.4 Additional Order Processing Systems | 22 |
| 16. | | MARKS | 22 |

8-07 SFA

FranchisorDefs-00001026

|       | 16.1 | Usage | 22 |
|       | 16.2 | Infringements | 22 |
|       | 16.3 | Indemnification | 23 |
| 17.   |      | INSPECTIONS | 23 |
| 18.   |      | TERMINATION AND EXPIRATION | 23 |
|       | 18.1 | Termination By Franchisee | 23 |
|       | 18.2.1 | Immediate Termination By DPF – Upon Written Notice | 23 |
|       | 18.2.2 | Termination By DPF –After Opportunity to Cure | 25 |
|       | 18.2.3 | Immediate Cessation of Operations | 25 |
|       | 18.3 | Obligations Upon Termination or Expiration | 25 |
| 19.   |      | OPTION TO PURCHASE STORE | 27 |
|       | 19.1 | Option | 27 |
|       | 19.2 | Formula Price | 27 |
|       | 19.3 | Purchase of Commissary | 27 |
|       | 19.4 | Deductions From Purchase Price | 27 |
|       | 19.5 | Payment of Purchase Price | 28 |
|       | 19.6 | Real Property | 28 |
|       | 19.7 | Closing | 29 |
|       | 19.8 | Operation During Option Period | 29 |
|       | 19.9 | Formula Price | 29 |
| 20.   |      | RESTRICTIVE COVENANTS | 30 |
|       | 20.1 | In-Term Covenant | 30 |
|       | 20.2 | Post-Term Covenant | 30 |
|       | 20.3 | Ownership of Public Companies | 30 |
|       | 20.4 | Solicitation of Employees | 30 |
|       | 20.5 | Customer Lists and Trade Secrets; New Processes, Concepts, Improvements, Etc | 30 |
|       | 20.6 | Owners of Approved Entity | 31 |
|       | 20.7 | Distribution of Products Related to the Domino's System | 31 |
|       | 20.8 | Ownership Structure | 31 |
| 21.   |      | ASSIGNMENT | 31 |
|       | 21.1 | By DPF | 31 |
|       | 21.2 | By Franchisee | 31 |

8-07 SFA

FranchisorDefs-00001027

21.3 Assignment to an Approved Entity.................................................................. 32

21.4 Assignment or Transfer to Others.................................................................. 32

21.5 Death or Permanent Disability....................................................................... 33

21.6 Definition of Permanent Disability................................................................ 34

21.7 Operation by DPF After Death or Permanent Disability ............................... 34

21.8 Right of First Refusal of DPF ........................................................................ 34

22. CONTRACT INTERPRETATION AND ENFORCEMENT............................. 35

22.1 Effect of Waivers ........................................................................................... 35

22.2 Cost of Enforcement ...................................................................................... 35

22.3 Indemnification of DPF .................................................................................. 35

22.4 Construction and Severability......................................................................... 36

22.5 Scope and Modification of Agreement ........................................................... 36

22.6 Governing Law ............................................................................................... 36

22.7 Notices ........................................................................................................... 37

22.8 Independent Contractors ................................................................................ 37

22.9 Standard of Reasonableness............................................................................ 37

22.10 Acknowledgment ........................................................................................... 37

22.11 Binding Effect................................................................................................. 39

22.12 Effective Date of this Agreement ................................................................... 39

8-07 SFA

### DOMINO'S PIZZA FRANCHISING LLC

### STANDARD FRANCHISE AGREEMENT

This Franchise Agreement (this "Agreement") is being entered into between Domino's Pizza Franchising LLC, a Delaware limited liability company ("we", "DPF" or "us" in this Agreement), and

Hat Trick Pizza, Inc.

("you" or "franchisee" in this Agreement). If you are a corporation, partnership, limited liability company or other entity approved by us to own a Domino's Pizza Store (the "Approved Entity"), the term "owners" in this Agreement shall refer to your shareholders, partners, members or other interest holders. Unless otherwise approved by DPF, the term "Controlling Person" refers to the person who owns fifty-one percent (51%) or more of: the general partnership interest of such partnership; the equity and voting power of all classes of the issued and outstanding capital stock of such corporation; the membership interests of such limited liability company or the voting and ownership interests of such other entity.

1.    **INTRODUCTION.**

We are in the business of franchising retail outlets specializing in the sale of pizza and other authorized food and beverage products and featuring carry-out and delivery services. These outlets are known as "Domino's Pizza" stores and conduct business under a uniform business format, with specially designed equipment, computer hardware and software designated by us, and specifications for the preparation and sale of pizza and certain authorized food products (the "Domino's System"). We have obtained the license to use and the right to sublicense the use of certain valuable trademarks, service marks and commercial symbols in connection with the operation of Domino's Pizza Stores including the mark "Domino's Pizza" (the "Marks").

You have applied to us for a franchise to operate a Domino's Pizza Store utilizing the Domino's System and the Marks at the location identified in this Agreement. Your application has been approved by us in reliance upon all of the representations made in your application including those concerning your financial resources, your other investments and interests and the manner in which the franchise will be owned and operated.

You acknowledge that you have read this Agreement and our Uniform Franchise Offering Circular and been given an opportunity to obtain clarification of any provision that you did not understand. You also understand and agree that the terms and conditions contained in this Agreement are necessary to maintain our high standards of quality and service and the uniformity of those standards at all Domino's Pizza Stores.

Confidential                                                                          FranchisorDefs-00001029

## 2.    GRANT AND TERM OF FRANCHISE.

### 2.1    Grant.

Subject to the terms of this Agreement, DPF grants to you a franchise to operate a Domino's Pizza Store (the "Store") under the Domino's System and a sublicense to use the Marks in the operation of the Store at the following location: Domino's Pizza Store #3693 located at:

227 W. 40th Street, New York, NY 10036

### 2.2    Term of Franchise.

The term of this Agreement shall be for a period of ten (10) years, commencing on the date of opening of the Store (or if this Agreement is being signed in connection with a renewal or transfer of the franchise, commencing on the day following the expiration or termination of the previous franchise agreement, as the case may be).

## 3.    RENEWAL OF FRANCHISE.

### 3.1    Option to Renew.

You may, at your option, renew the franchise for one additional ten (10) year term provided:

(a)    you are not in material default of any provision of this Agreement or any other agreement with us or our subsidiaries or affiliates or any other creditor or supplier of the Store and have substantially complied with the terms and conditions of these agreements during their terms;

(b)    you are able to maintain possession of the Store premises or to secure and develop a suitable alternative site approved by us; and

(c)    you refurbish the site as provided in Sections 9 and 15 of this Agreement or, if we require, agree to relocate the premises of the Store to a location approved by us and develop the premises in accordance with our then current requirements. If we require you to relocate the premises of the Store, you will be entitled to credit the costs of developing the new premises toward any refurbishing obligations you may have under the franchise agreement executed in connection with such renewal.

This option to renew may not be exercised unless all of the preceding criteria exist. The option to renew is personal to you and may not be exercised by any other person or entity without our prior written consent.

### 3.2    Manner of Renewal.

In connection with a renewal of this Agreement, you must execute our then current form of standard franchise agreement and all other agreements customarily used by us in the renewal of franchises. You understand that the renewal franchise agreement may provide for higher

8-07 SFA

2

royalty fees and greater expenditures for advertising and promotion than are provided for in this Agreement and may contain other terms materially different from the terms of this Agreement. The area of primary responsibility of the Store will not be modified unless such modification is consistent with criteria then in effect for comparable market areas. There will be no initial franchise or similar fee charged upon a renewal of the franchise. You will also be entitled to renew the franchise at the end of the renewal term in accordance with the renewal provisions, if any, contained in the franchise agreement executed by you in connection with your renewal of the franchise.

### 3.3    Notification of Expiration.

Provided you are in compliance with this Agreement, including the provisions of Section 3.1, we will send all agreements relating to renewal of the franchise for your review and execution approximately six (6) months prior to the expiration of this Agreement along with a notification of the expiration of this Agreement. Your failure to return these agreements to us within thirty (30) days of receipt will be deemed an election by you not to renew this Agreement. Our notice will also state what actions, if any, you must take to correct the deficiencies in your operation of the Store or whether we will require you to relocate or refurbish the premises of the Store as provided in Section 3.1 above. We also will specify the time period in which these deficiencies must be corrected or by which the refurbishing or relocation and development of the new premises must be completed, provided that, in the event that the then current term of your lease or any renewal lease does not expire concurrently with the expiration of this Agreement, we will not require you to complete a relocation of your Store and development of the new premises until the expiration of the then current term of your lease or any renewal lease. If we require you to relocate the Store, our notice will identify the reasons for requiring relocation. Renewal of the franchise will be conditioned on your continued compliance with all the terms and conditions of this Agreement and all other agreements with us and our affiliates and subsidiaries and all other creditors and suppliers of the Store up to the date of expiration.

## 4.    TERRITORIAL RIGHTS AND OBLIGATIONS.

### 4.1    Area of Primary Responsibility.

The following geographic territory will be your Area of Primary Responsibility:

<u>As described in Exhibit 'A'</u>

Provided you are in compliance with the terms of this Agreement, and except as otherwise provided in Section 4.3, we will not operate or grant a franchise for the operation of a Domino's Pizza Store during the term of this Agreement whose area of primary responsibility overlaps your Area of Primary Responsibility.

### 4.2    Delivery Service.

We shall have the right to prescribe from time to time the boundaries beyond which the Store may not offer delivery service. You further understand that in revising these boundaries we may in our discretion make adjustments to the size of your delivery and service area to

Confidential                                                      FranchisorDefs-00001031

account for, among other things, changing market conditions, population changes and other relevant considerations, including but not limited to the reasons contained in Section 4.3. You further agree that the Store will at all times during approved hours of operation offer delivery service to all customers located within your delivery and service area, provided, however, you are not required to offer delivery service in areas which might present a danger to you or your employees. However, you will remain solely responsible for investigating and reviewing periodically, but not less than annually, any decisions by you to limit your delivery area for safety reasons, subject to procedures and standards we may prescribe from time to time, and for obtaining and maintaining information that supports your decisions to limit delivery service. You understand and agree that you may not change the boundaries of your delivery and service area without our prior written consent. When making deliveries, you and your employees must strictly comply with all laws, regulations and rules of the road and due care and caution in the operation of delivery vehicles.

### 4.3    Exclusions.

Notwithstanding the provisions of Sections 4.1 and 4.2, enclosed malls, institutions (such as hospitals), airports, parks (including theme parks), sports arenas, convention centers and other facilities or venues where events are scheduled shall be excluded from your Area of Primary Responsibility. We retain the right on our behalf and behalf of our affiliates to open a Domino's Pizza store at any of these facilities or venues wherever the facility or venue is located, in order to service the facility or venue, or grant franchises or licenses for others to do so; provided, however, that you shall have the first option to operate the store and to service such facility or venue if you meet the legal and/or venue requirements, subject to your completion of our approval process and satisfaction of our conditions for approval. You shall be granted a reasonable period of time to consider the option. "Reasonable" shall be defined on a case-by-case basis by reference to the time allowed by the venue and competitive circumstances. In the event we decide to open a Domino's Pizza store at any of these facilities or venues, or grant a franchise or license for others to do so, the delivery and service area of the Store shall be automatically adjusted to exclude such facility or venue.

## 5.    OPENING ADVERTISING AND PROMOTION EXPENDITURE.

If you (or the Controlling Person if you are an Approved Entity) are opening your (or his or her) first Domino's Pizza Store, you must submit to us proof no later than ninety (90) days after opening of the Store that you have spent at least Three Thousand Dollars ($3,000.00) on grand opening advertising and promotion.

## 6.    ROYALTY FEE AND OTHER CHARGES.

### 6.1    Amount and Payment.

During the term of the franchise, you agree to pay us a royalty fee of five and one-half percent (5-1/2%) of the weekly royalty sales of the Store. This fee must be postmarked on Monday and paid by Wednesday of each week on royalty sales for the week ending on the preceding Sunday, if paying by mail, or paid by Thursday if we require you to pay by electronic funds transfer as provided in Section 6.4 below.

Confidential                                                          FranchisorDefs-00001032

### 6.2    Definition of Royalty Sales.

The term "royalty sales" means the total receipts from all sales by the Store of all pizza, beverages and other products or services authorized for sale at the Store or at any approved off-site location but exclusive of sales or equivalent taxes, coupon and similar discounts, and beverage container deposits approved by us. Premium or similar promotional items must be included in computing royalty sales unless these items have been sold at or below cost by the Store. Premium or similar promotional items shall not be deemed to include any food or beverage item unless otherwise specified by us.

### 6.3    Interest on Late Payments.

All royalty fees, advertising contributions and all other amounts owed to us pursuant to this Agreement will bear interest after the due date at the rate of one and one-half percent (1½%) per month or at the highest legal rate for open account business credit in the state in which the Store is located, whichever is lower.

### 6.4    Electronic Funds Transfer.

We have the right to require you to participate in an electronic funds transfer program under which royalty fees and advertising contribution payments are deducted or paid electronically from your bank account. We may permit you to initiate payments via a system established or approved by us, or at our option, require you to authorize us to initiate debit and/or credit entries and/or credit correction entries to your Store bank operating account (the "Account") for payment of royalty fees and advertising contributions on forms we prescribe. In the event you are required to authorize us to initiate debit entries, you agree to make the funds available in the Account for withdrawal by electronic transfer no later than the due date for payment. The amount actually transferred from the Account to pay royalty fees and advertising contributions will be based on the Store's royalty sales reported to us. If you have not reported royalty sales of the Store to us for any reporting period, we will be authorized to debit the Account in an amount equal to the royalty fee transferred from the Account for the last reporting period for which a report of the royalty sales of the Store was provided to us. If at any time we determine that you have under-reported the royalty sales of the Store or underpaid royalty fees or advertising contributions due us under this Agreement, we will be authorized to initiate immediately a debit to the Account in the appropriate amount in accordance with the foregoing procedure, including interest as provided for in this Agreement. An overpayment will be credited to the Account through a credit effective as of the first reporting date after we and you determine that such credit is due. Our use of electronic funds transfers as a method of collecting royalty fees and advertising contributions due us does not constitute a waiver of any of your obligations to provide us with weekly sales reports as provided in Section 14.2 nor shall it be deemed a waiver of any of the rights and remedies available to us under this Agreement.

### 6.5    Application of Payments.

When we receive a payment from you, we have the right in our sole discretion to apply it as we see fit to any past due indebtedness of yours due to us or our affiliates, whether for

Confidential                                                              FranchisorDefs-00001033

royalties, advertising contributions, purchases, interest, or for any other reason, regardless of how you may designate a particular payment to be applied. In addition, we may offset any amount otherwise due under any discount or rebate program against any amount owed to us.

## 7. STORE LOCATION.

### 7.1 Location and Use.

You may operate the Store only at the location specified in Section 2.1 and you may not relocate the Store except with our prior written consent. The Store may only be used for the operation of a Domino's Pizza Store and other related activities approved by us in writing. You shall not allow the premises of the Store to be used for any immoral or illegal purpose, or any other purpose that may bring disrespect to the Marks.

### 7.2 Relocation; Damage, or Condemnation.

If your lease expires or terminates without your fault or if the site is condemned, destroyed or rendered unusable ("Closing Event"), we will grant permission for relocation of the Store to a location and site meeting our requirements, policies and standards. Any relocation will be at your sole expense and the relocated Store must be open and operating no later than six (6) months after the Closing Event. In addition, within ten (10) days of vacating the Store premises, you must make such reasonable modifications to the exterior and interior of the Store (including signage, menu boards, job aids, product photos and the like) as we require to fully eliminate its identification and appearance as a Domino's Pizza Store. If you fail or refuse to fully de-identify the Store to the extent and in the manner required by this Agreement, we may, at our option and in addition to other rights and remedies we may have, make the modifications that are contemplated by this Agreement on your behalf and you agree to promptly pay and reimburse us on demand for any costs incurred by us including, without limitation, the proportionate compensation of our employees who devote time and render services in the de-identification of the Store.

### 7.3 Location and Operation of Commissary.

Any commissary operated by you in connection with the Store may be located only at the premises of the Store or other premises approved by us in writing and must be operated in accordance with commissary standards prescribed by us from time to time. Such commissary must be owned by you and operated by you and your employees exclusively for the benefit of the Store or other Domino's Pizza Stores owned by you and may not be owned or operated by any other person or entity without our prior written consent. You may not open or operate a commissary unless you have received prior written notification from us that you have satisfied in advance all of our requirements for the operation of a commissary, including all required training of commissary personnel.

### 7.4 Store Lease.

The lease for the site of the Store (including the lease for the site of the commissary, if any, to be operated by you in connection with the Store) shall contain such terms as we specify from time to time for all leases of a similar type. Each original lease, renewal leases, and lease

8-07 SFA                                      6

addenda and modification of any type must be submitted to us prior to execution for our examination and approval that it contains the terms we require in all leases. You must provide us with a copy of the executed lease, any renewal lease, and any addenda and modification within thirty (30) days after execution by you and the landlord.

### 7.5    Assumption of Lease on Termination or Expiration.

Upon the termination or expiration of the franchise for any reason, other than a termination by you for cause, we or our designee shall have the right to assume your status and replace you as lessee. You agree to execute an assignment of your interest in the lease promptly upon our request.  Upon exercise of our right to assume, your status as lessee, and your compliance with the other provisions of this section, you will be fully released and discharged from all liability for rent and all other future liability under the lease (although not from any liability for unpaid rent or any other then existing liability to the lessor under the lease, including, without limitation, any damages to the premises or restoration costs).  If we exercise our right to assume your lease, we will indemnify you and hold you harmless against any claim made for future rent or other future liability under the lease.  We will also notify you within ninety (90) days of obtaining your written assignment of your interest in the lease of any damages to the premise or restoration costs for which you are liable or responsible.

### 7.6    Ownership of Store Premises.

If you, or any entity that you own or control, owns any interest in the real estate where the Store is located, you agree to furnish to us upon request. a copy of the deed and any other document relating to the title to the real estate and a copy of your owner's policy of title insurance.

## 8.    STORE DEVELOPMENT.

### 8.1    Development and Construction.

You agree that promptly after obtaining possession of the site for the Store you will:

(a) .    cause to be prepared and submit for approval by us a site plan and any modifications to our basic architectural plans and specifications for the Store. including requirements for dimensions, exterior design, materials, interior layout, equipment, fixtures, furniture, signs. and decorating.  You understand that you may modify our basic plans and specifications only to the extent required to comply with applicable ordinances, building codes and permit requirements and only with our prior written approval;

(b)    obtain all required zoning changes; all required building, driveway, utility, health, sanitation, and sign permits and any other required permits;

(c)    purchase or lease fixtures, furniture and signs meeting our specifications or requirements and, if we so require, from an approved vendor or vendors designated by us;

Confidential                                                                    FranchisorDefs-00001035

(d)     acquire through purchase, lease and/or license the Computer System as required by Section 15.9.1.

(e)     complete the construction and/or remodeling, equipment, fixture, furniture and sign installation and decorating of the Store in full and strict compliance with plans and specifications approved by us and all applicable ordinances, building codes and permit requirements;

(f)     obtain all customary contractors' sworn statements and partial and final waivers of lien for construction, remodeling, decorating and installation services; and,

(g)     fully investigate and become familiar with the Store's delivery area and its boundaries.

## 8.2     Equipment, Fixtures, Furniture and Signs.

We will provide you with specifications for pizza, other authorized food and beverage preparation, dispensing, storage and display equipment, delivery and related motor vehicles, other equipment, fixtures, furniture, exterior and interior signs and decorating that we require you to use or install in the Store. We may specify brands, types or models for any of these items. You may purchase items meeting our specifications from any source unless we designate an approved source or sources for any of these items. If you propose to purchase or lease items not previously approved by us as meeting our specifications or from a vendor not approved by us, you must first notify us and we may require submission of sufficient specifications, photographs, drawings and/or other information and samples to determine whether any such item or supplier meets our specifications or our approved vendor criteria. We will advise you within a reasonable time whether any proposed item or vendor meets our specifications or our approved vendor criteria. You agree to use only such items that meet our specifications in the operation of the Store and to purchase them from approved vendors, if we so require. You understand, however, that we or our affiliates or an approved vendor may be the only source for some of these items and that we may otherwise limit the number of approved vendors. We reserve the right to charge you for our reasonable expenses in testing and/or evaluating any proposed item or vendor submitted by you.

## 8.3     Store Opening.

You agree to complete development of the Store and have the Store ready to open within a reasonable time after obtaining possession of the site for the Store. If you do not open the Store within six (6) months from the effective date of this Agreement, we will have the option to terminate this Agreement upon the giving of written notice to you.

## 9.     STORE REFURBISHING.

You have an obligation to maintain the Store in a manner which contributes positively to the then current image of the Domino's Pizza brand. You agree to refurbish the Store (in addition to regular maintenance and repair), within six (6) months of receipt of written notice from us, as we may from time to time require to maintain or improve the appearance and efficient operation

8-07 SFA                                                 8

of the Store, to increase its sales potential or to comply with our then current standards, image or identity. Refurbishing may include:

      (a)     replacement of worn out or obsolete equipment, fixtures, furniture and signs;

      (b)   the substitution or addition of new or improved equipment, including safes, fixtures, furniture, and signs, designated by us;

      (c)     redecorating;

      (d)     renovation of the interior and exterior of the premises and restoration and resurfacing of parking facilities; and

      (e)     structural modifications and remodeling of the premises.

You will not be required to make aggregate expenditures for refurbishing of the Store in excess of one and one half percent (1 ½ %) of the royalty sales of the Store from the date of its opening to the date of any required refurbishing not to exceed the ten (10) year period prior to the date of any such required refurbishing or, except in connection with a renewal of the franchise, to effect any refurbishing of the Store during the last twelve (12) months of the initial term of the franchise.

For purposes of this Section 9, the term equipment shall not include computer hardware or other components of the Computer System (as defined in Section 15.9.1). Any additions, substitutions, replacements or modifications to the Computer System shall be governed by the provisions of Sections 15.9.1 and 15.9.2 of this Agreement.

## 10.    TRAINING.

### 10.1    Initial Training.

If you (or the Controlling Person if you are an Approved Entity) are opening your (or his or her) first Domino's Pizza Store, you (or the Controlling Person) must enroll in and complete all training programs and classes which we require for the operation of a Domino's Pizza Store. These training programs and classes will be furnished at such times and places as we designate. We have the right to charge a reasonable training fee for these training programs or classes. All training programs and classes must be completed to our satisfaction. You will be responsible for the travel, living expenses and any other costs incurred during these training programs and classes.

### 10.2    Training of Employees.

You agree to implement a training program for employees of the Store and to be solely responsible for training the employees to legally, safely and properly perform his or her duties while inside the Store and while outside the Store for business purposes, including training your employees to follow appropriate procedures for their safety and well-being. You agree not to employ any person who fails or refuses to complete your training programs or is unqualified to

8-07 SFA                9

perform his or her duties in accordance with the requirements established for the operation of a Domino's Pizza Store. You acknowledge and understand that implementing a training program for employees of the Store and training your employees to follow safe and proper procedures for the operation of the Store will remain your sole responsibility even if, from time to time, you obtain advice or suggestions from us or our affiliates about these topics. You further acknowledge and understand that it is not our responsibility or duty to implement a training program for your employees, nor do we have the responsibility or duty to instruct your employees about matters of safety and security in the Store or delivery service area. By providing advice or suggestions, we do not assume any of your responsibilities or duties.

### 10.3   Additional Training.

We may also, at our option, require you (or the Controlling Person if you are an Approved Entity) to attend supplemental or additional training programs which may be offered from time to time by us or our affiliates during the term of the franchise. The fee for such training shall range from between One Hundred Dollars ($100.00) and Five Hundred Dollars ($500.00) per training class. You will be responsible for the reasonable costs of such programs and for the travel and living expenses and any other costs incurred during these programs. You must complete this supplemental or additional training within one (1) year of the time in which it is originally offered by us or our affiliates.

## 11.   OPERATING ASSISTANCE.

### 11.1   Advice and Guidance.

We will furnish you with such reasonable operating assistance as we determine from time to time to be necessary for the operation of the Store. Operating assistance will include advice and guidance regarding:

(a)   methods of pizza, other authorized food and beverage preparation, packaging and sale; and

(b)   the establishment of administrative, bookkeeping, accounting, inventory control and general operating procedures.

You acknowledge and understand that it is not our responsibility or duty to operate the Store and we do not have the legal right to direct your employees in the operation of the Store. Those functions remain your sole responsibility and duty. Further, you understand that the assistance provided to you under this Section 11 does not obligate us to provide the accounting, bookkeeping or marketing services required for the operation of the Store or to otherwise operate the Store. By providing advice or suggestions, we do not assume any of your responsibilities or duties.

### 11.2   Operating Problems.

We will advise you from time to time of operating problems of the Store disclosed by reports submitted to or inspections made by us or our designee. We will make no separate charge for operating or marketing assistance except that we may make reasonable charges for

Confidential                                        FranchisorDefs-00001038

forms and other materials supplied to you and for operating assistance made necessary in our judgment as a result of your failure to comply with any provision of this Agreement or for operating assistance requested by you in excess of that normally provided by us. By providing advice or suggestions, we do not assume any of your responsibilities or duties.

## 12. STORE PRODUCTS.

### 12.1 Store Menu.

You agree that you will offer for sale and sell at the Store for final consumption and not for resale, all pizza and other authorized food and beverage products and perform the carry-out and delivery services that we from time to time authorize; provided, however, you may offer for resale authorized products for certain programs approved by us. Such approval will not be unreasonably withheld and the decision to approve shall be based upon: (i) quality assurance; (ii) brand image; (iii) and such other factors as we determine. You also agree that you will not offer for sale or sell at the Store any other products or services.

### 12.2 Pizza Ingredients, Supplies and Materials.

All pizza and other food ingredients, beverage products, cooking materials, containers, packaging materials, other paper and plastic products, utensils, uniforms, menus, forms, cleaning and sanitation materials and other supplies and materials used in the operation of the Store must conform to the specifications and quality standards established by us from time to time. You must use in the operation of the Store boxes, containers and other paper or plastic products imprinted with the Marks as prescribed from time to time by us. We may in our sole discretion require that ingredients, supplies and materials used in the preparation, packaging, and delivery of pizza and other authorized food products be purchased exclusively from us, our affiliates or from approved suppliers or distributors. You agree to request delivery of food products to a store in quantities and in a manner that is consistent with policies prescribed from time to time by us. Any ingredient, supply or material not previously approved by us as conforming to our specifications and quality standards must be submitted for examination and/or testing prior to use. We reserve the right from time to time to examine the facilities of any approved supplier or distributor, including the commissary, if any, operated by you, and to conduct reasonable testing and inspection of the ingredients, materials or supplies to determine whether they meet our standards and specifications. We also reserve the right to charge fees for testing and evaluating proposed suppliers or distributors and examining and inspecting commissary operations and to impose reasonable limitations on the number of approved suppliers or distributors of any product. Approval of a supplier or distributor may be conditioned on requirements relating to frequency of delivery, standards of service including prompt attention to complaints and the ability to service and supply Stores within areas designated by us.

## 13. ADVERTISING AND PROMOTION.

### 13.1 By DPF.

We or our designee will from time to time formulate, develop, produce and conduct advertising and promotional programs in the form and media as we or our designee determines to be most effective. You agree to participate in all national and local and regional advertising and

Confidential

promotions as we determine to be appropriate for the benefit of the Domino's System. You further agree to honor any maximum pricing we may prescribe from time to time for any such national or local or regional advertising and promotions. We reserve the right, in our sole discretion, to determine the composition of all geographic territories and market areas for the development and implementation of advertising and promotion programs. All costs of the formulation, development and production of any such advertising and promotion (including without limitation the proportionate compensation of our employees who devote time and render services in the formulation, development and production of such advertising and promotion programs or the administration of the funds), will be paid from a separate fund administered by a separate not for profit entity (the "Advertising Fund"). You will be obligated to pay three percent (3%) of the weekly royalty sales of the Store to the Advertising Fund. Your contribution to the Advertising Fund must be postmarked on Monday and paid by Wednesday of each week on royalty sales for the week ending on the preceding Sunday or by Thursday if paid by electronic funds transfer as provided in Section 6.4 of this Agreement. You agree that we shall have the right from time to time to increase your contribution to the Advertising Fund by an amount not to exceed in the aggregate one percent (1%) of the royalty sales of the Store. All Domino's Pizza Stores owned by us or our affiliates will contribute to the cost of such advertising and promotion programs on at least the same basis as you. We will submit to you upon request an annual statement of monies collected and costs incurred by the Advertising Fund. We reserve the right to engage the services of an advertising source or sources to formulate, develop, produce and conduct the advertising and promotion programs, the cost of such services to be payable from the Advertising Fund.

You acknowledge and understand that the Advertising Fund is intended to maximize general public recognition and patronage of the Marks in the manner determined to be most effective by us and our affiliates and that neither we nor our affiliates undertake any obligation in developing, implementing or administering these programs to ensure that expenditures which are proportionate or equivalent to your contributions are made for the market area of the Store or that any Domino's Pizza Store will benefit directly or pro rata from the placement of advertising.

### 13.2   Local and Regional Advertising Cooperatives.

We reserve the right to require that you participate in local and regional advertising cooperatives in connection with the advertising and promotional programs administered by us or our affiliates or by other franchisees of the Domino's System or, in the event no such cooperative has been established, to require you to conduct local advertising for your Store. In addition to the advertising contribution payable by you under Section 13.1, you agree to pay any contributions that we require you to make for expenditures by these local or regional cooperatives or that may be otherwise approved by these cooperatives or for local advertising if no cooperative exists. If there is no advertising cooperative or if the Domino's Pizza Stores participating in a cooperative have not agreed upon a percentage of royalty sales to be contributed to the cooperative, you must expend or contribute to the cooperative, respectively, an amount we specify up to and including two percent (2%) of royalty sales. If a cooperative exists and sixty-five percent (65%) or more of the Domino's Pizza Stores agree to contribute or are contractually obligated to contribute a specified percentage of royalty sales to the cooperative, then we can require you to make the same percentage contribution to the cooperative as the other Stores in the cooperative. All Domino's Pizza Stores participating in a cooperative shall

Confidential                                                  FranchisorDefs-00001040

contribute no less than 2% of royalty sales. All Stores which are contractually obligated to contribute the specified percentage of royalty sales voted upon by the cooperative shall be counted as a favorable vote, whether or not they attend or vote at the meeting. We agree that the maximum aggregate amount we can obligate you to contribute for advertising and promotion under this Section 13.2 and Section 13.1 will be eight percent (8%) of the royalty sales of your Store. All contributions payable under this Section 13.2 must be post-marked on Monday and paid by Wednesday of each week on royalty sales for the week ending on the preceding Sunday or by Thursday if paid by electronic funds transfer in accordance with the procedures set forth in Section 6.4 of this Agreement. Nothing contained in this Section 13.2 shall limit, affect or supersede any obligation on your part to contribute a greater percentage of the royalty sales of the Store pursuant to any separate agreement or understanding you may have with any such local or regional advertising or promotional cooperative. We reserve the right, on our behalf and on behalf of our affiliates, to engage the services of an advertising source or sources to formulate, develop, produce and conduct the advertising and promotion programs for the cooperatives or for local advertising if no cooperatives exists with the cost of these services payable from the cooperative advertising budget or contributions made by you in accordance with this provision.

### 13.3   By Franchisee.

All advertising and promotion by you, including, but not limited to, all advertising and promotion conducted by you in print, or on radio, television, the Internet, and other electronic media, must be completely factual and shall conform to the highest standards of ethical advertising and be consistent with the then current image and policies relating to advertising and promotional programs of a Domino's Pizza Store.

## 14.   RECORDS AND REPORTS.

### 14.1   Bookkeeping and Recordkeeping.

You agree to establish and retain a bookkeeping, recordkeeping, computer and point of sale system (including a record of the names, addresses, telephone numbers and order history of the customers in your Store's delivery area all in form and format designated by us) conforming to the requirements prescribed by us, relating, without limitation, to the use and retention of daily sales information, counts of pizza types and other approved menu items sold, coupons, purchase orders, purchase invoices, payroll records, check stubs, bank statements, sales tax records and returns, cash receipts and disbursements, checks and credit card sales, journals and general ledgers, including any comparable electronically generated information or any supporting records or materials we may require or prescribe. You agree to retain all business records and reports (whether paper or electronically generated) relating to the Store in accordance with record retention policies and guidelines prescribed by us, from time to time, and for the time limits required by all applicable laws, ordinances and regulations. You also agree to maintain an emergency back-up order taking system and other back-up operational procedures identified by us in accordance with policies and procedures we may prescribe from time to time. Upon notice to you, you agree that we shall have full access, either on-site or from a remote location, to all of your computer data, equipment and systems containing any and all of the information, records and reports required by this Section 14.1 or any other provision of this Agreement. In addition, you agree to provide us with access to all such data, equipment and systems to facilitate the

Confidential                                                                   FranchisorDefs-00001041

exchange of information you are required to provide us under this Agreement.  Any information provided by you shall be used by us in a lawful manner.

**14.2** **Sales Reports and Financial Statements.**

You agree to submit to us, in accordance with requirements prescribed by us from time to time and in a format which we may designate from time to time:

(a)     with the royalty fee due, a weekly report of the sales of the Store and all other information and supporting records as we may require;

(b)     within sixty (60) days of the end of each fiscal year of the Store;

(i)     a statement of cash flow and cash on hand, an unaudited balance sheet as of the end of the year and an unaudited annual statement of profit and loss and financial condition of the Store prepared on an accrual basis;

(ii)     if you are a corporation, partnership or other approved entity, a cash flow and cash on hand, an unaudited balance sheet as of the end of the year and an unaudited statement of profit and loss of the corporation, partnership or approved entity prepared on an accrual basis; and

(iii)     if you have additional Domino's Pizza Stores, a consolidated statement of profit and loss for all of your operations, including any additional Domino's Pizza Stores which you own and all administrative and commissary operations.   The statements must be prepared in accordance with generally accepted accounting principles by an accountant in the manner prescribed by us;

(c)     promptly upon our request and within  twenty (20) days of the end of the month or period, in the manner as we may prescribe, and continuing for such period of time as we may from time to time designate:

(i)     a statement of cash flow and cash on hand, an unaudited balance sheet as of the end of the month or period and an unaudited statement of profit and loss of the Store prepared on an accrual basis for each month or period;

(ii)     if you are a corporation, partnership or other approved entity, a statement of cash flow and cash on hand, an unaudited balance sheet as of the end of the month or period and an unaudited statement of profit and loss of the corporation, partnership or approved entity prepared on an accrual basis for each month or period; and

(iii)     a consolidated statement of profit and loss for all of your Domino's Pizza Stores for each month or period;

Confidential

FranchisorDefs-00001042

(c) if you are in default under any of the terms or conditions of this Agreement, statements submitted on a quarterly basis affirming that all federal, state and local taxes have been paid;

(d) upon our written request, exact copies of your federal, state and local business income tax returns and state sales tax or equivalent tax returns for any period; and

(e) such other information as we may reasonably require to determine you and your owners' compliance with this Agreement or to assist you in the operation of the Store or to otherwise evaluate the performance of the Store, including information about the sales and receipts of the Store.

## 14.3 **Right to Require Audit.**

We reserve the right to audit the sales reports, financial statements, tax returns, information from the Store's computer system, and any other records you are required to retain or submit to us. In the event any audit discloses an understatement of the royalty sales of the Store for any period or periods, you must pay on the amount of such understatement the royalty fee of five and one-half percent (5-1/2%), all advertising contributions due under this Agreement and the amount, if any, required to be paid to your local or regional cooperative as provided in this Agreement, plus interest due. Further, in the event such understatement for any period or periods shall be two percent (2%) or more of the royalty sales of the Store or such inspection or audit is made necessary by your failure to furnish reports, supporting records, financial statements or other information required by this Agreement or to furnish these reports, records, information or financial statements on a timely basis, you will be obligated to reimburse us for the cost of the audit, including the charges of any independent certified public accountant used and the travel expenses, room and board and compensation of our employees or anyone we engage to conduct the audit. In the event you dispute the results of any audit conducted by us or our representatives, you will have the right, upon written notice to us within ten (10) days of your receipt of the results of our audit, to have the results verified by an independent certified public accounting firm selected by our outside accounting firm. The expense of this audit shall be borne by you unless this further audit discloses that no deficiency is due in which case we will be obligated to pay for the audit. We will notify you within ten (10) days of our receipt of your notice when the independent audit will commence. You agree to cooperate with all personnel conducting the audit. The results of the independent audit shall be binding upon the parties. You agree to pay any deficiencies within ten (10) days after receipt of our audit or, if applicable, the independent audit requested by you.

Confidential                    FranchisorDefs-00001043

## 15. OPERATING REQUIREMENTS.

### 15.1 Operating Procedures.

You agree to fully comply with all specifications, standards and operating procedures and rules from time to time prescribed for the operation of a Domino's Pizza Store, including, but not limited to, specifications, standards and operating procedures and rules relating to:

(a) the safety, maintenance, cleanliness, sanitation, function and appearance of the Store premises and its equipment, (including computer hardware, software, peripheral devices, high speed broadband connectivity, high speed broadband monitoring, and methods and means of encryption and access to our network resources), image, fixtures, furniture, decor and signs;

(b) qualifications, dress, grooming, general appearance and demeanor of you and your employees;

(c) quality, taste, portion control and uniformity, and manner of preparation and sale, of all pizza and other authorized food and beverage products sold by the Store and of all ingredients, supplies and materials used in the preparation, packaging and sale of these items;

(d) methods and procedures relating to receiving, preparing and delivering customer orders, including without limitation, online ordering;

(e) the hours during which the Store will be open for business;

(f) use and illumination of exterior and interior signs, posters, displays, menu boards and similar items;

(g) the handling of customer complaints;

(h) advertising on the Internet or other electronic media, including websites, home pages and the use of domain names;

(i) e-mail capabilities of the Store and other electronic communication methods (including high speed broadband connectivity, high speed broadband monitoring, and methods and means of encryption and access to our network resources) and devices to facilitate communication with us or our offices, including the exchange of information between the Store and us; and,

(j) the method and manner of payment which will be accepted from customers.

By entering into this Agreement, you agree to abide by these specifications, standards, operating procedures and rules and to fully adopt and implement them.

8-07 SFA                                    16

Confidential

### 15.2    Compliance with Laws and Other Business Practices.

You agree to secure and maintain in force all required licenses, permits and certificates and operate the Store in full compliance with all applicable laws, ordinances and regulations. You also agree to pay when due all amounts payable pursuant to any provision of this Agreement or any other agreement with us or our affiliates or subsidiaries or pursuant to any agreement with any other creditor or supplier of the Store. You shall file all tax returns and pay all taxes before they become delinquent. You agree not to permit any levy or warrant to be issued by any taxing authority or other creditor, (excluding mechanics liens and other immaterial liens), against any of your assets, nor allow any of your assets to be seized or frozen by any taxing authority or other creditor. Furthermore, if you are subject to any withholding taxes on royalty fees or other payments due, you shall provide us with quarterly evidence that such tax has been remitted to the appropriate governmental agency on a quarterly basis.

You agree to abide by the Payment Card Industry Data Security Standards enacted by the applicable Card Associations, including performing annual assessments and quarterly network scans. If you know or suspect a security breach, you shall immediately notify us. You shall promptly identify and remediate the source of the compromise. You assume all responsibility for providing all notices of breach or compromise and all duties to monitor credit histories and transactions concerning your customers. Without limiting the generality of other provisions of this Agreement, you agree to defend, indemnify and hold us and our affiliates harmless from and against any and all claims, demands, duties, obligations, damages, fines and/or penalties imposed upon you as a result of non-compliance with the Payment Card Industry requirements.

### 15.3    Prices For Carry-Out and Delivery.

During the course of customary retail operations, you agree to charge the same price for products offered by the Store whether delivered or sold over the counter in the Store. This will not preclude limited time only carry-out specials, with defined expiration dates.

### 15.4    Operating Manual.

We will loan to you during the term of the franchise one or more copies of an operating manual or operational bulletins or similar materials containing mandatory and suggested specifications, standards and operating procedures and rules prescribed from time to time by us and information relative to your other obligations under this Agreement and the operation of the Store (the "Operating Manual"). The entire contents of the Operating Manual will remain confidential and are proprietary to us and our affiliates. We will have the right to add to and otherwise modify the Operating Manual from time to time, if deemed necessary to improve the standards of service or product quality or the efficient operation of the Store, to protect or maintain the goodwill associated with the Marks, to take advantage of advancements in technology, or to meet competition. No such addition or modification, however, shall alter your fundamental status and rights under this Agreement. The provisions of the Operating Manual as modified from time to time, including the mandatory specifications, standards and operating procedures and rules prescribed from time to time by us and communicated to you in writing, will constitute provisions of this Agreement as if contained in this Agreement.

Confidential                                                                    FranchisorDefs-00001045

### 15.5   New Concepts.

If you develop any new concept, process or improvement or any slogan in the operation or promotion of the Store, or technology used in connection with the operation of the Store, you agree to promptly notify us and provide us with all necessary information without compensation. You acknowledge that any such concept, process, improvement or slogan shall become our property and that we may utilize or disclose this information to our affiliates and other franchisees.

### 15.6   Franchisee Must Directly Supervise Store.

The Store shall at all times be under the direct, on-premises supervision of you (or the Controlling Person if you are an Approved Entity).  You (or the Controlling Person if you are an Approved Entity) must devote full time and efforts (excluding reasonable vacation periods) as manager of the Store or to the management of other Domino's Pizza Stores (or other related activities approved by us in accordance with Section 7.1 of this Agreement).  You shall be solely responsible for recruiting, hiring, training, scheduling for work, supervising and paying the persons who work in the Store and those persons shall be your employees, and not our agents or employees.  Further, neither you nor any of your owners may, during the term of this Agreement, without our prior written consent, which may be withheld in our sole judgment, (i) engage, or own any interest, in any other business activity, (ii) be employed by any other business, or (iii) engage in any activity which may impair your ability to fulfill your obligations under this Section 15.6.  If you own more than one (1) Store, each Store must also be under the direct, on-premises supervision of a manager:

(a)     who has been properly trained by you;

(b)     whose identity has been disclosed to us; and

(c)     who shall have executed, upon our request, an agreement in the form provided by us agreeing not to divulge any trade secret or confidential or proprietary information, including the contents of the Operating Manual, or to engage in or have any interest in any other carry-out or delivery pizza store business.

### 15.7   Insurance.

You shall at all times during the term of the franchise maintain in force at your sole expense:

(a)     property insurance on a replacement cost basis at a minimum limit based on the total value of your assets (including, but not limited to, fire, extended coverage, vandalism and malicious mischief),

(b)     general liability insurance with a minimum limit of $1,500,000.00 per occurrence (including, but not limited to, coverage for personal injury, products and contractual liability),

Confidential                                                      FranchisorDefs-00001046

(c)     automobile liability insurance with a minimum limit of $1,500,000.00 per occurrence (including, but not limited to, owned automobiles titled or leased in the name of you or your owners and used at any time, whether principally or occasionally in your business, hired and non-owned coverage).  If you or your owners do not use a vehicle owned or leased in the name of you or any of your owners in your business, you must provide written evidence of that fact, satisfactory to us, and

(d)     workers' compensation insurance (in your name) as required by applicable law.  If no such law exists, then you must participate in such other comparable insurance or benefit programs for your employees as required by us.  If your state recognizes and permits self insurer programs, your participation in such a program will satisfy our requirements under this subsection (d).  If deductible plans are approved and used in your state, coverage may be purchased on this basis subject to the requirements of your insurance carrier.

All liability insurance policies must name us, and any subsidiaries and affiliates which we designate, as additional insureds entitled to the coverage afforded to all named insureds, without regard to any other insurance or self-insured program which we or our affiliates or subsidiaries may have in effect, and also provide that we receive thirty (30) days prior written notice of termination, expiration, cancellation, modification or reduction in coverage or limits of any such policy.  The terms and conditions of all such policies, including the amount of any deductibles, shall be consistent with the requirements prescribed from time to time by us.  You agree to promptly pay when requested by the insurer the amount of the deductible applicable to, and in the event of, any covered loss.

All insurance policies (excluding workers' compensation policies) must be issued by an insurance carrier rated B+ or better by Alfred M. Best & Company, Inc. or meeting such other rating or criteria we may establish from time to time.  We may also reasonably increase the minimum liability "limit" protection requirement annually and require different or additional kinds of insurance to reflect inflation, changes in standards of liability, higher damage awards in public, product or motor vehicle litigation or other relevant changes in circumstances.  You must submit to us annually a copy of the certificate of insurance or evidence of the renewal or extension of each such insurance policy or any modifications to any such insurance policies, which must describe the applicable deductibles for each such policy.  If at any time you fail or refuse to maintain in effect any insurance coverage required by us, or to furnish satisfactory evidence of such insurance, we may, at our option and in addition to other rights and remedies we may have, obtain insurance coverage, on your behalf, and you agree to promptly execute any applications or other forms or instruments required to obtain any such insurance and pay to us on demand any costs and premiums incurred by us.  Your obligation to obtain and maintain the insurance described in this Agreement shall not be limited in any way by reason of any insurance maintained by us.

**15.8    Identification as Franchisee.**

You agree to exhibit (a) on the Store premises and (b) on all delivery vehicles (or on car top signs on all delivery vehicles) signs of sufficient prominence and wording as we may prescribe from time to time so as to advise the public that the Store is owned, operated and

8-07 SFA                                        19

maintained by you and that each such delivery vehicle is owned, operated and maintained by you or the driver of the vehicle, as the case may be. All business cards, letterheads and other business materials shall clearly identify that you are the owner of the Store in accordance with the rules or policies we may establish from time to time in the Operating Manual or otherwise in writing. In addition, subject to rules and policies that may be established from time to time, all local advertising, including yellow page listings and advertisements that are placed by you or on your behalf, and which do not contain phone numbers or addresses that are associated with stores that we own or operate, shall either indicate that you are the owner of the store or stores in the print material, or that the store or stores are locally owned and operated.

### 15.9    Computer Hardware and Software and Other Technology.

#### 15.9.1  Computer System.

You agree to use in the development and operation of the Store the management system and computer hardware and software and related technology designated by us, including without limitation, features such as high speed broadband connectivity, high speed broadband monitoring, online ordering, methods and means of encryption and access to our network resources, and other internet based technology and peripheral devices that we specify from time to time (the "Computer System"). You acknowledge that we may modify all aspects and the components of the Computer System from time to time. As part of the Computer System, we may require you to obtain computer hardware and/or software we specify from a single vendor designated by us and we or our affiliates may be the sole supplier of all or any part of the Computer System. You agree to use only such items and services as we specify in connection with the Computer System. We may require that you enter into a license exclusively with us or our affiliates to use proprietary software developed by or for us. You may also be required to enter into agreements with others for use of third party software incorporated or used in connection with the Computer System. Our modification of such specifications or components for the Computer System may require you to incur costs to purchase, lease and/or license new or modified computer hardware and/or software and to obtain service and support for the Computer System during the term of this Agreement. You acknowledge that the cost to you of obtaining the Computer System (including software licenses) (or additions, substitutions, replacements or modifications thereto) may not be fully amortizable over the remaining term of this Agreement. Nonetheless, subject to the provisions of Section 15.9.2 below, you agree to incur such costs in connection with obtaining the computer hardware and software comprising the Computer System (or additions, substitutions, replacements or modifications thereto). You further acknowledge and agree that we have the right to charge reasonable fees for software or systems modifications and enhancements specifically made for us that are licensed to you and other maintenance and support services that we or our affiliates furnish to you related to the Computer System. You may also incur charges from third parties who render services or provide products that we require you to purchase or use. We shall have independent access to data on your Computer System, including sales figures. There are no contractual limitations on our right to access this information and data.

Without limiting the generality of the foregoing, we reserve the right to require you to acquire, install and continuously use the Domino's PULSE store computer system and to obtain a license to use the software from us or our affiliate by signing our standard license agreement

8-07 SFA                                           20

and to acquire hardware approved by us from a vendor or vendors which we designate. We also reserve the right to require you to participate in online ordering by entering into an agreement with an approved online ordering service company that we designate. You will be responsible for the fees and charges associated with your use of online ordering and the requisite internet usage and connections, including the fees charged by the service provider. We may also require that you continuously maintain high speed broadband connectivity, where available and to charge you a reasonable fee if you do not maintain high speed broadband connectivity, which you agree to pay on demand. You acknowledge and agree that changes to technology are dynamic and not predictable within the term of this Agreement. In order to provide for inevitable but unpredictable changes to technological needs and opportunities, you agree that we shall have the right to establish, in writing, reasonable new standards for the implementation of technology in the Domino's System; and you agree to abide by and fully adopt and implement those reasonable new standards established by us as if this Section 15.9.1 were periodically revised by it for that purpose.

### 15.9.2  Aggregate Expenditures for Computer System.

You will not be required to make aggregate expenditures for any additions, substitutions, replacements or modifications to the Computer System in excess of one and one half percent (1 ½ %) of the royalty sales of the Store from the date of its opening to the date we require you to make any additions, substitutions, replacements or modifications to the Computer System not to exceed the ten (10) year period prior to the date  we require you to make any additions, substitutions, replacements or modifications to the Computer System or, except in connection with a renewal of the franchise to make any additions, substitutions, replacements or modifications to the Computer System during the last twelve (12) months of the initial term of the franchise. This limitation shall not apply to our right to require that you acquire and install the Domino's PULSE store computer system or other components of the Computer System upon execution of this Agreement nor shall the provisions of any prior franchise agreement governing the operation of the Store restrict our right to require that you acquire and install the Domino's PULSE store computer system or other components of the Computer System under the terms of this Agreement.

### 15.9.3  Domino's PULSE and Other Computer and Technology Training.

If you (or the Controlling Person if you are an Approved Entity) have not installed and used Domino's PULSE, or any other computer system or technology that we require, in a Domino's Pizza store, you (or the Controlling Person) must enroll in and complete all training programs and classes which we require for the operation of Domino's PULSE, or any other computer system or technology. These training programs and classes will be furnished at such times and places as designated by us or the entity or entities that we approve to provide the training. We may furnish training. The entity furnishing the training (including us) has the right to charge a reasonable training fee for these training programs or classes, which you agree to pay. All training programs and classes must be completed to our satisfaction. You will be responsible for the travel, living expenses and any other costs incurred during these training programs and classes.

Confidential                                                                        FranchisorDefs-00001049

### 15.9.4 Additional Order Processing Systems.

We reserve the right to develop or contract with third parties to develop centralized or technology based methods of taking, processing, routing, and delivering orders in addition to the methods and technology we currently use or authorize (collectively "Additional Order Systems"). These may become mandatory at any time during the term of this Agreement and may require you to spend money to add or replace equipment, wiring, hardware and software; to pay licensing fees, support and maintenance fees, fees paid to third parties; to incur other costs, and to sign agreements with third parties. To the extent these products and services are owned by us or provided to you by us, we may charge up front and/or ongoing fees. However, to the extent all the direct and indirect costs to develop, test and implement an Additional Ordering System are paid from other sources, then such up-front and ongoing fees charged by us would be intended only to cover our ongoing expenses, including direct costs and reasonable allocations. Regardless of the sources of funds to develop any Additional Ordering System we shall be the sole owner of all direct and related rights and assets, including software and hardware, intellectual property and all data generated by the Additional Ordering Systems, but excluding hardware or equipment you purchase directly for the purpose of gaining access to the Additional Ordering System.

## 16. MARKS.

### 16.1 Usage.

You acknowledge that we have the right to sublicense the Marks and that any goodwill relating to your use of the Marks will inure to our benefit and the benefit of our affiliates. You shall use the Marks in full compliance with rules prescribed from time to time by us. You understand and acknowledge that our right to regulate the use of the Marks, includes, without limitation, any use of the Marks in any form of electronic media such as web sites or web pages or as a domain name or electronic media identifier. Any unauthorized use of the Marks will constitute a breach of this Agreement and an infringement of our rights in and to the Marks. You will not use any Mark as part of any corporate name or with any prefix, suffix or other modifying words, terms, designs or symbols or in conjunction or association with any name or symbol used by you in connection with the operation of the Store, nor may you use any Mark in connection with the sale of any unauthorized product or service or in any other manner not explicitly authorized in writing by us. All provisions of this Agreement applicable to the Marks will apply to any additional proprietary trademarks and commercial symbols we hereafter authorize you to use.

### 16.2 Infringements.

You agree to immediately notify us of any infringement of or challenge to your or our use of any Mark or claim by any person of any rights in any Mark You agree that you will not communicate with any person other than us and our counsel in connection with any such infringement, challenge or claim. We will have sole discretion to take such action as we deem appropriate and the right to exclusively control any litigation or Patent and Trademark Office or other proceeding arising out of any infringement, challenge or claim or otherwise relating to any Mark . You agree to execute any and all instruments and documents, render such assistance and

Confidential

FranchisorDefs-00001050

do such acts and things as may, in the opinion of our counsel, be necessary or advisable to protect and maintain our interests in any such litigation or Patent and Trademark Office or other proceeding or to otherwise protect and maintain our interest in the Marks.

### 16.3 Indemnification.

We will indemnify you against and reimburse you for all damages for which you are held liable in any proceeding arising out of the use of any Mark in compliance with this Agreement. If it becomes advisable at any time in our sole discretion for you to modify or discontinue use of any Mark and/or use one or more additional or substitute Marks, you agree to do so and our sole obligation will be to reimburse you for your tangible costs of complying with this obligation.

## 17. INSPECTIONS.

We or our designee will have the right at any time during business hours and without prior notice to conduct reasonable inspections of the Store, its operations and its business records, including, but not limited to, information from the Store's computers, and records and documents relating to the ownership and control of the Approved Entity and any other entity that has an interest in the operation of the Store, wherever located and to take a physical inventory of the assets of the Store. Inspections of the Store will be made at our expense, unless we are required to make any additional inspections in connection with your failure to comply with this Agreement. In such event, we will have the right to charge you for the costs of making all additional inspections in connection with your failure to comply, including without limitation the travel expenses, room and board and compensation of our or our designee's employees.

## 18. TERMINATION AND EXPIRATION.

### 18.1 Termination By Franchisee.

If you are in compliance with this Agreement and we breach this Agreement and fail to cure any breach within thirty (30) days after written notice is delivered to us, you may terminate this Agreement and the franchise effective ten (10) days after delivery of notice to us. A termination of this Agreement and the franchise by you without complying with these requirements or for any reason other than our breach of this Agreement and our failure to cure the breach within thirty (30) days after receipt of written notice from you shall be deemed a termination by you without cause and not in accordance with the provisions of this Agreement.

### 18.2.1 Immediate Termination By DPF – Upon Written Notice.

We shall have the right to terminate this Agreement effective upon delivery of notice of termination to you, if:

(a) you or any of your owners have made any material misrepresentation on any record or report required by us under this Agreement or on your application for the franchise, or in any other application submitted to us;

(b) you do not open the Store within six (6) months from the date of this Agreement;

8-07 SFA

23

(c)     you or any of your owners is judged a bankrupt, becomes insolvent, makes an assignment for the benefit of creditors, is unable to pay his or her debts as they become due, or a petition under any bankruptcy law is filed against you or any of your owners or a receiver or other custodian is appointed for a substantial part of the assets of the Store;

(d)     you abandon or fail to continuously and actively operate the Store, or, without our prior written consent, permit any person other than a qualified employee designated by you, whose identity has been disclosed to us, to operate the Store in your absence;

(e)     the lease or sublease for the Store is terminated or cancelled or you are unable to renew or extend the lease or sublease or you fail to maintain possession of the Store premises unless you are permitted to relocate the Store under Section 7.2 of this Agreement;

(f)     you or any of your owners is convicted of a felony, or a crime which substantially impairs the goodwill associated with the Marks or you or any of your owners engages in any conduct which, in our judgment, adversely affects the reputation of the Store or the goodwill associated with the Marks or involves dishonesty, fraud, deceit, or misrepresentation;

(g)     you intentionally under-report the royalty sales of the Store for any period or periods;

(h)     you or any of your owners violates any of the restrictions contained in Section 20 or 21 of this Agreement;

(i)     you intentionally or on more than one occasion during the term of this Agreement, violate any Child Labor Laws in connection with your operation of the Store;

(j)     an audit by us discloses an understatement of royalty sales and you fail to pay to us the applicable royalty fee and advertising contribution and interest due within ten (10) days after receipt of the final audit report;

(k)     the interest of a deceased or permanently disabled person is not disposed of in accordance with the terms of this Agreement;

(l)     you or any of your owners fail on three (3) or more occasions during any twelve (12) month period to comply with any one or more provisions of this Agreement including without limitation, your obligation to submit when due, sales reports or financial statements, to pay when due the royalty fees, advertising contributions or other payments to us or our affiliates or subsidiaries or any other creditors or suppliers of the Store, whether or not such failure to comply is corrected after notice is delivered to you;

(m)     any of your assets or items used in the operation of the Store are seized or you are otherwise denied the use of the property or access to the Store because of your failure to pay any taxing authority or any amount due a creditor of the Store, or because

Confidential                                                                    FranchisorDefs-00001052

of any other act or omission of you or any of your owners; or, you fail to notify us of a tax levy or delinquency; or

(n)     you fail to cease operating the Store, or fail to correct the conditions in the Store causing a present threat of imminent danger to public health or safety, after notice to you as provided in Section 18.2.3 of this Agreement.

### 18.2.2  Termination By DPF –After Opportunity to Cure.

We shall have the further right to terminate this Agreement effective upon delivery of notice to you, if:

(a)     you fail to obtain or maintain insurance required by us and you do not correct this failure within forty-eight (48) hours after written notice is delivered to you; provided, however, that we shall not exercise our right to terminate this Agreement if you immediately cease operating the Store and obtain all such insurance within ten (10) days after written notice is delivered to you;

(b)     you fail to comply with any provision of this Agreement or any specification, standard or operating procedure or rule prescribed by us which relates to the use of any Mark, safety and security, or the quality of pizza or other authorized food products or any beverage sold by you or the cleanliness and sanitation of the Store and you do not correct this failure within seven (7) calendar days after written notice is delivered to you;

(c)     you fail to pay when due any amount owed to us, our affiliates or subsidiaries, or any creditor or supplier of the Store or any taxing authority for federal, state or local taxes (other than amounts being bona fide disputed through appropriate proceedings) and you do not correct such failure within ten (10) calendar days after written notice is delivered to you; or

(d)     you or any of your owners fails to comply with any other provision of this Agreement or any specification, standard or operating procedure and fail to correct this failure within thirty (30) calendar days after written notice is delivered to you.

### 18.2.3  Immediate Cessation of Operations .

In the event that the conditions of the Store or operations at the Store, in our judgment, present a threat of imminent danger to public health or safety, we may require the immediate cessation of operations at the Store upon delivery of a notice to you. The notice shall contain the reason we believe immediate cessation of operations is required.  The parties shall address the conditions and develop a plan to correct all deficiencies within seven (7) days of the delivery of the notice.

### 18.3     Obligations Upon Termination or Expiration.

Upon termination or expiration of this Agreement, you agree to:

8-07 SFA                                          25

(a)     immediately return to us all copies of the Operating Manual and cease use of and deliver to us all Customer Lists (as hereinafter defined in Section 20.5);

(b)     take such action as may be required to cancel all assumed name or equivalent registrations relating to the use of any Mark;

(c)     notify the telephone company, postal service, and all listing agencies in writing of the termination or expiration of your right to use all telephone numbers, post office boxes, and all classified and other directory listings relating to the Store and to authorize in writing the transfer of these to us or our franchisee or designee.   You acknowledge that we have the sole rights to and interest in all telephone numbers, post office boxes, and directory listings relating to any Mark, and you authorize us to direct the telephone company, the postal service, and all listing agencies to transfer all telephone numbers, post office boxes, and directory listings to us, our franchisee or designee and if you fail or refuse to do so, the telephone company, postal service, and all listing agencies may accept our direction as evidence of our exclusive rights in the telephone numbers, post office boxes, and directory listings and our authority to direct the transfer.   Upon execution of this Agreement or at any time thereafter, you agree to execute any written authorizations or pre-approved authorizations in the form prescribed by us directing the telephone company, postal service, and any listing agencies to transfer all telephone numbers, post office boxes, and directory listing to us, our franchisee or designee upon the occurrence of any such termination or expiration;

(d)     immediately pay all royalty fees, advertising contributions and other charges which are due and owing under this Agreement;

(e)     immediately cease identifying yourself as a Domino's Pizza Store or as being associated with the Domino's System, including, without limitation, disabling and ceasing to permit the continued operation of any website relating to the Store or the Domino's System or which utilizes the Marks;

(f)     if you retain possession of the Store premises, at your expense, make such reasonable modifications to the exterior and interior of the Store (including signage, menu boards, job aids, product photos and the like) as we require to fully eliminate its identification and appearance as a Domino's Pizza Store. If you fail or refuse to fully de-identify the Store to the extent and in the manner required by this Agreement, we may, at our option and in addition to other rights and remedies we may have, make the modifications that are contemplated by this Agreement on your behalf and you agree to promptly pay and reimburse us on demand for any costs incurred by us or our designee including, without limitation, the proportionate compensation of our or our designee's employees who devote time and render services in the de-identification of the Store.; and

(g)     make the Store accessible and available for us to operate pursuant to Section 19.8 of this Agreement if we elect to do so.

8-07 SFA                                         26

                                                                                    FranchisorDefs-00001054

## 19.   OPTION TO PURCHASE STORE.

### 19.1   Option.

Upon the termination or expiration of this Agreement, except termination by you for cause, we shall have the exclusive option, but not the obligation, to purchase the assets of the Store.  For purposes of this section, the term "assets" shall mean the equipment, inventory, leasehold interests and improvements and favorable rights and covenants of the Store, but exclusive of delivery vehicles.  Our option shall commence upon expiration of this Agreement or on the date of termination as applicable, and shall continue for thirty (30) days thereafter, subject to extension as provided in this Section.  You agree that if the termination is stayed, either by us or by judicial proceedings, or if we are not permitted to manage the Store pursuant to section 19.8,  we will not be able to exercise our option within the 30 day period and you also agree that under those circumstances our option to purchase shall be extended, without further notice to you, for an additional time which shall include the entire time we are unable to exercise our option.

### 19.2   Formula Price.

The purchase price for these assets and the covenants shall be equal to twenty-five percent (25%) of the first Three Hundred Thousand Dollars ($300,000.00) of royalty sales ("Base Amount") of the Store during the fifty two (52) full weeks immediately preceding the date of termination or expiration plus thirty-five (35%) of royalty sales in excess of the Base Amount during this period.   The purchase price shall be allocated among the assets and covenants in the manner prescribed by us.

If the Store has been in operation less than fifty two (52) full weeks, the option price shall be the cost of the Store plus ten percent (10%).   The term "cost" shall be defined as your documented expenditures for the equipment, inventory and leasehold improvements of the Store, but shall not include any charges for labor performed by you or your family members in connection with the development of the Store.

### 19.3   Purchase of Commissary.

In the event you operate a commissary in connection with the Store, we shall also have the option to purchase the assets of the commissary.  The purchase price for the assets of the commissary will be the net book value (based upon a seven year depreciation schedule).

### 19.4   Deductions From Purchase Price.

In the event we elect to purchase the assets of the Store, the purchase price will be reduced by:

(a)     the total current and long term liabilities of the Store assumed by us as described below; and,

(b)     the amount necessary to upgrade and renovate the Store to meet our then current standards for a Domino's Pizza Store; and,

8-07 SFA                                                    27

                                                      FranchisorDefs-00001055

(c)     our reasonable attorney's fees incurred in connection with enforcing this Agreement or in securing possession of the Store.

We will assume all current and long term liabilities, whether or not included on your financial statements up to the amount of the purchase price subject, however, to all defenses available to you.  Further, the amount we charge for upgrading and renovating the Store will not exceed one and one-half percent (1-1/2%) of the royalty sales of the Store from the date of opening to the date of termination or expiration reduced by an amount equal to the total expenditures made by you for renovation and upgrading of the Store at our request up to the date of termination or expiration.

### 19.5    Payment of Purchase Price.

The balance of the purchase price, after deductions described above will be payable as follows:  ten percent (10%) of the balance at the time of closing and the remainder in sixty (60) equal monthly installments of principal plus interest at a rate of interest per annum equal to the prime lending rate charged by Morgan Guaranty Trust Company of New York (or other bank or financial institution we may designate) determined as of the closing date with annual adjustments based on the prime rate charged on each anniversary date. The first payment will be due on the first day of the second succeeding calendar month following closing and the remaining payments on the first day of each month thereafter.  On the first payment date, interest from the date of closing shall also be paid.  If we elect to pay the entire purchase price at closing, we shall have the right to escrow such portion of the purchase price as we deem appropriate for a period of six (6) months to cover liabilities of the Store.  We shall notify you of claims asserted by creditors of the Store against the escrow monies.  You shall have forty-eight (48) hours to settle any claim with such creditor prior to disbursement of funds from the escrow.  If there is a good faith dispute between you and a creditor of the Store, you shall have thirty (30) days to reach a settlement with any such creditor as to the amount owed before we will disburse any escrow monies to such creditor.  If you are unable to resolve the discrepancy with the creditor within the thirty (30) day period, we shall have the right to use the escrow monies to satisfy the claim of any such creditor.  At the end of such six (6) month period, any remaining purchase price shall be remitted to you along with a statement prepared by us indicating the manner in which these funds were expended.

### 19.6    Real Property.

(a)  In the event you or your owners own the real property on which the Store or commissary is located, and such property is not a multi-tenant unit, we will also have the exclusive option to purchase this property.  We shall exercise this option within the same period of time as provided in section 19.1, as that time may be extended. The purchase price will be the fair market value as determined by an independent appraiser selected by both of us. If we cannot agree on an independent appraiser, we each shall select an independent appraiser who shall select a third independent appraiser.  The independent appraiser selected by our appraisers shall determine the fair market value of the real property and his determination shall be final and binding on the parties. The purchase price will be payable in full at the closing minus customary prorations including the pay-off of existing mortgage liens.

8-07 SFA                                           28

(b) If we do not elect to purchase the real property, or if the property is in a multi-tenant unit, we or our designee will have the option to enter into a lease for a term of not less than five (5) years with an option by the lessee to extend the term of the lease for an additional term of five (5) years. The lease shall contain the terms and conditions contained in the form of lease then used by us or our affiliates in connection with Domino's Pizza Stores owned and operated by us or our affiliates. The rental under the lease for the initial five (5) year term shall be the fair rental value of the property as determined by an independent appraiser selected in the manner described above. The rental shall be increased during the second five (5) year option term by the percentage that the National Consumer Price Index for Urban Wage Earnings and Clerical Workers as determined by the United States Department of Labor for the region in which the Store is located (or a comparable index if such Index is not then being issued) has increased from the commencement date of the initial term until the last day of the initial term of the lease.

### 19.7    Closing.

The closing shall occur within thirty (30) days after we exercise our option to purchase the assets and/or real property or such later date as may be necessary to comply with applicable bulk sales or similar laws.  At the closing, we both agree to execute and deliver all documents necessary to vest title in the purchased assets and/or real property in us free and clear of all liens and encumbrances, except those assumed by us and/or to effectuate the lease of the Store premises. You also agree to provide us with all information necessary to close the transaction. We reserve the right to assign our option to purchase the Store or commissary, if any, operated in connection with the Store (and the real property to the extent applicable) or designate a substitute purchaser for the Store. We agree, however, to be responsible for and shall guarantee payment of any deferred portion of the purchase price as provided in Section 19.6 of this Agreement in the event we designate a substitute purchaser of the assets of the Store. If you do not execute and deliver any documents required, by execution of this Agreement you irrevocably appoint us as your lawful attorney-in-fact with full power and authority to execute and deliver in your name all these documents.   You also agree to ratify and confirm all of our acts as your lawful attorney-in-fact and to indemnify and hold us harmless from all claims, liabilities, losses or damages suffered by us in so doing.

### 19.8    Operation During Option Period.

We will have the right, upon written notice to you, to manage, or designate one of our affiliates to manage, the Store during the period in which we have the option to purchase the Store as provided in section 19.1 and for the period following the exercise of our option and prior to the closing, on the same terms and conditions as described in Section 21.7.

### 19.9    Formula Price.

The parties agree that the formula price described in this Section 19 is the agreed upon method of arriving at a price for the assets of the Store in the event we exercise the option contained in this Section 19 and is not to be deemed a conclusive indication of the value of the Store under other circumstances or where an agreement to purchase the Store has been negotiated by you or your owners.

8-07 SFA                                                      29

## 20.    RESTRICTIVE COVENANTS.

### 20.1    In-Term Covenant.

You agree that, during the term of this Agreement, you will not, directly or indirectly for the benefit of you or your owners, or through or on behalf of or in conjunction with any other person, partnership or corporation, own, engage in, be employed by, advise, assist, invest in, franchise, make loans to, or have any other interest, whether financial or otherwise, in any other carry-out or delivery pizza store business (except for other Domino's Pizza Stores operated under franchise agreements entered into with us or other Domino's Pizza Stores in which you or your owners have an ownership interest).

### 20.2    Post-Term Covenant.

You agree that, for a period of one (1) year after termination or expiration of this Agreement, or the date on which you cease to operate the Store, whichever is later, you will not, directly or indirectly for the benefit of you or your owners, or through or on behalf of or in conjunction with any other person, partnership or corporation, own, engage in, be employed by, advise, assist, invest in, franchise, make loans to, or have any other interest, whether financial or otherwise, in any carry-out or delivery pizza store business located at the premises of the Store or within ten (10) miles of the premises of the Store (except for other Domino's Pizza Stores operated under franchise agreements with us or other Domino's Pizza Stores in which you or your owners shall have an ownership interest).  The covenant contained in this section shall not be deemed to impair, modify or change any covenant not to compete contained in any agreement for the purchase and sale of the Store.

### 20.3    Ownership of Public Companies.

The covenants contained in this Section 20 shall not apply to ownership of less than a five percent (5%) beneficial interest in the outstanding equity securities of any corporation whose stock is publicly traded.

### 20.4    Solicitation of Employees.

You agree that during the term of this Agreement you will not, directly or indirectly, solicit or employ any person who is employed by us, by any entity controlled by or affiliated with us or by any other of our franchisees, nor will you induce or attempt to induce any of these people to leave their employment without the prior written consent of their employers.  We agree that we will not induce or attempt to induce any of your employees to leave their employment with you and become employed with us or our affiliates without your consent.

### 20.5    Customer Lists and Trade Secrets; New Processes, Concepts, Improvements, Etc.

You agree to maintain the absolute confidentiality of the Operating Manual and all other information concerning the Domino's System, whether provided by us or a third party, during and after the term of the franchise, disclosing this information to the other employees of the Store only to the extent necessary for the operation of the Store in accordance with this

8-07 SFA                                          30

                                                      FranchisorDefs-00001058

Agreement, and that you will not use the Operating Manual or such other information in any other businesses or in any manner not specifically authorized or approved by us in writing. The customer lists and all historical data relating to the sale of all pizza and beverage products at the Store (the "Customer Lists") also shall be deemed confidential and (a) you shall not use the Customer Lists in any other business or capacity; and (b) you shall maintain the absolute secrecy and confidentiality of the Customer Lists.

### 20.6   Owners of Approved Entity.

If you are an Approved Entity, the owners, by executing this Agreement, shall be bound by the provisions contained in this Agreement, including the restrictions set forth in this Section 20. Further, a violation of any of the provisions of this Agreement, including the covenants contained in this Section 20, by any owner shall also constitute a violation by you of your obligations under this Agreement.

### 20.7   Distribution of Products Related to the Domino's System.

During and after the term of this Agreement, you and your owners agree not to sell or otherwise distribute any products, or items bearing any of the Marks or which are used at any time in connection with any advertising, promotional or operational program other than to customers of your Store in the ordinary course of business or to another Domino's Pizza franchisee in good standing at the time of any proposed transfer approved by us.

### 20.8   Ownership Structure.

You agree to fully comply with all rules, policies and procedures from time to time prescribed by us relating to the ownership structure of an Approved Entity. If you are an Approved Entity, you agree that the Controlling Person who has been approved by us will at all times during the term of this Agreement own and control fifty-one percent (51%) or more of the absolute voting and ownership interests of the Approved Entity, unless the Controlling Person obtains our prior written approval for a different ownership structure. You also agree to submit to us for our review and approval any proposed change before attempting any change in the ownership or control of the Approved Entity.

## 21.   ASSIGNMENT.

### 21.1   By DPF.

This Agreement is fully assignable by us and the assignee or other legal successor to our interests will be entitled to all of the benefits of this Agreement.

### 21.2   By Franchisee.

This Agreement is personal to you and your owners (if you are an Approved Entity). Accordingly, neither you nor any of your owners may assign or transfer this Agreement, any interest in this Agreement or, if you are an Approved Entity, any interest in an Approved Entity except as specifically authorized under this Agreement. A transfer of ownership of the Store (or its assets) may only be made in conjunction with a transfer of this Agreement. Any attempted

Confidential                                                                   FranchisorDefs-00001059

assignment or transfer not in accordance with this Agreement shall have no effect and shall constitute a breach of this Agreement.

### 21.3  Assignment to an Approved Entity.

We will allow you to assign this Agreement and the Store (and its assets) to an Approved Entity for the convenience of ownership of the Store, provided:

(a)  the Approved Entity conducts no business other than the operation of the Store or other Domino's Pizza Stores (or other related activities authorized under this Agreement);

(b)  the Approved Entity is actively managed by you;

(c)  the person designated as the Controlling Person owns and controls not less than fifty-one percent (51%) of the general partnership interest of such partnership, the equity and voting power of all classes of issued and outstanding capital stock of such corporation, the membership interest in the limited liability company or the voting and ownership interests of such entity; and

(d)  all owners meet our requirements as established from time to time by us and agree to guarantee the obligations of the Approved Entity under this Agreement and to be bound by the terms of this Agreement in the manner prescribed by us.

If you are an Approved Entity or if this Agreement is assigned to an Approved Entity, you must comply with the requirements set forth in this Section 21.3 throughout the term of this Agreement. The organization documents of any Approved Entity owning the franchise, including all stock certificates, shall recite that they are subject to all restrictions contained in this Agreement. We shall also have the right to require, as a condition of any assignment of this Agreement to an Approved Entity or the operation of the franchise by an Approved Entity, that the owners enter into a buy/sell agreement among themselves in a form and containing such terms as we prescribe for transfers of ownership interests in such Approved Entity. You shall provide us with all documents to be executed in connection with any such assignment and we shall use our reasonable efforts to approve or disapprove these within thirty (30) days after receipt.

### 21.4  Assignment or Transfer to Others.

We will permit sales, transfers or assignments of this Agreement or, if you are an Approved Entity, of an ownership interest in the Approved Entity to others provided:

(a)  you (and your owners) are not in default under this Agreement or any other agreement with us or our subsidiaries or affiliates or any other creditor or supplier of the Store;

(b)  the proposed transferee or assignee (and its Controlling Person and all other owners if it is an Approved Entity) meets our then-applicable standards for franchisees or owners;

Confidential                                                              FranchisorDefs-00001060

(c)     the proposed transferee or assignee (and its owners) is not engaged in any other business activity without our prior written consent, except other Domino's Pizza Stores;

(d)     the proposed transferee or assignee (and its owners if it is an Approved Entity) must sign our then-current form of standard franchise agreement for a term equal to the remaining term of this Agreement or, at our election, the then-current term if longer;

(e)     the proposed transferee or assignee (or the person designated by us) must complete all required training to the extent required by us;

(f)     at our request, the proposed transferee or assignee refurbishes the Store in the manner and subject to the provisions prescribed in Sections 9 and 15;

(g)     the proposed transferee or assignee pays us a transfer fee of $1,500.00; and

(h)     this Agreement is terminated according to the terms of our customary form of mutual termination agreement.

The provisions of (d), (e), (f),(g), and (h) above shall not apply to an approved sale, transfer or assignment by an owner owning a forty-nine percent (49%) or less interest in the Approved Entity except that the proposed transferee or assignee must guarantee the performance by Franchisee of its obligations under this Agreement and agree to be bound by all of the provisions of this Agreement in the form prescribed by us. You must provide us with all documents to be executed by you and/or your owners and the proposed purchasers in connection with any transfer or assignment at least thirty (30) days prior to signing.

### 21.5   Death or Permanent Disability.

Upon your death or permanent disability or the death or permanent disability of the Controlling Person, this Agreement or the ownership interest of such deceased or permanently disabled Controlling Person must be transferred to a party approved by us. Any transfer, including, without limitation, transfers by devise or inheritance or trust provisions, shall be subject to the same conditions for transfers which are contained in this Agreement. Except as otherwise prescribed by us in writing, your personal representative or the personal representative of such Controlling Person shall submit to us a proposal meeting the requirements for transfer of this Agreement or such ownership interest within one hundred and twenty days (120) days of your death or permanent disability or the death or permanent disability of such Controlling Person. We agree to communicate our approval or disapproval of any such proposal within fifteen (15) days of receipt. We will not unreasonably withhold our consent to the transfer of this Agreement or such ownership interest to your spouse, heirs or relatives or the spouse, heirs or relatives of such deceased or permanently disabled Controlling Person, provided the requirements of Section 21.4 are satisfied. We agree to make our Board of Directors and Executive Team (or their successors or equivalents) available during such one hundred and twenty (120) day period to evaluate any proposal regarding transfer of this Agreement or such ownership interest, including any request that we consider purchasing the franchise or such

Confidential                                    FranchisorDefs-00001061

ownership interest.  Your personal representative or the personal representative of such deceased or permanently disabled Controlling Person shall complete the transfer of this Agreement or such ownership interest within sixty (60) days from the date of our approval of any such proposal. Upon the death of any other owner, the interest of such owner shall be transferred within a reasonable time to a person meeting our requirements.  All such transfers must also comply with Section 21.4 of this Agreement.  Your or any of your owners' failure to transfer the interest in accordance with the provisions of this Section shall be considered a breach of this Agreement.

### 21.6    Definition of Permanent Disability.

You or your Controlling Person, will be deemed to have a "permanent disability" if you or your Controlling Person's usual, active participation in the Store as contemplated by this Agreement is for any reason curtailed for a continuous period of six (6) months.

### 21.7    Operation by DPF After Death or Permanent Disability.

We shall have the right to appoint a manager for the Store if in our judgment the Store is not being managed properly after your death or permanent disability or the death or permanent disability of the Controlling Person.  Our right to appoint a manager for the Store includes the right to temporarily or permanently cease operations at the Store, if in our reasonable judgment continued operation of the Store will adversely affect the Marks, the long term reputation of the Store or the Domino's System, or present a risk to public health, welfare and safety, including the well-being of the employees of the Store.  All funds from the operation of the Store during the management by our appointed manager will be kept in a separate fund, and all expenses of the Store including compensation, other costs, and travel and living expenses of our manager will be charged to this fund.  We will charge a management fee of five and one-half percent (5 1/2%) (in addition to the royalty fee and advertising contributions payable under this Agreement) during the period in which the Store is managed on your behalf.  In managing the Store, our obligation will be to use our reasonable efforts to ensure the Store is properly managed, and neither we nor our affiliates will be liable for any debts, losses or obligations of the Store, to any of your creditors for any products, materials, supplies or services purchased by the Store prior to or during the time of management by our appointed manager.  If the separate fund that is established is insufficient to pay the expenses of the Store, we will notify you or your executor, administrator, conservator or other personal representative and this person  must deposit in the fund within five (5) business days, any amount required by us to attain a reasonable balance in the fund.

### 21.8    Right of First Refusal of DPF.

If you or your owners propose to sell all or any part of the Store (or its assets) or, if you are an Approved Entity, any ownership interest in an Approved Entity and you or your owners obtain a bona fide, executed written offer to purchase this interest, you or your owners are obligated to deliver a copy of the bona fide offer to us along with all documents to be executed by you or your owners and the proposed assignee or transferee.  Our right of first refusal shall commence upon the date of our receipt of the following: (i) the bona fide, executed written offer to purchase; (ii) all documents to be executed by you or your owners and the proposed assignee or transferee; (iii) all documents related to the operation of the Store which you are required to

Confidential

provide us, including, but not limited to a current copy of the lease for the Store and such financial statements as are required of you under Section 14.2 of this Agreement; and (iv) your notice that you are specifically submitting the documents to give us the right to exercise our right of first refusal, and shall continue for a period of thirty (30) days thereafter. Failure to submit any one or more of the items, including the notice of the purpose of the submission, shall result in our right of first refusal being extended until 30 days after we receive all of the required documents and the notice. We shall exercise the right to purchase the Store (or its assets) or such ownership interest for the price and on the terms and conditions contained in the offer by giving written notice to you or your owners. We may substitute equivalent cash for any form of payment proposed in such offer or designate a substitute purchaser for the Store (or the assets) or the ownership interest being offered, provided that we will assume responsibility for the performance of any other purchaser we may designate. If the offer is to purchase the interest of a Controlling Person and is for less than all of the outstanding interests of the Approved Entity, we shall also have the right, during the same period of time described above and upon written notice to the other owners, to purchase the remaining shares of capital stock, partnership interest or membership interest at a per share or per unit or interest price equivalent to the price being offered under the bona fide offer to the Controlling Person. If we do not exercise this right of first refusal, the offer may be accepted by you or your owners, subject to our prior written approval as provided in this Agreement. If the offer is not accepted by you or your owners, within sixty (60) days, we will again have the right of first refusal to purchase the Store as described above. This section will not apply to transfers made in accordance with Section 21.3 of this Agreement.

## 22.   CONTRACT INTERPRETATION AND ENFORCEMENT.

### 22.1   Effect of Waivers.

No waiver by us of any breach or a series of breaches of this Agreement shall constitute a waiver of any subsequent breach or waiver of the performance of any of your obligations under this Agreement. Our acceptance of any payment from you or the failure, refusal or neglect by us or you to exercise any right under this Agreement or to insist upon full compliance with our or your obligations under this Agreement or with any specification, standard or operating procedure or rule will not constitute a waiver of any provision of this Agreement.

### 22.2   Cost of Enforcement.

If any legal or equitable action is commenced, either to challenge, interpret, or to secure or protect our rights under or to enforce the terms of this Agreement, in addition to any judgment entered in our favor, we shall be entitled to recover such reasonable attorney's fees as we or anyone acting on our behalf may have incurred together with court costs and expenses of litigation.

### 22.3   Indemnification of DPF.

If we or any of our subsidiary or affiliated companies or any of our or their agents or employees are required to produce records or testify at trial or in deposition or are subjected to any claim, demand or penalty or become a party to any suit or other judicial or administrative

Confidential                                                FranchisorDefs-00001063

proceeding brought by any person or persons (including your employee or prior employee) or any other person or entity by reason of any claimed act or omission by you, your employees or agents, or by reason of any act or omission occurring on the Store premises, or in your delivery service area, or while on the way to or from the delivery service area, by reason of an act or omission with respect to the business or operation of the Store, including but not limited to acts or omissions arising out of the maintenance or use of a motor vehicle or while making a delivery or returning from making a delivery, or any limitations on delivery service, you shall defend and indemnify and hold us, our subsidiary and affiliated companies, or any of our or their agents or employees, harmless against all judgments, settlements, penalties, and expenses, including attorney's fees, court costs and other expenses of litigation or administrative proceeding, incurred by or imposed on us, our subsidiary and affiliated companies, or any of our or their agents or employees, in connection with the testimony, production, investigation or defense relating to such claim or litigation or administrative proceeding. Your indemnification obligations described above will continue in full force and effect after, and notwithstanding, the expiration or termination of this Agreement.

### 22.4    Construction and Severability.

All references in this Agreement to the singular shall include the plural where applicable, and all references to the masculine shall include the feminine and vice-versa. If any part of this Agreement for any reason shall be declared invalid, such decision shall not affect the validity of any remaining portion, which shall remain in full force and effect. If any applicable law or rule requires a greater prior notice of the termination of or election not to renew this Agreement, or the taking of some other action than is required under this Agreement, the prior notice or other requirements required by this law or rule shall be substituted for the requirements of this Agreement. If any covenant in this Agreement which restricts competitive activity is deemed unenforceable by virtue of its scope in terms of area, business activity, prohibited and/or length of time, but would be enforceable by reducing any part or all thereof, the parties agree that same shall be enforced to the fullest extent permissible under the laws and public policies applied in the jurisdiction in which enforcement is sought.

### 22.5    Scope and Modification of Agreement.

This Agreement constitutes the entire agreement between the parties and supersedes all prior and contemporaneous, oral or written, agreements or understandings of the parties regarding the subject matter of this Agreement. No modification, waiver, termination, rescission, discharge or cancellation of this Agreement shall affect the right of any party to enforce any claim or right under this Agreement, whether or not liquidated, which occurred prior to the date of such modification, waiver, termination, rescission, discharge or cancellation.

### 22.6    Governing Law.

The terms and provisions of this Agreement shall be interpreted in accordance with and governed by the laws of the State in which the Store is located.

8-07 SFA

36

22.7    **Notices.**

All written notices permitted or required to be delivered by the provisions of this
Agreement or of the Operating Manual shall be deemed so delivered when delivered to you by
hand, three (3) days after having been placed in the United States Mail by Registered or Certified
Mail, one (1) day after being placed in the hands of a commercial courier service for next day
delivery, one (1) day after transmission by facsimile or other electronic system, and addressed to
us at our most current principal business address or to you at the most current principal business
address or home address of which we have been notified in writing.

22.8    **Independent Contractors.**

The parties to this Agreement are independent contractors and no training, assistance or
supervision which we may give or offer to you shall be deemed to negate such independence or
create a legal duty on our part.  Neither we nor any of our affiliates shall be liable for any
damages to any person or property arising directly or indirectly out of the operation of the Store,
including but not limited to those damages which may occur while your employees are making
or returning from making deliveries, or arising out of your delivery service policies.  Nor shall
we or any of our affiliates have any liability for any taxes levied upon you, your business, or the
Store. The parties further acknowledge and agree the relationship created by this Agreement and
the relationship between us is not a fiduciary relationship nor one of principal and agent.
Furthermore, neither we nor our affiliates have any relationship with your employees and have
no rights, duties, or responsibilities with regard to their employment by you.  You acknowledge
and agree that you do not have the authority to act for or on our behalf or to contractually bind us
or our affiliates to any agreement.  No party to this Agreement shall have any authority to
assume any liability for the acts of the other, or to alter the legal relationships of the other.  Only
the named parties to this Agreement shall have rights hereunder and you shall not have any rights
under any other franchise agreement to which you are not a party.

22.9    **Standard of Reasonableness.**

Unless otherwise stated in this Agreement, we agree to exercise reasonable judgment
with respect to all determinations to be made by us under the terms of this Agreement.

22.10   **Acknowledgment.**

You acknowledge that you have conducted an independent investigation of the business
contemplated by this Agreement and recognize that it involves business risks making the success
of the venture largely dependent upon your business abilities.  We expressly disclaim the making
of, and you acknowledge that you have not received or relied upon, any warranty or guarantee,
express or implied, as to the potential volume, profits or success of the business venture
contemplated by this Agreement.  In addition, you acknowledge that you have conducted an
independent investigation of the Store's delivery and service area and are familiar with the
boundaries and the nature and extent of any areas that might present a danger to you or your
employees.   You also acknowledge and agree that this Agreement may not be modified,
amended or changed except by a writing signed by all parties.

Confidential                                                        FranchisorDefs-00001065

### 22.11  Binding Effect.

This Agreement is binding upon the parties and their heirs, approved assigns and successors in interest.

### 22.12  Effective Date of this Agreement.

This Agreement shall become effective upon the date of its acceptance and execution by us.

**DOMINO'S PIZZA FRANCHISING LLC**          **FRANCHISEE:** Hat Trick Pizza, Inc.

By: _____              By: _____
    Joseph P. Devereaux                         Robert L. Cookston, III

Its: Assistant Secretary, CFE                  Its: President

**DATED:** _____1-28-08_____              **DATED:** __12 | 17 | 07__

### RENEWAL DATE

_____April 2, 2008_____

Confidential                                    FranchisorDefs-00001066

## COVENANTS OF OWNERS

The undersigned individuals (the "Owners") represent and warrant to DPF that they are all of the owners of Franchisee or otherwise have a direct or indirect interest in the success of Franchisee and that the person designated below as the Controlling Person is the Controlling Person of the Approved Entity under this Agreement. Further, to induce DPF to enter into this Agreement and grant the franchise to Franchisee, each of the Owners hereby jointly and severally guarantees the performance by Franchisee of its obligations under this Agreement and agrees to be bound by all of the provisions of this Agreement, including, without limitation, the restrictions contained in Sections 20 and 21 of this Agreement, provided that the liability of the Owners to DPF under their guarantee, other than the Controlling Person, shall be based upon the percentage of his/her ownership interest in Franchisee.

Each Owner also acknowledges and agrees that:

(1)     The Approved Entity shall be managed solely by the Controlling Person and that the Controlling Person may not be removed by any action of the Approved Entity or its Owners without the prior written consent of DPF;

(2)     The Controlling Person shall at all times during the continuation of this Agreement have not less than fifty one percent (51%) of the equity and voting power and/or interests in the Approved Entity and any provision or term in the governing or establishing documents for the Approved Entity or any agreement between the Owners to the contrary is and shall be void for all purposes;

(3)     The establishing or governing documents for the Approved Entity do not provide for a "supermajority" or other voting structure that would require the Controlling Person to have more than 51% of the equity and voting structure in order to maintain control over the Approved Entity and that no Owner(s) has any type of "veto" rights and that no voting trusts have been established which would restrict or limit the voting control of the Controlling Person. If such provision or term exists in the establishing or governing documents or other agreements, the Owners agree that it shall be void for all purposes;

(4)     The Controlling Person has, as of the date of execution of this Agreement, the option, but not the obligation, exercisable on thirty (30) days notice, to purchase any or all of the equity and voting interest owned by the other Owners for a sum certain which has been determined prior to the execution of this Covenant of Owners (which may be modified by the Owners). If for any reason all Owners have not agreed upon a purchase price, the undersigned Owner(s) agree that the purchase price for their interest shall be calculated by determining the formula price in this Agreement for all of the Domino's Pizza Stores (including Domino's Pizza Pizzazz and Domino's C Stores) which the Approved Entity operates and subtracting from such formula price all of the current and long term liabilities of Franchisee. The result of such computation shall be multiplied by the ratio that the Owner's interest bears to all outstanding ownership interests in the Approved Entity. Upon tendering the purchase price for each Owner's interest, the Owners hereby agree to convey such interest and such commitment shall be subject to enforcement by any court of competent jurisdiction through specific performance;

8-07 SFA                                          41

                                    FranchisorDefs-00001067

(5)     If the Controlling Person receives a bona-fide offer and desires to sell the franchise, the Franchisee can require the other Owners to sell his/her interest in accordance with the terms of the bona-fide offer.

(6)     None of the Owners has received or taken any security interest in this Agreement or any pledge of any equity or interest in the Approved Entity and no such security interest or pledge shall be taken during the continuation of this Agreement;

These Covenants of Owners are intended to modify and supersede any provisions of the establishing or governing documents for the Approved Entity or other agreement between the Owners which are inconsistent with its terms.  In the event of any inconsistency between these Covenants of Owners and any other agreement or governing or establishing document, these Covenants of Owners shall control.  The undersigned acknowledge that the execution of these Covenants of Owners are conditions to approval by DPF of assignment or entry of this Agreement with DPF, and DPF shall be entitled to refuse to acknowledge or recognize any provisions of the governing or establishing documents of the Approved Entity which are inconsistent with the terms of these Covenants of Owners or this Agreement.  Each of the Owner(s) agree that in the event that any of the governing or establishing documents for the Approved Entity are inconsistent with the provisions of these Covenants of Owners, the Controlling Person is granted the authority and power to modify or amend such provision and each Owner agrees to cast any necessary vote in favor of the amendment of such document or to execute such agreement as will reconcile these Covenants of Owners and the applicable document or agreement.  The undersigned further agree that the governing and establishing documents of the Approved Entity shall not be amended, modified, deleted, novated or otherwise changed in any manner without the prior written consent of DPF.


_Robert L. Cookston_                          100%

CONTROLLING PERSON             % OF OWNERSHIP
Robert L. Cookston, III


            N/A                        N/A

OWNER                              % OF OWNERSHIP


            N/A                        N/A

OWNER                              % OF OWNERSHIP


            N/A                        N/A

OWNER                              % OF OWNERSHIP


8-07 SFA                        43

Confidential

FranchisorDefs-00001068