**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re DOMINO'S PIZZA INC. | MASTER FILE: 16 Civ. 2492 (AJN)(KNF) |
| THIS DOCUMENT RELATES TO:<br><br>RIAD KUCHER, HAROON MOJUMDER and OMAR FARUK, on behalf of themselves and all other similarly-situated employees,<br><br>                Plaintiffs,<br><br>        v.<br><br>DOMINO'S PIZZA, INC., *et al.*,<br><br>                Defendants. | Case No. 16 Civ. 02492 (AJN)(KNF) |

**DOMINO'S DEFENDANTS' REPLY MEMORANDUM OF LAW IN**
**FURTHER SUPPORT OF THEIR MOTION TO ENFORCE RULE 68**
**OFFER OF JUDGMENT AND TO COMPEL ARBITRATION**

**DLA PIPER LLP (US)**
Joseph A. Piesco, Esq.
Garrett D. Kennedy, Esq.
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

Norman M. Leon, Esq.
444 West Lake Street, Suite 900
Chicago, Illinois 60606
(312) 368-4000

*Attorneys for Defendants Domino's Pizza,*
*Inc., Domino's Pizza LLC and Domino's*
*Pizza Franchising LLC*

## <u>CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................................1

I.   The Offer Bars The Settling Plaintiffs' Claims
     Against the Domino's Defendants ...................................................................................3

     A.  The Offer Should Be Enforced By Its Clear Terms ................................................3

     B.  The Domino's Defendants Did Not Waive Their
         Right to Enforce the Offer.......................................................................................5

II.  The Arbitration Plaintiffs Must Submit Their Claims To Arbitration .............................6

     A.  Any Questions About The Arbitration Agreements'
         Scope Must Be Referred To An Arbitrator...............................................................7

     B.  The Domino's Defendants' Have Not Waived
         Their Right to Compel Arbitration ..........................................................................9

CONCLUSION..................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                     **Page(s)**

*In re Actrade Fin. Techs., Ltd.*,
  424 B.R. 59 (Bankr. S.D.N.Y. 2009) ...............................................................6

*Arculeo v. On-Site Sales & Mktg., LLC*,
  425 F.3d 193 (2d Cir. 2005) .........................................................................4

*Arrigo v. Blue Fish Commodities, Inc.*,
  408 F. App'x 480 (2d Cir. 2011) ...................................................................8

*AT&T Tech. v. Commc'n Workers*,
  475 U.S. 643 (1986) ......................................................................................9

*Best v. Yutaka*,
  90 N.Y.2d 833 (1997)....................................................................................6

*Burns v. Imagine Films Entm't, Inc.*,
  108 F.3d 329 (2d Cir. 1997) .......................................................................10

*In re Cox Ents., Inc. Set-top Cable Tele. Box Antitrust Litig.*,
  835 F.3d 1195 (10th Cir. 2016)......................................................................8

*Eastman Kodak Co. v. Altek Corp.*,
  936 F. Supp. 2d 342 (S.D.N.Y. 2013) ...........................................................8

*Goodheart Clothing Co., Inc. v. Laura Goodman Ents., Inc.*,
  962 F.2d 268 (2d Cir. 1992) .........................................................................4

*Kramer v. Hammond*,
  943 F.2d 176 (2d Cir. 1991) .........................................................................9

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010) .........................................................................5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ......................................................................................9

*Paine Webber, Inc. v. Bybyk*,
  81 F.3d 1193 (2d Cir. 1996) .........................................................................9

*Russell v. Citigroup*,
  748 F. 3d 677 (6th Cir. 2014) .......................................................................8

*Shearson Lehman Hutton, Inc. v. Wagoner*,
  944 F.2d 114 (2d Cir. 1991) .......................................................................10

*Stone v. Aronwald & Pykett*,
   275 A.D.2d 706 (2000)......................................................................................................6

*Struthers v. City of N.Y.*,
   2013 WL 5407221 (E.D.N.Y Sep. 25, 2013) .......................................................................5

*Sutherland v. Ernst & Young, LLP*,
   600 F. App'x 6 (2d Cir. 2015) ...........................................................................................9

*Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*,
   754 F.2d 457 (2d Cir. 1985) ............................................................................................10

*Thyssen, Inc. v. M/V Markos N*,
   1999 WL 619634 (S.D.N.Y. Aug. 16, 1999),
   *aff'd*, 310 F.3d 102 (2d Cir. 2002) ....................................................................................10

*TradeComet.com LLC v. Google, Inc.*,
   435 F. App'x 31 (2d Cir. 2011) ..........................................................................................8

Defendants Domino's Pizza, Inc. ("DPI"), Domino's Pizza Franchising LLC ("DPF"), and Domino's Pizza LLC ("DPL") (collectively, the "Domino's Defendants") respectfully submit this Reply Memorandum of Law (the "Reply") in Further Support of Their Motion to Enforce Rule 68 Offer of Judgment and to Compel Arbitration ("Motion" or "Mot.").[1]

## PRELIMINARY STATEMENT

This is a simple and straightforward motion that the Settling Plaintiffs and Arbitration Plaintiffs have sought to make complicated in an effort to avoid the plain terms and clear impact of the agreements they executed.  Indeed, Plaintiffs' Opposition to the Motion is premised almost entirely on legal theories that have no bearing whatsoever on the issues before this Court.

This is perhaps most evident in the first section of Plaintiffs' Opposition, which attempts to take this Court on a meandering journey through the negotiations that preceded the execution of the Offer and the interpretive principles that supposedly apply to Offers of Judgment.  Putting aside the patent inconsistency that pervades this argument – how can one apply contract principles applicable to non-negotiable contracts in one breath and urge the court to consider the negotiations that led to the execution of the contract in the other – the Settling Plaintiffs' argument ignores entirely the basis for the Domino's Defendants' Motion.  The Domino's Defendants' argument does not hinge on the parties' intent in executing the Offer.  Indeed, the parties' subjective intent in executing the Offer is irrelevant.

The Domino's Defendants' argument is premised on **the effect** of the language in the Offer, which the Settling Plaintiffs never contend is in any way ambiguous.  Because the Offer resolved "**all** claims asserted in the Complaint" and "**all** potential alleged damages that [Settling] Plaintiffs could recover if they were to continue to pursue this lawsuit," and because the

---

[1]        Defined terms used herein have the same meanings as set forth in the Motion.

Domino's Defendants' alleged liability is purely derivative of the Cookston Defendants' alleged liability, there are no damages left to recover, and no claim left to try.  Simply put, even if the Settling Plaintiffs did not intend to resolve their claims against the Domino's Defendants, they did so as a matter of law by resolving their claims against the Cookston Defendants.

The Settling Plaintiffs' argument that the Domino's Defendants alleged delay in raising this issue somehow supports their position is both misplaced and unfounded.  First, the Settling Plaintiffs have been on notice of the Domino's Defendants' position since December 2016. Second, because the Offer did not (and does not) encompass the claims of all of the named Plaintiffs (Plaintiffs filed an amended complaint three days after this Court entered the Offer naming an additional Plaintiff, Omar Faruk), the joint employer discovery the parties continued to take would still have been necessary.  In this regard, the Settling Plaintiffs have suffered no prejudice whatsoever by the Domino's Defendants' supposed delay.  According to their counsel, there are 175 opt-in plaintiffs waiting to substitute in as Named Plaintiffs in this case.  (*See* Opp., pp.21-22.)[2]  If, as Plaintiffs proclaim, this suit will continue regardless of the resolution of this Motion, the Settling Plaintiffs would have been required to continue to engage in all aspects of discovery regarding the joint employer issue despite the terms of the Offer.

The Arbitration Plaintiffs' attempts to avoid the clear import of their agreements are equally unfounded.  Each Arbitration Plaintiff has submitted a Declaration to this Court conceding the validity and enforceability of his respective Arbitration Agreement (ECF Nos. 475-6, ¶ 8; 475-8, ¶ 3; 475-6, ¶ 3) – they simply dispute the scope of claims subject to arbitration.  There is no reason for this Court to address this issue, as the parties clearly and unmistakably reserved to the arbitrator all questions of arbitrability.  But even if this Court held

---

[2]       It is unclear whether this number includes the many opt-in forms Plaintiffs continued to file more than five weeks after the deadline they proposed and this Court approved.  (*See* ECF No. 482 [striking all late-filed notices].)

otherwise, the Arbitration Agreements unambiguously cover all claims relating to the "employment context" or "other association with the Company," which is broad enough to cover those alleged here. However, even if there was some doubt, such would have to be construed in favor of arbitration. The Arbitration Plaintiffs' argument that the Arbitration Agreements can only be applied prospectively (and therefore cannot govern claims based on an alleged employment relationship that existed before they signed those agreements) is incorrect, and has been repeatedly rejected by the Second Circuit. The Arbitration Plaintiffs' final argument – that their claims do not arise in the "employment context" because the Domino's Defendants have disavowed joint employer status – is just silly. We are aware of no decision (let alone one from this Circuit) that has ever rejected a party's right to compel arbitration simply because it has denied and chosen to defend against a substantive premise underlying the adversary's claim.

## LEGAL ARGUMENT

### I.  The Offer Bars The Settling Plaintiffs' Claims Against the Domino's Defendants

#### A.  *The Offer Should Be Enforced By Its Clear Terms*

After spending several pages discussing the interpretive principles that apply to non-negotiable Offers of Judgment – only to follow with a recitation of the negotiations the preceded the execution of this Offer – the Settling Plaintiffs contend that, because the Offer does not specifically reference the Domino's Defendants and was not executed by them, and because parole evidence indicates that the Settling Plaintiffs did not want to release their claims against the Domino's Defendants, the Offer does not encompass those claims. With respect, all of these arguments simply miss the point.

While largely ignored by the Settling Plaintiffs, the only theory of liability proffered in this case against the Domino's Defendants is based on their joint employer allegations. In fact, there is not one allegation in their Complaint which asserts that any one of the Domino's

Defendants ever took any act that would support a finding of liability beyond whatever damages the Settling Plaintiffs claim to have suffered as a result of the Cookston Defendants' alleged wage and hour violations.[3]   Because of that, the Settling Plaintiffs' claims, and their potential recoveries, are necessarily constrained by the claims they had against the Cookston Defendants and the damages (if any) they could have recovered on those claims.[4]

The Offer unequivocally states that it "encompass[es] **all** of the Plaintiffs' claims asserted in the Complaint," and that the monies paid thereunder were for "**all** potential damages that Plaintiffs could recover if they were to continue this lawsuit."  (*See* ECF No. 160, ¶ 4 [emphasis added].)  If the Settling Plaintiffs have no claims against the Cookston Defendants, and if their recovery under the Offer was for all potential damages they could recover against the Cookston Defendants, they necessarily have no claims against the Domino's Defendants, and they have no remaining damages.  Notably, nowhere in their Opposition do the Settling Plaintiffs even attempt to explain what claim they believe still exists to be tried.  That is because there is none.

What the Settling Plaintiffs subjectively believed or intended is irrelevant.  Offers of judgment are "construed according to ordinary contract principles," *Goodheart Clothing Co., Inc. v. Laura Goodman Ents., Inc.*, 962 F.2d 268, 272 (2d Cir. 1992), and "a written agreement that is complete, clear and unambiguous on its face **must** be interpreted according to the plain

---

[3]     Kucher argues he has separate claims against the Dominos' Defendants for "retaliation."  (*See* Opp., p.12, n.2).  That is ridiculous.  First, there are no allegations that any Domino's Defendant played any role with respect to Kucher's alleged retaliation claims.  Rather, all of the allegations relate to actions allegedly taken by current or former employees of the Cookston Defendants.  (*See* ECF No. 171, ¶¶ 120-34.)  It is thus unsurprising that, when Plaintiffs sought a TRO to enjoin this alleged retaliation, they did not even notify counsel for the Domino's Defendants and ultimately conceded they were not seeking relief against them.  (*See* ECF No. 102, Transcript of April 14 Conference, at 26:13-16.)  Second, the Offer expressly addressed Mr. Kucher's retaliation claim.  (*See* ECF No. 60 [noting the Offer encompasses "all claims for damages for alleged retaliatory conduct."]).

[4]     The Domino's Defendants are aware of no case from any jurisdiction – and the Settling Plaintiffs cite none – that has ever found that a joint employer's liability could exceed that of a direct employer.  Any such conclusion would not make sense given the nature of joint employer liability. *See Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) ("Where [the joint employer] doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer.").

meaning of its terms, without the aid of extrinsic evidence." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (internal quotation marks omitted; emphasis added).[5]

In this regard, the Settling Plaintiffs' reliance on *Struthers v. City of N.Y.*, 2013 WL 5407221 (E.D.N.Y Sep. 25, 2013) is misplaced. In *Struthers*, a non-employment case, the Court determined that a Rule 68 offer was ambiguous as to which defendant had made the offer (and thus which defendant was entitled to Rule 68's cost-shifting provisions). *Id.* at *1-5. While the Domino's Defendants respectfully submit that *Struthers* was wrongly decided, its ruling has no bearing here. In *Struthers*, the plaintiff asserted claims against the City of New York and a number of police officers alleging purported violations of his civil and due process rights. *Id.* at *1. However, unlike here, where each claim is asserted against every Defendant, Struthers asserted some claims solely against the officers, some against all defendants, and some solely against the City. (*See Struthers*, Case No. 12 Civ. 242, ECF No. 10.) As a result, the resolution of his claims against the City did not necessarily resolve his separate claims against the officers. Further, the *Struthers* plaintiff's theories of liability presented different damages theories, while here, the Settling Plaintiffs seek to hold the Domino's Defendants liable as joint employers for the exact same damages they sought against the Cookston Defendants.

### B. *The Domino's Defendants Did Not Waive Their Right to Enforce the Offer*

The Settling Plaintiffs' claim that the Domino's Defendants are somehow precluded from relying on the terms of the Offer based on their supposed delay in raising this issue is baseless. **First**, the Settling Plaintiffs have been on notice since December 2016 of the Domino's

---

[5] Notably, while the Settling Plaintiffs contend that the Offer is ambiguous as to whether it applies to the Domino's Defendants, they never contend that the language itself is in any way ambiguous. Nor could they, because the Offer clearly states that it covers "all claims" and "all damages" at issue in the Complaint. As a result, parole evidence cannot be considered. *See Maverick Tube Corp.*, 595 F.3d at 467; *see also Law Debenture Tr. Co.*, 595 F.3d at 467 (precluding consideration of parole evidence).

Defendants' position, but they refused to dismiss their claims at that time. (*See* Ex. 1 to the Declaration of Norman Leon, dated December 18, 2017.) The Domino's Defendants cannot be faulted for Plaintiffs' decision to continue litigating a baseless joint employer claim.

**Second**, the Settling Plaintiffs have not been prejudiced in any way. The Settling Plaintiffs argue vociferously that they have been put through the pains of discovery for no reason, and that surely the Dominos' Defendants would not have done so had they believed the Offer dispensed with their claims. Not so. The Settling Plaintiffs are the ones that brought this action, they are the ones that asserted the existence of a joint-employer relationship, and they are the ones whose declarations led this Court to conditionally certify a class. As a result, the Dominos' Defendants would have sought the exact same discovery and depositions from the Settling Plaintiffs regardless of the terms of the Offer.

**Finally**, the Motion is timely and, as noted above, the Settling Plaintiffs have suffered no prejudice. The cases cited by Plaintiffs involved much longer "delays" and a party's failure to assert an affirmative defense. *See In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59, 75 (Bankr. S.D.N.Y. 2009) (four-year delay); *Best v. Yutaka*, 90 N.Y.2d 833, 834 (1997) (two-and-a-half-year delay and failed to raise release as an affirmative defense); *Stone v. Aronwald & Pykett*, 275 A.D.2d 706, 707 (2000) (defendant failed to "plead the execution of the release as an affirmative defense"). That is not the case here.

## II.   <u>The Arbitration Plaintiffs Must Submit Their Claims To Arbitration</u>

Much as with their discussion of the Offer, Plaintiffs' Opposition to the Domino's Defendants' Motion to enforce the Arbitration Agreements convolutes what is a simple issue.

### A. Any Questions About The Arbitration Agreements' Scope Must Be Referred To An Arbitrator

The Arbitration Plaintiffs' first attempt to evade their agreements rests on their assertion that those agreements do not encompass the claims at issue in this action.  In support of this assertion, Plaintiffs take this Court on a meandering analysis of the tense of two words used in the agreement which, Plaintiffs claim, indicates that Arbitration Agreements do not apply to what Plaintiffs call "past claims."  This argument fails for several reasons.

First, any questions about the scope of the Arbitration Agreements must be referred to an Arbitrator, as the agreements specifically encompass "**any claim, dispute, and/or controversy relating to the scope, validity, or enforceability of this Arbitration Agreement**."  Plaintiffs assert that the Arbitration Agreements do not "clearly and unmistakably" indicate that the parties intended to arbitrate "past" disputes.  (Opp., p.20.)  But that is not the question.  Because there is no dispute as to the Arbitration Agreements' validity, the only question is if the parties clearly and unmistakably agreed to delegate to an arbitrator any questions regarding the scope of those agreements.  On that question, there is no basis for disagreement, and Plaintiffs present none.

Second, even if questions as to scope were properly before this Court, there is no basis for disputing the fact that the Arbitration Agreements encompass these claims, as a review of the language of the entire agreements (as opposed to the single phrase cleaved by the Arbitration Plaintiffs) makes clear.  By their plain terms, the Arbitration Agreements encompass "any claim, dispute, and/or controversy," including without limitation any and all claims "arising from, related to, or having any relationship or connection whatsoever with [the Arbitration Plaintiffs'] seeking employment with, employment by, termination of employment or other association with the Company . . . ."  (Mot., Exs. 1-3, at "Page 1 of 3".)  Because the claims at issue here arise out

of the Arbitration Plaintiffs' claims that they were employed by the Domino's Defendants, they must be arbitrated.[6]

The single out-of-Circuit case that the Arbitration Plaintiffs rely on – *Russell v. Citigroup*, 748 F. 3d 677 (6th Cir. 2014) – is clearly distinguishable. In *Russell*, the Sixth Circuit held that the parties' use of the term "arise" demonstrated an intent that an arbitration provision apply prospectively only, and not to claims currently being litigated by the parties. *Id.* at 679-80. But the provision in *Russell* was nowhere near as all-encompassing as the agreements before this Court, which include within their scope all claims "**related to, or having any relationship or connection whatsoever**" to the Arbitration Plaintiffs' employment or "other association with the Company."[7] (Mot., Exs. 1-3.) More importantly, *Russell* is inconsistent with Second Circuit precedent, which makes clear that where, as here, there are no temporal limitations in an arbitration agreement, claims arising prior to execution must be arbitrated. *See, e.g., Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 482 (2d Cir. 2011) (compelling employee to arbitrate claim arising prior to contract's execution); *TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 33-35 (2d Cir. 2011) (applying to pre-existing claims where not expressly limited).

Finally, the Arbitration Plaintiffs' subjective beliefs about the scope of the Arbitration Agreements are irrelevant. Where the language of an agreement is clear, its effect is judged by the language used, not a party's subjective belief. See *Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 351 (S.D.N.Y. 2013) ("Where contract language is unambiguous, extrinsic evidence of the parties' subjective intent may not be considered."). If there is any doubt, the

---

[6]     The fact that the Domino's Defendants dispute that such a relationship existed hardly alters the fact that the claims themselves fall within the broad scope of the parties' agreements. Plaintiffs' argument is akin to saying that a defendant that disputes liability cannot remove a case to federal court because, having disputed liability, the amount in controversy is not satisfied.

[7]     Other courts have rejected the reasoning set forth in *Russell*. *See In re Cox Ents., Inc. Set-top Cable Tele. Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016).

Supreme Court has repeatedly instructed that such doubts should be resolved in favor of arbitration absent "**positive assurance** that the arbitration clause is **not** susceptible to an interpretation that covers the asserted dispute." *AT&T Tech. v. Commc'n Workers*, 475 U.S. 643, 650 (1986) (emphasis added); *accord Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).[8]

### B. *The Domino's Defendants' Have Not Waived Their Right to Compel Arbitration*

The Arbitration Plaintiffs next assert that the Domino's Defendants somehow waived the right to arbitrate. Before addressing the various legal flaws that pervade this argument, it is important to address the Arbitration Plaintiffs' factual misstatements. First, the assertion that the Domino's Defendants waited 14 or 18 months to bring this Motion is unfounded at best. The Domino's Defendants did not even know that the Arbitration Plaintiffs worked at stores that DPL operates until their depositions were taken in late June of 2017. The assertion that DPL should be deemed to have intentionally relinquished a known right because it did not undertake a search of its corporate records to see if the Arbitration Plaintiffs ever worked at one of its stores is, respectfully, absurd. Once that fact (which Plaintiffs did not mention in their Complaint or in their written discovery) was brought to DPL's attention, this motion was promptly filed.

That aside, there is no basis here for finding waiver. Under the FAA, there is a strong presumption in favor of arbitration – and **against** a finding of "waiver, delay, or a like defense of arbitrability.'" *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) (citation omitted). For this reason, the party claiming waiver must show prejudice. *See Sutherland v. Ernst & Young, LLP*, 600 F. App'x 6, 8 (2d Cir. 2015) ("The key to a waiver analysis is prejudice."). The

---

[8]      Disregarding decades of Supreme Court precedent, the Arbitration Plaintiffs argue that the opposite standard should be applied – that the clauses should be construed against the drafter and against arbitration. Not surprisingly, the authority the Arbitration Plaintiffs cite supports no such proposition. In *Paine Webber, Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996), the court addressed whether the parties had agreed to delegate arbitrability questions to arbitration, holding that there is no presumption that the parties so agreed. *Mastrobuono*, which *Paine Webber* cited, concerned a question of arbitral power (*i.e.*, the power to award punitive damages), not arbitrability.

Arbitration Plaintiffs cannot make this showing here, as there has been no adjudication of any "substantial issue[] going to the merits" of the underlying claims and discovery thus far has been limited to the "joint employer" issue. *Thyssen, Inc. v. M/V Markos N*, 1999 WL 619634, at *8 (S.D.N.Y. Aug. 16, 1999), *aff'd*, 310 F.3d 102 (2d Cir. 2002). That discovery would have been necessary regardless of the forum, and clearly may be relied on in arbitration. More importantly, the **only** discovery to take place since the Arbitration Plaintiffs disclosed that they work(ed) at company-owned stores is that they were ordered to produce their tax returns – hardly a burden, and something (as Magistrate Fox previously determined) they should have done months before.

In truth, the Arbitration Plaintiffs' waiver argument rests on nothing more than their unfounded view that the Domino's Defendants took too long to compel arbitration. But timing alone, without a showing of any prejudice, will not support a waiver argument. *See Burns v. Imagine Films Entm't, Inc.*, 108 F.3d 329 (2d Cir. 1997) ("Pretrial expense and delay, without more, do not constitute prejudice sufficient to support a finding of waiver."). Indeed, the Second Circuit has routinely enforced arbitration provisions after far longer "delays," even where the parties had engaged in substantive discovery on their underlying claims. *See id.* (four-year delay); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991) (three years); *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 466 (2d Cir. 1985) (two years).

## CONCLUSION

Based on the foregoing, the Domino's Defendants respectfully request that this Court grant their Motion in its entirety and, further, because no named Plaintiffs remain to assert claims against the Domino's Defendants, the Domino's Defendants request that this Court dismiss them from this action.

Dated: New York, New York
          December 18, 2017

                              Respectfully submitted,

                              **DLA PIPER LLP (US)**

                              By: /s/ Norman M. Leon
                                    Norman M. Leon

                              Joseph A. Piesco, Esq.
                              Garrett D. Kennedy, Esq.
                              1251 Avenue of the Americas
                              New York, New York 10020
                              Tel.:    (212) 335-4500
                              Fax:     (212) 335-4501
                              Email: joseph.piesco@dlapiper.com

                              Norman M. Leon, Esq.
                              444 West Lake Street, Suite 900
                              Chicago, Illinois 60606
                              Tel:     (312) 368-4000
                              Email: norman.leon@dlapiper.com

                              *Attorneys for Defendants Domino's Pizza, Inc.,*
                              *Domino's Pizza LLC and Domino's Pizza*
                              *Franchising LLC*