UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re DOMINO'S PIZZA INC. | MASTER FILE: 16 Civ. 2492 (AJN)(KNF) |

THIS DOCUMENT RELATES TO:

| | |
|---|---|
| RIAD KUCHER, HAROON MOJUMDER and OMAR FARUK, on behalf of themselves and all other similarly-situated employees, | Case No. 16 Civ. 02492 (AJN)(KNF) |
| Plaintiffs, | |
| v. | |
| DOMINO'S PIZZA, INC., *et al.*, | |
| Defendants. | |

| | |
|---|---|
| MARCELO DE LOS SANTOS, SANDRO MAYORAL-CLINICO, AARON CRUZ AGUACATITLA, and MOUNI YAMBA, individually and on behalf of others similarly situated, | Case No. 16 Civ. 06274 (AJN)(KNF) |
| Plaintiffs, | |
| v. | |
| HAT TRICK PIZZA, INC. d/b/a/ Domino's Pizza, *et al.* | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
DOMINO'S DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**DLA PIPER LLP (US)**
Norman M. Leon
444 W. Lake Street, Suite 900
Chicago, Illinois 60606
Tel.:   (312) 368-4000
Fax:   (312) 236-7516

**DLA PIPER LLP (US)**
Joseph A. Piesco, Jr.
Garrett D. Kennedy
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Tel.:   (212) 335-4500
Fax:   (212) 335-4501

*Attorneys for Defendants
Domino's Pizza, Inc., Domino's Pizza LLC
and Domino's Pizza Franchising LLC*

# TABLE OF CONTENTS

ARGUMENT ......................................................................................................................1

I.    Plaintiffs' Claims Fail Because They Have Not Identified
Which Domino's Defendant Allegedly Exercised Control
Over The Cookston Defendants' Employees ...........................................................1

II.   Plaintiffs' New "Ostensible Agency" Claim Is Both
Procedurally Improper And Legally And Factually Unfounded .............................2

III.  Controlling Precedent And The Undisputed Facts Prove,
As A Matter Of Law, That "Domino's" Is Not A Joint
Employer Of The Cookston Defendants' Employees ..............................................5

    A.   The Domino's Defendants Did Not Exercise Formal Control ........................5

         1.   The Domino's Defendants Played No Role In Hiring Or Firing..............5

         2.   Plaintiffs Have No Evidence Of Supervision.........................................8

         3.   Plaintiffs Have No Evidence Of Involvement In Pay Practices ............12

         4.   The Domino's Defendants Did Not Maintain Employee Records .........13

    B.   There Is No Evidence Of Functional Control...............................................14

CONCLUSION.................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Alecksick v. 7-Eleven, Inc.*,
  205 Cal. App. 4th 1176 (2012) ....................................................................... 12

*Antenor v. D&S Farms*,
  88 F.3d 925 (11th Cir. 1996) ........................................................................ 10

*Arculeo v. On-Site Sales & Mktg., LLC*,
  425 F.3d 193 (2d Cir. 2005) ............................................................................ 1

*Barfield v. New York City Health and Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008) .......................................................................... 13

*Beyah v. Coughlin*,
  789 F.2d 986 (2d Cir. 1986) ............................................................................ 7

*Cano v. DPNY, Inc.*,
  287 F.R.D. 251 (S.D.N.Y. 2012) ................................................................. 6, 14

*Clarke v. JPMorgan Chase Bank, N.A.*,
  2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) .................................................. 3

*Conrad v. Waffle House, Inc.*,
  351 S.W.3d 813 (Mo. Ct. App. 2011) ............................................................. 10

*Cook v. Arrowsmith Shelburne, Inc.*,
  69 F.3d 1235 (2d Cir. 1995) ............................................................................ 1

*Cordova v. SCCF, Inc.*,
  2014 WL 3512838 (S.D.N.Y. July 16, 2014) .................................................. 14

*Courtland v. GCEP-Surprise, LLC*,
  2013 WL 3894981 (D. Ariz. July 29, 2013) ..................................................... 4

*Diduck v. Kaszycki & Sons Contrs., Inc.*,
  974 F.2d 270 (2d Cir. 1992) ............................................................................ 4

*Dinaco, Inc. v. Time Warner, Inc.*,
  346 F.3d 64 (2d Cir. 2003) .......................................................................... 3, 4

*Edinburg Volunteer Fire Co. v. Danko Emergency Equip. Co.*,
  55 A.D.3d 1108 (3d Dep't 2008) ..................................................................... 3

*Frishberg v. Esprit de Corp.*,
  778 F. Supp. 793 (S.D.N.Y. 1991) .................................................................. 1

*Glatt v. Fox Searchlight Pictures*,
293 F.R.D. 516 (S.D.N.Y. 2013),
*vacated by* 811 F.3d 528 (2d Cir. 2015) .................................................................5

*Godlewska v. HDA*,
916 F. Supp. 2d 246 (E.D.N.Y. 2013)..................................................................6, 9

*Hart v. Rick's Cabaret Int'l*,
967 F. Supp. 2d 901 (S.D.N.Y. 2013)......................................................................1

*Herman v. RSR Security Srvs., Ltd.*,
172 F.3d at 136-37 (2d Cir. 1999)..........................................................................13

*Hugee v. SJC Grp., Inc.*,
2013 WL 3299226 (S.D.N.Y. Aug. 14, 2013)............................................9, 10, 12

*Hy-Brand Indus. Contractors, Ltd. & Brandt Constr. Co.*,
365 NLRB No. 156 (2017) ......................................................................................10

*In the Matter of Ovadia*,
19 NY.3d 138 (2012)................................................................................................15

*Irizarry v. Catsimatidis*,
722 F.3d 99 (2d Cir. 2013) ......................................................................................13

*Jean-Louis v. Metro. Cable Commc'ns*,
838 F. Supp. 2d 111 (S.D.N.Y. 2011).............................................................*passim*

*Lawrence v. Adderley Indus.*,
2011 WL 666304 (E.D.N.Y. Feb. 11, 2011) ...........................................................9

*Lihli Fashions Corp. v. N.L.R.B.*,
80 F.3d 743 (2d Cir. 1996) ........................................................................................2

*Lopez v. Acme Am. Int'l Envtl. Co.*,
2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012) .......................................................1, 2

*Lopez v. Silverman*,
14 F. Supp. 2d 405 (S.D.N.Y. 1998)......................................................................10

*Mao v. Sands Bethworks Gaming LLC*,
2016 WL 171220 (S.D.N.Y. Apr. 28, 2016) ...........................................................9

*Martin v. Sprint United Mgmt. Co.*,
2017 WL 4326109 (S.D.N.Y. Sept. 27, 2017)................................................*passim*

*Mediavilla v. City of N.Y.*,
259 F. Supp. 3d 82 (S.D.N.Y. 2016)........................................................................2

*Moreau v. Air France*,
  356 F.3d 942 (9th Cir. 2004) ..................................................................8

*Nieto v. Village Red Rest. Corp.*,
  2017 WL 4539327 (S.D.N.Y. Oct. 6, 2017)..........................................2

*Norton v. Cohen*,
  248 A.D.2d 519 (2d Dep't 1998) ...........................................................4

*Official Comm. of the Unsecured Creditors of Color Tile. Inc. v. Coopers &
  Lybrand, LLP*,
  322 F.3d 147 (2d Cir. 2003) ..................................................................3

*Olvera v. Bareburger Grp. LLC*,
  73 F. Supp. 3d 201 (S.D.N.Y. 2014) .....................................................5

*Orozco v. Plackis*,
  757 F.3d 445 (5th Cir. 2014) ...............................................................12

*In re Refco Inc. Sec. Litig.*,
  2009 WL 5548666 (S.D.N.Y. Nov. 16, 2009).......................................3

*Richardson v. Greenshields Sec. Inc. v. Lau*,
  819 F. Supp. 1246 (S.D.N.Y. 1993)......................................................3

*Salazar v. McDonald's Corp.*,
  2016 WL 4394165 (N.D. Cal. Aug. 16, 2016) ....................................12

*Telenor Mobile Commc'ns AS v. Storm LLC*,
  584 F.3d 396 (2d Cir. 2009) ..................................................................3

*Torres-Lopez v. May*,
  111 F.3d 633, 642 (9th Cir. 1999).......................................................11

*Vann v. Massage Envy Franchising LLC*,
  2015 WL 74139 (S.D. Cal. Jan. 6, 2015) ......................................10, 16

*Vasto v. Credico (USA) LLC*,
  2017 WL 4877424 (S.D.N.Y. Oct. 27, 2017).......................................13

*Velez v. Novartis Pharm. Corp.*,
  244 F.R.D. 243 (S.D.N.Y. 2007), *amended* (Aug. 16, 2007)..................1

*Velez v. New Haven Bus. Serv.*,
  2015 WL 75361 (D. Conn. Jan. 6. 2015) ..............................................9

*Victorinox AG v. The B & F Sys., Inc.*,
  2015 WL 9256944 (S.D.N.Y. Dec. 15, 2015) ........................................7

*Whitehurst v. 230 Fifth, Inc.*,
  998 F. Supp. 2d 233 (S.D.N.Y. 2014) ......................................................................3

*Zheng v. Liberty Apparel Co.*,
  355 F.3d 61 (2d Cir. 2003) ................................................................... 10, 14, 15

**Statutes**

Fed. R. Civ. P. 26 .............................................................................................................7

Fed. R. Civ. P. 56(c)(4) .....................................................................................................7

N.Y.C. Health Code Article 81.13 ...................................................................................10

The Domino's Defendants respectfully submit this Reply Memorandum of Law in further support of their Motion for Summary Judgment.

## ARGUMENT

I.      **Plaintiffs' Claims Fail Because They Have Not Identified Which Domino's Defendant Allegedly Exercised Control Over The Cookston Defendants' Employees**

Having done nothing to satisfy their burden of showing how each particular Domino's Defendant exercised "control" over the Cookston Defendants' employees, Plaintiffs attempt to rely, instead, on a new, **unpled** claim: namely, that the Domino's Defendants should be considered a "single integrated enterprise." This claim, like those Plaintiffs actually pled, suffers from a complete absence of proof.

Assuming *arguendo* it applied to claims under the FLSA and the NYLL – and it does not[1] – the single integrated enterprise doctrine applies where "two nominally separate entities are actually part of a single integrated enterprise." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005). Applicable only in "extraordinary circumstances," *Hart*, 967 F. Supp. 2d at 940 n.16, the doctrine "focuses on the degree of control by the parent . . . over the direct employing company [*i.e.*, Cookston]." *Frishberg v. Esprit de Corp.*, 778 F. Supp. 793, 800 (S.D.N.Y. 1991). To show this control, a plaintiff must establish "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995).

Aside from showing common ownership, which alone is meaningless, *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 254 (S.D.N.Y. 2007), *amended* (Aug. 16, 2007), Plaintiffs have shown none of these factors, as a review of their claims makes clear:

---

[1]      *See*, *e.g.*, *Hart v. Rick's Cabaret Int'l*, 967 F. Supp. 2d 901, 940 n.16 (S.D.N.Y. 2013); *Lopez v. Acme Am. Int'l Envtl. Co.*, 2012 WL 6062501, at *4-5 (S.D.N.Y. Dec. 6, 2012). Indeed, for this doctrine to apply here, Plaintiffs would not only have to prove that the Domino's Defendants are a single enterprise, but that the Domino's Defendants **and the Cookston Defendants** (the direct employing company) constitute a single enterprise – something they do not and could not possibly argue, let alone prove. *See Hart*, 967 F. Supp. 2d at 940 n.16.

- Plaintiffs claim that one employee, Kim Ridge, worked for all three entities.  Even if that was true (and it is not), it proves nothing, as it "demonstrate[s] nothing about how the [three] companies are integrated or operated as one entity."  *Nieto v. Village Red Rest. Corp.*, 2017 WL 4539327, at *4 (S.D.N.Y. Oct. 6, 2017) (dismissing claim for this reason); *see also Lopez*, 2012 WL 6502501, at *4.

- Plaintiffs note that a DPL organizational chart shows that it has a "Franchise Operations and Development" department.  Yet Plaintiffs offer no explanation about what this department does, let alone how it "interrelates" with any operations of DPI or DPF.

- Plaintiffs claim that, in **2009**, DPI's former CEO participated in disciplining a Cookston employee.  Even if this time-barred event occurred (it did not), Plaintiffs never explain why this shows that the relationship between DPI, DPF, and DPL was anything other than "arm's length."  *Lihli Fashions Corp. v. N.L.R.B.*, 80 F.3d 743, 747 (2d Cir. 1996).

- Plaintiffs note DPF enters into franchise agreements.  Yet Plaintiffs never explain how this shows the requisite inter-relationship of operations between DPI, DPF, and DPL.

Simply put, there is no basis for deeming DPI, DPL, and DPF a single integrated enterprise.

## II.    Plaintiffs' New "Ostensible Agency" Claim Is Both Procedurally Improper And Legally And Factually Unfounded

Underscoring the weakness of the claims Plaintiffs actually pled, Plaintiffs' Opposition leads with yet another claim that appears nowhere in their Complaint.  Plaintiffs **now** contend that "Domino's" may be liable for the Cookston Defendants' alleged wage violations "under an 'ostensible agency' theory."  (Opp. at 1.)  While this new claim fails as a matter of law, it should not be considered because "[i]t is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment."  *Mediavilla v. City of N.Y.*, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016).  Plaintiffs have filed four complaints in this action.  None make a claim for "ostensible agency," none allege that Mr. Cookston was "Domino's" agent, and none assert that Plaintiffs "believed" they worked for "Domino's."  To the contrary, each Plaintiff clearly alleged (in each complaint) that he worked at one or more "Domino's" stores "owned and operated by Mr. Cookston."  (ECF No. 1, ¶17; No. 77, ¶¶16-17; No. 114, ¶¶17-18; No. 171, ¶¶ 17-19.)

In addition, this claim contradicts the sworn and binding representations Plaintiffs have repeatedly made to this Court. In addition to averring in their Complaints that they worked for stores "owned and operated by Mr. Cookston," Plaintiffs submitted declarations in which they swore that they worked for the Cookston Defendants. (*See, e.g.*, ECF No. 118-5, ¶2 ["I was employed by Robert Cookston"]; ECF No. 118-3, ¶3 [same].)[2] Because "allegations in [a] Complaint are judicial admissions to which Plaintiffs are bound," *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 248-49 (S.D.N.Y. 2014), a "party cannot contradict its own pleading with affidavits." *Official Comm. of the Unsecured Creditors of Color Tile. Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). For this reason as well, Plaintiffs' new agency claim should be rejected. *See Clarke v. JPMorgan Chase Bank, N.A.*, 2010 WL 1379778, at *14 (S.D.N.Y. Mar. 26, 2010) (rejecting declaration that contradicted testimony); *In re Refco Inc. Sec. Litig.*, 2009 WL 5548666 at *9 (S.D.N.Y. Nov. 16, 2009) (same as to complaint).

Finally, this claim fails as a matter of law. Under New York and Federal law, an agent has apparent authority if "a principal places the agent in a position where it appears that the agent has certain powers which he may or may not possess." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 411 (2d Cir. 2009). Therefore, a plaintiff "must be able to point to particular instances of misleading conduct by the principal which gives a false impression that the putative agent had authority to act for [it]." *Richardson v. Greenshields Sec. Inc. v. Lau*, 819 F. Supp. 1246, 1257 (S.D.N.Y. 1993); *accord Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 69 (2d Cir. 2003). "An 'agent cannot by his own acts imbue himself with the apparent authority' to act for a principal." *Edinburg Volunteer Fire Co. v. Danko Emergency Equip. Co.*, 55 A.D.3d 1108, 1110 (3d Dep't 2008) (*quoting Hallock v. State of N.Y.*, 64 N.Y.2d 224, 231 (1985)).

---

[2]     Further, every Plaintiff that filed tax returns (which are also signed under penalty of perjury) identified the Cookston Defendant for which he worked as his employer – **not** "Domino's." (*See* Exhibits 1-5 to the Reply Declaration of Norman Leon, dated December 29, 2017 ["Reply Exs."].)

Plaintiffs have not shown **any** act by "Domino's" that contributed to their alleged belief that "Domino's" was their employer. Indeed, every document Plaintiffs rely on – paystubs, policy acknowledgments, employment applications, and agreements which reference the name "Domino's Pizza" or contain the Domino's® logo – was concededly **created and supplied by the Cookston Defendants,** not "Domino's." (*See* Opp. at 4; *see also* R. 56.1, ¶¶ 63, 73.) Further, every franchisee is required by the SFA to take steps to dispel any such "belief," including by "exhibit[ing] (a) on the Store premises and (b) on all delivery vehicles . . . signs of sufficient prominence . . . to advise the public that the store is owned, operated and maintained by" the franchisee. (*See* Motion Ex. 9 [ECF No. 436-9], § 15.8.)

Further, the evidence proves that if Plaintiffs truly believed they worked for "Domino's," their belief was patently unreasonable. Aside from the documents the Cookston Defendants gave them, the only "evidence" Plaintiffs proffer to support the reasonableness of their belief is the fact that the Domino's® logo was present throughout the Cookston Defendants' stores and on employees' uniforms. (Opp. at 3.) Relying on a California district court decision, Plaintiffs assert that this raises a genuine issue of fact. But in this Circuit it does not. Both the Second Circuit and New York courts have made clear that signage and advertising, without more, cannot establish an agency relationship. *See*, *e.g.*, *Dinaco*, 346 F.3d at 69 ("If advertising is the stuff of agency then every advertisement by a franchisee with the franchisor's mark would confirm an agency."); *Norton v. Cohen*, 248 A.D.2d 519, 520 (2d Dep't 1998); *accord Courtland v. GCEP-Surprise, LLC*, 2013 WL 3894981, at *9-10 (D. Ariz. July 29, 2013) (cited by Plaintiffs). More importantly, Plaintiffs admit that "[e]ach of Mr. Cookston's stores states conspicuously on its frontage that it is owned and operated by a Cookston Defendant." (R. 56.1, ¶ 94). That alone mandates the rejection of any claim that Plaintiffs reasonably believed the Domino's Defendants owned or operated those stores. *See Diduck v. Kaszycki & Sons Contrs., Inc.*, 974 F.2d 270, 278

(2d Cir. 1992) ("a party may not justifiably rely on obviously false representations").

In an effort to compensate for these fatal flaws, Plaintiffs contend that "Domino's" was somehow "negligent" in "permitting Cookston employees to believe that [it] was their employer" because: (i) prior lawsuits had claimed that "Domino's" was a joint employer; (ii) other employees had complained to the "Domino's" Customer Care hotline; and (iii) "Domino's" did not force Mr. Cookston to tell his employees that they worked for the Cookston Defendants, not "Domino's." (Opp. at 5-6.) First, not one lawsuit cited by Plaintiffs involved an agency claim. Second, there is no evidence that any other employee actually believed they worked for "Domino's." Lastly, "Domino's" had no right or responsibility to tell Mr. Cookston what to tell his employees – such matters are the exclusive province of the Cookston Defendants.

## III.   Controlling Precedent And The Undisputed Facts Prove, As A Matter Of Law, That "Domino's" Is Not A Joint Employer Of The Cookston Defendants' Employees

### A.   *The Domino's Defendants Did Not Exercise Formal Control*

#### 1.   *The Domino's Defendants Played No Role In Hiring Or Firing*

Plaintiffs have proffered **nothing** which supports their bald assertion that "Domino's" hired or fired **any** of the more than 1,000 employees the Cookston Defendants employed at their 32 stores during the six-year period at issue here. Therefore, Plaintiffs urge this Court to apply a different standard – one in which "providing guidance" on hiring and firing, and requiring background checks, constitutes the power to hire or fire. There is no authority in this Circuit which supports that view.[3]  In fact, every case to address this issue has made clear that the power to hire or fire means exactly that, and that requiring background checks – Plaintiffs' main

---

[3]        Even the cases Plaintiffs cite do not support their position. *Glatt v. Fox Searchlight Pictures*, 293 F.R.D. 516 (S.D.N.Y. 2013), was vacated by the Second Circuit and has no precedential value. *See Glatt v. Fox Searchlight Pictures*, 811 F.3d 528 (2d Cir. 2015). Regardless, even *Glatt* made clear that, to satisfy this factor, the putative joint employer had to actually have the power to fire. *Glatt* found that this factor was met because the defendant's contract with the direct employer gave it the authority to hire. 293 F.R.D. at 526 & n.10. Likewise, *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201 (S.D.N.Y. 2014), **never** held that providing "guidance" was evidence of the power to hire. *Olvera* stated (on a motion to dismiss) that, taken as true, the plaintiffs' collective allegations plausibly stated a claim for joint employment. *Id.* at 207.

argument – does **not** constitute control over hiring. *See Martin v. Sprint United Mgmt. Co.*, 2017 WL 4326109, at *14 (S.D.N.Y. Sept. 27, 2017); *Godlewska v. HDA*, 916 F. Supp. 2d 246, 259 (E.D.N.Y. 2013); *Jean-Louis v. Metro. Cable Commc'ns*, 838 F. Supp. 2d 111 (S.D.N.Y. 2011).[4]

Plaintiffs claim that all of these cases are distinguishable because, in those cases, the background checks were justified "for obvious safety reasons" as those employees had to "visit customers' homes." (Opp. at 11, n.5.)[5] Even if these cases actually relied on that fact (they do not), "Domino's" franchisees are engaged in the business of delivering pizzas to peoples' homes. (Complaint, ECF No. 171, ¶ 1 [characterizing "Domino's" as a "fast food delivery institution"].)

Plaintiffs' only remaining arguments on hiring are that "Domino's" (i) required Mr. Cookston to hire more drivers in response to poor OER scores, and (ii) "pushed Cookston to retain the manager of a store." (Opp. at 12.) Both assertions grievously misstate the evidence. As to the former, the document that Plaintiffs cite (Pl. Ex. 16) says nothing about Domino's requiring anything. To the contrary, the email (sent by one of Mr. Cookston's managers) merely advised Mr. Rudd that, to address service issues at a store, "we've initiated a campaign of hiring drivers." (*Id.*) With respect to the latter, the email that Plaintiffs cite (Pl. Ex. 17) makes evident that all Mr. Rudd did was offer his opinion on a keeping a manager in place (that he would "progress nicely if nurtured"). That hardly constitutes control over hiring, especially since Mr. Cookston testified he actually decided to fire that person. (Pl. Ex. 6 at 141:4-13.)

Plaintiffs' evidence of "Domino's" involvement in the firing process is similarly lacking. Plaintiffs primarily rely on an incident that occurred in 2009 (outside the limitations period)

---

[4]      *Cano v. DPNY, Inc.* is not to the contrary. In fact, *Cano* does not even mention background checks. 287 F.R.D. 251, 260 (S.D.N.Y. 2012).

[5]      While the Domino's Defendants do not review the results of background checks, Plaintiffs claim that the background checks required in the cases the Domino's Defendants cited did not prohibit the hiring of persons depending on the results of the checks. There is no language in any of these cases that supports Plaintiffs' position. *But cf. Godlewska*, 916 F. Supp. 2d at 258 (setting minimum criteria for applicants did not constitute control over hiring because the direct employer "alone decides which qualified applicants to hire").

when "Domino's" former CEO allegedly instructed Mr. Cookston to discipline his employees after badly made food was delivered to Fox Business News during an interview the then-CEO was giving.  But Plaintiffs ignore the fact that Mr. Cookston testified that, while it was his "understanding" that "Domino's" wanted him to discipline someone, no one from Domino's ever directed him to do so, and that the decision to impose discipline was ultimately his alone. (Motion Ex. 14 [Cookston II] at 30:8-20.)  Indeed, the default notice Plaintiffs rely on – which only references whatever discipline Mr. Cookston "deem[s] necessary" (Pl. Ex. 39) – was sent **after** Mr. Cookston advised "Domino's" that he had decided to discipline someone.  (Pl. Ex. 38.)

Plaintiffs next cite a declaration from a former employee of Mr. Cookston (James Mumma) who, prior to his termination in 2012, claims to have overseen some stores in Connecticut.  (Pl. Ex. 19.)  But Mr. Mumma offers no competent evidence of anything.  His Declaration states only that he "was told" by someone else that two "Domino's" employees wanted someone held accountable for poor evaluation scores, that he "understood" this to mean that "Domino's" wanted someone to be disciplined, and that he was told on another occasion that "Domino's" wanted someone fired.  (*Id.*)  A declaration used to oppose summary judgment must be made on personal knowledge and must set out facts that would be admissible at trial.  *See* Fed. R. Civ. P. 56(c)(4); *see also Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir. 1986) (hearsay may not be considered on a motion for summary judgment).  Mr. Mumma's declaration, which is based entirely on hearsay, satisfies neither requirement.[6]

The balance of Plaintiffs' supposed evidence fares no better:

- Plaintiffs claim that, **in 2010**, a "Domino's" employee (Van Carney) once "urged Cookston to fire an employee" and that "Cookston did not deny" that employees were disciplined as a result.  (Opp. at p.14.)  The document cited shows that Mr. Carney made

---

[6]      While incompetent, Mr. Mumma's declaration should also be stricken, as Plaintiffs never identified Mr. Mumma as a potential witness as required by Fed. R. Civ. P. 26.  Declarations are routinely struck in such circumstances. *See Victorinox AG v. The B & F Sys., Inc.*, 2015 WL 9256944, at *2, n.2 (S.D.N.Y. Dec. 15, 2015).

a "recommendation"; he "urges" nothing. (Pl. Ex. 21.) Plaintiffs' statement that Mr. Cookston "does not deny" that someone was disciplined is misleading. Mr. Cookston actually testified that he did not know what, if any, disciplinary action had been taken by him or by his managers. (*See* Pl. Ex. 6 [Cookston] at 115:13-116:15.)

- Plaintiffs cite one instance (**from 2011**) where Louis O'Neill, Mr. Cookston's Director of Operations, informed Mr. Rudd that Mr. O'Neill had just fired an employee. (Opp. at 14.) Mr. O'Neill's decision to update Mr. Rudd on his decision does not constitute evidence that Mr. Rudd in any way dictated that decision.

- Citing an email **from 2011**, Plaintiffs contend that "Domino's has also instructed Mr. Cookston to discipline his workers." (Opp. at 14-15.) But the email chain shows only that, after Mr. O'Neill copied Mr. Rudd on an email in which he noted that certain employees were manipulating service times, Mr. Rudd made a suggestion about how Mr. O'Neill should document his meeting with the employees. (Pl. Ex. 75.)

- Finally, Plaintiffs claim that the Domino's Defendants "routinely notif[y] Cookston when it suspects certain Cookston employees of 'manipulating sales/orders.'" (Opp. at 15.) Putting aside that these notices were hardly "routine" (Plaintiffs cite two instances involving two stores over six years), they have nothing to do with hiring, firing, or discipline. The notifications address the possible theft of revenue, which is the basis on which DPF's royalty stream is calculated.

"Control" may not need to be exercised continuously. However, one incident in 2009 and three emails sent in 2010 and 2011 (which, at worst, show that two "Domino's" employees made recommendations about discipline) does not support a joint employment finding.

### 2.    *Plaintiffs Have No Evidence Of Supervision*

Because there is no evidence that "Domino's" ever set the schedule of a single employee, Plaintiffs try to convince this Court (by relying on an unpublished decision from Connecticut and two out-of-circuit cases that addressed joint employment claims under the Agricultural Worker Protection Act) that they can meet their obligation to show that "Domino's" controls scheduling by showing that it "effectively dictate[d] an overall schedule." (Opp. at 15.) According to Plaintiffs, "Domino's" does this by setting and enforcing minimum hours of operation for all Domino's stores. Again, Plaintiffs' contention finds no support in the law of this Circuit.[7]

---

[7]    It also finds no support in the courts from which Plaintiffs draw their "authority." *See Moreau v. Air France*, 356 F.3d 942, 950 n.5 (9th Cir. 2004) (Air France did not control the schedules of personnel who serviced

In this Circuit, the courts have repeatedly made clear that "control" of scheduling means actual control – not "effectively dictating." For example, in *Jean-Louis*, the plaintiffs argued that Time Warner effectively dictated the schedules of a cable installation company's employees because it created work orders identifying each customer and the "time window in which the customer ha[d] requested that the services be performed." 838 F. Supp. 2d at 125. The court held this was not control over scheduling because, while Time Warner set windows for installations, the installer's direct employer determined "which technicians will work on which job and whether a technician will work on any jobs . . . ." *Id.* at 126; *accord Hugee v. SJC Grp., Inc.*, 2013 WL 3299226, at *5 (S.D.N.Y. Aug. 14, 2013); *Godlewska,* 916 F. Supp. 2d at 259; *Mao v. Sands Bethworks Gaming LLC*, 2016 WL 171220, at *3 (S.D.N.Y. Apr. 28, 2016) (holding, contrary to *Velez v. New Haven Bus. Serv.*, 2015 WL 75361 (D. Conn. Jan. 6. 2015), that "control over the bus schedules . . . is not the sort of control over employee works schedules or conditions of employment that suffices to establish an employer-employee relationship.").[8]

Plaintiffs' next claim – that "Domino's" supervises or controls employees by establishing and enforcing brand standards – likewise struggles with the law in this Circuit. According to Plaintiffs, "Domino's" supervises the Cookston Defendants' employees by (i) conducting unannounced inspections to enforce the brand standards, (ii) issuing default notices, and (iii) conducting follow-up visits if standards are not met. (Opp. at 18-19.) But the law is clear that allegations like these will not support a joint employer claim: "quality control and compliance monitoring that stem from the 'nature of the business' . . . are qualitatively different

---

planes – even though it set schedules "indicat[ing] when the services were to be performed" – because the direct employers "remained responsible for designating which employees would report to service the aircraft."

[8]    The claim that "Domino's" controls scheduling by setting minimum (*i.e.*, two people) staffing levels fails for the same reason – the Cookston Defendants, not "Domino's," decides which employees will work and when. Further, this standard is simply intended to ensure that each store has someone available to answer the phone while another person is making deliveries. (R. 56.1 ¶ 45.) Where, as here, a standard "stems from the nature of the business and the need to provide reliable service," that standard is not indicia of an employment relationship. *See Lawrence v. Adderley Indus.*, 2011 WL 666304, at *8 (E.D.N.Y. Feb. 11, 2011) (internal quotations omitted).

from control that stems from the nature of the relationship between the employees and the putative employer." *Hugee*, 2013 WL 4399226, at *6; *accord Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003).[9]   In fact, less than two weeks ago, the NLRB observed that "franchisor operational control has **nothing** to do with labor policy but rather compliance with federal statutory requirements to maintain trademark protections."   *Hy-Brand Indus. Contractors, Ltd. and Brandt Constr. Co.*, 365 NLRB No. 156, at *28 (2017) (the intent was "never . . . to make franchisors joint employers of their franchisees' employees" for exercising controls to protect their marks) (emphasis added).

In an effort to support their claim that this case is somehow different than every case that has ever addressed this issue on the merits, Plaintiffs have cobbled together three instances which they assert evidence excessive control: (i) once, in 2012, an OER inspector allegedly told an employee to throw away a dirty pizza pan and clean a store; (ii) once, in 2011, Mr. Rudd instructed an employee on pizza-making techniques; and (iii) once, in 2014, an anonymous caller called "Domino's" Customer Care hotline to complain that a "corporate" employee was talking down to employees.  (Opp. at 18-19.)  **First**, even if true, these allegations at most show "Domino's" efforts to monitor compliance with brand standards and, in one instance, an employee who was rude.  They do not evidence control over labor relations.  **Second**, as Plaintiffs' own cases make clear, three allegations of over-reaching over a three-year period is hardly sufficient to create a question of fact regarding "Domino's" alleged control over the employees of more than 30 franchised stores over a seven year period.  *See Antenor v. D&S*

---

[9]       Plaintiffs note that some of "Domino's" standards relate to hygiene and grooming.  Yet they never explain why that is improper.  A franchisor whose business is based on making and serving food in face-to-face transactions (often at customers' homes) has a legitimate interest in ensuring that franchisees' employees present a clean, well-groomed image.  *See Vann v. Massage Envy Franchising LLC*, 2015 WL 74139 (S.D. Cal. Jan. 6, 2015) (imposition of attire, product, and process standards that ensured a uniform experience for customers did not make franchisor a "joint employer"); *Conrad v. Waffle House, Inc.*, 351 S.W.3d 813 (Mo. Ct. App. 2011) (same).  Moreover, virtually all of the standards Plaintiffs cite mirror standards that already exist in the health code.  *See, e.g.*, N.Y.C. Health Code Article 81.13 (imposing standards governing, *inter alia*, hair, clothing, hygiene, and jewelry).

*Farms*, 88 F.3d 925, 935 (11th Cir. 1996) (defendant present daily and directly supervised work); *Lopez v. Silverman*, 14 F. Supp. 2d 405, 421 (S.D.N.Y. 1998) (visits three times a week); *Torres-Lopez v. May*, 111 F.3d 633, 642 (9th Cir. 1999) (defendant present daily and set schedule).

Aside from Plaintiffs' scattershot allegations of supervision (which are addressed below), the last thing Plaintiffs rely on is their claim that "Domino's" is "direct[ly]" involved in resolving employee and customer complaints. (Opp. at 20.) Again, the evidence undercuts these claims. While Domino's Customer Care Center was created to receive customer complaints, franchisees' employees occasionally call the center to raise concerns they may have. (R. 56.1, ¶¶ 49-52.) Such complaints, which rarely occur (the record contains 24 over six-plus years – or four per year, *see* Pl. Ex. 54), are referred to the franchisee at issue for handling. (R. 56.1, ¶ 50.) Here, Plaintiffs cite to **four such complaints** over six years. (Opp. at 20.) None show supervision over employees:

- One involved a 2011 claim that a manager assaulted an employee, who then called the police. Mr. Rudd offered Mr. Cookston advice on how to protect himself. (Pl. Ex. 32).

- One involved an allegation of sexual harassment. "Domino's" merely forwarded the complaint log to Mr. Cookston. Plaintiffs concede that Mr. Cookston and his supervisor investigated the allegation on their own. (Opp. at 20.)

- One involved an incident where an employee was overcharging a customer's credit card – an act, that, if true, threatened "Domino's" goodwill. (*See* Pl. Ex. 33 [Area Leader noting that "sometimes stories like this make it out into the press"].)

- The last one involved a customer who complained that one of Mr. Cookston's employees was texting her inappropriately. Because of the potential implications of this conduct, Kim Ridge asked Mr. Cookston to investigate, but specifically noted that she was "leaving this in [his] hands." (Pl. Ex. 34.)

As for Plaintiffs' remaining contentions, suffice to say they quite egregiously mischaracterize the record:

- Plaintiffs assert that all franchisee employees are trained using "Domino's training modules . . . ." (Opp. at 18.) However, "Domino's" only requires that franchisees and

their managers be trained using "Domino's" materials – not non-managerial employees, *i.e.,* Plaintiffs and the putative class. (*See* Pl. Ex. 25 at 271:16-272:3.) Plaintiffs claim, incorrectly, that Ms. Ridge testified that such training extends to all franchisee employees. (*Id.*) Yet even if it did, that would not be evidence of control. *See Martin,* 2017 WL 4326109, at *17 (evidence that Sprint provided initial training did not establish its control over conditions of employment); *Hugee,* 2013 WL 4399226, at *7 (training on quality standards does not constitute evidence of control); *see also Orozco v. Plackis,* 757 F.3d 445, 451 (5th Cir. 2014) ("It is reasonable to assume that a franchisor would provide training to new franchisees and their employees").

- Plaintiffs contend Mr. Cookston "communicate[s] with Domino's, on a near daily basis, about virtually every aspect of his stores, including personnel." (Opp. at 19.) However, the affidavit Plaintiffs rely on says **nothing** about "personnel" matters – it only references OERs and operational standards. (Pl. Ex. 14, ¶¶ 37-38.)

- Plaintiffs assert that "Area Leaders **routinely** visit Cookston stores unannounced, and report back having directly **trained and supervised** personnel." (Opp. at 19 [emphasis added].) The affidavit Plaintiffs rely on says only that Area Leaders "inspect[ed]" the stores, not that they "trained and supervised." (Pl. Ex. 14, ¶ 41.)

- Plaintiffs assert that "Domino's" required Mr. Cookston to cross-train his employees. That claim has no support. The email Plaintiffs cite offers non-specific scheduling advice (*see* Pl. Ex. 30), and Plaintiffs have offered nothing to rebut Mr. Cookston's testimony that cross-training was optional. (Motion Ex. 14 [Cookston II] at 10:2-11:1.)[10]

### 3.    Plaintiffs Have No Evidence Of Involvement In Pay Practices

There is not a shred of evidence in this record that the Domino's Defendants had any involvement in determining the rate or method of pay of any of the Cookston Defendants' employees. No doubt aware of that, Plaintiffs claim that "Domino's" controlled wages because it "affected" employees' pay by in various ways. (Opp. at 21.) But that is not the test in this Circuit. "[T]he test is whether a putative joint employer **determines** pay rates, not whether it affects them." *Jean-Louis,* 838 F. Supp. 2d at 129-30 (emphasis added); *accord Martin,* 2017

---

[10]     Again relying on Mr. Mumma, Plaintiffs contend that Domino's "required" the Cookston Defendants to use a software program called Labor Scheduler. Putting aside that even Plaintiffs' undisclosed affiant only says that he was urged to use that program, the optional Labor Scheduler is not designed to "lower labor expenses," as Plaintiffs assert, but is intended only to suggest the personnel-hours that may be needed in the future to handle past sales levels. (*See* Pl. Ex. 10 [Ridge] at 144:2-6.) Further, even if true, it is settled law that providing software (even if it is mandatory) does not make a franchisor a joint employer. *Salazar v. McDonald's Corp.,* 2016 WL 4394165, at *8-9 (N.D. Cal. Aug. 16, 2016) (granting summary judgment on FLSA joint employer claims and holding that the provision of software "does not convert a franchisor into a joint employer, even when the programs allegedly give rise to putative wage and hour violations"); *Alecksick v. 7-Eleven, Inc.,* 205 Cal. App. 4th 1176 (2012) (same).

WL 4326109, at *18.[11]  Moreover, the evidence Plaintiffs cite in support of their assertion that

"Domino's" affected the employees' pay supports no such proposition:

- Plaintiffs claim that "Domino's" expressly prohibited tip jars.  That is a fairly stunning claim, as Plaintiffs' Complaint asserts that Defendants unlawfully withheld gratuities and alleges, in support of that claim, that "[a]t Defendants' pizza restaurants, Defendants maintain a tip jar next to each cash register."  (ECF No. 171, ¶ 101.)

- Plaintiffs claim that "Domino's" requires Mr. Cookston to use PULSE, which he uses to keep track of time.  However, Plaintiffs fail to explain why the use of a timekeeping function – which Mr. Cookston made clear was optional – constitutes control over wages.  (Motion Ex. 14 [Cookston II] at 12:10-22.)

- Plaintiffs claim that "Domino's" has provided guidance on various wage issues.  But the email Plaintiffs cite only reflects Mr. Rudd's efforts (in 2010) to facilitate an optional meeting between franchisees and outside counsel to discuss an impending Wage Order.  Mr. Rudd provides no instructions on anything.  (Pl. Ex. 50.)

- Finally, Plaintiffs claim that Domino's distributed "anti-union" materials, which could affect wages (**if** a union reached out to the employees, **if** it was voted in, and **if** it impacted wages).  (*See* Pl. Ex. 52.)  Plaintiffs' rank speculation about the possible impact of a union scarcely constitutes the control this factor requires.

### 4.     *The Domino's Defendants Did Not Maintain Employee Records*

Plaintiffs' assertion that "Domino's" maintains the Cookston Defendants' employment

records because it has access to the PULSE system is absurd.  First, the cases uniformly reject

the view that the mere ability to **access** records is equivalent to **maintaining** records.  *See*

*Irizarry v. Catsimatidis*, 722 F.3d 99, 116 (2d Cir. 2013) (CEO did not maintain employment

records despite having access to them); *Martin*, 2017 WL 4326109, at *19 (Sprint's access to

database with certain employee information did not mean it maintained traditional personnel

records); *Vasto v. Credico (USA) LLC*, 2017 WL 4877424, at *12 (S.D.N.Y. Oct. 27, 2017).[12]

---

[11]      Plaintiffs incorrectly claim that *Herman v. RSR Security Srvs., Ltd.*, only required "participation" in the payment of employees.  In *Herman*, the Second Circuit affirmed a holding that the defendant was a joint employer where he "exercised financial control over the company," signed company loans, gave employees raises, occasionally signed payroll checks, instructed the company as to the classification of employees, hired and recruited, assigned employees to clients, and set billing rates for clients.  172 F.3d 132, 136-37 (2d Cir. 1999).

[12]      The cases cited by Plaintiffs are not to the contrary.  *See Barfield v. N.Y.C. Health and Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008) (defendant maintained employment records of nurses referred by agencies, contacted them

13

Second, the "records" that "Domino's" allegedly has access to do not constitute traditional employment records. *See Martin*, 2017 WL 4326109, at *19 (noting this distinction). The assertion that "Domino's" maintains records of employee complaints is misleading at best. The Domino's Defendants maintain records of **all** calls or emails made to the Customer Care department. That Mr. Cookston's employees have, at times, chosen to call that number intended for use by customers to complain hardly constitutes the maintenance of employment records.[13]

### B.      *There Is No Evidence Of Functional Control*

Just as there is no evidence of formal control, there is no evidence that the Domino's Defendants exercised "functional control" over the Cookston Defendants' employees. First, the fact that "Domino's" approve leases and requires that equipment be purchased from approved vendors does not mean it owns premises and equipment owned or leased by the Cookston Defendants. (Opp. at 23.) DPF only confirms that the leases contain terms that protect the Domino's brand (*i.e.*, requiring that signage be removed if a lease expires) and, while franchisees receive a list of pre-approved equipment vendors, they can purchase equipment that meets DPF's minimum quality standards "from anywhere [they] want." (R. 56.1, ¶¶ 90-91.)

Plaintiffs' attempt to create an issue with respect to the second factor is likewise lacking. Putting aside that the Second Circuit has cautioned that the absence of a broad client base is "perfectly consistent with a legitimate subcontracting relationship," *Zheng*, 355 F.3d at 72, Plaintiffs never address the fact that the alleged "joint employees" here provide no services to

---

directly to advise when their services were needed, directed them to "sign in on designated sheets" when they arrived, verified their hours worked, and provided records of their hours to the referring agencies); *Cordova v. SCCF, Inc.*, 2014 WL 3512838, at *5 (S.D.N.Y. July 16, 2014) (denying motion to dismiss based on claims, among others, that franchisor "had the authority to exercise control over" the franchisees' payroll records); *Cano*, 287 F.R.D. at 260 (allowing plaintiffs to amend to assert a joint employer claim based on claims, among others, that franchisor required franchisee to submit payroll records for franchisor to review).

[13]     Plaintiffs note that one time (over seven years ago), at Mr. Cookston's request, Mr. Rudd assisted Mr. Cookston in auditing IRS Form I-9s at a few of his locations. The fact that Mr. Rudd allegedly provided this assistance does not show that "Domino's" maintained employment records. If anything, the fact that Mr. Rudd had to visit the stores to assist Mr. Cookston only confirms that the Cookston Defendants maintained these records.

"Domino's" and, therefore, could not be "shifted" away from the Domino's Defendants.

As to the third factor regarding the shifting of employees, *Zheng* clearly held that if, as here, "the practice of using subcontractors to complete a particular task is widespread, it is unlikely to be a mere subterfuge to avoid complying with labor laws." *Zheng*, 355 F.3d at 73. If the services performed by the Cookston Defendants' employees are deemed integral to "**Domino's**" process of production, then every franchisor would fail this test. That is not how the test should be construed. *See Martin*, 2017 WL 4326109, at *21 (no joint employment where outsourcing was common practice); *In the Matter of Ovadia*, 19 NY.3d 138, 144 (2012) (test could not be applied in a way that turned every general contractor into a joint employer).

Plaintiffs' argument on the fourth factor ignores *Zheng*. Because Plaintiffs do not dispute that their "relationship" with the Domino's Defendants exists solely as a result of their actual employer's franchise relationship with DPF, this factor cannot evidence a joint employment relationship. *Zheng*, 355 F.3d at 74; *accord Jean-Louis*, 838 F. Supp. 2d at 135.

The fifth factor is largely the same as the inquiry under the second "formal control" factor. Because the Domino's Defendants did not "effective[ly] control the terms and conditions of the plaintiff's employment," this factor is also not met. *Zheng*, 355 F.3d at 74-75.

Finally, Plaintiffs proffer no evidence that the Cookston Defendants' employees "worked exclusively or predominantly for" the Domino's Defendants. *Zheng*, 355 F.3d at 75. Rather, they argue that, because Mr. Cookston supposedly relies on the Domino's Defendants for work, this Court should conclude – without evidence – that all of the Cookston Defendants' employees are also dependent on the Domino's Defendants. There is no basis for making this conclusion. In fact, the only evidence in the record refutes it. (*See, e.g.,* Reply Ex. 3 at PL-4594-95 [opt-in plaintiff Hossain worked as a cab driver while employed at a Cookston Defendants' store].)

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in their moving papers, the Domino's Defendants respectfully request that this (i) Court grant their Motion and enter Judgment in their favor on all of the counts in Plaintiffs' Complaint, and (ii) issue such other and further relief as the Court deems just and appropriate.

Dated: New York, New York
       December 28, 2017

Respectfully submitted,

**DLA PIPER LLP (US)**

By: /s/ Norman M. Leon
    Norman M. Leon

Joseph A. Piesco, Esq.
Garrett D. Kennedy, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel.:   (212) 335-4500
Fax:   (212) 335-4501
Email: joseph.piesco@dlapiper.com

Norman M. Leon, Esq.
444 West Lake Street, Suite 900
Chicago, Illinois 60606
Tel:   (312) 368-4000
Email: norman.leon@dlapiper.com

*Attorneys for Defendants Domino's Pizza, Inc., Domino's Pizza LLC and Domino's Pizza Franchising LLC*